**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESSY MANGAHAS, on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO, individually, and RICHARD LAM, individually,**<br><br>**Defendants.** | **No: 1:22-cv-04150 (LJL)** |

### MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT, FOR COURT-AUTHORIZED NOTICE TO SIMILARLY SITUATED PERSONS, AND FOR EXPEDITED DISCOVERY

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................ 1

**BACKGROUND** ...................................................................................................... 2

I.     PROCEDURAL HISTORY .............................................................................. 2

II.    STATEMENT OF FACTS ............................................................................... 2

    A.    Defendants' Common Operation of Uluh and The Bao. ............................... 2

    B.    Defendants Centrally Control, Train, and Monitor Tipped Workers at The Bao and Uluh .......................................................................................................... 3

III.   NATURE OF THE CLAIMS ............................................................................ 4

    A.    Defendants Pay Tipped Workers Less Than Full Minimum Wage ............................. 4

    B.    Defendants Require Tipped Workers to Share Tips with Tip-Ineligible Employees at The Bao and Uluh. .......................................................................................... 5

    C.    Restaurants Did Not Give Adequate Notice of Applying the Tip Credit. ................... 7

    D.    Defendants Required Tipped Workers to Perform Excessive Side Work and Non-Tipped Work Unrelated to the Tipped Profession. .................................................. 8

    E.    Defendants Have Denied Tipped Workers Overtime Compensation .......................... 9

**ARGUMENT** ........................................................................................................ 10

I.     CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE HERE. ........................................................................................................... 10

    A.    The Two-Step Certification Process for FLSA Collective Actions. .......................... 11

    B.    Plaintiffs have Made the Required Showing that All Tipped Workers are Similarly Situated with Respect to Their FLSA Claims. ....................................................... 12

    C.    A Collective Covering Both The Bao and Uluh is Appropriate. ............................... 14

    D.    Merits are Not At Issue Today. .......................................................................... 15

II.    COURT-AUTHORIZED NOTICE IS APPROPRIATE IN THIS CASE .................... 15

III.   NOTICES SHOULD BE SENT TO PLAINTIFFS' COUNSEL, WHO WILL FILE THEM WITH THE COURT EXPEDITIOUSLY. ............................................................. 17

IV.    A THREE-YEAR NOTICE PERIOD IS APPROPRIATE ........................................ 17

V.     EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION ........ 18

VI.    EQUITABLE TOLLING ................................................................................. 19

**CONCLUSION** ...................................................................................................... 19

# **TABLE OF AUTHORITIES**

**Cases**

*Adonias v. Al Horno Lean Mexican Kitchen Inc*., No. 16-CV-07266-LTS-KHP, 2018 WL
    4007643 (S.D.N.Y. Aug. 22, 2018) ......................................................................... 8

*Balverde v. Lunella Ristorante, Inc.,* No. 15 CIV. 5518 (ER), 2016 WL 2757430 (S.D.N.Y. May
    11, 2016) ................................................................................................................. 14

*Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985
    (S.D.N.Y. July 13, 2015) ........................................................................................ 16

*Cabrera v. Stephens*, 16 Civ. 3234 (ADS)(SIL), 2017 WL 4326511
    (E.D.N.Y. Sept. 28, 2017) ....................................................................................... 16

*Chen v. Dun Huang Corp.,* No. 19 Civ. 11883, 2021 WL 5234421 (S.D.N.Y. Nov. 8, 2021) .... 13

*Cheng Xia Wang v. Shun Lee Palace Rest., Inc.,* No. 17 Civ. 00840 (VSB),
    2018 WL 3155835 (S.D.N.Y. June 28, 2018) ......................................................... 11

*Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 834, 2013 WL 5308004
    (S.D.N.Y. Sept. 20, 2013) ................................................................................. 12, 14

*Chichinadze v. BG Bar Inc.*, No. 18 Civ. 8069 (KPF), 2021 WL 429948
    (E.D.N.Y. Feb. 21, 2021) .......................................................................................... 7

*Copantitla v. Fiskardo Estiatorio*, Inc., 788 F.Supp. 2d 253 (S.D.N.Y. 2011) ......................... 10

*Driver v. AppleIllinois, LLC*, 739 F.3d 1073 (7th Cir. 2014) ...................................................... 8

*Fermin v. Las Delicias Persuananas Restaurant, Inc.,* 93 F. Supp. 3d 19 (E.D.N.Y. 2015) ......... 6

*Filho v. OTG Management*, No. 19 Civ. 8287, 2021 WL 1191817
    (S.D.N.Y. March 30, 2021) ..................................................................................... 13

*Flood v. Carlson Restaurants*, No. 14 Civ. 2740, 2015 WL 260436
    (S.D.N.Y. Jan. 20, 2015) ................................................................................... 12, 14

*Fonseca v. Dircksen & Talleyrand Inc*., No. 13 Civ. 5124 (AT), 2014 WL 1487279
    (S.D.N.Y. Apr. 11, 2014) ............................................................................... 7, 14, 18

*Freeman v. Tyson Foods, Inc*., ECF No. 43, No. 5:21 Civ. 05175 (W.D. Ark. Aug. 18, 2022) .. 17

*Gillett v. Zara USA*, No. 20 Civ. 03734, 2021 WL 1731836 (S.D.N.Y. May 3, 2021) ............... 17

*Gillian v. Starjem,* 2011 WL 4639842 (S.D.N.Y. Oct.4, 2011) ..................................................... 5

*Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 4834428
    (S.D.N.Y. Aug. 26, 2013) ......................................................................................... 19

*Gomez v. MLB Enterprises, Corp.*, No. 15 Civ. 3326 (CM), 2018 WL 3019102
    (S.D.N.Y. June 5, 2018) ............................................................................................. 7

*Guevara v. Fine & Rare Operations LLC*, No. 20 Civ.5330 (BCM), 2022 WL 103376
    (S.D.N.Y. Jan. 10, 2022) ........................................................................................... 7

*Han v. Madison Ave. Realties, LLC*, No. 22-CV-382 (LJL), 2022 WL 2609003
    (S.D.N.Y. July 8, 2022) (Liman J.) ...................................................................... 11, 17

*Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989) ................................................................... 15

*Hong v. Haiku @ WP Inc.*, 582 F.Supp.3d 117  (S.D.N.Y. Jan. 28, 2022) ................................... 16

*In re Deloitte & Touche Overtime Litig.*, No. 10 CIV. 2461 RMB, 2011 WL 6292923
    (S.D.N.Y. Dec. 16, 2011) ......................................................................................... 18

*In re Penthouse Exec. Club Comp. Litig.*, No. 10 CIV. 1145 NRB, 2010 WL 4340255
    (S.D.N.Y. Oct. 27, 2010) .......................................................................................... 18

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ................................................... 19

*Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895 (ADS)(ETB),
    2012 WL 4976122 (E.D.N.Y. Oct. 17, 2012) ............................................................. 19

*Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220, 2019 WL 4493429
    (S.D.N.Y. Sept. 9, 2019) ........................................................................................... 14

*Martinenko v. 212 Steakhouse*, No. 22 Civ. 518, 2022 WL 1227140
    (S.D.N.Y. Apr. 26, 2022) (Liman, J.) .................................................................. passim

*McGlone v. Cont. Callers, Inc.*, 867 F.Supp.2d 438 (S.D.N.Y. 2012) ......................................... 19

*Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839
    (S.D.N.Y. Sep. 16, 2013) ........................................................................................... 11

*Millin v. Brooklyn Born Chocolate, LLC*, No. 19 Civ. 3346, 2020 WL 2198125
    (E.D.N.Y. May 6, 2020) ............................................................................................ 16

*Murphy v. Lajaunie,* No. 13 Civ. 6503 (RJS), 2016 WL 1192689 (S.D.N.Y. Mar. 22, 2016) ....... 7

*Myers v. Hertz Corp.*, 624. F.3d 537 (2d Cir. 2010) ........................................................ 11, 12, 15

*Raniere*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011) ............................................................ 18

*Robbins v. Blazin Wings, Inc.*, No. 15-CV-6340, 2016 WL 1068201
    (W.D.N.Y. March 18, 2016) ....................................................................... 8

*Sanchez v. Salsa Con Fuego, Inc*., No. 16 Civ. 473, 2016 WL 4533574
    (S.D.N.Y. Aug. 24, 2016) ......................................................................... 14

*Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114 (S.D.N.Y. 2014) ............................... 7

*Shahriar v. Smith & Wollensky Rst. Grp.*, 659 F.3d 234 (2d Cir. 2011) ................... 6, 7

*Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG), 15 Civ. 3023 (PGG),
    2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016) ....................................... 13

*Weng Long Liu v. Rong Shing, Inc.*, No. 12 CIV 7136, 2014 WL 1244676
    (S.D.N.Y. Mar. 26, 2014) ......................................................................... 17

*Zalidivar v. JMJ Caterers, Inc*., 166 F. Supp. 3d 310 (E.D.N.Y. 2016) ........................ 2

## Statutes

29 U.S.C. § 203(m) ...................................................................................................... 4, 7

29 U.S.C. § 203(m)(2)(B) ................................................................................................. 5

29 U.S.C. § 207(a)(1) ....................................................................................................... 9

29 U.S.C. § 216(b) .......................................................................................................... 10

29 U.S.C. § 255(a) .......................................................................................................... 17

## Regulations

29 C.F.R. § 531.59(b) ....................................................................................................... 7

## PRELIMINARY STATEMENT

Jessy Mangahas ("Mangahas") and the 14 Opt-in Plaintiffs (collectively "Plaintiffs") worked at Eight Oranges Inc. DBA The Bao located at 13 St. Mark Place, New York, NY 10003 ("The Bao") and Chibaola Inc. DBA Uluh located at 152 2nd Ave., New York, NY 10003 ("Uluh") (together "Defendants" or the "Restaurants"). This lawsuit seeks to recover minimum wages, overtime compensation, and tip misappropriation for Plaintiffs and her similarly situated co-workers – servers, runners, bussers, bartenders, barbacks (collectively, "Tipped Workers") in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

In sum, Defendants have misappropriated gratuities from Plaintiffs and other Tipped Workers by requiring them to engage in a tip distribution scheme where tips are shared with employees not entitled to tips under the FLSA, including, but not limited to, management, expeditors, soup dumpling cooks, and dessert cooks. Defendants also paid Tipped Workers tip-credit hourly wages to perform improper types, or excessive amounts, of non-tipped work. This practice harms Tipped Workers by denying them both minimum wages and the opportunity to earn tips, since non-tipped work has no customer contact.

Through this motion, Plaintiffs seek to protect the rights of themselves and of other Tipped Workers by sending them early Court-approved notice of this action and allow potential opt-ins to join this action and attempt to recover their unpaid wages. Through Plaintiffs' Amended Complaint, declarations, and documents in their possession, Plaintiffs exceed their low burden on this motion and demonstrate that Defendants subjected all Tipped Workers to the same unlawful policies.

**BACKGROUND**

I. **PROCEDURAL HISTORY**

On May 20, 2022, Mangahas filed her original Complaint seeking the above referenced wage and hour claims against Defendants.[1] On August 18, 2022, Mangahas filed the operative Amended Complaint (ECF No. 25) (attached hereto as **Exhibit A**).[2] All Defendants except Johanne Hong Bao ("Hong Bao") have filed an answer to the Amended Complaint (ECF No. 32). Although Hong Bao's Rule 12(b)(6) Motion to Dismiss (ECF Nos. 28-31) has not yet been fully briefed, it is irrelevant for the purposes of deciding the issue of conditional certification. *See, e.g.*, *Zalidivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016). There has not been formal discovery other than an exchange of Rule 26 Initial Disclosures to date.

II. **STATEMENT OF FACTS**

    A. **Defendants' Common Operation of Uluh and The Bao.**

Defendants own and operate two restaurants - The Bao, which is a Shanghai-style xiao long bao soup dumpling restaurant, and Uluh, which "offers a modern edge to traditionally crafted dishes from the many regions of China and Asia."[3] *See* **Ex. A** at ¶ 5. The Bao and Uluh are located a few blocks away from each other. *Id.* at ¶ 1. Throughout the "FLSA Period" (May 20, 2019 to the present), Defendants have employed well over 50 Tipped Workers who were denied minimum, overtime, and other wage violations as a result of Defendants' common violations of the FLSA. *Id.* at ¶ 102, 115. Though Defendant Hong Bao has not answered, Defendant Richard Lam ("Lam") admits to owning and operating the Restaurants. Compare Amended Answer (ECF No. 32) 72

---

[1] Though not ultimately on point for this Motion, prior to filing this lawsuit Plaintiff served a pre-suit demand letter on Defendants. As outlined in the Amended Complaint, Defendants communicated bribes to Tipped Workers to not join the lawsuit and have retaliated against Mangahas. *See* Am. Compl. ¶¶ 32-38.
[2] Unless otherwise noted, all exhibits are attached to the Declaration of Armando A. Ortiz.
[3] *See* Uluh's Website, (available at https://www.uluhny.com).

with **Ex. A** at ¶ 72 (admitting "At all relevant times, Lam has owned and operated the Restaurants.").

> **B.     Defendants Centrally Control, Train, and Monitor Tipped Workers at The Bao and Uluh**

Defendants constitute a single integrated enterprise that jointly employs, shares common ownership, common management, and centrally controls all Tipped Workers. *See* **Ex. A** at ¶¶ 44-47. During all relevant times, Defendants allowed and instructed Plaintiffs to transfer or be shared by and between the different Restaurants controlled and/or owned by Defendants. *See* **Ex. A** at ¶ 48. Lam is identified as the CEO of the Restaurants on the New York State Department of State. *See* **Ex. A** at ¶ 73. Hong Bao identifies herself as the president, principal, and sole shareholder of The Bao on its New York State Liquor Authority application. **Exhibit B**, The Bao Liquor License Excerpts at 2. Both Lam and Hong Bao certified that they will be personally managing the operations at the Restaurants, specifically, Lam at Uluh and Hong Bao at The Bao. *See* **Ex. B**, at 2-6 (Hong Bao certifying she takes active part in operations); **Ex. C**, Uluh Liquor License Excerpts, at 5 (Lam certifying he takes active part in operations).

Plaintiffs' and her co-workers' experiences demonstrate common ownership, management, and control. For instance:

- Lam and Hong Bao identify themselves as owners of the restaurant and are involved in direct management of Tipped Workers at both Restaurants. *See* **Ex. D,** Declaration of Jessy Mangahas ("Mangahas Decl.") ¶ 35; **Ex. E,** Declaration of Thinley Kalsang ("Kalsang Decl.") ¶ 27; **Ex. F**, Declaration of Wen Bin Zhu ("Zhu Decl.") ¶ 31;

- Both restaurants use a common office located in Uluh. **Ex. D**, Mangahas Decl. ¶ 36; **Ex. E**, Kalsang Decl. ¶ 28; **Ex. F**, Zhu Decl. ¶ 31;

- Tipped Workers are routinely shared between restaurant locations without undergoing new training or applications for work. **Ex. D**, Mangahas Decl. ¶ 39, 40; **Ex. E**, Kalsang Decl. ¶ 32; **Ex. F**, Zhu Decl. ¶ 34,35;

- Tipped Workers often pick up supplies from either Restaurant as needed. **Ex. D**, Mangahas Decl. ¶41; **Ex. E**, Kalsang Decl. ¶ 33 **Ex. F**, Zhu Decl. ¶36; and

- Mei, the Restaurants' common accountant, provides paychecks for both Restaurants. **Ex. D**, Mangahas Decl. ¶37; **Ex. F**, Zhu Decl. ¶ 33.

As will be outlined below, regardless of location, Plaintiffs were subject to the same wage and hour policies relevant to this lawsuit.

## III.    NATURE OF THE CLAIMS.

### A.    Defendants Pay Tipped Workers Less Than Full Minimum Wage.

Defendants pay Tipped Workers less than the full statutory minimum hourly wage by taking advantage of the federal and state "tip credit" that is only available to employers who satisfy specific criteria. *See* **Ex. A** at ¶ 18-21, 121, 145; **Ex. D**, Mangahas Decl. ¶3-5; **Ex. E**, Kalsang Decl. ¶ 3-5; **Ex. F**, Zhu Decl. ¶ 3-5. Paystubs given to Plaintiffs show a reduced wage rate paid along with tips. *See* **Ex. G**, Paystub Samples**.**

The federal tip credit, however, is only available to employers who satisfy specific criteria. *See* 29 U.S.C. § 203(m). Defendants' use of the tip credit has been unlawful in this matter because they have uniformly required Plaintiffs and similarly situated Tipped Workers to distribute tips to tip-ineligible employees, failed to provide proper notice of the federal tip credit, and required them to spend an excessive amount of time performing non-tip producing side work in excess of twenty percent of their shift and/or engage in non-tipped work unrelated to the tipped profession. Accordingly, Plaintiffs and other Tipped Workers are entitled to the full minimum

4

wage for all hours they work.

**B.    Defendants Require Tipped Workers to Share Tips with Tip-Ineligible Employees at The Bao and Uluh.**

Defendants require Tipped Workers to share a portion of their tips with non-tip eligible employees, such as managers, expeditors, soup dumpling cooks, and dessert cooks. *See* **Ex. A ¶** 13,16,127**; Ex. D**, Mangahas Decl. ¶6-9,14,20,23; **Ex. E**, Kalsang Decl. ¶7,8,13,17; **Ex. F**, Zhu Decl. ¶7,10,14,20. This improper tip distribution can be seen from reviewing the tip out sheet. *See* **Ex. H.** The managers who received tips include but were not limited to, Adu (l/n/u), Jimmy (l/n/u), and He Stefan. *See* **Ex. H; Ex. D**, Mangahas Decl. ¶10-11; **Ex. E**, Kalsang Decl. ¶9-11; **Ex. F**, Zhu Decl. ¶11. The expeditors include but were not limited to, Wayne (l/n/u), Wen (l/n/u), Jimmy (l/n/u), and Jay (l/n/u), *See* **Ex. H; Ex. D**, Mangahas Decl. ¶16-18; **Ex. F**, Zhu Decl. ¶16-18. Lastly, Ren l/n/u is a dessert cook that receives tips. **Ex. F**, Zhu Decl. ¶22. Plaintiffs and other Tipped Workers were not asked if they wanted to share tips with these positions, were not consulted about the tip allocations, and did not have any discretion to determine how much to tip out these positions. **Ex. D**, Mangahas Decl. ¶13,19,22,25; **Ex. E**, Kalsang Decl. ¶12,16,19; **Ex. F**, Zhu Decl. ¶13,19,23. Moreover, Wen Bin Zhu recalls being told by manager Adu (l/n/u) that the dessert cooks receive tips. *See* **Ex. F**, Zhu Decl. ¶22. Additionally, Jessy Mangahas and other Tipped Workers complained to manager Adu that the dessert cooks received tips. **Ex. D**, Mangahas Decl. ¶26.

The FLSA unequivocally does not allow the sharing of tips with management or the house. *See* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."); *see also Gillian v. Starjem,* 2011 WL 4639842, at *4 (S.D.N.Y. Oct.4, 2011) ("The practice of forced sharing of tips with

management is illegal.").

Positions such as expeditors, soup dumpling cooks, and dessert cooks are likewise tip-ineligible. While the FLSA permits the pooling of tips "among employees who customarily and regularly receive tips," and who have more than "*de minimis*" interaction with customers as a part of their employment, *see, e.g.*, *Shahriar v. Smith & Wollensky Rst. Grp.*, 659 F.3d 234, 253 (2d Cir. 2011), Plaintiffs, through their declarations, explain how soup dumpling cooks, dessert cooks, and expeditors do not have more than *de minimis* customer interaction. *See* **Ex. D**, Mangahas Decl. ¶15,21,24; **Ex. E**, Kalsang Decl. ¶14,18; **Ex. F**, Zhu Decl. ¶15,21. The soup dumpling cooks and the Dessert cooks are responsible for preparing soup dumplings and desserts and have very minimal interactions with customers. **Ex. D**, Mangahas Decl. ¶ 21,24; **Ex. E**, Kalsang Decl. ¶ 18; **Ex. F**, Zhu Decl. ¶ 21. In that regard, the cooks do not wait on customers, take customer orders, or deliver food or desserts to customers. **Ex. D**, Mangahas Decl. ¶ 21,24; **Ex. E**, Kalsang Decl. ¶18; **Ex. F**, Zhu Decl. ¶21. Plaintiffs noted that the soup dumpling cooks and dessert cooks primarily remained in the kitchen away from the customers' view. **Ex. D** Mangahas Decl. ¶21,24; **Ex. E**, Kalsang Decl. ¶18; **Ex. F**, Zhu Decl. ¶21. Likewise, expeditors are responsible for plating food and garnishing dishes in the kitchen areas, generally away from the view of customers, do not take orders from customers, do not bus tables, and do not set tables for customers. **Ex. D**, Mangahas Decl. ¶15, 17-18; **Ex. E**, Kalsang Decl. ¶14,15; **Ex. F**, Zhu Decl. ¶15-17.

As a result, because the soup dumpling and dessert cooks do not have more than *de minimis* customer interaction, they are not entitled to share tips under the FLSA. *See, e.g., Fermin v. Las Delicias Persuananas Restaurant, Inc.,* 93 F. Supp. 3d 19, at 41 (E.D.N.Y. 2015) ("Certain back-of-the-house restaurant staff, including cooks . . . cannot participate in valid tip pools . . . because they do not interact with customers."); *Murphy v. Lajaunie,* No. 13 Civ. 6503 (RJS), 2016 WL

1192689, at *3 (S.D.N.Y. Mar. 22, 2016) (stating "tip splitting should be limited to employees, who, like waiters and busboys, are ordinarily engaged in personal customer service."). Likewise, expeditors at the Restaurants are not entitled to share tips under the FLSA. *See Shahriar*, 659 F.3d at 240 (finding expeditors were not tip eligible if they did not provide direct customer service); *Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 123 (S.D.N.Y. 2014) (conditionally certifying plaintiffs' minimum wage claims where expeditors, who sometimes worked as runners, impermissibly participated in the tip pool").

The effect of these policies is simple - an employer who requires tipped employees to share gratuities with ineligible employees is not entitled to a tip credit and owes minimum wages. *See* 29 U.S.C. § 203(m); *Gomez v. MLB Enterprises, Corp.*, No. 15 Civ. 3326 (CM), 2018 WL 3019102, at *6 (S.D.N.Y. June 5, 2018); *Fonseca v. Dircksen & Talleyrand Inc*., No. 13 Civ. 5124 (AT), 2014 WL 1487279, at *2 (S.D.N.Y. Apr. 11, 2014). Moreover, under the FLSA, Plaintiffs have claims for the value of tips that were misappropriated by managers/the house. *See* 29 U.S.C. § 216(b) ("Any employer who violates section 203(m)(2)(B) . . . shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken . . . and any such tips unlawfully kept by the employer . . . .").

**C.    Restaurants Did Not Give Adequate Notice of Applying the Tip Credit.**

The first requirement for taking a tip credit is that the employer inform the tipped employee of the tip-credit provisions of Subsection 3(m) of the FLSA. *See* 29 C.F.R. § 531.59(b); *see also Guevara v. Fine & Rare Operations LLC*, No. 20 Civ.5330 (BCM), 2022 WL 103376, at *2 (S.D.N.Y. Jan. 10, 2022) ("Under the FLSA, the tip credit 'shall not apply with respect to any tipped employee unless . . . the employee 'has been informed by the employer of the provisions of [s. 203(m)]'"); *Chichinadze v. BG Bar Inc.*, No. 18 Civ. 8069 (KPF), 2021 WL 429948, at *9 (E.D.N.Y. Feb. 21, 2021) (finding that the Defendant failed to comply with the tip credit

requirements under the FLSA and the NYLL). According to controlling Department of Labor regulations, the provisions of Subsection 3(m) include the following information: (1)  the cash wage the employee will receive; (2) the additional amount on account of tips on which the employer's credit is claimed; (3) that the additional amount may not exceed the tips actually received; (4) that the employer cannot take the tip credit unless the employee has been informed of Subsection 3(m); and (5) that all tips received by the employee must be retained by that employee, except that tip pooling among tipped employees is permitted.

Here, Plaintiffs similarly attest that they were not provided with proper notice of the tip credit at both Restaurants. *See* **Ex. D**, Mangahas Decl. ¶4-5; **Ex. E**, Kalsang Decl. ¶4-5; **Ex. F**, Zhu Decl. ¶4-5.

### D. Defendants Required Tipped Workers to Perform Excessive Side Work and Non-Tipped Work Unrelated to the Tipped Profession.

"The FLSA precludes employers from applying a tip credit to wages of "tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *See, e.g.*, *Adonias v. Al Horno Lean Mexican Kitchen Inc.*, No. 16-CV-07266-LTS-KHP, 2018 WL 4007643, at *8 (S.D.N.Y. Aug. 22, 2018).[4] In instances where a tipped employee performs non-tipped duties that are unrelated to serving customers, such as such as preparing food, washing dishes, or generally cleaning the restaurant, that worker ceases to be a "tipped employee," and the employer must pay that person the *full minimum wage* for such work.[5] *See, e.g.*, *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014); *Robbins v. Blazin Wings, Inc.*, No. 15-CV-6340, 2016 WL 1068201, at *1 (W.D.N.Y. March 18, 2016) (granting

---

4 This is commonly known as the "80/20" Rule.
5 This is commonly known as "dual jobs" or job duties unrelated to the tipped profession.

216(b) notice based on dual jobs theory).

Here, Plaintiffs have established that they are similarly required to perform excessive amounts of both related and unrelated side work while working at the Restaurants. For instance, the Restaurants require employees to perform a substantial amount of non-tipped side work at the beginning, during, and after each shift. **Ex. D**, Mangahas Decl. ¶27-30; **Ex. E**, Kalsang Decl. ¶20-23; **Ex. F**, Zhu Decl. ¶24-27. Such side work duties are similar across both restaurants and include, but are not limited to:1) cleaning bathrooms, 2) cleaning windows, 3) picking up supplies from the opposite restaurant, 4) shoveling snow and applying salt, 5) cleaning shelves, 6) scrapping the dining room and kitchen floor, 7) cleaning the sidewalk, 8) preparing to go orders, 9) throwing out garbage, 10) assist with dishes or bring buckets to the back for placement of the dishes, 11) cleaning the garbage from the bar and host stand, and 12) setting up and breaking down the restaurants' indoor and outdoor tables, among other tasks. *See* **Ex. A** ¶22. **Ex. D**, Mangahas Decl. ¶31-32; **Ex. E**, Kalsang Decl. ¶24; **Ex. F**, Zhu Decl. ¶28.

The side work duties performed by Tipped Workers are typically not specific to a particular customer or table and are often performed in mass quantities for the entire shift or future shifts. *See* **Ex. A** ¶22; **Ex. D**, Mangahas Decl. ¶27,30,34; **Ex. E**, Kalsang Decl. ¶20,23,26; **Ex. F**, Zhu Decl. ¶24,27,30. Moreover, many of the duties performed by tipped employees (for example, sweeping, mopping, taking out trash, dusting, and cleaning bathrooms) are clearly unrelated to the tipped profession and thus, no tip credit can be taken when these duties are performed, regardless of the actual amount of time spent performing such duties. *See Driver*, 739 F.3d at 1075.

### E.    Defendants Have Denied Tipped Workers Overtime Compensation

Tipped Workers were entitled to overtime wages to the extent they worked more than forty hours per week. *See* 29 U.S.C. § 207(a)(1). As Defendants do not satisfy the requirements by which

they can avail themselves of the tip credit, any overtime paid to Plaintiffs and other Tipped Workers would have been at the improper rate and should have been at a rate calculated at one-and-one-half times the full statutory minimum wage in accordance with the FLSA. *See* **Ex. A**, Am. Compl. ¶104,107,148-150. Based on initial paystubs received, it is clear Tipped Workers did not receive 1.5 times the full minimum wage rate. *See* **Ex. G** at 4-5.

### F. Defendants Failed to Reimburse Tipped Workers for Their Uniforms.

Defendants also maintained a policy and practice whereby they require Plaintiffs and Tipped Workers to purchase their t-shirt uniforms and failed to reimburse Plaintiffs and Tipped Workers for these costs. *See* **Ex. D**, Mangahas Decl. ¶42**; Ex. E**, Kalsang Decl. ¶ 34. Such a policy violates the FLSA. *See, e.g.*, *Copantitla v. Fiskardo Estiatorio*, Inc., 788 F.Supp. 2d 253, 292 n. 18 (S.D.N.Y. 2011) ("In this case, since the Court has already determined that defendants are ineligible to take a tip credit under the FLSA, plaintiffs' wages are already below minimum wage, and if plaintiffs' work clothes were indeed uniforms, defendants will have violated this provision."

## ARGUMENT

### I. CONDITIONAL CERTIFICATION OF THE FLSA COLLECTIVE IS APPROPRIATE HERE.

The FLSA authorizes aggrieved employees to bring a collective action "on behalf of themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action pursuant to Fed. R. Civ. P. 23, an employee in a collective action brought under FLSA § 216(b) is not a class member until he or she affirmatively opts-in to the collective action. 29 U.S.C. § 216(b). Thus, until similarly situated employees file consents to opt-in to this action, the statute of limitations continues to run against them on a daily basis. Therefore, it is critical that similarly situated employees are afforded notice and an opportunity to opt-in as soon as possible, before their claims are reduced or extinguished by the passage of time.

A.      **The Two-Step Certification Process for FLSA Collective Actions.**

Courts in the Second Circuit, including this Court, have utilized the well-known two-step

analysis when considering whether to conditionally certify an FLSA collective action. *See, e.g.*,

*Han v. Madison Ave. Realties, LLC*, No. 22-CV-382 (LJL), 2022 WL 2609003 at *2  (S.D.N.Y.

July 8, 2022) (Liman J.); *Martinez v. JVA Indus.*, No. 20 Civ. 7977, 2021 WL 1263133, at *3

(S.D.N.Y. Apr. 6, 2021) (Liman, J.) ("The Second Circuit has endorsed a two-step method to

determine whether a case should proceed as a collective action under FLSA.") (citing *Myers v.

Hertz Corp.*, 624. F.3d 537, 554 (2d Cir. 2010). This Court has previously described the first step's

standard as follows:

> In the first step, the court makes 'an initial determination to send notice to potential
> opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs.' Plaintiffs
> need only 'make a 'modest factual showing' that they and potential opt-in plaintiffs
> 'together were victims of a common policy or plan that violated the law.'

*Martinez*, 2021 WL 1263133, at *3 (citations omitted).

While existent, the burden at this step is minimal and can be met by showing that there are

other employees who are similarly situated with respect to their job requirements and with regard

to their pay provisions." *Id*. at *7. At the initial stage, Plaintiffs can satisfy their minimal burden

based on the pleadings and declarations alone. *See Cheng Xia Wang v. Shun Lee Palace Rest., Inc.,*

No. 17 Civ. 00840 (VSB), 2018 WL 3155835, *3 (S.D.N.Y. June 28, 2018). In fact, courts within

the Second Circuit, including this Court, have granted conditional collective certification based

"solely on the personal observations of one plaintiff's affidavit." *Mendoza v. Ashiya Sushi 5, Inc.*,

No. 12 Civ. 8629, 2013 WL 5211839, at *3 (S.D.N.Y. Sep. 16, 2013); s*ee Martinenko v. 212

Steakhouse*, No. 22 Civ. 518, 2022 WL 1227140, at *3 (S.D.N.Y. Apr. 26, 2022) (Liman, J.) (use

of only named plaintiff's declaration).

"[T]he Second Circuit has emphasized that the standard of proof should remain "low"

because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist.'" *See Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 834, 2013 WL 5308004, at *10 (S.D.N.Y. Sept. 20, 2013) (*citing Myers*, 624 F.3d at 555). "The Court should not examine 'whether there has been an actual violation of law,' but rather 'whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'" *Flood v. Carlson Restaurants*, No. 14 Civ. 2740, 2015 WL 260436, at *2 (S.D.N.Y. Jan. 20, 2015).

Questions of fact, determinations of credibility, and whether an actual violation of the law occurred are considered at decertification (if such a request is made) after discovery. *See, e.g.*, *Martinez*, 2021 WL 1263133, at *4.

**B.      Plaintiffs have Made the Required Showing that All Tipped Workers are Similarly Situated with Respect to Their FLSA Claims.**

As outlined above, Plaintiff has provided her declaration, along with two more declarations indicating the common policy and practice in effect at Uluh and The Bao.  Namely, these declarations demonstrate that Tipped Workers are unified by common policies like:

- The use of the tip credit towards their wages (see supra section III(A) and III(E));

- Failure to provide proper notice of the tip credit (see supra section III(C));

- Being made to share tips with tip-ineligible positions, such as managers, expeditors, soup dumpling cooks, and dessert cooks (see supra section III(B));

- Being required to spend over 20% of their time performing both related and unrelated side work duties (section III(D));

- Receiving overtime pay less than 1.5 times the full non-tipped minimum wage rate (see supra section III(E)); and

- Being required to pay for uniforms and sub-minimum wage workers without reimbursement (see *supra* section III(F)).

They have similarly provided supportive documents in their possession corroborating their claims, especially with regard to their pay structure (see **Ex. G**, paystubs), and improper tip sharing arrangements (see **Ex. H**, tip sheet sample). This evidence coupled with Plaintiffs' declarations "support a reasonable inference that plaintiffs' experiences reflected a company-wide policy." *See Varghese v. JP Morgan Chase & Co.*, No. 14 Civ. 1718 (PGG), 15 Civ. 3023 (PGG), 2016 WL 4718413, at *8 (S.D.N.Y. Sept. 9, 2016).

In their declarations, they identify by name other Tipped Workers who were subject to the same policies and practices. *See* **Ex. D**, Mangahas Decl. ¶30,33,38; **Ex. E**, Kalsang Decl. ¶25,32; **Ex. F**, Zhu Decl. ¶29. Although identification of names is not necessary as previously discussed by this Court in *Martinez*, 2021 WL 1263133, at *4, it illustrates that Plaintiffs have gone above and beyond their modest factual burden at this stage. Additionally, as outlined by this Court in *Martinenko*, personal observations from even one declaration are sufficient for this minimal burden. 2022 WL 1227140, at *3 (citing cases).

Courts in the Southern and Eastern District of New York have found similar evidence more than sufficient for notice in similar restaurant cases. *See, e.g.*, *Marinenko*, 2021 WL 1263133, at *6 (allowing notice where plaintiff alleged failure to provide tip credit notice along with claims of straight time for overtime); *Chen v. Dun Huang Corp.*, No. 19 Civ. 11883, 2021 WL 5234421, at *8 (S.D.N.Y. Nov. 8, 2021) (granting notice to waiters and kitchen staff where they claimed, in part, tip misappropriation); *Filho v. OTG Management*, No. 19 Civ. 8287, 2021 WL 1191817, at *4-5 (S.D.N.Y. March 30, 2021) (granting notice to airports where plaintiffs worked when alleging improper notice of tip credit and excessive side work); *Sanchez v. Salsa Con Fuego, Inc.*, No. 16

13

Civ. 473, 2016 WL 4533574, at *2 (S.D.N.Y. Aug. 24, 2016) (granting notice to front of house where they claimed, among other items, improper tip out and excessive side work); *Balverde v. Lunella Ristorante, Inc.,* No. 15 CIV. 5518 (ER), 2016 WL 2757430, at *4 (S.D.N.Y. May 11, 2016) (granting notice where tipped workers claimed improper tip pool deductions to the house); *Flood,* 2015 WL 260436, at *2-6 (granting notice to nationwide chain based on excessive side work claims); *Fonseca*, 2014 WL 1487279, at *2 (granting notice where plaintiffs alleged maître d's, polishers, and expeditors were tip-ineligible through declarations); *Chhab*, 2013 WL 5308004, at *13 (granting notice where plaintiffs alleged improper tip out to silverware polishers and excessive side work).

### C.     A Collective Covering Both The Bao and Uluh is Appropriate.

The Court should find that Plaintiffs are similarly situated to Tipped Workers at both The Bao and Uluh due to the well-plead allegations and evidence demonstrating a single integrated enterprise under the FLSA and their description of common pay practices at both Restaurants. As outlined in Section II(A)(1), *supra*, Lam and Hong Bao maintained centralized control over the Restaurants, the declarations submitted outline the practices at both Restaurants through personal experiences, Tipped Workers regularly were sent between the Restaurants without retraining or re-application, the Restaurants shared supplies interchangeably, and the policies complained of in this lawsuit (improper use of the tip credit due to missing notice, improper tip outs, and excessive side work) equally apply at both locations. At the conditional certification stage, such allegations and evidence are sufficient "because conclusively determining whether or not Defendants operated as a single integrated enterprise is a fact-specific inquiry that is not properly determined at this early stage in the litigation." *E.g*., *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220, 2019 WL 4493429, at *14 (S.D.N.Y. Sept. 9, 2019) ("Here, as in other cases in which courts have

conditionally certified collectives that include employees of multiple, distinct corporate entities, Plaintiffs have made a modest showing that [Defendants] share common ownership and treat employees, equipment, and supplies interchangeably.").

     **D.**    **Merits are Not At Issue Today.**

We anticipate that Defendants may argue or present purported evidence disproving Plaintiff's claims. However, as is well-settled in this Circuit: "at this stage, the Court ought not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Marinenko*, 2022 WL 1227140, at *5 (citing cases).

**II.**    **COURT-AUTHORIZED NOTICE IS APPROPRIATE IN THIS CASE**

In addition to an order conditionally certifying this collective action, Plaintiffs respectfully request the Court use its broad discretion and authorize notice by mail, email, and text message to all Tipped Workers who work or have worked at The Bao and Uluh from September 16, 2019 to present. "[B]ecause the three-year statute of limitations for an FLSA claim begins to run as soon as a non-named plaintiff opts-in to the litigation, courts routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery process." *Schaefer*, 122 F.Supp.3d at 193. While the FLSA does not expressly require courts to authorize the sending of notice to potential opt-in plaintiffs, the Second Circuit recognizes that district courts "have discretion, in appropriate cases, to implement [§216(b)] … by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. *Myers*, 624 F.3d at 554 (citing *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, at 169 (1989)).

These methods of distribution are routinely approved by courts and should be approved here. *See, e.g.*, *Martinenko*, 2022 WL 1227140, at *7 (Liman J.) (permitting notice by first class mail, email, and text); *Cabrera v. Stephens*, 16 Civ. 3234 (ADS)(SIL), 2017 WL 4326511

(E.D.N.Y. Sept. 28, 2017) (permitting text and email notice); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (permitting text message notice where the nature of the employer's business facilitated a high turnover rate among employees); *Millin v. Brooklyn Born Chocolate, LLC*, No. 19 Civ. 3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) (objecting to notice by email and text message is "outdated and not in touch with the reality of current life… . Simply put, email, text message and other electronic means of communication is far more prevalent than snail mail, whether fortunately or not").

Plaintiffs' proposed Notice documents are attached as **Exhibits I** (proposed mail notice), **J** (proposed Email notice), **K** (proposed text notice), and **L** (proposed reminder notice). The proposed notice documents have been carefully drafted pursuant to standards articulated by this Court in *Martinenko,* 2022 WL 1227140, at *7.[6] Accordingly, Plaintiffs respectfully request that these forms of notice be adopted.

Additionally, Plaintiffs request that the Court allow a simultaneous Chinese language translation of the notice to be sent to putative collective members. As outlined in the declarations, several workers at the Restaurants do not have English as their primary language and are better able to communicate in Chinese. *See* **Ex. D**, Mangahas Decl. ¶ 36; **Ex. E**, Kalsang Decl. ¶ 36; **Ex. F**, Zhu Decl. ¶ 39. Courts generally allow notice "to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." *Hong v. Haiku @ WP Inc.*, 582 F.Supp.3d 117, 133 (S.D.N.Y. Jan. 28, 2022) (allowing translation of notice into Chinese).

---

[6] Counsel previously shared proposed notice documents with Defendants' Counsel but did not receive any redlines or comments to them prior to filing this Motion. *See* Ortiz Decl. ¶ 17.

III.    **NOTICES SHOULD BE SENT TO PLAINTIFFS' COUNSEL, WHO WILL FILE THEM WITH THE COURT EXPEDITIOUSLY.**

Plaintiffs' Counsel recognizes this Court's discussion of whether FLSA consent forms should be sent to the Clerk of Court or to Counsel. *See Martinenko,* 2022 WL 1227140, at *7. As evidenced from the early course of this litigation, Counsel has quickly filed consent forms received with the Clerk of Court so far and has no plans to alter this practice should certification and notice be granted. In order to not burden the Clerk with what could be dozens of consent forms (which are time sensitive), Plaintiffs' Counsel asks permission to receive the consent forms and will file them upon receipt. Plaintiffs' Counsel is well-versed in sending, processing, and filing consent forms in federal courts. *See* Ortiz Decl. ¶ 4. Moreover, Plaintiffs' Counsel has routinely been given permission to receive and file consent forms by courts inside and outside of this District. *See, e.g., Freeman v. Tyson Foods, Inc*., ECF No. 43, No. 5:21 Civ. 05175, at 14, 19 (W.D. Ark. Aug. 18, 2022) (granting 216(b) notice, allowing counsel to receive and file consent forms, and overruling defendant's argument that a third-party administrator should facilitate notice); *Gillett v. Zara USA*, No. 20 Civ. 03734, 2021 WL 1731836, at *8 (S.D.N.Y. May 3, 2021) (granting 216(b) notice with agreement for consent forms to be returnable to counsel).

IV.    **A THREE-YEAR NOTICE PERIOD IS APPROPRIATE**

The FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act. *See* 29 U.S.C. § 255(a); *see also Weng Long Liu v. Rong Shing, Inc.*, No. 12 CIV. 7136, 2014 WL 1244676, at *3 (S.D.N.Y. Mar. 26, 2014). While Defendants will argue that that their violations were not willful and that notice covering a two-year period is appropriate, such argument is without merit at this stage where the willfulness of a defendant's violations of the FLSA is pled by a plaintiff. *See, e.g. Han,* 2022 WL 2609003, at *5 ("Court uniformly apply the three year time period for notice in the interest of reaching all similarly situated employees and on the theory that

17

whether a violation is willful involves the merits and should not dictate who received notice.") (citation omitted); *Fonseca,* 2014 WL 1487279, at \*4 ("[B]ecause equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, 'with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'") (citation omitted).

## V.    EXPEDITED DISCLOSURE OF NAMES AND CONTACT INFORMATION

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Plaintiffs require discovery of the names and contact information for those individuals. "As has been noted by a number of courts in this circuit, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action." *Raniere*, 827 F. Supp. 2d, 294, at 327 (S.D.N.Y. 2011) (listing case); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 CIV. 1145 NRB, 2010 WL 4340255, at \*5 (S.D.N.Y. Oct. 27, 2010) (listing cases). Indeed, "[i]t is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purposes of notifying a class of a collective action and enabling class counsel to obtain relevant discovery." *In re Deloitte & Touche Overtime Litig.*, No. 10 CIV. 2461 RMB, 2011 WL 6292923, at \*1 (S.D.N.Y. Dec. 16, 2011).

Accordingly, Plaintiffs respectfully request that the Court direct Defendants to produce a computer-readable list of the full names, last known residence addresses, telephone numbers, last known email addresses, dates of employment, and location(s) worked for all persons employed by Defendants as a Tipped Worker at The Bao and Uluh. *See, e.g. Martinenko,* 2022 WL 1227140 at \*9 (permitting the production of the names, last known addresses, last known phone numbers, last known e-mail addresses, dates of employment, and position(s) held for all members of the putative class.).

## VI.     EQUITABLE TOLLING

Should the Court grant the instant motion, Plaintiffs respectfully request that, to avoid inequitable circumstances, the FLSA statute of limitations be tolled as of September 16, 2022 (the date this Motion is filed). This tolling ensures that the time necessary for briefing and a decision will not adversely impact putative Collective Members. *See, e.g., Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014) (tolling the statute of limitations as of the date of the filing of the plaintiff's motion); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013) (tolling statute of limitations as of the date the plaintiff was originally scheduled to file her motion for conditional certification); *Kemper v. Westbury Operating Corp.*, No. 12 Civ. 895 (ADS)(ETB), 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012) ("[P]laintiffs' request to notify individuals who were employed three years from the date plaintiff filed this motion, rather than from the date of the mailing of the notice, is granted."); *McGlone v. Cont. Callers, Inc.*, 867 F.Supp.2d 438, at 445 (S.D.N.Y. 2012) (tolling statute of limitations while conditional certification motion was being decided).

## <u>CONCLUSION</u>

The two-step process endorsed by the Second Circuit for certification of FLSA collective actions is well-founded – it gets notice to those who need it early on in a case due to time sensitive rights. For this reason, the burden is modest and all that is necessary is a preliminary showing that a common policy or practice affects a group of workers. Mangahas has made this showing.

As such, Mangahas respectfully asks the Court to grant her Motion, conditionally certify this as a FLSA collective action, and order the disclosure of the class list so that notice can be sent.

Dated:  New York, New York
        September 16, 2022


Respectfully submitted,

**FITAPELLI & SCHAFFER, LLP**

By:

/s/ Armando A. Ortiz

Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine K. Bonilla
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375