UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
JESSY MANGAHAS, *on behalf of herself and all others*             :
*similarly situated*,                                             :
                                                                  :
                                          Plaintiff,              :            22-cv-4150 (LJL)
                                                                  :
                   -v-                                            :        OPINION AND ORDER
                                                                  :
EIGHT ORANGES INC. et al,                                         :
                                                                  :
                                          Defendants.             :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/18/2022__

LEWIS J. LIMAN, United States District Judge:

        Plaintiff Jessy Mangahas, along with the fourteen opt-in plaintiffs, move the court for an

order conditionally certifying this action as a collective action, and for court-authorized notice

and expedited discovery under the Fair Labor Standards Act of 1947, 29 U.S.C. § 216(b).  Dkt.

No. 36.

## BACKGROUND

**I.      Complaint Allegations**

        The following facts are taken from allegations in the Amended Complaint.  Dkt. No. 25.

        Plaintiff Jessy Mangahas ("Plaintiff" or "Mangahas") is an employee of defendant Eight

Oranges Inc. d/b/a The Bao located at 13 St. Marks Place, New York, NY ("The Bao") and

Chibaola Inc., d/b/a Uluh located at 152 Second Avenue, New York, NY ("Uluh") (collectively,

the "Restaurants").  Dkt. No. 25 ¶¶ 1, 43.  She began working for the Restaurants as a front-of-

house worker in approximately 2018 and still works for them.  *Id.* ¶ 43.

        The Bao is a Shanghai-style xiao long bao soup dumpling restaurant.  *Id.* ¶ 5.  It is owned

and operated by Defendants Eight Oranges, Inc. ("Eight Oranges"), Richard Lam ("Lam"), and

Joanne Hong Bao ("Hong Bao").  *Id.* ¶ 2.  The Bao is the trade name for defendant Eight

Oranges, Inc. ("Eight Oranges").  *Id.* ¶ 57.  Uluh promotes itself as "offer[ing] a modern edge to

traditionally crafted dishes from the many regions of China and Asia."  *Id.* ¶ 5.  Uluh is the trade

name for defendant Chibaola Inc. ("Chibaola") and is owned and operated by Chibaola, Lam,

and Hong Bao.  *Id.* ¶ 65.  The Restaurants are located within blocks of one another in lower

Manhattan and share the same address for service of process (13 St. Mark's Place).  *Id.* ¶¶ 1, 55,

63.[1]

Plaintiff brings this case as a putative class action and a collective action under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of a collective or class of servers,

runners, bussers, bartenders, and barbacks (collectively, "Tipped Workers") who worked at The

Bao and Uluh.  *Id.* ¶¶ 1, 39–40.  Plaintiff asserts FLSA collective action claims on behalf of

Tipped Workers employed at the Restaurants from May 20, 2019 to the date of final judgment in

this matter, *id.* ¶ 102, and New York Labor Law ("NYLL") class action claims on behalf of

Tipped Workers employed at the Restaurants between October 5, 2015 and the date of final

judgment in this matter, *id.* ¶ 113.

Plaintiff alleges that the Restaurants were operated as a single integrated enterprise that

jointly employed her and similarly situated Tipped Workers.  *Id.* ¶ 6.  The Restaurants had

common management and ownership, *id.* ¶ 50, and Plaintiff and Tipped Workers were directed

to work between the Restaurants at Defendants' direction; for example, Tipped Workers were

directed to work at both Restaurants on a continuous basis and also when one Restaurant was

short-staffed, *id.* ¶ 7.  The Restaurants routinely shared supplies.  *Id.* ¶ 8.  During all relevant

---

[1] The Complaint defines Eight Oranges, Chibaola, Lam, and Hong Bao as Defendants and the
Court follows that convention here.

times, the two Restaurants have had the same employment policies, practices, and procedures for all Tipped Workers. *Id.* ¶ 52.

The Complaint alleges that Lam owned and operated the Restaurants at all relevant times, that he maintained a direct and significant management role at the Restaurants, that he has been actively involved in managing the day-to-day operations of the Restaurants, and that he makes determinations regarding the hiring and firing of employees. *Id.* ¶¶ 72–75. It also alleges that the New York State Department of Labor identifies Lam as the Chief Executive Officer of the Restaurants, and that he has the power to transfer assets and liabilities of the Restaurants, to stop any illegal pay practices, to declare bankruptcy on behalf of the Restaurants, to enter into contracts on behalf of the Restaurants, and to close, shut down, and/or sell the Restaurants. *Id.* ¶¶ 76–81. It makes similar allegations with respect to Hong Bao: according to the Complaint, Hong Bao owned and operated the Restaurants, maintained a direct and significant management role at the Restaurants, was actively involved in managing day-to-day operations at the Restaurants, made determinations regarding the hiring and firing of employees, and had the power to stop any illegal pay practices, to transfer assets and/or liabilities of the Restaurants, to declare bankruptcy on behalf of the Restaurants, to enter into contracts on behalf of the Restaurants, and to close, shut down, and/or sell the Restaurants. *Id.* ¶¶ 84–85, 87, 90, 93–97. It also alleges that Hong Bao was at the Restaurants approximately two times per week, was a participant in the Restaurants' group chat with Tipped Workers, and gave directives to Plaintiff and Tipped Workers including with respect to side work to be performed and scheduling. *Id.* ¶¶ 86, 88–89. Hong Bao identified herself to the New York State Liquor Authority as the president, principal, and sole shareholder of The Bao. *Id.* ¶ 91. In a deposition taken in a state

court case in 2018, she admitted to being the owner and principal of The Bao.  *Id.* ¶ 92.  Lam and Hong Bao are husband and wife.  *Id.* ¶ 2 n.2.

Plaintiff alleges that the Defendants violated the requirements under FLSA and the NYLL pursuant to which they could take a tip credit towards hourly rates paid to Tipped Workers.  *Id.* ¶ 11.  In particular, Defendants required Plaintiff and other Tipped Workers to engage in a tip distribution scheme pursuant to which they were required to share tips with employees working as managers, expeditors, soup dumpling cooks, and dessert cooks who were not entitled to share tips under FLSA and the NYLL.  *Id.* ¶¶ 13–14.  In addition, Defendants failed to provide Plaintiff and other Tipped Workers with notification of the tipped minimum wage rate or tip credit provisions of FLSA and/or NYLL.  *Id.* ¶ 12.  Defendants also required Plaintiff and other Tipped Workers to spend more than 20% of their worktime performing non-tip producing side work duties that were related to their tipped occupation and to perform non-tipped producing side work unrelated to their tipped occupation.  *Id.* ¶ 18.  The non-tip producing side work includes cleaning bathrooms, cleaning windows, picking up supplies from the opposite restaurant, shoveling snow and applying salt, cleaning shelves, scrapping the dining room and the kitchen floor, cleaning the sidewalk, preparing "to go" orders, throwing out garbage, assisting with dishes, cleaning garbage from the bar and host stand, and setting up and breaking down the indoor and outdoor tables of the Restaurants.  *Id.* ¶ 22.  As some of these duties are not related to Plaintiff's duties as a Tipped Worker, Plaintiff and similarly situated Tipped Workers allege that they are engaged in dual occupations for which they are entitled to full minimum wage.  *Id.* ¶ 23.

The Complaint alleges a slew of other labor law violations including that Defendants would take unlawful deductions from Tipped Workers' compensation, such as the value of any

customer walk outs, plate and glass breakage, and incorrect customer orders, and that Defendants would also deduct an hour from the Tipped Workers' hours for lunch at The Bao regardless of whether the worker took an hour off from work.  *Id.* ¶¶ 24–26.  Defendants required Tipped Workers to purchase their t-shirt uniforms, *id.* ¶ 27, failed to pay Tipped Workers the spread of hours premium pay required by the NYLL, *id.* ¶ 28, and failed to provide Tipped Workers with proper annual wage notices or accurate wage statements required by the NYLL, *id.* ¶¶ 30–31.

Plaintiff alleges that Defendants' conduct violated (1) the minimum wage provisions of the FLSA, 29 U.S.C. § 201, *et seq.*, *id.* ¶¶ 140–46 (First Cause of Action); (2) the overtime wage provisions of the FLSA (by failing to pay Plaintiff and members of the FLSA Collective at a rate of 1.5 times the full minimum wage for hours in excess of forty per week), *id.* ¶¶ 147–50 (Second Cause of Action); (3) the misappropriated tip provisions of the FLSA, *id.* ¶¶ 151–55 (Third Cause of Action); (4) the minimum wage provisions of the NYLL, *id.* ¶¶ 156–65 (Fourth Cause of Action); (5) the overtime wage provisions of the NYLL, *id.* ¶¶ 166–69 (Fifth Cause of Action); (6) the tip misappropriation provisions of the NYLL, *id.* ¶¶ 170–75 (Sixth Cause of Action); (7) provisions of the NYLL that required reimbursement for the purchase of the t-shirts, *id.* ¶¶ 176–78 (Seventh Cause of Action); (8) the spread of hours provisions of the NYLL, *id.* ¶¶ 179–81 (Eighth Cause of Action); (9) the annual time of hire wage notice provisions of the NYLL, *id.* ¶¶ 182–84 (Ninth Cause of Action); and (10) the wage statement provisions of NYLL, *id.* ¶¶ 185–87 (Tenth Cause of Action).  Plaintiff Mangahas also brings individual claims for retaliation under FLSA, *id.* ¶¶ 188–92 (Eleventh Cause of Action), and under NYLL, *id.* ¶¶ 193–97 (Twelfth Cause of Action).

**II.     Evidence with Respect to the Collective Action Motion**

Plaintiff supports her collective action motion with three declarations: the declaration of Plaintiff Jessy Mangahas, Dkt. No. 38-4, and the declarations of opt-in Plaintiffs Thinley Kalsang, Dkt. No. 38-5, and Wen Bin Zhu, Dkt. No 38-6.

Mangahas's declaration largely tracks the allegations of the Complaint.  She states that managers, expeditors, and soup dumpling cooks at The Bao and managers, expeditors, and the dessert cook at Uluh receive distributions from the tip pool, Dkt. No. 38-4 ¶¶ 7–8, and that those employees do not regularly interact with customers, *id.* ¶¶ 9–26.  She also states that during her employment Defendants never explained that she was being paid less than the full minimum wage because she was receiving tips and that her tips would be used as a credit against the minimum wage she was required to be paid, nor was she given or shown a copy or summary of laws, rules, or regulations concerning the tip credit and minimum wage.  *Id.* ¶¶ 4–5.  Mangahas also states that she was required to perform a substantial amount of non-tip side work, spending in excess of 20% of her time at work engaged in a non-tip capacity, but was only compensated at the tipped minimum wage rate rather than the full minimum wage rate.  *Id.* ¶¶ 27, 30.  Mangahas adds that she is "aware of other tipped employees who performed the same or similar duties for the same amount of time that I did," and she lists six specific employees whom she observed working the same hours and performing the same duties.  *Id.* ¶ 33.  Mangahas further states that she paid approximately $25 per uniform shirt and was never reimbursed for it.  *Id.* ¶ 42.  She also makes a number of allegations that The Bao and Uluh operated as a single integrated enterprise. *Id.* ¶¶ 35–41.

Kalsang states that she worked as one of the Tipped Workers at The Bao from in or around 2019 to approximately July 5, 2022 and was paid less than the full minimum wage for the

hours she worked.  Dkt. No. 38-5 ¶¶ 2–3.  Her allegations are otherwise identical to Mangahas with respect to The Bao, including regarding the operation of the tip pool.

Wen Bin Zhu worked as one of the Tipped Workers for Uluh from in or around March 2021 to the present and was paid less than the full minimum wage for all hours worked.  Dkt. No. 38-6 ¶¶ 2–3.  Her allegations with respect to the operation of the tip pool at Uluh are identical to those Mangahas makes with respect to the tip pool at both Restaurants and that Kalsang makes with respect to the tip pool at The Bao.  She attaches a copy of a tip record sheet distributed to employees at Uluh for the first time approximately two weeks after this lawsuit was filed.  *Id.* ¶ 8.  She states that, on the tip sheet, she saw managers, expeditors, and a dessert cook receiving tips.  *Id.* ¶¶ 8–9.

In support of her motion, Plaintiff also attaches excerpts from New York State Liquor Authority license applications containing the representations of Lam and Hong Bao, respectively with respect to their management of the Restaurants.  Dkt. Nos. 38-2, 38-3.

## PROCEDURAL HISTORY

This action was initiated by complaint filed on May 20, 2022.  Dkt. No. 1.  On August 18, 2022, Plaintiff filed the operative Amended Complaint.  Dkt. No. 25.  All Defendants, except Hong Bao, sued individually, have answered.  Dkt. No. 32.  Hong Bao filed a motion to dismiss the Amended Complaint against her pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 28–31.  By opinion and order issued simultaneously herewith, the Court denies that motion.

On September 16, 2022, Plaintiff filed this motion for conditional certification of the case as a collective action.  Dkt. No. 36.  Plaintiff supports that motion with a memorandum of law, Dkt. No. 37, and three declarations as described above and other related documents, Dkt. No. 38.  On September 26, 2022, Defendants filed their memorandum of law in opposition to the motion to certify the case as a collective action.  Dkt. No. 39.  On October 3, 2022, Plaintiff filed a reply

memorandum of law in support of the motion to certify the case as a FLSA collective action.
Dkt. No. 42.

## DISCUSSION

Plaintiff moves for conditional certification of a FLSA collective comprised of all Tipped Workers who work or who have worked at The Bao from September 16, 2019 to present.  Dkt. No. 37 at 10–15.  Plaintiff also asks for: (i) their proposed form of notice to be approved, *id.* at 16; (ii) for notice to be sent by mail, email, and text message to all members of the collective, *id.* at 15; (iii) that notice be translated into Chinese, *id.* at 16; (iv) that consents be sent to Plaintiff's counsel who will file the notices promptly with the Court, *id.* at 17; (v) that the Court apply the three-year statute of limitations for willful violations in determining to whom notice should be provided, *id.*; (vi) that Defendants be ordered to provide to Plaintiff a computer-readable list of the full names, last-known residence addresses, telephone numbers, last-known email addresses, dates of employment and location(s) worked for all members of the collective, *id.* at 18; and (vii) that the Court apply equitable tolling and toll the statute of limitations as of the date of the filing of Plaintiff's motion, *id.* at 19.

Defendants argue that conditional certification should be denied because Plaintiff's application is based on hearsay and fails to provide specifics of the duties of Defendants' employees or how much actual time was spent on non-tip producing work.  Dkt. No. 39 at 9–12. Defendants also argue that named plaintiffs are not similarly situated to the proposed collective. *Id.* at 12–15.  Defendants further argue that there should be no reference to the 80/20 rule in the proposed notice because Plaintiffs have provided no specific times spent on non-tip producing work, and the three-year notice period is inappropriate because Defendants did not willfully violate FLSA.  *Id.* at 15–16.  Finally, Defendants argue that sending notice by email and text

message is inappropriate, a reminder letter is not justified, and equitable tolling is not justified. *Id.* at 16–18.

The Court takes the issues in turn.

## I.     Motion for Conditional Certification

The standards by which to measure Plaintiff's motion are well-trodden.  Section 216(b) of the FLSA permits an employee aggrieved by a violation of the statute to maintain an action against any employer "for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  It follows that district courts have the authority to certify a FLSA lawsuit for collective action on a conditional basis.  "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 70 n.1 (2013) (characterizing Section 216(b) as a "joinder process").  "[D]istrict courts have discretion, in appropriate cases, to implement [Section 216(b)] by facilitating notice to potential plaintiffs."  *Hoffman-La Roche*, 493 U.S. at 169; *see Ruiz v. Truffa Pizzeria & Wine Room Corp.*, 2021 WL 568249, at *3 (S.D.N.Y. Feb. 15, 2021).

The Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010).  In the first step, a court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs."  *Id.* at 555.  The plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Id.* (quoting

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  Mere "unsupported

assertions" are not sufficient to pass the first step, but it "should remain a low standard of proof

because the purpose of the first stage is to merely to determine whether similarly situated

plaintiffs do in fact exist." *Id.* (emphasis and internal quotation marks omitted) (quoting *Dybach

v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).  If the Court determines that

"similarly situated" employees exist, it will conditionally certify the collective and order that

appropriate notice be given to members of the FLSA collective to afford them the opportunity to

opt into the action.  *See Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644

(S.D.N.Y. 2010); *see also Lynch v. U.S. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)

("Once notice is accomplished, the action proceeds as a collective action throughout the

discovery process.").  At the second step, after discovery is completed, "the district court will, on

a fuller record, determine whether a so-called 'collective action' may go forward by determining

whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."

*Myers*, 624 F.3d at 555.  "The action may be 'decertified' if the record reveals that they are not,

and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*  The "similarly

situated" analysis is "quite distinct" from "the much higher threshold of demonstrating that

common questions of law and fact will 'predominate' for Rule 23 purposes in the eventual

action." *Id.* at 556.

Plaintiffs can meet their burden at stage one "by showing that 'there are other employees

who are similarly situated with respect to their job requirements and with regard to their pay

provisions.'" *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *1 (S.D.N.Y. May 7,

2014) (quoting *Myers*, 624 F.3d at 555).  Where the plaintiff puts forth evidence that her own

labor law rights were violated and that a representative number of other employees had their

rights violated, she has made a sufficient showing to satisfy her burden under *Myers*. *See, e.g.*, *Cheng v. Via Quadronno LLC*, 2021 WL 4319569, at *3 (S.D.N.Y. Sept. 23, 2021) (explaining that "[a] single affidavit from a named plaintiff is enough to make th[e] [*Myers*] showing"); *Hernandez v. NGM Mgmt. Grp. LLC*, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (holding that the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class"); *Wraga v. Marble Lite, Inc.*, 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006) ("Courts routinely grant such motions based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees."). Indeed, "[t]here is no requirement that there be an affidavit from another employee for an action to be conditionally certified and notice to be authorized. It is precisely to inform potentially similarly situated employees that their rights may have been violated and that there is a legal action they might join that FLSA permits conditional certification and the authorization of notice." *Han v. Madison Ave. Realties, LLC*, 2022 WL 2609003, at *3 (S.D.N.Y. July 8, 2022); *see Filho v. OTG Management, LLC*, 2021 WL 1191817, at *2 (S.D.N.Y. Mar. 30, 2021); *Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013).

However, "[w]hile plaintiff's burden at this stage is modest, it is not non-existent." *Khan v. Airport Mgmt. Servs. LLC*, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011). For example, "[c]ourts have declined to [grant conditional certification] where named plaintiffs present only conclusory allegations that similarly situated employees exist." *Huer Huang v. Shanghai City Corp*, 2020 WL 5849099, at *9 (S.D.N.Y. Oct. 1, 2020), *clarified on denial of reconsideration sub nom. Huang v. Shanghai City Corp*, 2020 WL 6136186 (S.D.N.Y. Oct. 19, 2020). In *Khan*, for example, the court refused to conditionally certify a collective where the primary evidence

submitted on behalf of plaintiff was his own declaration that he knew of others who were not

paid overtime because he had spoken to those employees.  *Id.* at *3.  The court noted that

plaintiff's assertion that others were similarly situated was contradicted, in some instances, by

the declarations of the persons plaintiff had identified and were conclusory.  *Id.* at *4.  Plaintiff

must include "some actual evidence" of a common practice by defendants.  *Reyes v. Nidaja LLC*,

2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015).  "Courts require this to avoid fishing

expeditions by plaintiffs without real evidence of a common practice and to avoid 'allegations of

a common plan or scheme, which are impossible for a court to test or for Defendants to attempt

to refute.'"  *Barron v. Casa Luis Corp.*, 2022 WL 2467595, at *3 (E.D.N.Y. Jan. 21, 2022)

(quoting *Huer Huang*, 2020 WL 5849099, at *10).

Defendants argue that Plaintiff has not met its modest burden.  Defendants argue that the

declarations of the three witnesses are impermissibly based on "personal observations and

hearsay," Dkt. No. 39 at 10, some of the declarants "worked less than a year" and some "never

worked at both The Bao and Uluh," *id.* at 5, and the allegations of violations of FLSA are

"unfounded," *id.* at 6.[2]  Defendants also note that the declarations are "virtually identical."  *Id.* at

11.  Those arguments are without merit.[3]

---

[2] Defendants also claim that the Court should not credit the declarations in support of the motion
for conditional certification because they are not notarized, Dkt. No. 39 at 10–11, but that
argument is without merit.  Under 28 U.S.C. § 1746, a declaration that is subscribed as true
under penalty of perjury and dated is of the same force and effect as a sworn affidavit.  28 U.S.C.
§ 1746.
[3] The cases Defendants cite in support of this argument are distinguishable.  In *Sanchez v. JMP
Ventures, L.L.C.*, 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014), the plaintiff had only been
employed for a total of seven months at two of the Defendants' three locations and yet sought
conditional certification for a three-year period.  *Id.* at *2 & n.1.  The court noted that while
plaintiff said he had observed and had conversations about a "common practice" at "all Harry's
Italian Restaurants since each restaurant's inception," plaintiff did not provide "*any* detail as to a
*single* such observation or conversation."  *Id.*  The court concluded that without such detail, it
could not determine the "appropriate scope of the proposed class and notice period" as

Plaintiff has offered evidence of a uniform practice engaged in by Defendants across the two integrated Restaurants that affected all Tipped Workers similarly and that, if proven, would violate the FLSA.  In particular, Plaintiff Mangahas has provided detailed testimony regarding a tip-sharing arrangement at both Restaurants that was identical.  She has named names of the managers involved—she was told by her manager/accountant Mei when she began her employment at the Restaurants that all positions received tips, Dkt. No. 38-4 ¶ 6, and names the managers who improperly received tips from the tip pool (Adu at both The Bao and Uluh and Jimmy at The Bao, *id.* ¶ 10–11), and of the expeditors who improperly received tips from the tip pool (Way and Wen at Uluh and Jimmy at The Bao, *id.* ¶¶ 16, 18).  She also provides a detailed description of the non-tipped work that she and other tipped employees were required to perform at Uluh and at The Bao for more than 20% of her time, *id.* ¶¶ 30–32, and has provided the names of six specific individuals who were required to perform similar non-tipped work for the same amount of time, *id.* ¶ 33.  The latter information is not based on speculation.  Mangahas details the basis for her personal knowledge—she was able to observe that the six employees performed the same or similar duties for the same amount of time because she "sometimes worked the same

---

"plaintiff's personal observations alone would only appear to cover seven months (split between two of the three restaurants) of the three-year period for which he seeks conditional certification."  *Id.*  Here, however, Plaintiff claims to have been employed by Defendants for the entire period that she seeks conditional certification and to have worked and had personal observations about all of the Restaurants at issue in the suit.

Further, unlike in *Reyes v. Nidaja, LLC*, 2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015), Plaintiff, in this action, identifies the "other employees" who were treated similarly "by name."  *Id.* at *2.  And, in *Fu v. Mee May Corp.*, 2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016), the plaintiff sought to represent all non-exempt persons employed by defendants, but only submitted proof that one category of such employees was treated similarly.  *Id.* at *3.  In this case, Plaintiff only seeks to represent Tipped Workers at the Restaurants, not all other employees, and has provided proof that all Tipped Workers are treated similarly.  *See* Dkt. Nos. 38-5 (declaration of Kalsang), 38-6 (declaration of Bin Zhu).

shifts as these individuals." *Id.*  Mangahas's testimony also supports that these practices occurred at both of the two Restaurants.  Not only does she offer evidence of the identical policies at both Restaurants, but Mei—the manager/accountant who told Mangahas that all positions received tips—was the account manager for both Restaurants and doled out the pay for both Restaurants.  *Id.* ¶ 37.  Plaintiff thus offers "actual evidence of a factual nexus between his own experience and the experiences of those he claims as similarly situated." *Murray v. City of New York, New York*, 2017 WL 3531552, at *6 (S.D.N.Y. Aug. 16, 2017) (internal quotation marks and citation omitted).

Mangahas's account is corroborated by the declarations under penalty of perjury of Kalsang and Bin Zhu.  Kalsang worked at The Bao for two to three years.  Dkt. No. 38-5 ¶ 2.  He declares that, to his knowledge, managers and soup dumpling cooks at The Bao received tips and expeditors also received tips, and he provides names of the managers.  *Id.* ¶¶ 8–9, 11, 13, 17.  He also details, in terms similar to that used by Mangahas, the non-tipped work that he was required to perform at The Bao, which accounted for more 20% of his work.  *Id.* ¶¶ 23–24.  And he names nine other individuals (including Mangahas) that he knows from his own personal observation were treated similarly.  *Id.* ¶ 25.  Bin Zhu has worked at Uluh for a year and a half.  Dkt. No. 38-6 at ¶ 2.  He testifies to the fact that at Uluh, managers, expeditors, and the dessert cooks all receive a portion of the tips, and he provides the names of the relevant individuals involved.  *Id.* ¶¶ 10–11, 14, 16–18, 20, 22.  He too was required to spend more than 20% of his time at work engaged in a non-tipped capacity and was required to perform similar (albeit not identical) work. *Id.* ¶¶ 27–28.  He names twelve individuals (including Mangahas) whom he knows from his own personal observation were required to perform the same or similar duties for the same amount of

time that he did.  *Id.* ¶ 29.  Bin Zhu's declaration is supported by an attached tip sheet that he

claims shows that managers, expeditors, and a dessert cook received tips.  *Id.* ¶¶ 8–9 & Ex. 1.

Tellingly, neither Kalsang nor Bin Zhu are listed among the employees whom Mangahas

knew from her personal observation spent more than 20% of their time on non-tipped work.

Similarly telling, while there are some names that overlap in the list of Tipped Workers subject

to the same illegal labor practices (*e.g.*, Mangahas is listed by all of the declarants), the lists are

not overlapping.

Defendants' argument that the declarations are based on hearsay or are conclusory thus is

without merit.  "[C]ourts regularly rely on . . . hearsay statements in determining the propriety of

sending notice in FLSA conditional collective action certifications."  *Martinenko v. 212*

*Steakhouse Inc.*, 2022 WL 1227140, at *3 (S.D.N.Y. Apr. 26, 2022).  In this case, however, the

three witnesses base their declarations on their personal knowledge.  Their statements are not

conclusory but contain details which can be tested in adversarial depositions.

Defendants' accusation that Plaintiff has submitted copycat declarants also is without

merit.  To be sure, there are similarities among the declarations.  Each of the declarants testifies

to the identical employment practices at their respective place of employ or, in the case of

Mangahas, at both Restaurants.  That is to be expected.  Plaintiffs claim that all Tipped Workers

were subject to the same unlawful labor practices.  But the declarations differ in other respects—

with respect to the names of the individuals involved, the support that is offered for the

declarations, and, in some instances, with respect to what work the declarant performed.  The

similarities among the declarations here do not entitle them to less weight.

Finally, the fact that Defendants dispute the allegations does not mean that other similarly

situated Tipped Workers should be deprived of Section 216(b) notice.  At the conditional

certification stage, "the Court ought not 'resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Martinez v. JVA Indus.*, 2021 WL 1263133, at *4 (S.D.N.Y. Apr. 6, 2021) (quoting *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018)).

## II.    References in the Notice to the 80/20 Rule

Once a court determines that a named plaintiff has satisfied his or her burden for initial certification of a collective action, the court may authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit. *Lynch*, 491 F. Supp. 2d at 367. The content of the notice is "left to the broad discretion of the trial court." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007). "When exercising [their] broad discretion to craft appropriate notices in individual cases, [d]istrict [c]ourts consider the overarching policies of the collective suit provisions." *Id.*

Defendants have a single objection to the language of the proposed mail notice. They contend that language regarding the "80/20" rule should be deleted because Plaintiff does not have a basis to pursue a claim pursuant to that rule as the "US. Department of Labor has stated[] that work that directly supports tip producing work is allowed so long as the work does not exceed 20 percent of the employee's hours worked during the workweek." Dkt. No. 39 at 15; *see also* 86 FR 60114.

The argument is without merit at this stage. The proposed notice describes the "claims" in the lawsuit, including that "Front of House Workers . . . perform an excessive amount of 'side work,' past 20% of their work time," Dkt. No. 38-9 at 2, and that "the Complaint alleges that . . . The Bao and Uluh Restaurant . . . required Front of House Workers to spend more than 20% of their time performing non-tip producing side work," *id.* at 4. Those statements are accurate, non-inflammatory descriptions of the allegations in the lawsuit. The proposed notice also states that

"Defendants deny any violation of the Fair Labor Standards Act ('FLSA') or any other law and maintain that they paid workers appropriately for all of the hours they worked." *Id.* at 3.  The proposed notice also states: "the Court expresses no opinion on the merits of this lawsuit." *Id.* at 6.  The proposed notice is fair and balanced and informs proposed members of the collective of their rights without reflecting any prejudgment by the Court as to the merits of the claims.  It thus is appropriate.

## III.    Three-Year Time Period for the Notice

Defendants argue that the notice period should be limited to the two-year period for non-willful violations because Plaintiffs have not made a sufficient preliminary showing that The Bao and Uluh willfully violated FLSA.  Dkt. No. 39 at 15–16.

"Courts uniformly apply the three-year time period for notice in the interests of reaching all similarly situated employees and on the theory that whether a violation is willful involves the merits and should not dictate who receives notice." *Han v. Madison Ave. Realties, LLC*, 2022 WL 2609003, at *5 (S.D.N.Y. July 8, 2022); *see Martinez*, 2021 WL 1263133, at *4; *Fasanelli*, 516 F. Supp. 2d at 323; *Vaicaitiene v. Partners in Care, Inc.*, 2005 WL 1593053, at *7 (S.D.N.Y. July 6, 2005).  "Specific challenges to the timeliness of the claims of certain 'opt-in' plaintiffs or the named [p]laintiff can be addressed after the completion of discovery during the second phase of the collective action certification process." *Fasanelli*, 516 F. Supp. 2d at 323; *see Martinez*, 2021 WL 1263133, at *5.  Defendants' argument thus is without merit.

There is some disagreement in the cases regarding the date from which the three years should be measured.  Some courts date the three-year period from the order conditionally certifying the action, *see Romero v. Flaum Appetizing Corp.*, 2009 WL 2591608, at *5 (S.D.N.Y. Aug. 17, 2009), while others date it from the filing of the action, *see Fasanelli*, 516 F. Supp. 2d at 323; *Marcial v. New Hudson Fam. Rest. Inc.*, 2019 WL 1900336, at *8 & n.14 (S.D.N.Y.

Apr. 29, 2019) (directing that notice be provided to potential collective action members working for defendants during the three years prior to the date of the filing of the action); *Mongiove*, 2016 WL 590460, at *6 (holding that notice should be sent to persons employed within three years of the date of the filing of the complaint because the timeliness of each plaintiff's action should be determined in a future proceeding).  Plaintiff asks that notice be sent to all Tipped Workers who worked at either of the Restaurants for the period beginning with the date that is three years earlier than the filing of the motion for conditional certification (*e.g.*, September 16, 2019).  That notice period is appropriate and is accepted.  *See Guan v. Long Island Business Inst., Inc.*, 2016 WL 4257549, at *5 (E.D.N.Y. Aug. 11, 2016) (authorizing notice to be keyed to the three-year period prior to the filing of the complaint, "with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date" and that the three-year period is "without prejudice to defendants' challenging particular opt-in parties in a motion for decertification" (citation omitted)).  Defendants will have the opportunity to challenge the timeliness of any particular opt-in plaintiff's claim at a later date after such plaintiff has filed a consent to join the action.

## IV.    Distribution of the Notice

Defendants object to distribution of the notice by email and text message.  Dkt. No. 39 at 16–17.  The method of dissemination of notice is within the discretion of the district court.

Without discounting the risk that distribution by email can result in the notice being "more broadly circulated than the parties intended," the Court agrees that "'given the reality of communications today,' email notification is more effective at notifying potential opt-in plaintiffs than mailed notice alone."  *Park v. FDM Group Inc.*, 2019 WL 2205715, at *6 (S.D.N.Y. 2019) (quoting *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017)); *see Knox*, 282 F. Supp. 3d at 667 ("Notice of class actions by email have now

become commonplace.").  Notice "should be reasonably designed to reach as many members of the collective action as possible."  *Huer Huang*, 2020 WL 5849099, at *16.

The courts in this District do not permit notice by text message as a matter of course. The courts will deny permission to serve notice by text, for example, where the employee population is stable and there is reasonable assurance that members of the collective can be reached by United States mail or by email.  *See, e.g.*, *Mikityuk v. Cision US Inc.*, 2021 WL 1750370, at *9 & n.1 (S.D.N.Y. May 4, 2021).  At the same time, however, courts will permit text message notice where there is rapid turnover in the employee base or where the members of the collective are likely to be transient such that whatever mail address the employer had in the past might not be effective to give the employee notice today.  *See, e.g.*, *Martinenko*, 2022 WL 1227140, at *7.

Plaintiff argues that text notice should be permitted because the "putative collective is comprised of hospitality employees [who] tend to be more transient than other industries," Dkt. No. 42 at 7, and that as a result of the Covid-19 pandemic, the workers were made more transient "given long shutdowns," *id.* at 7 n.3.  Those arguments are convincing.  Text notice will be permitted.

## V.     Reminder Notice

Defendants object to the Court authorizing a reminder notice.  Dkt. No. 39 at 17.  They express the concern that the request for a reminder notice is premature before it is determined how many members of the putative collective respond to the initial notice and that it could be interpreted as encouragement to join the lawsuit.  *Id.*

"[T]he weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA."  *Meo v. Lane Bryant, Inc.*, 2019 WL 5157024, at *13 (E.D.N.Y. 2019) (citing cases); *see also Diaz*, 340 F. Supp. 3d at

387 ("[C]ourts in this district have permitted sending a reminder notice in similar cases of class certification."); *Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *11 (S.D.N.Y. May 23, 2016) (authorizing reminder notice).  "[T]he modern-day volume of information to which even ordinary citizens are subject makes such a notice helpful and mitigates the risk that it will be perceived as badgering."  *Mikityuk v. Cision US Inc.*, 2021 WL 1750370, at *11 (S.D.N.Y. May 4, 2021), *reconsideration denied sub nom. Anatoliy Mikityuk, Mitch Tallungan, & Michael Esquibel, individually & on behalf of all others similarly situated, Plaintiffs, v. CISION US INC. & Cision Ltd., Defendants.*, 2021 WL 2413340 (S.D.N.Y. June 11, 2021).

Defendants' arguments to the contrary are unpersuasive.  There is no basis for the concern that the request is premature.  Reminder notices may only be sent to members of the putative class who have not already opted to join in as a result of the initial notice.  If it turns out that all members of the putative class join in response to the initial notice, then it may very well be that the Court's authorization of a reminder notice will prove to have been unnecessary.  But it will not be improper.  As to Defendants' legitimate concern that a reminder notice could be viewed as hectoring or expressing encouragement to join the lawsuit to a person who otherwise might have been reluctant, that concern is easily addressed.  The Court requires Plaintiff to include after the penultimate sentence in the reminder notice language that "the Court neither encourages nor discourages participation in the lawsuit."  *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (noting that some courts have required such language but denying request to send reminder notice without prejudice).

## VI.    Equitable Tolling

Plaintiff's application for an order equitably tolling the time for a putative member of the FLSA collective to file a consent or to join this action is denied.

"[T]he language of FLSA and the Supreme Court's holdings do not allow for a rule of equitable tolling similar to *American Pipe* [*& Constr. Co. v. Utah*, 414 U.S. 538 (1974)] whereby the statute stops running merely upon the filing of a FLSA claim or a motion for conditional certification." *Huer Huang*, 2020 WL 5849099, at *14.  Instead, any such application must be based upon "individualized facts showing that a plaintiff whose claims accrued prior to the statute of limitations has been diligent in pursuing those claims." *Id.*; *see also Han v. Madison Ave. Realties, LLC*, 2022 WL 2609003, at *5 (S.D.N.Y. July 8, 2022)

\*      \*      \*

The Court has considered the remainder of Plaintiff's requests including that its proposed form of notice be approved, that notice be translated into Chinese, that consents be sent to Plaintiffs' counsel, and that Defendants be ordered to provide to Plaintiff a computer-readable list of the full names, last known residence addresses, telephone numbers, last known email addresses, dates of employment, and locations worked for all members of the collective. Defendants do not object to those requests except as otherwise stated above.  The Court requires Plaintiff's counsel to file a consent with the Clerk of the Court by the conclusion of the business day immediately following its receipt by Plaintiff's counsel.  The consent form should be revised to reflect that the Plaintiff is consenting to counsel's representation and right to make decisions with respect to the FLSA claims in the litigation and will be bound by any adjudication of those FLSA claims and that the firm "may" petition for attorney's fees in the amount of the greater of the lodestar of one-third of the gross settlement or judgment amount (not that it "will" so petition the Court).  By separate order, the Court will disseminate to the parties a markup of the mail notice that corrects for certain typographical errors.  The Court otherwise approves Plaintiff's requests.

**CONCLUSION**

The motion for conditional certification of this case as a collective action under FLSA is granted, Plaintiff's counsel is authorized to disseminate notice in accordance with the Opinion and Order, and Defendants shall produce to Plaintiff's counsel the contact information required by this Opinion and Order within fourteen (14) days.

The Clerk of Court is respectfully directed to close Dkt. No. 36.

SO ORDERED.

Dated: October 18, 2022
     New York, New York

                                           LEWIS J. LIMAN
                            United States District Judge