# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESSY MANGAHAS, and PITHCHAYA WOHLFAHRT, on behalf of themselves and all others similarly situated,**<br><br>        **Plaintiff,**<br><br>   -against-<br><br>**EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO, individually, and RICHARD LAM, individually,**<br><br>        **Defendants.** | **No: 1:22-cv-04150 (LJL)** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine K. Bonilla
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs, opt in plaintiffs and the Putative Class*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   BACKGROUND .......................................................................................................... 3

   A.    Procedural History.............................................................................................. 3

   B.    The Restaurants' Ownership and Management ................................................... 4

   C.    Defendants Paid Tipped Workers Using the Tip Credit at Both Restaurants Without
   Regard to Individual Considerations ......................................................................... 7

      i.    Tipped Workers are paid using the "tip credit" under New York Law........................... 8

      ii.    Defendants failed to give proper written notice of the tip credit at the Restaurants. ... 9

   D.    Defendants Paid Overtime Compensation Pursuant to the Tip Credit............................ 9

   E.    Defendants Distributed a Portion of Tips to Workers Who Are Not Entitled to Receive
   Tips .......................................................................................................... 10

      i.    Managers at both Restaurants received tips .................................................. 10

      ii.    Traditionally non-tipped employees received tips at both restaurants. ..................... 12

   F.    Defendants Required Tipped Workers to Perform Non-Tipped Side Work for More Than
   20% or 2 Hours of Their Shift ................................................................................ 14

   G.    Defendants Unlawfully Deducted Breakage, Wrong Orders, and Walk Outs from
   Tipped Workers Compensation ................................................................................ 16

   H.    Defendants Failed to Reimburse Tipped Workers for Purchasing Uniforms. ............... 16

   I.    Defendants Used the Same Templates for Their Purported NYLL § 195(a)(1) and (3)
   Wage Notices and Wage Statements. ......................................................................... 17

III.    ARGUMENT ............................................................................................... 19

   A.    Plaintiffs Satisfy The Requirements For Class Certification Under Fed. R. Civ. P. 23. 19

   B.    Plaintiffs Satisfy the Requirements of Rule 23(a) ............................................................ 20

     i.    Numerosity – Rule 23(a)(1) ............................................................................. 20

     ii.    Commonality – Rule 23(a)(2) .......................................................................... 21

     iii.    Typicality – Rule 23(a)(3) ............................................................................. 23

     iv.    The Class Members are ascertainable. ........................................................ 24

     Adequacy – Rule 23(a)(4) ................................................................................... 25

   D.    Class Certification Under Rule 23(b)(3) Is Appropriate ................................................ 26

     i.    Common question of fact and law predominate ............................................. 27

     ii.    A class action is superior to other methods of adjudication ...................... 28

   E.    Plaintiffs' Counsel Should Be Appointed As Class Counsel ....................................... 28

   F.    The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B) ..................... 29

IV.    Conclusion .......................................................................................................... 30

# TABLE OF AUTHORITIES

*Cases*

*Amgen Inc. v. Conn. Ret. Plans & Tr. Fund,* 568 U.S. 455, 133 S.Ct. 1184,
185 L.Ed.2d 308 (2013) ........................................................................... 19

*Andrade-Barteldes* v. *Valencia*, No. 23 Civ. 00495, 2023 WL 8372989
(S.D.N.Y. Dec. 4, 2023) (Liman, J.) .............................................. 19, 21, 29

*Ayinola v. Lajaunie*, 855 F. App'x 30 (2d Cir. 2021) .................................... 10

*Barenboim, v. Starbucks Corp.*, 21 N.Y.3d 460, 473, 972 N.Y.S.2d 191,
995 N.E.2d 153 (2013) ............................................................................. 11

*Bayne v. NAPW, Inc*., No. 18 Civ. 3591, 2021 WL 4822426 (E.D.N.Y. Aug. 10, 2021) ...... 19, 24

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010) ............................................... 26

*Cabrera, v. Canela*, 412 F. Supp. 3d 167 (E.D.N.Y. 2019) ............................. 7

*Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37 (N.D.N.Y. 2021) ................ 27

*Chen v. Hunan Manor Enterprise, Inc.*, No. 17 Civ. 802, 2023 WL 5574854
(S.D.N.Y. Aug. 29, 2023) ........................................................................ 4, 7

*Chichinadze v. BG Bar Inc*., 517 F. Supp. 3d 240 (S.D.N.Y. 2021) ................ 7, 9

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ............. 9
*Cuzco v. F&J Steaks 37th St. LLC,* No. 13 Civ. 1859, 2014 WL 2210615
(S.D.N.Y. May 28, 2014) .......................................................................... 7

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011) ..................... 21

*He v. Home on 8th Corp.,* No. 09 Civ. 5630, 2014 WL 3974670 (S.D.N.Y. Aug. 13, 2014) ........ 7

*Huang v. Shanghai City Corp.*, 2022 WL 1468450 (S.D.N.Y. May 10, 2022) ..................... 21, 25

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) ..................... 23

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013)...................... 27

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............... 28

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ....................... 21

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) ................... 19

iv

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) .................................................... 20

*Leong v. Laundry Depot, LLC*, No. 19 Civ. 03545, 2023 WL 6226415
(E.D.N.Y. Sept. 26, 2023).......................................................................................... 30

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ...................................................... 23

*Martinenko v. 212 Steakhouse, Inc.*, No. 22CV518JLRRWL, 2023 WL 2919766
(S.D.N.Y. Apr. 12, 2023)....................................................................................... 23, 24

*Murphy v. Lajaunie*, No.. 13 Civ. 6503 (RJS), 2016 WL 1192689
(S.D.N.Y. Mar. 22, 2016) ............................................................................................ 10

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).................................................................. 28
*Orellana v. One If By Land Rest. LLC*, No. 18 Civ. 7865 (VSB), 2020 WL 5768433
(S.D.N.Y. Sept. 27, 2020)..................................................................................... 21, 23

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)................................................................. 23

*Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. Aug. 12, 2015)............... 14

*Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014)............................... 23, 24, 26

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) .................... passim

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) .................................................. 23, 26

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196
(2d Cir. 2008).............................................................................................................. 19

*Trinidad v. Breakaway Courier Sys.*, 05 Civ. 4116 (RWS), 2007 WL 103073
(S.D.N.Y. Jan. 12, 2007).............................................................................................. 28

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ........................................................ 27

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018)........................................................ 19, 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................................... 21

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011) ............................ 23

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ......................................... passim

*Zivkovic v. Laura Christy, LLC*, No. 17 Civ. 553, 2022 WL 1697991
(S.D.N.Y. May 26, 2022)............................................................................................... 7

*Statutes*

12 N.Y.C.R.R. § 146-1.3 ........................................................................................... 7

12 N.Y.C.R.R. § 146-2.2 ........................................................................................... 7

12 N.Y.C.R.R. § 146-2.7 ........................................................................................... 16

12 N.Y.C.R.R. § 146-2.9 ........................................................................................... 14

12 N.Y.C.R.R. Part 146 § 146-1.8 ........................................................................... 16

NYLL § 195 ............................................................................................................... 17

NYLL § 652 ............................................................................................................... 7

NYLL 196-d ............................................................................................................... 10

*Rules*

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 23

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 25

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 26

Fed. R. Civ. P. 23(g) ................................................................................................. 28

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 20

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 29

## EXHIBITS

Exhibit 1.........................................................................................Excerpts from Rule 30(b)(6) Deposition

Exhibit 2.................................................................................................Uluh Tip Sheet Exemplars

Exhibit 3................................................................................................Restaurant Website Excerpts

Exhibit 4................................................................................Excerpts Eight Oranges NY Liquor App.

Exhibit 5................................................................................Excerpts Chibaola NY Liquor App.

Exhibit 6.............................................................................................Bao Text Collection

Exhibit 7.............................................................................................Uluh Text Collection

Exhibit 8.............................................................................................Mangahas Paystubs

Exhibit 9..............................................................................Excerpts from Jessy Mangahas Deposition

Exhibit 10.................................................................................Excerpts from Wen Bin Zhu Deposition

Exhibit 11..................................................................................Excerpts from Jason Cedeno Deposition

Exhibit 12..................................................................................Excerpts from Keno Dacusin Deposition

Exhibit 13..............................................................................................Text Message

Exhibit 14..........................................................................................FRE 1006 Summary Chart

Exhibit 15...........................................................................................Handbooks

Exhibit 16..........................................................................................Mangahas Payroll Sampling

Exhibit 17..........................................................................................Wohlfahrt Payroll Sampling

Exhibit 18...........................................................................................Opt In Payroll Sampling

Exhibit 19..............................................................................Class Member Payroll Sampling

Exhibit 20.................................................................................Excerpts from Defendants RFP Responses

Exhibit 21.........................................................................................Wage notice forms

Exhibit 22........................................................................................Bao Tip Sheet Exemplars

Exhibit 23.................................................................Excerpts from Thinley Kalsang Deposition

Exhibit 24................................................................ Excerpts from Upendra Shahi Deposition.

Exhibit 25.............................................................Excerpts from Pithchaya Wohlfahrt Deposition

Exhibit 26................................................................Excerpts from Jose Roman Deposition

Exhibit 27.................................................................................Schedules with Side Work

Exhibit 28................................................................................Text Message re Side Work

Exhibit 29.................................................................................................Uluh Policies

Exhibit 30..............................................................................Proposed Rule 23 Class Notice

Name Plaintiffs Jessy Mangahas and Pitchaya Wohlfahrt (together with the opt-in Plaintiffs "Plaintiffs") submit this memorandum in support of their motion for class certification of their New York Labor Law ("NYLL") pursuant to Fed. R. Civ. P. 23.

## I.    PRELIMINARY STATEMENT

NYLL restaurant cases are well suited for class treatment because they involve a large number of class members that were all injured by common courses of misconduct. Plaintiffs' claims arise from the unlawful policies that were universally applied to front of house tipped workers such as servers, runners, and bussers who work or have worked at The Bao and Uluh in New York City (collectively, "Tipped Workers").

The Defendants in this case improperly paid Tipped Workers less than the minimum wage because they applied a "tip credit" to their wages. Defendants, however, did so without complying with long-standing NYLL prerequisites necessary to properly claim the tip credit. These prerequisites are not mere technicalities; they were enacted to prevent the precise type of wage theft that occurred at The Bao and Uluh. Specifically, Defendants did not give Tipped Workers proper written notice of the tip credit, required Tipped Workers to share their hard-earned tips with management and historically tip-ineligible positions, and required them to perform excessive amounts of non-tipped side work while paying them at a sub-minimum wage. Additionally, Defendants broke the law by making Tipped Workers pay for customer walk outs, breakage, wrong orders, and uniforms without reimbursement. These policies, along with any defenses, do not depend upon individual Tipped Workers' circumstances – they apply equally to all.

This action satisfies all requirements for class certification under Rule 23(a) – numerosity; commonality; typicality; and adequacy of representation – for the same reasons that courts regularly certify wage and hour cases as class actions. **Numerosity** is satisfied based on there being

at least 129 class members between the Restaurants (see *infra* section III(B)(i)). **Commonality** is satisfied because Plaintiffs' claims arise from Defendants' pay practices that also applied to putative Class Members (see infra section III(B)(ii)). **Typicality** and **Adequacy** are satisfied because the Named Plaintiffs are tipped workers who worked at both The Bao and Uluh and who were subject to the complained-of wage theft, have vigorously pursued their claims to date, and are represented by highly experienced counsel (see *infra* section III(B)(iii)). Thus, Plaintiffs will represent the interest of the Class.

This case also satisfies the requirements for certification under Rule 23(b)(3): predominance of common questions of law or fact and that a class action is superior to other means of adjudication. In sum, the underlying questions of whether Class Members were paid properly "can be addressed by class-wide proof regarding the defendant's payroll records, financial records, and testimony." *See, e.g.*, *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 75 (S.D.N.Y. 2018).

For the reasons set forth below, Plaintiffs respectfully request that the Court:

(1) certify a class defined as all "Tipped Workers such as servers, runners, and bussers who worked at The Bao and Uluh from October 5, 2015 through the present;"

(2) Appoint Jessy Mangahas and Pithchaya Wohlfahrt as Class Representatives;

(3) Appoint Fitapelli & Schaffer, LLP as Class Counsel;

(4) To the extent not already provided in payroll records, order Defendants to produce to Plaintiffs a Microsoft Excel list, in electronic format, of all the NYLL Class members' names, last known address, email addresses, all known telephone numbers, dates of employment, and job titles; and

(5) Authorize the mailing, emailing, and text message of the proposed Notice to all class members and order its posting at the restaurants in a conspicuous location for employees.

## II.    BACKGROUND

### A.  <u>Procedural History</u>

This case was filed on May 20, 2022 bringing the above referenced wage and hour claims against Defendants. ECF No. 1. The Bao is located at 13 St. Mark Place, New York, New York 10003 and Uluh is located at 152 2nd Avenue., New York, New York 10003 (together the "Restaurants").[1] *See* ECF No. 1 ¶ 1. On August 18, 2022, Mangahas filed an Amended Complaint (ECF No. 25). On October 18, 2022, the Court denied Defendants' Motion to Dismiss, and granted Plaintiff's Motion for § 216(b) notice pursuant to the FLSA. ECF Nos. 43; 44. To date, a total of 27 Plaintiffs have joined this case (inclusive of Named Plaintiffs) (hereinafter "Plaintiffs"). Declaration of Armando A. Ortiz ("Ortiz Decl.") ¶ 10.[2] The Court granted leave to file the operative Second Amended Complaint, which was filed on May 4, 2023. ECF No. 84 ("SAC"). The SAC also alleges individual retaliation claims on behalf of Mangahas and Wohlfahrt. *See* SAC ¶¶36-43, 44-49.

Defendants have produced thus far payroll records for the Plaintiffs and 104 putative class members. Ortiz Decl. ¶ 18. Richard Lam, the Restaurants' owner, sat as the Rule 30(b)(6) corporate representative for both The Bao and Uluh on November 27, 2023. The Parties selected a total of 14 Plaintiffs (named and opt-in) to sit for their depositions – to date, the two Named Plaintiffs and 6 opt-ins have sat for their deposition.[3] *Id.* ¶ 15. Depositions will continue through the end of fact discovery. *Id.* ¶¶ 15-17.

---

[1] The corporate and individual Defendants are referred to collectively as "Defendants."

[2] Unless otherwise notated, all exhibits are attached to the Ortiz Declaration.

[3] There remain additional depositions to be taken as depositions shall be completed by January 26, 2024.

B. **The Restaurants' Ownership and Management**

The Restaurants operated as a single integrated enterprise and thus, it is appropriate to review them and ultimately certify them together. *See, e.g.*, *Chen v. Hunan Manor Enterprise, Inc.*, No. 17 Civ. 802, 2023 WL 5574854, at *6 (S.D.N.Y. Aug. 29, 2023). To analyze whether entities operate as a single integrated enterprise, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control . . . [a]lthough no single factor is required or determinative, control of the labor relations is the central concern." *Id.* (finding single integrated enterprise applicable to FLSA/NYLL claims after bench trial).

The Restaurants operated as a single integrated enterprise. Specifically, both Restaurants are owned by Defendant Richard Lam and are operated via the corporate entities Eight Oranges, Inc. d/b/a The Bao and Chibaola, Inc. d/b/a Uluh. **Ex. 1**, 30(b)(6) Tr. at 14:13-21; 53:18-54:7. Mr. Lam opened The Bao in approximately 2014 or 2015. *Id.* at 18:6-9. Although he does not recall specifically when Uluh opened (he said either 2017 or 2018), records confirm its opening in November 2018. *Id.* at 17:2-10; **Ex. 2**, Uluh Tip Sheet Exemplars (earliest tip sheet produced is for November 25, 2018). Uluh is located only two blocks away from The Bao. **Ex. 1**, Lam Depo. Tr. at 58:11-15. Both Restaurants offer Chinese cuisine to customers. *Id.* at 26:8-12; 28:22-24; **Ex. 3**, Restaurant Websites at 5-8, 14-20. Both Restaurants open to customers at 11:30 a.m. **Ex. 1**, Lam Depo. Tr. at 20:6-13 (The Bao); 191:11-17 (Uluh). Both Restaurants close service between 10:00pm to 10:30pm/11:00pm, depending whether it is a weeknight versus a Friday or Saturday. *Id.* at 21:24-22:11 (The Bao); 191:18-23 (Uluh).

The Restaurants share common management and office space. Mr. Lam and his wife, Defendant Joanne Hong Bao, are listed as principals for both Restaurants under the New York

4

Liquor License applications. **Ex. 4**, Eight Oranges NY Liquor License App. at 2 (The Bao listing Ms. Hong Bao), **Ex. 5**, Chibaola NY Liquor License App. at 3 (Uluh listing Mr. Lam). Both individuals confirmed they would manage the Restaurants as principals in these applications. **Ex. 4** at 10; **Ex. 5** at 14. Since Uluh's opening in 2018, the office in Uluh's basement operates as a central office for both Restaurants. **Ex. 1**, Lam Depo. Tr. at 54:18-55:19. Specifically, this office maintains employment records for the Restaurants, and is repeatedly referenced as being the source from which many employment practices and documents originate. *Id.* at 55:20-25; 64:12-22; 65:9-12; 68:22;. 75:22-23 (referencing "the office"). "The office" likewise has equal access to both Restaurants' business email addresses. *Id.* at 66:6-22. The basement in Uluh also houses some supplies for The Bao. *Id*. at 58:16-59:2. Mr. Lam testified that both Restaurants use the same accountant for payroll and determining what requirements are necessary to comply with employment laws. *Id.* at 71:22-73:11.

Though Mr. Lam denies being involved in "day to day" operations at the Restaurants, evidence shows he is involved in upper management at both locations. Mr. Lam is a participant in group chats for the Restaurants. *See* **Ex. 6**, Bao Chat Sample; **Ex. 7**, Uluh Chat Sample; **Ex. 13**, Employee Share Text Messages. As can be seen from these chats, Mr. Lam is involved in scheduling, offering his thoughts on staff scheduling, forwarding employment handbooks, directing work assignments, and identifying issues at the Restaurants. *Id.*

Tipped Workers were at times shared between locations. For instance, Ms. Mangahas worked at both restaurants simultaneously from approximately December 2021 through May or June 2023 after first working at The Bao. *See* SAC ¶¶ 135; **Ex. 8**, Mangahas Paystubs. She testified that Mei, the bookkeeper at both Restaurants, allowed her to also work at Uluh. **Ex. 9**, Mangahas Tr. at 18:1-7. Another Plaintiff, Mr. Zhu, likewise testified he was sent to The Bao for a day

without receiving training or filling out any paperwork. **Ex. 10,** Zhu Tr. at 47:4-11. *See also* **Ex. 11**, Cedeno Tr. 51:17- 52:8 (Cedeno previously worked at Uluh and then began working at The Bao). Another Plaintiff, Mr. Dacusin also testified that he often was sent to fetch supplies from Uluh's basement during work shifts at The Bao. **Ex. 12**, Dacusin Tr. at 55:5-21. Text messages show Mr. Lam giving instructions to management as to scheduling at both Restaurants, and the ability to shift employees from one restaurant to another. **Ex. 13**. Based on an analysis of the produced payroll, this is the breakdown between putative class members' work locations, with the right column being the number of people with records from each restaurant so far produced:

| Breakdown Between Locations | |
| --- | --- |
| The Bao | 50 |
| Uluh | 65 |
| Records of Employment at Both Restaurants | 14 |

**Ex. 14**, FRE 1006 Summary Chart.

The Restaurants share common employment policies. For instance, there is evidence of an identical handbook used between The Bao and Uluh. *See* **Ex. 15**, Uluh & Bao Handbooks. Mr. Lam, while denying these were final versions, was unable to determine what the ultimate Uluh handbook appeared as, and admits that The Bao version served as a template for Uluh. **Ex. 1**, Lam Depo. Tr. at 63:16-65:16. As outlined in more detail below, both Restaurants shared similar tip pooling structures and used the identical template forms for items such as wage notices and wage statements.

**C.**  **Defendants Paid Tipped Workers Using the Tip Credit at Both Restaurants Without Regard to Individual Considerations**

The NYLL requires employers to pay non-exempt employees minimum wages and overtime wages. NYLL § 652(1). The NYLL allows employers to pay tipped employees in the food service industry a lower minimum wage by taking a "tip credit." *See* 12 N.Y.C.R.R. *§* 146-1.3. However, a tip credit may only be taken when "certain preconditions are met.'" *Cuzco v. F&J Steaks 37th St. LLC,* No. 13 Civ. 1859, 2014 WL 2210615, at *5 (S.D.N.Y. May 28, 2014); *see also Zivkovic v. Laura Christy, LLC*, No. 17 Civ. 553, 2022 WL 1697991, at *6 (S.D.N.Y. May 26, 2022). These preconditions "are strictly construed and must be satisfied even if the employee received tips at least equivalent to the minimum wage." *He v. Home on 8th Corp.,* No. 09 Civ. 5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014); *see also Chen*, 2023 WL 5574854, at *6; *Cabrera, v. Canela*, 412 F. Supp. 3d 167, 182 (E.D.N.Y. 2019).

First,  employers **must** provide each employee prior to the start of employment with written notice of the tip credit as outlined in 12 N.Y.C.R.R. § 146-2.2 ("Hospitality Wage Order"):

> **written notice** of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

12 N.Y.C.R.R. § 146-2.2 (emphasis added); *see, e.g., Chen*, 2023 WL 5574854, at *6; *Chichinadze v. BG Bar Inc*., 517 F. Supp. 3d 240, 256 (S.D.N.Y. 2021) (analyzing whether tip credit notice was properly given). Moreover, employers must allow employees to receive all tips they receive pursuant to a valid tip-pooling arrangement. *See Cabrera*, 412 F. Supp. 3d 167 at 182 ("Moreover, a violation of N.Y. Lab. Law 196-d, which prohibits an employer from retaining tips or gratuities received by employees, renders an employer ineligible to receive a tip credit under the NYLL").

7

NYLL § 196-d also allows aggrieved employees to seek the value of tips retained or improperly distributed.

### i. *Tipped Workers are paid using the "tip credit" under New York Law.*

Defendants admit that Tipped Workers such as servers, bussers, and runners, as a group are paid using a Tip Credit (*i.e.* – an hourly rate less than the full minimum wage rate) at both The Bao and Uluh. **Ex. 1**, 30(b)(6) Tr. at 115:6-117:23.

Payroll records for Plaintiffs and putative Class Members at both Restaurants confirm this, as the full minimum wage in 2022, for instance, was $15.00 per hour. Here, Named Plaintiffs received a $10.00 cash rate due to getting paid via the tip credit:

CHIBAOLA INC.
JESSY MARIE ESTRADA MANGAHAS    S.S. ■■■■■    *Jessy*
Week Ending: 05/22/2022

| | | | | |
|---|---|---|---|---|
| Regular Wages + Bonus + Tips | $99.00 | + $15.00 | + $379.20 | Regular Wage Rate | $10.00 |
| Overtime Wages = Total Wages | $0.00 | = $493.20 | | Tip Credit Rate | $5.00 |
| Gross Wages (Check/Cash) | $493.20 | | $0.00 | Overtime Wage Rate | $17.50 |
| Taxes Withheld (Check/Cash*) | $112.99 | | | Overtime Wage/Tip Rate | $22.50 |
| Meals | $0.00 | | $0.00 | | |
| Net Wages (Check/Cash) | $380.21 | | $0.00 | Regular/Spread of Hrs | 9.90 / 1.00 |
| *Represents 0.00% FICA and Medicare Taxes | | | $0.00 | Overtime Hours | 0.00 |
| | | | | Total Work Hours | 9.90 |

EIGHT ORANGES INC.
JESSY MARIE ESTRADA MANGAHAS    S.S ■■■■    *Jessy*
Week Ending: 05/01/2022

| | | | | |
|---|---|---|---|---|
| Regular Wages + Bonus + Tips | $309.20 | + $45.00 | + $600.00 | Regular Wage Rate | $10.00 |
| Overtime Wages = Total Wages | $0.00 | = $954.20 | | Tip Credit Rate | $5.00 |
| Gross Wages (Check/Cash) | $954.20 | | $0.00 | Overtime Wage Rate | $17.50 |
| Taxes Withheld (Check/Cash*) | $73.00 | | | Overtime Wage/Tip Rate | $22.50 |
| Meals | $0.00 | | $0.00 | | |
| Net Wages (Check/Cash) | $881.20 | | $0.00 | Regular/Spread of Hrs | 30.92 / 3.00 |
| *Represents 0.00% FICA and Medicare Taxes | | | $0.00 | Overtime Hours | 0.00 |
| | | | | Total Work Hours | 30.92 |

CHIBAOLA INC.
PITHCHAYA SIRISAWAD    S.S ■■■■    *Pithchaya*
Week Ending: 05/22/2022

| | | | | |
|---|---|---|---|---|
| Regular Wages + Bonus + Tips | $400.00 | + $60.00 | + $1,687.16 | Regular Wage Rate | $10.00 |
| Overtime Wages = Total Wages | $70.53 | = $2,217.69 | | Tip Credit Rate | $5.00 |
| Gross Wages (Check/Cash) | $2,217.69 | | $0.00 | Overtime Wage Rate | $17.50 |
| Taxes Withheld (Check/Cash*) | $169.66 | | | Overtime Wage/Tip Rate | $22.50 |
| Meals | $0.00 | | $0.00 | | |
| Net Wages (Check/Cash) | $2,048.03 | | $0.00 | Regular/Spread of Hrs | 40.00 / 4.00 |
| *Represents 0.00% FICA and Medicare Taxes | | | $0.00 | Overtime Hours | 4.03 |
| | | | | Total Work Hours | 44.03 |

8

**Ex. 16**, Mangahas Payroll Sampling; **Ex. 17**, Wohlfahrt Payroll Sampling.[4] The same can be seen by a review of Opt-in Plaintiff and putative class members records. *See* **Ex. 18** (Opt-In Plaintiff exemplars); **Ex. 19** (putative Class Member exemplars).

> ii.    ***Defendants failed to give proper written notice of the tip credit at the Restaurants.***

Defendants did not give proper written notice of the tip credit to Tipped Workers universally. Restaurant posters identified at the Restaurants (**Ex. 20**, RFP Responses No. 5, **Ex. 1**, 30(b)(6) Tr. at 140:16-12) are insufficient to meet this written notice as a whole. *See, e.g.*, *Chichinadze*, 517 F. Supp. 3d at 256 ("posters as described are insufficient to meet the notice requirements of either the FLSA or the NYLL"); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 289 (S.D.N.Y. 2011).

The written wage notices attached as **Exhibit 21** constitute the notice templates used at the Restaurants. **Ex. 1**, 30(b)(6) Tr. at 124:11-13 (discussing these notices), 125:9-11; 125:22-126:4; 126:12-127:3. Mr. Lam made clear these were the only notice forms given to Tipped Workers. *Id.* at 127:14-128:3. These are the only notices provided in discovery. Ortiz Decl. ¶ 19, 45. Whether or not these notices are sufficient for written notice of the tip credit is not at issue today, but, it is clear that the ultimate decision will impact all Tipped Workers equally.

### D. Defendants Paid Overtime Compensation Pursuant to the Tip Credit.

There is not a dispute that when Tipped Workers worked over 40 hours in a week, they would receive overtime pursuant to the Tip Credit. *See, e.g.*, **Ex. 16** at 5 (paying $17.50 for OT hours). Plaintiffs' overtime claim is based upon the ultimate question of whether or not the Tip Credit can be utilized. If yes, then all Tipped Workers were paid properly for overtime. If the tip

---

[4] Pithchaya Sirisawad is Named Plaintiff Pithchaya Wohlfarth's. **Ex. 25**, Wohlfahrt Tr. at 8:11-20.

credit cannot be utilized, they all were systematically underpaid because they should have received 1.5 times the *full* minimum wage (in the above example, $22.50 per OT hour as opposed to $17.50).

### E.  Defendants Distributed a Portion of Tips to Workers Who Are Not Entitled to Receive Tips

The Second Circuit has made clear that NYLL 196-d "bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service - i.e., employees who are not 'busboy[s] or similar employee[s]' and employees who are managers or 'agent[s]' of the employer." *Shahriar v. Smith & Wollensky Rest. Grp., Inc*., 659 F.3d 234, 241 (2d Cir. 2011); *see also Murphy v. Lajaunie*, No.. 13 Civ. 6503 (RJS), 2016 WL 1192689, at *3 (S.D.N.Y. Mar. 22, 2016), appeal dismissed and remanded sub nom. *Ayinola v. Lajaunie*, 855 F. App'x 30 (2d Cir. 2021) (on other grounds).

Here, at both Restaurants, Tipped Workers received tips via a tip pooling system without regard to the individuals scheduled for that shift. *See* **Ex. 1,** Lam Depo. 142:2-13; 148:7-149:4 (the Bao); 154:15-24 (Uluh). The tip pooling arrangement was created by "the Office." *Id.* 155:25-156:5. The tip pool touched everyone who was working on a given shift, as the inclusion of any purported improper personnel by simple math reduces the tips received by others. *See* **Ex. 22**, The Bao Tip Sheet Exemplars; **Ex. 2**, Uluh Tip Sheet Exemplars.[5]

#### i.    Managers at both Restaurants received tips

New York courts have held that an employee loses the ability to participate in a tip pool, for the purposes of NYLL § 196-d, if he has "meaningful authority," even if he does not have "final authority." *Murphy*, 2016 WL 1192689, at *3 (denying the defendants' motion for summary judgment as to whether the restaurants' maître d's were eligible to receive tips) (citing *Barenboim*,

---

[5] Tipped workers at the Restaurants went by various nicknames which appear to be the names used on day to day items like tip sheets. For instance, Ms. Wohlfahrt's nickname was "Nam." Another Plaintiff, Wen Bin Zhu, went by the nickname "Ben."

*v. Starbucks Corp.*, 21 N.Y.3d 460, 473, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013)). "An employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of [NYLL] section 196–d and, consequently, is not eligible to participate in a tip pool." *Barenboim*, 21 N.Y.3d at 472. The *Barenboim* Court found that meaningful authority includes the ability to discipline subordinates, assist in performance evaluations, participate in the hiring or firing process and input in the creation of employee work schedules. 21 N.Y.3d at 473.

Managers were in the tip pool at both The Bao and Uluh. Instead of using the word "management" or "manager," Mr. Lam outlined the duties of "Team Leaders" who have undoubtedly managerial authority. Specifically, Mr. Lam testified that at The Bao the highest position was that of a Team Leader. *See* **Ex. 1**, 30(b)(6) Tr. at 77:11-19. Mr. Lam does not recall when the Team Leader position was created specifically, but, it was in effect prior to Uluh's opening. *Id.* at 84:11-85:3. Team Leaders' responsibilities at both Restaurants included, but were not limited to hiring, firing, discipling, scheduling, promoting, determining tip percentages for employees, handling the tip sheet, accessing company email accounts, and creating policies and the handbook. *See id.* at 64:13-16: 67:23-68:6 (ordered the manager or team leader to create a handbook for Uluh); 65:21- 66:19 (Team leader and managers have access to the email used for official restaurant business); 75:7-21 (Team Leaders are responsible for scheduling, tip sheet, customer complaints, discipline, hire, fire); 77:3-4; (Team Leaders close the register); 79:15-81:16; (Uluh's Team Leaders similarly hired, fired, disciplined, promote, scheduling, tip sheets, and close the register); 56:25-57:4 (assigning work duties). Mr. Lam admits they received tips, and normally, a larger share of said tips. *Id.* at 86:15-87:11.

11

Examples of such managers/team leaders at The Bao include Upendra Shahi. Jimmy l/n/u, Lu Mei Zhang a/k/a Mei, and Shaokong He a/ka Stefan during various time frames. *Id.* at 82:5-15, 96:23-97:5; **Ex.9**, Mangahas Tr. at 29:18-21, 31:7-10; **Ex. 12**, Dacusin Tr. at 12:13-15, 37:8-18; **Ex. 11**, Cedeno Tr. at 23:16-24:3; **Ex. 23**, Kalsang Tr. at 10:9-21; **Ex. 24**, Shahi Tr. at 14:3-11.

The managers at Uluh were Yunrui Du ("Du" or "Adu") and Lu Mei Zhang ("Mei"). *See* **Ex. 1**, 30(b)(6) Tr. at 203:15-19, 87:12-20 (Du was the Manager); **Ex. 11**, Cedeno Tr. at 23:2-5; **Ex. 25**, Wohlfahrt Tr. at 13:7-12; **Ex. 26**, Roman Tr. at 12:7-15; **Ex. 10**, Zhu Tr. at 9:13-20. They too received tips. **Ex. 1**, 30(b)(6) Tr. at 89:10-90:7.

### ii.    *Traditionally non-tipped employees received tips at both restaurants.*

Expeditors and Food Packers were also included in the Restaurants' tip pool. Several Tipped Workers testified that these positions are independent positions and identified the individual employees that worked in these positions. *See* **Ex. 9**, Mangahas Tr. at 26:10-16, 67:6-7; **Ex. 11**, Cedeno Tr. at 41:20-23, 52:9-18; **Ex. 23**, Kalsang Tr. at 28:10-18; **Ex. 24**, Shahi Tr. at 92:9-23**; Ex. 25**, Wohlfahrt Tr. at 39:8-24**; Ex. 10**, Zhu Tr. at 30:3-12, 45:3-8. Moreover, some of Uluh's tip sheets included an individual section dedicated only to food packers. *See* **Ex. 2**. Specifically, at The Bao Jimmy l/n/u and Jay l/n/u, Wen l/n/u, and Wayne l/n/u worked as expeditors and food packers at various times. *See* **Ex. 9,** Mangahas Tr. at 33:19-23, 54:9-12.; **Ex. 12**, Dacusin Tr. at 37:14-24, 40:20-41:14; **Ex. 23**, Kalsang Tr. at 28:10-18; **Ex. 24**, Shahi Tr. 100: 15-22. Meanwhile at Uluh, Wen l/n/u, Wayne l/n/u, Lucas Y, Mark l/n/u*,* and Javi l/n/u, worked as expeditors and Chen l/n/u, Fei l/n/u, Wen l/n/u, and Javi l/n/u worked as food packers at various times. *See* **Ex. 24**, Shahi Tr. at 4:4-15; **Ex. 25**, Wohlfahrt Tr. at 39:8-40:21, 42:8-43:18; **Ex. 26**, Roman Tr. at 33:20-34:20. Some of these identified persons appear on tip sheets, although under different job titles. *See* **Ex. 2**.

Plaintiffs testify consistently that expeditors were responsible for plating food and garnishing dishes in the kitchen areas, did not take orders from customers, did not bus customers' plates or glasses, did not prepare tables for customers, and remained primarily in the kitchen away from customer view during their shifts, and did not run food. *See* **Ex. 9**, Mangahas Tr. at 26:10-16, 55:4-10; **Ex. 11**, Cedeno Tr. at 44:23- 45:25 (expeditor remained in the kitchen); **Ex. 23**, Kalsang Tr. at 29:6-20 (confirming kitchen location for expeditor); **Ex. 25**, Wohlfahrt Tr. at 41:13-21, 43:24-44:2; **Ex. 10**, Zhu Tr. at 44:3 - 45:16. Similarly, food packers were located in the kitchen away from customers' view and did not interact with them. **Ex. 26**, Roman Tr. at 34:18-20; **Ex. 25**, Wohlfahrt Tr. at 43:19-44:2; **Ex. 12**, Dacusin Tr. at 37:14-25, 40:20-41:14; **Ex. 9**, Mangahas Tr. at 21:9-16. Indeed, the procedure at The Bao was that there was only one food packer taking care of delivery orders. *See* **Ex. 24**, Shahi at 103:8-20. Thereafter, a server, runner, or host brought out the to-go orders directly to the customers. *See* **Ex. 11**, Cedeno Tr. at 59:10-24.

Certain cooks at the Bao also received tips. Specifically, Mr. Lam admits that after the pandemic The Bao hired one person to specifically steam bao buns it sells to customers and that this position received tips. *See* **Ex. 1**, 30(b)(6) Tr. at 146:4-147:4. These cooks are known by the nicknames "Auntie" or Mo l/n/u and are located where servers pick up customer dishes. *Id.* at 146:21-25; 147:5-9; **Ex. 11**, Cedeno Tr. at 57:5-9. Plaintiffs describe these cooks as having little to no customer interaction. **Ex. 11**, Cedeno Tr. at 44, 57:10-12, 59-25-60:4: **Ex. 23**, Kalsang Tr. at 29:6-20; **Ex. 24**, Shahi Tr. at 100:3-7; **Ex. 9**, Mangahas Tr. at 55:4-10. Ultimately, the fact finder will determine what customer interaction, if any, this cook has, and whether the position is tip-eligible.

Uluh also allows a cook who works in the "dessert room" to receive tips. **Ex. 1**, 30(b)(6) Tr. at 32:23-34:21. Individuals working in this dessert cook role had the last name "Ren" and

another had the first name "Lam." *Id.* at 37:6-7; 44:23-45:6; **Ex. 25**, Wohlfahrt Tr. at 68:11-15. This role has existed since Uluh's opening. **Ex. 1**, 30(b)(6) Tr. at 39:16-25. This dessert cook received a share of tips at Uluh. *Id*. at 45:7-12. Plaintiffs describe this cook as having little to no customer interaction. *See* **Ex. 9**, Mangahas Tr. at 55:23-56:10; **Ex. 11**, Cedeno Tr. at 44:19-22; **Ex. 10**, Zhu Tr. at 43:24-44:11,38:24-39:9.

### F.  <u>Defendants Required Tipped Workers to Perform Non-Tipped Side Work for More Than 20% or 2 Hours of Their Shift</u>

New York law is clear – excessive side work eliminates the use of the tip credit for that day. Specifically, if a tipped employee engages in non-tipped side work for **more than two hours and/or 20 percent** of their time at work, whichever is less, the employer must pay the tipped employee the full minimum wage **for the employee's entire workday**. *See* 12 N.Y.C.R.R. § 146-2.9 (emphasis added); *see, e.g.*, *Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 470-71 (S.D.N.Y. Aug. 12, 2015).

Notably, Mr. Lam described himself as unqualified to attest to the specifics of side work at the Restaurants. **Ex. 1,** 30(b)(6) Tr. at 186:2-21. Defendants likewise kept **zero** records regarding how long Tipped Workers spent performing side work and did not study how long Tipped Workers performed side work. *See* **Ex. 1,** 30(b)(6) Tr. at 198:15-24; 206:22- 207:17. Plaintiffs who were asked specifically to estimate their time performing side work recalled substantial time doing so. *See* **Ex. 9,** Mangahas Tr. 84:3-8 (estimating around 2 hours daily); **Ex. 24**, Shahi Tr. 112:13-22 (estimating 2 to 3 hours daily); **Ex. 23,** Kalsang Tr. 44:25-45:5 (at least 2 hours); **Ex. 12,** Dacusin Tr. at 51:9-52:21 (estimating opening side work at 30 minutes and running side work between 2 to 3 hours); **Ex. 10,** Zhu Tr. at 45:17-47:2.

Tipped Workers were required to perform side work prior to, during, and at the end of their shifts at both Restaurants. As admitted by Defendants, side work was not based on the individual

or the specific day but was based upon ultimately business needs on a given day. *See* **Ex. 1**, 30(b)(6) Tr. at 190:3-191:9. Opening Tipped Workers generally arrived about 30 to 45 minutes before the opening time for both Restaurants, though opening side work could take up to 1 hour. *See* **Ex. 25**, Wohlfahrt Tr. at 44:13:19**; Ex.** 9, Mangahas Tr. at 83:13-19; **Ex. 12**, Dacusin Tr. at 51:9-18: **Ex. 10**, Zhu Tr. at 45:17-46:8 (attesting to 1 hour). Opening side work during this time generally consisted of: (1) wiping down the floors, (2) refilling chopsticks, napkins, glasses, and plates, (3) cleaning the restrooms, (4) setting up the chairs, (5) setting up the tables, (6) fixing and cleaning the flowers on each table, (7) shoveling snow, (8) spraying outside with water and bleach, (9) cleaning the occasional vandalism, and (10) filling up the water bottles and pitchers. *See* **Ex. 9**, Mangahas Tr. at 80:24-82:18; **Ex. 11**, Cedeno Tr. at 16:10-20; **Ex. 23**, Kalsang Tr. at 50:6-17. Also, as a result of the COVID-19 pandemic, The Bao used outdoor seating which caused Tipped Workers to set up for outdoor dining every morning and deep cleaned the area. *See* **Ex. 9**, Mangahas Tr. at 81:22-82; **Ex. 12**, Dacusin 45:5-12, 47:1-16 (deep clean the outdoor area due to homelessness). Uluh similarly has an outdoor space that requires daily set up and cleaning. **Ex. 10**, Zhu Tr. at 18:16-19. Directives from Defendants confirm similar opening side work duties. *See* **Ex. 7** at 11; **Ex. 27**, Schedules with Side Work; **Ex. 28**, Text Messages Collective

During the shift, Tipped Workers were required to engage in on-going side work, such as: (1) scraping the kitchen floor, (2) cleaning the windows inside and outside, (3) throwing out the garbage, (4) loading and unloading the dishwasher, (5) making champagne milk teas and lemonade, (6) cleaning the bar area, (7) cleaning green beans, and (8) moving the sofas around and cleaning its cushions. *See* **Ex. 9**, Mangahas Tr. at 80:24-82:18; **Ex. 11**, Cedeno Tr. at 16:24-17:2; **Ex. 23**, Kalsang Tr. at 50:6-17; **Ex. 12,** Dacusin Tr. 55:5-21 (running side work was about 2- 3 hours a day and picking up supplies at Uluh took place 4-5 times a week, a few times a day which

lasted around 30 minutes); **Ex. 26**, Roman Tr. at 24:23-25:9; **Ex. 10**, Zhu Tr. at 45:17-46:8. As Ms. Wohlfahrt stated, "[a]nd even when it's not the busy hour, we have to find something to do . . . we have to look after the cleanliness, clean up the shelf, and then clean up the floor if it looks dirty." **Ex. 25**, Wohlfahrt Tr. at 44:22-45:7. Tipped Workers were also assigned to clean bathrooms during their shifts. **Ex. 27**. A recent job guideline for Uluh confirms such ongoing side work assignments, even mandating bussers to help the kitchen with food prep. *See* **Ex. 29**, Uluh Policies.

Tipped Workers were required to perform closing side work duties including but not limited to, (1) restocking for the morning shift, (2) sweeping and mopping the floor, (3) decorating the restaurant for holidays, (4) cleaning the couches, (5) cleaning the restroom, and (6) refilling the soups. *See* **Ex. 11**, Cedeno Tr. at 16:12-20 & 19:16-20:6; **Ex. 24**, Shahi Tr. at 122:6-123:11.

### G. <u>Defendants Unlawfully Deducted Breakage, Wrong Orders, and Walk Outs from Tipped Workers Compensation</u>

The Hospitality Wage Order prohibits deductions from wages "except for credits authorized in this Part and deductions authorized or required by law, such as for social security and income taxes." 12 N.Y.C.R.R. § 146-2.7. Examples of such improper deductions include deductions for "spoilage or breakage" and "non-payment by a customer." *Id.* Here, Plaintiffs allege a common policy that Defendants charged Tipped Workers for inputting wrong orders, customer walk outs, and breakage of flatware. *See* SAC ¶ 26; *see also* **Ex. 10**, Zhu Tr. at 25:18-24 (there were penalties for incorrect placed orders); **Ex. 9**, Mangahas Tr. at 66:21-67:2 (charge for breakage of plates, cups, and glasses); *id.* at 68:5-18 (the Restaurants make you pay when you make a mistake, and you pay the same day).

### H. <u>Defendants Failed to Reimburse Tipped Workers for Purchasing Uniforms.</u>

The Hospitality Wage Order requires that "when an employee purchases a required uniform, he or she **shall be reimbursed by the employer** for the total cost of the uniform no later

than the next payday."12 N.Y.C.R.R. Part 146 § 146-1.8(a). Here, Defendants maintained a policy and practice whereby they required Plaintiffs and Tipped Workers to pay out of pocket between $10 to $20 per uniform received. **Ex. 1**, 30(b)(6) Tr. at 211:3-212:25; 213:11-23. This policy applies equally to Tipped Workers at Both Restaurants. *Id.* at 213:25-214:19. This is confirmed by Plaintiffs who were asked about uniform charges. *See* **Ex. 25**, Wohlfahrt Tr. at 46:19-47:5; **Ex. 9**, Mangahas Tr. at 75:22-25; **Ex. 12**, Dacusin Tr. at 60:14-23; **Ex. 11**, Cedeno Tr. at 49:9-50:4; **Ex. 23**, Kalsang Tr. at 21:5-15; **Ex. 24**, Shahi Tr. at 114:23-25. Defendants state that these were in actuality "deposits" and would be returned upon the return of the uniforms. *See* **Ex. 1**, 30(b)(6) Tr. at 213:25-214:19. Yet, at least some Plaintiffs testify that any offer of deposit was not communicated (**Ex. 25**, Wohlfahrt Tr. at 46:19-47:24; **Ex. 11**, Cedeno Tr. at 50:16-21) and even when uniforms were returned, no deposits were provided. **Ex. 9**, Mangahas Tr. at 102:2-11; **Ex. 23**, Kalsang Tr. at 21:16-23:10.

> **I.  Defendants Used the Same Templates for Their Purported NYLL § 195(a)(1) and (3) Wage Notices and Wage Statements.**

Plaintiffs' NYLL § 195(a)(1) claims are distinct from their allegations that Defendants did not give proper written notice of the tip credit (and thus, are liable for minimum and overtime wages). NYLL § 195(a)(1) mandates time of hire notices be given to employees with specific information regarding their rates of pay, methods of pay, pay dates, and any allowances taken against one's regular rate of pay. As discussed in section II(C)(ii) *supra*, Defendants used the same template NYLL § 195(a)(1) forms for WTPA notice purposes at both Restaurants. A cursory review of these forms shows their common deficiencies. *See* **Ex. 21**. Thus, an ultimate analysis as to whether these notices fully comply with NYLL § 195 does not require an extensive analysis of differing forms given to different people.

Likewise, wage statements must comply with NYLL § 195(3), which requires written statements accompanying every payment of wages listing, among other items, "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." NYLL § 195(3). Moreover, for all non-exempt workers, "the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." *Id.*

There are common questions of fact applicable to all Tipped Workers regarding the pay stubs given before and after this lawsuit. Specifically, Defendants used the same accountant for both Restaurants, who utilized the same general paystub format for both Restaurants. **Ex. 1**, 30(b)(6) Tr. at 219:13-221:4. Tipped Workers received paper paychecks, to which paystubs like those in **Exhibit 8** were attached. **Ex. 1**, 30(b)(6) Tr. at 215:11-218:12. Thus, there is no question these are paystubs received by Tipped Workers at both Restaurants.

Defendants' internal payroll records consist of punch in/out cards with a different paystub stapled to the time card. *See* **Exs. 16-18** (payroll records). As can be seen from comparing **Exs. 16-18** with **Ex. 8**, there is more information relating to hours worked and rates on pay on **Exs. 16-18**. However, Plaintiffs state that they simply signed these internal payroll records in order to receive their paychecks, and did not receive copies of same prior to this lawsuit, while Defendants dispute this. *Compare* **Ex. 9**, Mangahas Tr. at 42:23-45:11; **Ex. 24**, Shahi Tr. at 126:7-13; **Ex. 10**, Zhu Tr. at 26:11- 28:4; **Ex. 11**, Cedeno Tr. at 26:20- 27:25; **Ex. 23**, Kalsang Tr. at 12:13-22, *with* **Ex. 1**, 30(b)(6) Tr. at 216:3-217:20. Ultimately, at merits, this issue will be decided definitively. But, for the Court's purposes today, there is no dispute the paystubs at the Restaurants were based

on identical form templates that were adjusted given a Tipped Workers' personal information and weekly hours worked and wages received.

### III.    ARGUMENT

####     A.    <u>Plaintiffs Satisfy The Requirements For Class Certification Under Fed. R. Civ. P. 23</u>

Rule 23 provides that certification is appropriate where, as here, the NYLL Class or subclasses satisfy the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). While the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Vargas v. Howard*, 324 F.R.D. 319, 324 (S.D.N.Y. 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)); *see also Bayne v. NAPW, Inc.*, No. 18 Civ. 3591, 2021 WL 4822426, at *5 (E.D.N.Y. Aug. 10, 2021), *report and recommendation adopted*, No. 18 Civ. 3591, 2021 WL 4820603 (E.D.N.Y. Oct. 15, 2021) ("Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage") (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Fund,* 568 U.S. 455, 465–66, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013).

"The Court has an independent duty to determine that the requirements of Rule 23 are met." *Andrade-Barteldes* v. *Valencia*, No. 23 Civ. 00495, 2023 WL 8372989, at *3 (S.D.N.Y. Dec. 4, 2023) (Liman, J.). Plaintiffs bear "the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence." *Teamsters Local 445*, 546 F.3d at 202. Nonetheless, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction." *Vargas*, 324 F.R.D. at 324. Accordingly, "it seems beyond peradventure that the Second Circuit's

general preference is for granting rather than denying class certification." *Id.* (citations omitted).

"Courts have wide discretion in determining whether to certify a class, and where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Vargas*, 324 F.R.D. at 324 (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-203 (S.D.N.Y. 2006).

  **B.** <u>**Plaintiffs Satisfy the Requirements of Rule 23(a)**</u>

  In order to meet their burden under Rule 23(a), Plaintiffs must show that:

(1) The class is so numerous that joinder of all members is impracticable ("Numerosity");

(2) There are questions of law or fact common to the class ("Commonality");

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class ("Typicality"); and

(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). Plaintiffs meet each of these elements.

  i.  ***Numerosity – Rule 23(a)(1)***

  Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed where a putative class has 40 or more members. *Shahriar*, 659 F.3d at 252 (citation omitted). Based on the summery payroll production, there are well over 40 putative class members who worked either at The Bao or Uluh based on likely incomplete records to date, specifically, with 50 persons having worked at The Bao, 65 persons having worked at Uluh, and 14 persons having worked at both Restaurants. *See* **Ex. 14**, FRE 1006 Summary Chart. Thus, even if this Court were to consider each restaurant a separate sub-class, each such sub-class easily meets numerosity. *Shahriar*, 659 F.3d at 252.

  Going beyond mere numbers, judicial economy would be greatly conserved by avoiding over 100 individual suits challenging common policies outlined herein. *See Andrade-Barteldes*,

2023 WL 8372989, at *3 (". . . the inquiry does not end with simple tabulation of numbers . . ."). Moreover, these putative class members are working class restaurant workers, not sophisticated litigants, who could or would have the resources to bring individual suits. *Id.* (considering financial resources of class members). All in all, the number of putative class members, along with their resources and backgrounds, ensure that joinder of all members is impracticable.

### ii.    *Commonality – Rule 23(a)(2)*

Rule 23(a)(2)'s commonality requirement is met if a common question of fact or law can "generate common answers apt to drive the resolution of the litigation." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). As this Court previously put it:

> What matters to class certification is not the raising of common questions . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.

*Huang v. Shanghai City Corp.*, 2022 WL 1468450, at *5 (S.D.N.Y. May 10, 2022) (Liman, J.)

"In FLSA and NYLL wage claims, courts in this district focus on whether the employer had company-wide wage policies that injured the proposed class." *Orellana v. One If By Land Rest. LLC*, No. 18 Civ. 7865 (VSB), 2020 WL 5768433, at *6 (S.D.N.Y. Sept. 27, 2020). "In fact, claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011). In sum, "in wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Andrade-Barteldes*, 2023 WL 8372989, at *3.

Here, Plaintiffs have demonstrated the existence of "Company-wide wage policies" that injured them and putative Class Members in virtually the same ways. Specifically, all putative Class Members' underlying wage claims are dependent upon determining whether Defendants are and were able to claim a "tip credit" towards their wages.  This common legal question hinges on common answers to the questions of:

- Do the notices used by Defendants, created by their joint accountant, satisfy written notice pursuant to the NYLL and Hospitality Wage Order?

- Do "Team Leader/Managers" undisputed managerial duties disqualify them for inclusion in the tip pools at the Restaurants?

- Are there in fact independent expeditors and food packers at the Restaurants, and if so, do they have sufficient customer interaction to receive tips?

- Does the dumpling cook at the Bao have sufficient customer interaction to receive tips?

- Does the dessert room cook at Uluh have sufficient customer interaction to receive tips?

- Are Tipped Workers made to perform excessive amounts of side work?

- Did the Restaurants charge Tipped Workers for uniforms without reimbursement?

- Are the Restaurants' template-based wage notices and wage statements compliant under the NYLL?

Ultimately, common answers will answer these common questions. For instance, if the dumpling cook has insufficient customer interaction to receive tips, this answer will address all Tipped Workers' claims in one fell swoop. Likewise, should team leaders/managers indeed be tip-ineligible, again, this answer is common for all Tipped Workers. And, of course, if the template forms used at both Restaurants are deemed to be insufficient, ultimately, this is the answer for all as a group. This is why courts routinely find commonality in similar restaurant cases where company-wide policies are at issue. *See, e.g., Shahriar*, 659 F.3d at 252 (commonality satisfied where plaintiffs established that restaurant workers were subject to the same policies); *Orellana*,

2020 WL 5768433, at *6 (the court found commonality for claims for unlawful use of tip credit, spread of hour, time shaving, and improper wage notices and statements); *Zivkovic*, 329 F.R.D. at 66, 69-70; *Martinenko v. 212 Steakhouse, Inc.*, No. 22  Civ. 518, 2023 WL 2919766, at *6 (S.D.N.Y. Apr. 12, 2023), *report and recommendation adopted*, No. 22 Civ. 00518, 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023); *Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114, 124 (S.D.N.Y. 2014). Though "there may be factual differences, such as the number of days or hours worked and each individual's regular rate of pay, [it] does not defeat commonality given that there is at least one issue common to the class." *Martinenko*, 2023 WL 2919766 at *6; *see also Zivkovic*, 329 F.R.D. at 70. Accordingly, Plaintiffs have established that commonality.

### iii.    Typicality – Rule 23(a)(3)

Typicality "is satisfied when each class member's claim arises from the same course of events, meaning each class member makes similar legal arguments to prove the defendant's liability." *Vargas*, 324 F.R.D. at 326 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) and citing to *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (*quoting Marisol A.*, 126 F.3d at 377). However, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("[D]ifferences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled, but do not defeat typicality

23

for Rule 23 purposes."). "As long as plaintiffs assert . . . that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Schear*, 297 F.R.D. at 124.

Here, Named Plaintiffs' claims are typical of the putative Class Members' claims at both The Bao and Uluh. As recognized by the Second Circuit in *Shahriar* when analyzing typicality in a restaurant case alleged tip-ineligible positions: "[I]if certain individuals who are tip-ineligible employees are found to have been included inappropriately in the tip pool, such a determination would affect every plaintiff and would result in everybody else getting something more." 659 F.3d at 252. That is exactly the case here with Plaintiffs' tip-ineligible theory. Moreover, there is sufficient evidence before the Court to show that Defendants relied upon common wage notice forms as purported notice of the tip credit, they utilized common lists of side work assignable to Tipped Workers, and applied uniform deduction and uniform cost policies across the board. In sum, each Class Members' claims arise from the same course of events and policies at issue, and each Class Member would make similar legal arguments to prove liability. *See, e.g.*, *Martinenko*, 2023 WL 2919766, at *7 (typicality satisfied where named plaintiff was a front-of-house employee subject to the alleged improper employment practices regarding the tip credit, overtime, and failure to provide proper wage notices and statements); *Zivkovic*, 329 F.R.D. at 71 (finding typicality where "members of the putative subclasses were subject to the same policies regarding tip credit, overtime . . . wage notices and statements").

### iv.    The Class Members are ascertainable.

Although implied, the Second Circuit requires that membership of the class be "objectively ascertainable." *See, e.g., Bayne v. NAPW, Inc*., No. 18 Civ. 3591, 2021 WL 4822426, at *3 (E.D.N.Y. Aug. 10, 2021) report and recommendation adopted, No. 18 Civ. 3591, 2021 WL

4820603 (E.D.N.Y. Oct. 15, 2021). Here, the Class Members are easily ascertainable because the payroll records clearly show what Tipped Workers are paid a cash rate under the full minimum wage and for what relevant time periods. *See* **Exs. 16-18**. Likewise, the payroll records differentiate between workers at The Bao and at Uluh. *Id*. That is sufficient objective criteria to ultimately determine who is eligible for membership in the Class. *See, e.g., Zivkovic*, 329 F.R.D. at 77 ("In employment matters . . . a class is ascertainable where its members can be determined using objective documentation, such as Defendants' employment records.").

## C.  Adequacy – Rule 23(a)(4)

The final requirement of Rule 23(a)(4)—whether the representative parties will fairly and adequately protect the interests of the class—is also satisfied here. Adequacy of representation is evaluated by looking at the qualifications of Plaintiffs' counsel and the interests of the named plaintiffs. *See Huang*, 2022 WL 1468450, at *6. As this Court stated, "[t]wo factors generally inform the inquiry of whether a named class representative is adequate under Rule 23: (1) absence of conflict and (2) assurance of vigorous prosecution." *Id.* Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253.

Here, as discussed above, Ms. Mangahas and Ms. Wohlfahrt have the same interests and have suffered the same injuries as the putative NYLL Class as former Tipped Workers subject to the same practices relating to improper notice, improper tip pooling, excessive side work, unlawful deductions, unlawful uniform charges, and improper wage notices and wage statements. Both Plaintiffs have recognized their fiduciary duty to the case and putative Class Members as they have participated in written discovery, are involved and attentive to the matter, and both have sat for their depositions last month. Ortiz Decl. ¶¶ 11-14. While Ms. Wohlfahrt only worked at Uluh, Ms.

Mangahas worked at both Restaurants during her employment, and thus, both groups of Tipped Workers have adequate representation. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.").

We anticipate Defendants may argue that the Named Plaintiffs cannot be adequate representatives because they also bring individual claims for retaliation (see SAC ¶¶ 148-151; 165-173). However, this just is not accurate. Nothing in Plaintiffs' individual retaliation claims would be "inconsistent with the proposed class's interests." *Zivkovic*, 329 F.R.D. at 72. For instance, in *Zivkovic*, the court dismissed the employer's claim that individual counterclaims against the named plaintiff would disqualify him as representative. 329 F.R.D. at 72. That Plaintiffs wish to prove retaliation after the lawsuit has zero bearing on "whether Defendants failed to comply with [the] tip credit . . . wage notice and statement requirements" to Class Members. *Id.* (collecting cases).

Plaintiffs have likewise chosen qualified class counsel to prosecute their claims. Fitapelli & Schaffer, LLP has been certified as class counsel in several dozens of cases inside and outside of the Second Circuit as FLSA and Rule 23 Class Counsel. *See* Ortiz Decl. ¶ 21.

### D.  Class Certification Under Rule 23(b)(3) Is Appropriate

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). "Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication." *Schear*, 297 F.R.D. at 125 (quoting Fed. R. Civ. P. 23(b)(3)).

######## i.    *Common question of fact and law predominate*

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 58 (N.D.N.Y. 2021) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)). Predominance exists "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013).

Predominance is met because the complained-of policies apply equally to Tipped Workers. For instance, in *Shahriar*, 659 F.3d at 253, the Second Circuit affirmed the finding of predominance where the tipped workers alleged an improper tip pool because "[i]f Plaintiffs success in showing that the expediters . . . and/or managers were not eligible to receive tips . . . then each of the class plaintiffs will likely prevail on his or her section 196-d claims, although . . . damages will vary." Moreover, like in *Zivkovic*, Defendants admit that both Restaurants used the same wage notice forms, used the same process for new hires as to advising them of the tip credit, and they used the same paystubs. 329 F.R.D. at 75 (outlining that tipped workers received the same hourly wages, the same hiring documents, the same pay stubs, the same wage notices, and participated in the same tip pools). Indeed, the Court may always use sub-classes to address any nominal differences between the claims at the Restaurants if it deems it necessary. *Id.* at 74. The *Zivkovic* Court summed it up perfectly with: "The question of whether class members were properly paid can be addressed by class-wide proof regarding the defendants' payroll records, financial records, and testimony." *Id.* at, 75–76. Predominance is met.

### ii.    *A class action is superior to other methods of adjudication*

Class certification of the NYLL claims will permit the resolution of more than 120 individual claims in a single forum, at one time, which will avoid numerous and repetitive lawsuits. When plaintiffs are "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical legal and factual issues can be adjudicated in unison. *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001). As in many hospitality wage and hour claims, "it is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation." *Zivkovic*, 329 F.R.D. at 76. Moreover, given that there are active retaliation claims against Defendants alleged in this case, it is not outside the realm of possibility that Class Members would be concerned about retaliation if they were to bring individual claims against Defendants. *Trinidad v. Breakaway Courier Sys.*, 05 Civ. 4116 (RWS), 2007 WL 103073, at *26 (S.D.N.Y. Jan. 12, 2007) ( "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable"). Since the proposed certification the NYLL Class will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," a class action is the superior method of resolving these common claims. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010); *see also Zivkovic*, 329 F.R.D. at 76.

### E.    Plaintiffs' Counsel Should Be Appointed As Class Counsel

Prior to appointing class counsel, Rule 23(g) directs the Court to consider:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Plaintiffs have retained Fitapelli & Schaffer, LLP, a law firm comprised of attorneys who are qualified and experienced in wage and hour class action litigation. *See* Ortiz Decl. ¶¶ 21-24. To date, F&S has vigorously prosecuted this case, and is prepared to and has the resources to take the case to trial. *Id.* 4-20. Thus, F&S respectfully submits they meet the Rule 23(g) requirements and seek appointment as Class counsel.

### F.  The Proposed Notices Satisfies The Requirements Of Rule 23(C)(2)(B)

Attached as **Exhibit 30** to the Ortiz Declaration is Plaintiffs' proposed class notice, which satisfies all the requirements of Rule 23(c)(2)(B) and is modeled after notices approved by courts in this district, though changed for the specifics of this case.

This notice is appropriate because it states in plain language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *See* **Ex. 30**; *Andrade-Barteldes*, 2023 WL 8372989, at *7.

Plaintiffs respectfully request permission to send this notice through the means authorized previously by this Court in its October 18, 2022 Order granting FLSA notice. *See* ECF No. 43 at 18-21 (granting translation to Chinese and notice via U.S. Mail, E-Mail, and Text Message to extend this information is in Defendants' possession). Plaintiffs also request that the notice be posted at the Restaurants in a conspicuous location. *See, e.g.*, *Leong v. Laundry Depot, LLC*, No.

29

19 Civ. 03545, 2023 WL 6226415, at *7 (E.D.N.Y. Sept. 26, 2023) (granting posting in addition to mailing as "is common in wage and hour cases").

### IV.    Conclusion

Defendants, in instituting the above policies, did not do so with *individual* Tipped Workers in mind. When creating and administering these policies, Defendants treated Tipped Workers as a group. Ms. Mangahas and Ms. Wohlfahrt simply seek permission to challenge these policies on a class basis in this case. Plaintiffs respectfully request that this Court grant their motion and certify the Class pursuant to Fed. R. Civ. P. 23 so that once and for all it can be determined whether the policies applicable to all Tipped Workers at The Bao and Uluh violated the NYLL.

Dated: December 7, 2023
New York, New York

Respectfully submitted,

/s/ Armando A. Ortiz
**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine K. Bonilla
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

Attorneys for Plaintiffs and putative Class Members

### CERTIFICATE OF BRIEF LENGTH CONFERRAL

I hereby certify that pursuant to the Court's Individual Rules of Practice, the Parties agreed that principal briefs in support of and in opposition to this Motion shall be 30 pages in length.

/s/ Armando A. Ortiz
Armando A. Ortiz