| | |
|---|---|
| JESSY MANGAHAS, and PITHCHAYA WOHLFAHRT, on behalf of themselves and all others similarly situated, | **Case No.: 1:22-cv-04150-LJL** |
| Plaintiffs, | |
| -against- | |
| EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO, individually, and RICHARD LAM, individually, | |
| Defendants. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

---

**WHITE & NG, LLC**
Jonathan Ng
Rolanzo R. White
190 Moore Street, Suite 204
Hackensack, New Jersey 07601
Telephone: (201) 968-5022

*Attorneys for Defendants*

## Table of Contents

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. BACKGROUND .............................................................................................................. 1

   a. Procedural History ................................................................................................... 1

   b. Defendants Are Not A Single Joint Employer .................................................................. 2

      i. Centralized Control of Labor Relations ...................................................................... 3

      ii. Common Management .............................................................................................. 4

      iii. Common Ownership or Financial Control .................................................................. 4

      iv. Restaurants As A Single Integrated Enterprise ........................................................... 5

      v. The Use of the Same Employees at Multiple locations ................................................. 11

      vi. The Transfer of Items Between Restaurants ............................................................... 12

      vii. Use of a Central Payroll Office ............................................................................... 12

      viii. Common Storage Space and Leases ........................................................................ 12

      ix. Distribution of Common Employee Guidelines and Procedures Across Different

      Businesses ................................................................................................................. 13

   c. Defendants Properly Applied the Tip Credit at The Bao and Uluh ................................. 14

   d. Defendants Properly Paid Overtime Compensation to Tipped Employees ...................... 16

   e. Defendants Properly Distributed Tips ............................................................................. 16

   f. Tipped Employees Spent Less Than 20% of Their Work Hours Performing Side Work 17

   g. Defendants Did Not Make Unlawful Deductions ........................................................... 18

h.    Plaintiffs Were Not Required to "Purchase" Uniforms ...................................................... 19

III.   ARGUMENT ................................................................................................................ 20

a.    Plaintiffs Fail to Satisfy the Requirements for Class Certification .................................. 20

b.    Plaintiffs Fail to Satisfy the Requirements of Fed. R. Civ. P. 23(a) ................................ 21

    i.    Numerosity – Rule 23(a)(1) ............................................................................... 21

    ii.    Commonality – Rule 23(a)(2) ............................................................................ 21

    iii.    Typicality – Rule 23(a)(3) ................................................................................. 23

    iv.    Adequacy – Rule 23(a)(4) .................................................................................. 24

c.    Class Certification is Inappropriate Under Rule 23(b)(3) .................................................. 25

d.    Class Membership Is Neither Typical Nor Ascertainable ................................................. 27

IV.   CONCLUSION ............................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193 (2d Cir. 2005) ..................................... 2, 3

Ayinola v. Lajaunie, 855 F. App'x 30 (2d Cir. 2021) .................................................. 16

*Bakalar v. Vavra*, 237 F.R.D. 59 (S.D.N.Y. 2006) ........................................................ 28

*Bayne v. NAPW, Inc.*, No. 18 Civ. 3591, 2021 WL 4822426 (E.D.N.Y. Aug. 10, 2021) ........... 20

Cabrera, v. Canela, 412 F. Supp. 3d 167 (E.D.N.Y. 2019) ..................................................... 14, 15

*Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37 (N.D.N.Y. 2021) ........................................... 26

*Chen v. Hunan Manor Enterprise, Inc.*, No. 17 Civ. 802, 2023 WL 5574854 (S.D.N.Y. Aug. 29,

2023) ............................................................................................................... 3, 14

Chichinadze v. BG Bar Inc., 517 F. Supp. 3d 240 (S.D.N.Y. 2021) .......................................... 14

Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235 (2d Cir. 1995) ............................................. 3

Cuzco v. F&J Steaks 37th St. LLC, No. 13 Civ. 1859, 2014 WL 2210615 (S.D.N.Y. May 28,

2014) ............................................................................................................... 14

*Friedman—Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150 (S.D.N.Y. 2010) ................. 28

He v. Home on 8th Corp., No. 09 Civ. 5630, 2014 WL 3974670 (S.D.N.Y. Aug. 13, 2014) ...... 14

*Huang v. Shanghai City Corp.*, No. 19-cv-7702 (LJL), 2022 U.S. Dist. LEXIS 84498 (S.D.N.Y.

May 10, 2022). .................................................................................................. 22, 24

*Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580 (S.D.N.Y. 2020) ............................... 2

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) .................................... 23

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y.

2002) ............................................................................................................... 28

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) ........................................ 26

Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363 (S.D.N.Y. 2014) .................................................. 2, 3

Marin v. APU Foods Corp., No. 17 Civ. 3224, 2018 U.S. Dist. LEXIS 31891, 2018 WL 1462236

    (E.D.N.Y. Feb. 26, 2018) ........................................................................................................ 5

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................................................. 23

Murphy v. Lajaunie, No.. 13 Civ. 6503 (RJS), 2016 WL 1192689 (S.D.N.Y. Mar. 22, 2016) ... 16

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000).............................................. 3

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ....................................................................... 23

*Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. Aug. 12, 2015)............... 17

*Scott v. ProClaim Am., Inc.*, No. 14-CV-6003 (DRH)(ARL), 2017 U.S. Dist. LEXIS 49543

    (E.D.N.Y. Mar. 31, 2017) ..................................................................................................... 3

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) .......... 16, 21, 24, 26

*Sobel v. Yeshiva Univ.*, 85 F.R.D. 322 (S.D.N.Y. 1980) .............................................................. 22

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ........................................................ 23

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) .............................................................. 26

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018)................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................................ 21

*Zivkovic v. Laura Christy, LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ............................................... 27

Zivkovic v. Laura Christy, LLC, No. 17 Civ. 553, 2022 WL 1697991 (S.D.N.Y. May 26, 2022)

    .............................................................................................................................................. 14

**STATUTES**

12 N.Y.C.R.R. § 146-1.3 ............................................................................................................. 14

12 N.Y.C.R.R. § 146-1.8(a)......................................................................................................... 19

12 N.Y.C.R.R. § 146-2.2 ......................................................................................................... 14, 15

12 N.Y.C.R.R. § 146-2.7 ........................................................................... 18

12 N.Y.C.R.R. § 146-2.9 ........................................................................... 17

NYLL § 652(1) ........................................................................................ 14

NYLL 196-d ............................................................................................. 16

**RULES**

Fed. R. Civ. P. 23(a)(1) ............................................................................ 21

Fed. R. Civ. P. 23(a)(2) ............................................................................ 21

Fed. R. Civ. P. 23(a)(3) ............................................................................ 23

Fed. R. Civ. P. 23(a)(4) ............................................................................ 24

Fed. R. Civ. P. 23(b)(3) ............................................................................ 25

**EXHIBITS**

Exhibit 1 – Deposition Transcript of Upendra Shahi

Exhibit 2 – Deposition Transcript of Wen Bin Zhu

Exhibit 3 – Deposition Transcript of Keno Dacusin

Exhibit 4 – Deposition Transcript of Rule 30(b)(6) Representative Richard Lam

Exhibit 5 – Photo of the Dining Room at The Bao

Exhibit 6 – Photo of the Dining Room at Uluh

Exhibit 7 – Schedule K-1 for Eight Oranges, Inc.

Exhibit 8 – Schedule K-1 for Chibaola, Inc.

Exhibit 9 – Menu for The Bao

Exhibit 10 – Menu for Uluh

Exhibit 11 – Google Description of The Bao

Exhibit 12 – Marketing Materials for The Bao

Exhibit 13 – Google Description of Uluh

Exhibit 14 – Marketing Materials for Uluh

Exhibit 15 – Defendants' Labor Law Poster

Exhibit 16 – Jessy Mangahas Paystubs

Exhibit 17 – Defendants' Notice of Pay to Employees

Exhibit 18 – Deposition Transcript of Jessy Mangahas

Exhibit 19 – Deposition Transcript of Thinley Kalsang

Exhibit 20 – Deposition Transcript of Jose Roman Rodriguez

Exhibit 21 – Deposition Transcript of Jason Quijije Cedeno

Exhibit 22 – Deposition Transcript of Pithchaya Wohlfahrt

# I. PRELIMINARY STATEMENT

The defendants EIGHT ORANGES INC. d/b/a THE BAO, CHIBAOLA, INC. d/b/a ULUH, JOANNE HONG BAO, and RICHARD LAM ("Defendants"), by White & Ng, LLC, their attorneys of record, respectfully submit this Memorandum of Law in opposition to Plaintiffs' motion for Fed. R. Civ. P. 23 class certification and other related reliefs.

We will demonstrate below that Plaintiffs' Fed. R. Civ. P. 23 class certification motion fails to satisfy Fed. R. Civ. P. 23 ("Rule 23") requirements. Accordingly, this Court must deny Plaintiffs' Rule 23 class certification motion in its entirety.

# II. BACKGROUND

## a. Procedural History

Plaintiffs commenced this action by way of a Complaint (*See Complaint, ECF 1*) on May 20, 2022. Defendants responded with an Answer to Complaint (*See Answer to Complaint, ECF 24*) on August 5, 2022. On August 18, 2022, Plaintiff Jessy Mangahas filed an Amended Complaint (*See Amended Complaint, ECF 25*). Defendants responded with an Answer to Amended Complaint (*See Answer to Amended Complaint, ECF 32*) on September 1, 2022. On September 1, 2022, Defendant Joanne Hong Bao filed a Motion to Dismiss (*See Motion to Dismiss, ECF 28*). The Court denied Defendant Joanne Hong Bao's Motion to Dismiss on October 18, 2022 (*See Memorandum & Opinion, ECF 44*). Also on October 18, 2022, the Court granted Plaintiff's Motion for § 216(b) notice pursuant to the Fair Labor Standards Act ("FLSA") (*See Memorandum & Opinion, ECF 43; Order, ECF 45*). To date, a total of twenty-seven (27) Plaintiffs have opted in this case (inclusive of Named Plaintiffs) (hereinafter "Plaintiffs") (*See Declaration of Jonathan Ng ("Ng Decl.) ¶4*). On May 4, 2023, the Court granted Plaintiffs leave to file a Second Amended

Complaint (*See Amended Complaint, ECF 84*), to which Defendants filed an Answer to Amended Complaint (*See Answer to Amended Complaint, ECF 85*) on May 18, 2023.

Defendants have thus far produced over two thousand pages of payroll records to Plaintiffs. *See* Ng Decl. ¶ 5. To date, the two Named Plaintiffs and six (6) opt-in Plaintiffs have sat for their depositions. *See Id*. at ¶ 6. Furthermore, Richard Lam, an individual defendant in this matter and corporate representative of the two corporate entity defendants, sat for a deposition on November 27, 2023. *See Id*. at ¶ 7. Depositions will continue through the end of fact discovery on January 26, 2024. *See Id*. at ¶ 6.

### b. Defendants Are Not A Single Joint Employer

Defendants are not subject to a Rule 23 as a single joint employer because 1) Plaintiffs provide little admissible evidence to demonstrate Defendants are a single joint employer; 2) Defendants are independently operated; 2) Defendants did not share common management; 3) Defendants did not intentionally share employees or materials; and 4) Defendants did not have centralized control of labor relations.

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise . . ." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (citations and quotation marks omitted). Under the FLSA, "multiple corporate entities can be liable as the 'employer' under 'a joint employer theory based on the theory that they operate as a single enterprise with significant interrelation of operations.'" *Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020) (citation omitted). Numerous district courts have used the "single integrated enterprise" test to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes. *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).

To determine whether distinct entities operate as a single integrated enterprise, courts consider the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control… [a]lthough no single factor is required or determinative, 'control of labor relations is the central concern." *Chen v. Hunan Manor Enterprise, Inc.*, No. 17 Civ. 802, 2023 WL 5574854, at *6 (S.D.N.Y. Aug. 29, 2023). Where the single integrated enterprise theory applies, courts may impose liability for a violation "not only on the nominal employer but also on another entity comprising part of the single integrated employer[.]" *Arculeo*, 425 F.3d at 198; see also *Juarez*, 29 F. Supp. 3d at 368. The following facts support Defendants' position that the two restaurants were not a single integrated employer.

### i. Centralized Control of Labor Relations

As to control of labor relations, the "critical question" is "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Scott v. ProClaim Am., Inc.*, 2017 U.S. Dist. LEXIS 49543, *25-26 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995).

In the case of *Parker v. Columbia Pictures*, the Second Circuit has stated that in determining whether a single integrated enterprise exists, "a crucial element of the inquiry focuses on whether the two enterprises exhibit 'centralized control of labor relations,' including tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions". *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000).

Here, the control of labor relations at The Bao and Uluh were intentionally separated. As Plaintiffs have testified, individuals aside from Richard Lam and Joanne Hong Bao, such as opt-in Plaintiff Upendra Shahi and "Mei," had the authority to hire or fire employees, and their

decisions did not involve the other corporate entities and vice versa. *See* **Ex. 1**, Shahi Tr. at 21:19-25, 22:1-18; **2**, Zhu Tr. at 8:9-15. Each restaurant had a certain level of autonomy in regards to control of labor relations. *See* **Ex. 1**, Shahi Tr. at 21:19-25, 22:1-18.

### ii. Common Management

The day-to-day operations of The Bao and Uluh were at all times managed by different team leads or managers, with Defendant Richard Lam only stepping in when absolutely needed. **Ex. 2**, Zhu Tr. at 19:21-25. Individuals named "Mei" and "Adu" were the primary managers for Uluh. *Id*.

As for The Bao, Upendra Shahi appears to have been the primary manager in charge of day-to-day operations at The Bao as Mr. Shahi led The Bao for approximately four (4) years. *See* **Ex. 1**, Shahi Tr. at 10:7-13, 89:10-12; **3**, Dacusin Tr. at 12:9-23. Additionally, prior to Mr. Shahi becoming a Team Leader or Manager, Mr. Shahi stated that there an individual named "Allana" who was a Team Leader at The Bao to which Mr. Shahi reported to. *See* **Ex. 1**, Shahi Tr. at 15:15-23.

### iii. Common Ownership or Financial Control

Eight Oranges, Inc. owns the trade name and does business as The Bao. Chibaola, Inc. owns the trade name and does business as Uluh. *See* **Ex. 4**, 30(b)(6) Tr. at 14:13-21. Each business entity was formed separately to provide specific dining experiences for its' customers. *See* **Ex. 5**, Photo of Dining Room for The Bao; **6**, Photo of Dining Room for Uluh. It is important to note that if there was any intention to operate as a "single integrated enterprise," there would be no need to form separate corporations. The Defendants could have simply and more cost-efficiently formed one corporation and utilized separate "doing business as" names. Neither corporate entity has any ownership or financial control of the other, as Defendant Richard Lam is the owner of both entities.

However, both entities maintain separate bank accounts at separate banks to keep the entities separate. **Ex. 4**, 30(b)(6) Tr. at 60: 9-13.

The plaintiffs point to Defendants Richard Lam and Joanne Hong Bao as the common owners with financial control of both restaurants. However, Defendant Joanne Hong Bao has not been an owner of either company since at least 2018. *See* **Ex 4**, Form K-1 for The Bao; **5**, Form K-1 for Uluh. Furthermore, there is no testimony stating that Defendant Joanne Hong Bao did anything other than fill out an alcohol license application or show Defendant Joanne Hong Bao had a significant role in managing day-to-day operations of The Bao and Uluh.

Defendant Richard Lam is the sole owner of both The Bao and Uluh. However, both entities are run separately with no financial control or overlap over the other. Defendant Richard Lam's ownership alone should not reasonably by itself show common ownership to create a "single integrated enterprise."

### iv. Restaurants As A Single Integrated Enterprise

"With respect to restaurants in particular, facts that go to the existence of a single, integrated enterprise include common decor, name, menu and marketing; the use of the same employees at multiple locations; the transfer of items between restaurants; use of the same central payroll office, common storage space, and leases; and the distribution of common employee guidelines and procedures across different businesses." *Marin v. APU Foods Corp.*, No. 17 Civ. 3224, 2018 U.S. Dist. LEXIS 31891, 2018 WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018).

Here it is clear from a simple review of their restaurants and marketing that restaurants do not share the same name, décor, menu, or marketing.

### 1. Décor

As shown below, The Bao is a casual and affordable restaurant; as such, the décor is modest and targeted toward a less formal dining experience with a more industrial feel. In contrast, Uluh is an upscale restaurant with cushioned designer chairs, dim lighting, dividers for privacy, and a full-service formal dining experience, with an atmosphere portraying upscale chic.




*Figure 1: Decor of The Bao*              *Figure 2: Decor of Uluh*

**Ex. 5**, Photo of Dining Room at The Bao; **6**, Photo of Dining Room at Uluh.

### 2. Name

Here, Chibaola, Inc., d/b/a/ Uluh and Eight Oranges, Inc. d/b/a/ The Bao, are owned by separate corporations with completely different names and completely different "doing business as" names. **Ex. 4**, 30(b)(6) Tr. at 14:13-21. As previously stated, if Defendant Richard Lam

intended to operate the two businesses as a single integrated enterprise, there would have been no need to distinguish the two restaurants to such a certain extent.

### 3. Menu

As shown below, The Bao and Uluh have different menus where The Bao has a more simplistic and minimal selection of dishes. Whereas, Uluh has a larger and more sophisticated selection of dishes, of which a few are signature dishes belonging to Uluh specifically.

## Dim Sum 经典点心

| | |
|---|---|
| Shanghai Pork Soup Dumplings 上海小笼包 6pcs | 9 |
| Crab Meat Soup Dumplings 蟹粉小笼包 6pcs | 12 |
| Black Truffle Pork Soup Dumplings 黑松露小笼包 6pcs | 12 |
| Chicken Soup Dumplings 鸡汁灌汤包 6pcs | 12 |
| uluh Dim Sum Platter 玉楼点心拼盘 Mushroom V, Har Gow, Corn & Shrimp, Shumai, 4pcs | 20 |
| Pan Fried Mini Pork Bao 生煎包 6pcs | 12 |
| Mini Pumpkin Puff 金沙南瓜酥 5pcs V | 11 |
| Scallion Pancake 葱油饼 V | 6 |
| Scallion Pancake w. Shredded Duck 鸭丝葱油饼 | 14 |
| Scallion Pancake w. Sliced Beef 牛肉葱油饼 | 14 |
| Pan Fried Pork Dumplings 锅贴 6pcs | 9 |
| Vegetable Spring Roll 素春卷 V | 8 |
| Wontons in Chili Oil 红油抄手 V | 11 |
| Har Gow Hong Kong Style 虾饺 4pcs | 10 |
| Shumai w. Shrimp Hong Kong Style 烧卖 4pcs | 10 |
| Steamed Veggie Dumplings 蒸饺 4pcs V | 12 |

## Small Plate 凉菜/小食

| | |
|---|---|
| Deep Fried Crispy Pork 脆皮炸猪肉 | 20 |
| Dragon Fruit Chinese Yam 火龙果山药 V | 14 |
| Okra Salad 秋葵沙拉 V | 12 |
| Sichuan Beef Jerky 四川牛肉干 | 18 |
| Green Peppercorn Chicken 藤椒鸡 | 13 |
| Sweet & Sour Ribs 糖醋小排 | 14 |
| Steamed Chicken with Sesame in Chili Sauce 口水鸡 | 13 |
| Cucumber Salad 拍黄瓜 V | 9 |
| Arctic Surf Clam w. Okra 秋葵北极贝 | 14 |
| Woodear Mushroom Salad 凉拌木耳 V | 12 |
| Beef & Tripe in Chili Oil 夫妻肺片 | 15 |

## Soup 汤

| | |
|---|---|
| Herbal Wine Chicken Soup 花雕醉鸡汤 | 46 |
| Organic Chicken w. Coconut 椰子鸡 | 48 |
| Slow Cook Pig Stomach & Chicken Soup 猪肚鸡汤 | 46 |

## Rice / Noodle 粉/饭/面

| | |
|---|---|
| Chicken Lo Mein w. Pineapple 菠萝鸡捞面 | 16 |
| Preserved Meat Casserole 腊味煲仔饭 | 22 |
| Black Truffle Fried Rice 黑松露炒饭 | 18 |
| Minced Pork w. Pickled String Beans Noodle 榄菜肉碎面 | 15 |
| Beef Rice in Stone Bowl 石锅牛肉饭 | 18 |
| Dragon Fruit Fried Rice 火龙果炒饭 V | 16 |
| Roast Pork Egg Fried Rice 叉烧蛋炒饭 | 16 |
| Dan Dan Noodle 担担面 | 13 |
| Vegetables Fried Rice 蔬菜炒饭 V | 14 |
| Jasmine Rice 茉莉香米饭 | 3 |

## Desserts 甜品

| | |
|---|---|
| Rose Lychee Panna Cotta 玫瑰荔枝奶冻 V | 9 |
| Matcha Semifreddo 抹茶半冻糕 | 9 |
| Coconut Pudding 椰汁糕 | 8 |
| Chestnut Mochi 栗子糍 | 8 |
| Mango Juice Sago Pomelo w. Mochi 杨枝甘露 V | 9 |
| Chocolate & Salty Caramel Lava Cake 海盐焦糖巧克力熔岩蛋糕 | 12 |
| Ice Jelly w. Osmanthus Sauce 桂花冰粉 | 7 |

## Signature 玉楼招牌

| | |
|---|---|
| Brown Sugar Glazed Peking Duck 黑糖脆皮烤鸭 (L) | 44/82 |
| uluh Black Truffle & Shrimp Rice Cake 黑松露虾仁年糕 | 18 |
| Lobster w. Salty Egg Yolk 金沙龙虾 | 48 |
| Boneless Pork Trotters 富贵黄金脱骨猪蹄 | 26 |
| Honey Glazed Shrimp 蜜汁虾球 | 24 |
| Crispy Tofu in Seven Spices 七味脆皮豆腐 V | 18 |
| Sliced Beef in Bone Soup 筒骨牛肉 | 26 |
| Stir Fried Cucumber 清炒黄瓜 V | 15 |
| Stir Fried Fatty Beef w. Cilantro 香菜肥牛 | 20 |
| Cheese Grilled Sea Bass 芝士焗鲈鱼 | 26 |

## uluh Ten 十大招牌

| | |
|---|---|
| Steam Seabass w. Scallion 清蒸鲈鱼 | 38 |
| Lychee Shrimp Balls 荔枝虾球 | 26 |
| Ribs Volcano 火山排骨 | 28 |
| Lobster Mapo Tofu 龙虾麻婆豆腐 | 38 |
| Salty Egg Yolk Pumpkin Pudding 咸蛋黄南瓜布丁 V | 18 |
| Crab Tofu 蟹粉豆腐 | 26 |
| Beef & Rice Pasta w. Sesame Sauce 芝麻牛肉肠粉 | 22 |
| Pork Tripe & Intestine Hot Stone Casserole 石锅肥肠猪肚 | 28 |

## Vegetables 素菜

| | |
|---|---|
| Vegetarian Dry Pot 干锅 V 素 | 18 |
| Sauteed String Bean w. Eggplant 豆角茄子 V | 16 |
| Mapo Tofu 麻婆豆腐 V | 16 |
| Stir Fried Cabbage w. Soy Sauce 手撕包菜 V | 14 |
| Stir Fried Cabbage w. Glass Noodle 蚂蚁上树 V | 14 |
| Eggplant w. Garlic Sauce 鱼香茄子 V | 14 |
| Sauteed String Beans 清炒四季豆 V | 14 |
| Sauteed Tea Shoot w. Garlic 蒜蓉茶树菇 V | 16 |

## Stir Fried 煲仔/热炒

| | |
|---|---|
| Stir Fried Pork Belly w. Egg 木须肉 | 18 |
| Minced Pork w. Celluce 橄榄菜肉末 | 16 |
| Braised Pork Belly 红烧肉 | 22 |
| Wild Pepper & Beef 野椒牛肉 | 22 |
| Minced Pork Pickled String Beans 榄菜四季豆 | 19 |
| Stir Fried Potato w. Pork 土豆肉片 | 16 |
| Stir Fried Okra 清炒秋葵 V | 14 |
| Braised Chicken w. Chili 辣子鸡 | 22 |
| Seafood Tofu Casserole 海鲜豆腐煲 | 26 |
| Kung Pao Chicken 宫保鸡丁 | 18 |
| General Tso's Chicken 左宗棠鸡 | 18 |

## Spicy 麻辣水煮

| | |
|---|---|
| Spicy Grilled Stripe Bass 烤鲈鱼 Sea Bass | 32 |
| Green Peppercorn Fish 青花椒鱼 | 29 |
| Fish in Homemade Pickled Cabbage 酸菜鱼 Seabass | 29 |
| Sliced Beef in Chili Oil / Fish Fillet 水煮牛肉/鱼片 | 27 |
| Spicy Lobster Dry Pot 干锅龙虾 | 48 |
| Blood Tofu in Chili Sauce 毛血旺 | 26 |
| Sichuan Spiced Lamb Ribs w. Bones 孜然羊排 | 28 |
| Chongqing Chili fried Chicken w. Bones 重庆辣子鸡 | 22 |
| Spicy Intestine 香辣肥肠 | 22 |
| Fatty Beef in Sour Soup 酸汤肥牛 | 22 |
| Pssyho Spicy Pepper Beef 变态辣椒牛肉 | 22 |
| Sichuan Chili fried Chicken 川味辣子鸡 | 22 |



# Drinks

## Tea Cold / Hot

| | | |
|---|---|---|
| Osmanthus Oolong 桂花乌龙 Floral, sweet, osmanthus aroma | Taiwan | 12 |
| An Shi Ti Kuan Yin 安溪铁观音 Fresh and bold | China | 9 |
| Organic Chrysanthemum 有机菊花 Anti-inflammatory, boost immunity | China | 8 |
| Yunnan Wild Rose 云南野玫瑰 Natural antioxidant, fragrant and delicious | China | 8 |
| Jasmine Pearls 茉莉龙珠 Clean smooth, jasmine flavor | China | 6 |
| Green Mango Peach 芒果蜜桃 Tropical textured, peppermint finish | China | 6 |
| Earl Grey 伯爵 Milk & Sugar 伯爵红茶 Lemony, malty notes | Taiwan | 7 |
| Pu'er 普洱 Rich body, dense chestnut smooth | China | 6 |
| Cold Brew Jasmine Pearls 冷泡茉莉龙珠 | China | 6 |
| Cold Brew Green Mango Peach 冷泡芒果蜜桃 | China | 6 |

## Drinks

| | |
|---|---|
| Passionfruit Tea 百香果茶 Cold/Hot | 5 |
| Cheese Foam Coconut Water 芝士椰子水 | 8 |
| Mango Juice Sago Pomelo 杨枝甘露 | 8 |
| Strawberry Juice Boba Pomelo 草莓芭乐 | 8 |
| Peach Oolong Tea w. Hand Whipped Cheese Foam 白桃乌龙芝士奶盖 | 8 |
| Rose Oolong Tea w. Hand Whipped Cheese Foam 玫瑰乌龙芝士奶盖 | 8 |
| Soy Milk Foam Chestnut 栗子豆乳 | 8 |
| Soy Milk w. Ice Jelly & Mochi 豆乳冰粉麻薯 | 8 |
| Lemon/Strawberry Tea 柠檬/草莓茶 | 7 |
| Lemon Honey Cucumber 柠檬蜂蜜黄瓜 | 7 |

## Cocktail

| | |
|---|---|
| Red Wine w. Fruit 缤纷水果红酒 Hot/Cold | 12/88 |
| Plum Wine 梅酒 | 14 |
| Peppercorn Margarita 花椒玛格丽特 | 16 |
| Passion Fruit Margarita 百香果玛格丽特 | 16 |
| Sangria 桑格利亚 | 14 |
| Osmanthus Oolong Cocktail 桂花乌龙鸡尾酒 | 16 |
| Spsy Peach 蜜桃气泡 | 17 |
| Bloom 花开富贵 | 17 |

## White

| | | |
|---|---|---|
| 2019 | Free Climber Riesling | New York | 11/45 |
| 2020 | Marie du Lac Sancerre (Dry) | Loire, France | 60 |
| 2020 | Folk Tree Vintage Chardonnay | California | 12/48 |

## Red

| | | |
|---|---|---|
| 2019 | Alhambra Malbec | UCO Valley, Argentina | 11/45 |
| 2019 | Norton Ridge Merlot | California | 48 |
| 2016 | Château Bellevue La Randee Bordeaux | France | 60 |

## Sparkling

| | | |
|---|---|---|
| | S.Pellegrino | Italian | 8 |
| | Buscareto Brut Rose | Italian | 50 |
| 2009 | Moët&Chandon, Grand Vintage | Champagne, France | 250 |

## Sake

| | | |
|---|---|---|
| Kikusui Junmai Ginjo 720ml 178 菊水酒造纯米吟酿 | | 24/65 |
| Dassai 45 300ml / 720ml 148 獺祭純米大吟酿 | | 25/75 |
| Hana Awaka Peach 250ml 花姬桃子微气泡 | | 18 |
| Hakuhsou Sayuri Nigori Sake 300ml 白鹤小百合浊酒 | | 14 |
| Tatsuriki Nihon No Junmai Daiginjo 720ml 龙力米之酒纯米大吟酿 | | 205 |
| Otokoyama Sessha Super Dry 720ml 男山超辛口 | | 155 |
| House Hot Sake 清酒 | | 14 |

## Beer

| | |
|---|---|
| Kyoto Yuzu IPA | 8 |
| Tsing Tao | 7 |

Mild Spicy ♪ | Spicy 🌶 | Very Spicy 🌶🌶 | Vegetarian V | Sweet ◇

**To Better Serve Our Customer:**
Let us know if you have any food allergies, please note that none of our dishes contain soy sauce. No tree nuts or peanuts in our kitchen.

**During busy hours:**
Customers maybe limited to 1 hour seating time.

© UluhNyc

*See* **Ex. 9**, Menu for The Bao; **10**, Menu for Uluh.

### 4. Marketing

The marketing at each restaurant is starkly different. As stated in the section above, each has its own branding and style targeted towards its target audience. For lack of better words, The Bao is a casual eatery, whereas Uluh is the type of restaurant to be seen.

On The Bao's Google Business page, The Bao is marketed as "*Chic eatery known for Shanghai-style xiao long bao soup dumplings with classic & creative fillings.*" **Ex. 11**, Google Description of The Bao. This business is a casual restaurant known for serving soup dumplings. Its primary branding colors are red and light grey. *See* **Ex. 12**, Marketing Materials for The Bao.



Figure 3: The Bao's Website - https://www.thebaony.com



Figure 4: Napkins used at The Bao

**Ex. 12**, Marketing Materials for The Bao.

On Uluh's Google Business page, and in contrast to The Bao's marketing, Uluh is marketed as a "Warm, sparsely-decorated eatery & teahouse for Chinese fare from Peking duck to Shanghai dumplings." **Ex. 13**, Google Description of Uluh.

Uluh is a formal full-service restaurant known for upscale Asian dining. Its primary branding colors are blue and white:



Figure 5: Uluh's Website - https://www.uluhny.com



Figure 6: Uluh Napkin

**Ex. 14**, Marketing Materials for Uluh.

**v. The Use of the Same Employees at Multiple locations**

Here, Defendant Richard Lam makes clear that his policy was that there should be no overlap in employees between the restaurants, as both are intended to be operated and managed separately. *See* **Ex. 4**, 30(b)(6) Tr. at 233:3-13.

Evidence shows that there was a minor overlap in employees that worked at The Bao and Uluh, but this was not intentional and certainly not a widespread practice that would show evidence of a single integrated enterprise. For example, Defendant Richard Lam has stated, when asked about why Jessy Mangahas worked at both restaurants, "I was never told Jessy was working in both restaurants at the same time. Our policy is not to have workers work in the same – work in both restaurants at the same time. I asked the team leader at that time why is she working in the restaurant and I told them they are not supposed to work in both restaurants at the same time. And I tell him to, you know, fix it." *Id*.

### vi. The Transfer of Items Between Restaurants

Both of the restaurants at issue are located in lower Manhattan. *See Plaintiffs' Second Amended Complaint* ¶ 1. It is common knowledge that real estate in New York City is often scarce and expensive. As stated by Defendant Richard Lam, The Bao has limited space, which is why The Bao needs additional storage space and why The Bao uses a storage room in Uluh's basement for storage of overflow items. *See* **Ex. 4**, 30(b)(6) Tr. at 58:21-25, 59:2.

Items were not simply transferred from one restaurant to the other, as each has separate needs and branding on some consumer items. *See* **Ex. 12**, Marketing Materials for The Bao; **14**, Marketing Materials for Uluh. Uluh does not transfer items from The Bao for usage at Uluh. *See* **Ex. 4**, 30(b)(6) Tr. at 58:21-25, 59:2. The Bao stores some consumable items, such as napkins, chopsticks, sake, and tea, in a storage room in the basement of the building where Uluh operates because it has some additional space in the basement. *See* **Ex. 1**, Shahi Tr. at 81:7-22.

### vii. Use of a Central Payroll Office

The Defendants used a physical office at Uluh to handle payroll for The Bao and Uluh but made reasonable efforts to make sure that each business' payroll was handled independently for each restaurant by attempting to prevent employee overlap between the two restaurants, using two separate bank accounts to operate the businesses. *See* **Ex. 4**, 30(b)(6) Tr. at 60:9-13.

### viii. Common Storage Space and Leases

Uluh, having a much larger space than The Bao, allowed for The Bao to store overflow items in a storage room located at Uluh. *See* **Ex. 4**, 30(b)(6) Tr. at 18:17-21, 27:16-18. Due to the limited physical space of The Bao, The Bao stored its equipment, furniture, and most items at its business location. *Id*. However, The Bao would store some overflow items at Uluh, such as napkins, chopsticks, and other non-essential items. *See* **Ex. 1**, Shahi Tr. at 81: 7-10.

However, Defendants do not believe storing some overflow alone should not rise to the level of "common storage space" for the purposes of this analysis because, as previously stated, the locations of the two defendant restaurants mean that the restaurants have limited physical space for storage. *See* **Ex. 4**, 30(b)(6) Tr. at 58:21-23. Additionally, each individual restaurant has different needs, as each has its' own individualized supplies that are branded for the individual restaurants. *See* **Ex. 12**, Marketing Materials for The Bao; **14**, Marketing Materials Uluh. The point being that the storage room in Uluh was not one space supplying two restaurants with the same needs, but more like two friends splitting the rent for a storage space when needed.

### ix. Distribution of Common Employee Guidelines and Procedures Across Different Businesses

As stated above, the Defendants' businesses were intended to be ran independently. *See* **Ex. 4**, 30(b)(6) Tr. at 62:4-7. Plaintiffs assert that due to Defendant Richard Lam's recognition that it used a similar template form, the companies shared common employee guidelines and procedures, thus supporting its allegation that The Bao and Uluh were a part of a single integrated enterprise.

However, there is no evidence to support these allegations, and the usage of a template handbook is how many small businesses and drafters begin preparing these documents. This is not proof that each had the exact same or common employee guidelines and procedures. As Mr. Lam has stated, the handbook which Plaintiffs refer to was merely a template for Uluh and was ultimately never finished for distribution at Uluh. *See* **Ex. 4**, 30(b)(6) Tr. at 64:12-16; 65:15-16. Furthermore, as previously stated, most small business owners copy templates from other businesses all the time, which in the instant case, the original handbook for The Bao was also copied from another restaurant. *See* **Ex. 4**, 30(b)(6) Tr. at 65:6-8. Ultimately, the handbook was

for Uluh was not finished, therefore, there was no common set of employee guidelines and procedures.

### c. Defendants Properly Applied the Tip Credit at The Bao and Uluh

The New York Labor Law ("NYLL") requires employers to pay non-exempt employees minimum wages and overtime wages. NYLL § 652(1). The NYLL allows employers to pay tipped employees in the food service industry a lower minimum wage by taking a "tip credit." See 12 N.Y.C.R.R. § 146-1.3. However, a tip credit may only be taken when "certain preconditions are met.'" *Cuzco v. F&J Steaks 37th St. LLC*, No. 13 Civ. 1859, 2014 WL 2210615, at *5 (S.D.N.Y. May 28, 2014); see also *Zivkovic v. Laura Christy, LLC*, No. 17 Civ. 553, 2022 WL 1697991, at *6 (S.D.N.Y. May 26, 2022). These preconditions "are strictly construed and must be satisfied even if the employee received tips at least equivalent to the minimum wage." *He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014); see also *Chen*, 2023 WL 5574854, at *6; *Cabrera, v. Canela*, 412 F. Supp. 3d 167, 182 (E.D.N.Y. 2019).

First, employers must provide each employee prior to the start of employment with written notice of the tip credit as outlined in 12 N.Y.C.R.R. § 146-2.2 ("Hospitality Wage Order"):

> written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

12 N.Y.C.R.R. § 146-2.2 (emphasis added); see, e.g., *Chen*, 2023 WL 5574854, at *6; *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 256 (S.D.N.Y. 2021) (analyzing whether tip credit notice was properly given). Furthermore, in *Chichinadze*, the court determined that posters alone were insufficient to meet the notice requirements of either the FLSA or NYLL. *Id*. However, the

defendant in Chichinadze solely relied on the posters and their payroll processing company, ADP to comply with federal and state law. Moreover, employers must allow employees to receive all tips they receive pursuant to a valid tip-pooling arrangement. See *Cabrera*, 412 F. Supp. 3d 167 at 182 ("Moreover, a violation of N.Y. Lab. Law 196-d, which prohibits an employer from retaining tips or gratuities received by employees, renders an employer ineligible to receive a tip credit under the NYLL").

In the present matter, Defendants contend that taking a tip credit was permitted because the written notice was provided via a poster in each restaurant coupled with notices of pay, and each paycheck that required acknowledgment and signature. *See* **Ex. 15**, Labor Law Poster; **16**, Jessy Mangahas' Paystub Samples. Further, each employee was required to review and sign their paystubs to ensure notice and compliance before receiving a paycheck. *Id*. Due to this, Defendants maintain that tipped employees were provided with proper notice of the tip credit and there was no error in applying the tip credit to the employees' pay.

Like the defendants in *Chichinadze*, the Defendants did partially rely on labor law posters available for purchase online and the paper stubs provided by their accountant for notice. *See* **Ex. 4**, 30(b)(6) Tr. at 141:4-12, 219:2-18; **15**, Labor Law Poster; **16**, Jessy Mangahas' Paystub Samples. However, unlike the defendants in *Chichinadze*, the Defendants, in addition to relying on the labor law poster and paystubs provided by the accountant, Defendants did their best to ensure that each new employee received a Notice and Acknowledgement of Pay Rate and Payday, which is a standard form created by the New York State Department of Labor. *See* **Ex. 17**, Defendants' Notice of Pay Samples. Any one of these forms of notices alone may not be enough to show proper notice of the tip credit, but when combined, the documents should be sufficient to show proper notice of the tip credit.

#### d. Defendants Properly Paid Overtime Compensation to Tipped Employees

As stated above, Defendants maintain that a tip credit was properly applied to all employees who were tipped, therefore, Defendants believe the Court should find that tipped employees were properly compensated for overtime, as evidenced in the paystubs provided to employees every time an employee was paid at either The Bao or Uluh. *See* **Ex. 16**, Jessy Mangahas' Paystub Samples.

#### e. Defendants Properly Distributed Tips

The Second Circuit has made clear that NYLL 196-d "bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service - i.e., employees who are not 'busboy[s] or similar employee[s]' and employees who are managers or 'agent[s]' of the employer." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 241 (2d Cir. 2011); see also *Murphy v. Lajaunie*, No.. 13 Civ. 6503 (RJS), 2016 WL 1192689, at *3 (S.D.N.Y. Mar. 22, 2016), appeal dismissed and remanded sub nom. *Ayinola v. Lajaunie*, 855 F. App'x 30 (2d Cir. 2021) (on other grounds).

Here, Plaintiffs contend that the positions of expeditors, food packers, soup dumpling cooks at The Bao, and dessert cooks at Uluh, were ineligible to receive tips, because they supposedly did not perform direct customer service. However, due to the limited manpower available at the restaurants, everyone at The Bao and Uluh worked as a team. *See* **Ex. 4**, 30(b)(6) Tr. at 38:7-15. That means the previously mentioned positions that Plaintiffs claim should not have received tips, did in fact some form of perform direct customer service, meaning they were entitled to tips. *See* **Ex. 4**, 30(b)(6) Tr. at 35:21-25, 36:1-16.

Defendants believe that the above-mentioned positions at both The Bao and Uluh were all employees who were entitled to receive tips because they were all "tipped employees" under the

FLSA and NYLL. At The Bao and Uluh, one employee, regardless of their formal position, could perform multiple duties, which may or may not be considered direct customer service. *See* **Ex. 18**, Mangahas Tr. at 19:24-25, 20:1-25, 21:1-25, 22:1-25; **4**, 30(b)(6) Tr. at 34:17-25, 35:1-9. For example, the so-called dessert cooks at Uluh, when the bussers were too busy, then the dessert cooks would take out the drinks directly to the customers. *See* **Ex. 4**, 30(b)(6) Tr. at 35:5-9.

Defendants agree with Plaintiffs that it is for the Court to determine whether the employees that received tips were actually entitled to receive tips. However, Defendants would simply like to emphasize that customer service at The Bao and Uluh is a team effort, and despite the individuals' formal titles, the expeditors and packers at The Bao and Uluh, soup dumpling cooks at The Bao, and the dessert cooks at Uluh, did in fact perform duties involving direct customer service, which is why those positions should receive tips.

### f.  Tipped Employees Spent Less Than 20% of Their Work Hours Performing Side Work

New York law states that excessive side work eliminates the use of the tip credit for that day. Specifically, if a tipped employee engages in non-tipped side work for more than two hours and/or 20 percent of their time at work, whichever is less, the employer must pay the tipped employee the full minimum wage for the employee's entire workday. *See* 12 N.Y.C.R.R. § 146-2.9; *see, e.g.*, *Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 470-71 (S.D.N.Y. Aug. 12, 2015).

Both restaurants have vastly different needs. The Bao is approximately 1,500 sq. ft. and is a casual eatery, whereas Uluh is 3,000 sq. ft. and has a more formal dining experience than The Bao. *See* **Ex. 4**, 30(b)(6) Tr. at 18:17-21, 27:16-18; **5**, Photo of The Bao Dining Room; **6**, Photo of Uluh Dining Room. The needs of The Bao differ significantly from the needs of Uluh due to its smaller size and a limited menu.

During the depositions, employees testified to performing non-tip producing side work. However, there were no formal records pertaining to the amount of time tipped employees spent performing side work. *See* **Ex. 4**, 30(b)(6) Tr. at 188:25, 189:1-6. None of the Plaintiffs have any formal records either, but instead, rely on subjective estimations of how much time they spent performing side work, which Plaintiffs believe to be more than two hours. *See* **Ex. 18**, Mangahas Tr. 84:3-8; **1**, Shahi Tr. 112:13-22; **19**, Kalsang Tr. 44:25-45-45:5. Plaintiffs testified that side work included, but not limited to: (1) cleaning bathroom, (2) setting up tables, (3) shoveling snow, (4) loading and unloading the dishwasher, and (5) cleaning green beans. *See* **Ex. 18**, Mangahas Tr. at 81:3-21; **20**, Rodriguez Tr. at 11:1-5. However, according to Plaintiffs, the Plaintiffs often performed side work with the help of other employees. *See* **Ex. 1**, Shahi Tr. at 108:16-25; **21**, Cedeno Tr. at 17:16-22.

Given that the Plaintiffs had help from other co-workers in performing side work and the fact that they had to perform their regular tip-producing duties in addition to the side work, it is unreasonable that in any busy Manhattan restaurant, the tipped employees had to perform side work for over 20% of their work time. Defendants simply maintain that the side work at either restaurant could reasonably have taken 2 hours or taken up 20% of Plaintiffs' work hours. Without reliable support for this claim, we ask this court to deny Plaintiff's request for relief based on these facts.

### g. Defendants Did Not Make Unlawful Deductions

The Hospitality Wage Order prohibits deductions from wages "except for credits authorized in this Part and deductions authorized or required by law, such as for social security and income taxes." 12 N.Y.C.R.R. § 146-2.7. Examples of such improper deductions include deductions for "spoilage or breakage" and "non-payment by a customer." *Id.*

The Bao: Plaintiffs allege a common policy that Defendants charged Tipped Workers for inputting wrong orders, customer walk outs, and breakage of flatware. *See* Plaintiffs' Second Amended Complaint ¶ 26; *see also* **Ex. 2**, Zhu Tr. at 25:18-24 (there were penalties for incorrect placed orders); **18**, Mangahas Tr. at 66:21-67:2 (charge for breakage of plates, cups, and glasses); *id.* at 68:5-18 (the Restaurants make you pay when you make a mistake, and you pay the same day).

Plaintiffs Wen Bin Zhu and Jessy Mangahas' testimonies are used to support this claim, but aside from Plaintiffs testimonies, Plaintiffs have failed to provide any records indicating deductions. Furthermore, Defendants have testified that employees simply receive a warning if there are any breakages or if a customer walks out without paying. *See* **Ex. 4**, 30(b)(6) Tr. at 208:5-25 – 209:1-13. As such, any relief sought after based on this claim should not be granted on the basis that there is simply not enough evidence to substantiate their claims of unlawful deductions.

### h. Plaintiffs Were Not Required to "Purchase" Uniforms

The Hospitality Wage Order requires that "when an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday." 12 N.Y.C.R.R. § 146-1.8(a).

Defendants contend that Plaintiffs and tipped employees were not required to pay for their uniforms, but instead were required to maintain a deposit which would be returned to Plaintiffs or tipped employees when the uniform was returned. *See* **Ex. 4**, 30(b)(6) Tr. at 212:10-13.

The Bao: At The Bao, Employees were required to make a deposit for their uniforms. Once returned, the Employee would receive their deposit back. This was supported by the testimony of Plaintiff Upendra Shahi of The Bao. *See* **Ex. 1**, Shahi Tr. at 114:13-25 – 115:1-6.

Instead of dismissing this false claim, Plaintiff uses anecdotal testimony stating that "at least some Plaintiffs testify that any offer of deposit was not communicated (*see* **Ex. 22**, Wohlfahrt Tr. at 46:19-47:24; **21**, Cedeno Tr. at 50:16-21) and even when uniforms were returned, no deposits were provided. *See* **Ex. 18** Mangahas Tr. at 102:2-11; **19**, Kalsang Tr. at 21:16-23:10. However, in contrast, Plaintiff Upendra Shahi testified that upon return of the uniform, the deposit would be returned. *See* **Ex. 1**, Shahi Tr. at 114:13-25 – 115:1-6.

Uluh: Similar to The Bao, Plaintiffs and tipped employees who worked at Uluh were also required to place a deposit which was, or would be, returned when the uniform was returned. *See* **Ex. 4**, 30(b)(6) Tr. at 213:2-10.

Defendants maintain that Plaintiffs and other tipped employees were not required to purchase uniforms at either restaurant, but instead were required to place a deposit at The Bao or Uluh, which was to be returned upon return of the uniform.

## III.   ARGUMENT

### a.   Plaintiffs Fail to Satisfy the Requirements for Class Certification

For a court to grant class certification under Fed. R. Civ. P. 23, plaintiffs must establish both the prerequisites under Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy of representation—and also that the action falls within a category listed in Fed. R. Civ. P. 23(b). Additionally, the Second Circuit requires that membership of the class be "objectively ascertainable." *See, e.g., Bayne v. NAPW, Inc*., No. 18 Civ. 3591, 2021 WL 4822426, at *3 (E.D.N.Y. Aug. 10, 2021) report and recommendation adopted, No. 18 Civ. 3591, 2021 WL 4820603 (E.D.N.Y. Oct. 15, 2021). Here Plaintiffs' motion fails to establish prerequisites under Rule 23(a) and Rule 23(b).

### b. Plaintiffs Fail to Satisfy the Requirements of Fed. R. Civ. P. 23(a)

#### i. Numerosity – Rule 23(a)(1)

Under Rule 23(a)(1), Plaintiffs must show that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed where a putative class has forty or more members. *Shahriar*, 659 F.3d 234, 238.

Here, according to Plaintiffs' Motion for Class Certification, there are only 14 alleged current or would-be plaintiffs who would share the same alleged injury due to their nature of working at The Bao and Uluh. Further, there are currently only 27 opt-in Plaintiffs between both entities thus far. As such, Plaintiff's numerosity argument is flawed in that it heavily relies on the entities being considered a "Single Joint Employer," which they are not. The employees at The Bao and Uluh, separately, unlikely meet the numerosity requirement. It appears that the merger of the business entities is a significant part of Plaintiffs' ability to meet the numerosity requirement. As such, this requirement now raises significant questions, which would require an intensive analysis to determine if The Bao and Uluh is a single integrated enterprise. This is ultimately for the Court to decide. However, Defendants believe that the number of plaintiffs out there is not so numerous that a joinder of all members is impracticable.

#### ii. Commonality – Rule 23(a)(2)

Fed. R. Civ. P. 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class." In *Wal-Mart*, the Supreme Court observed that commonality was the "crux of [the] case." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-51 (2011). This honorable Court has stated that what matters to class certification is not the raising of common questions . . . but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the

resolution of the litigation. *Huang v. Shanghai City Corp.*, No. 19-cv-7702 (LJL), 2022 U.S. Dist. LEXIS 84498, at *16 (S.D.N.Y. May 10, 2022).

Here, the Plaintiffs have failed to show commonality, in part due to their overly broad assertion that all tipped employees at the two distinct restaurants has the answers apt to drive the resolution of the litigation, as tipped employees from both restaurants, would generate answers that differ significantly due to numerous differences between The Bao and Uluh.

In the matter decided by this court in 1980, female physicians on faculty of medical college, alleged sex discrimination in employment practices of college. The court found that recertification of this class to include female nonphysicians on faculty is inappropriate, since typicality and commonality requirements of Rule 23 are unsatisfied; qualifications and responsibilities of two groups differ significantly, earnings and employment possibilities vary, motion was brought 4½ years after commencement of action and inclusion of female nonphysicians will double size of class, substantially prolonging and complicating trial. *See Sobel v. Yeshiva Univ.*, 85 F.R.D. 322, 323-24 (S.D.N.Y. 1980).

Here, Plaintiffs assert commonality between two separate businesses with Plaintiffs that include Bussers, Servers, Team Leaders, and alleged Managers. All have differing qualifications, responsibilities, and pay rates. For example, opt-in Plaintiff Upendra Shahi, who solely worked at The Bao, and had little to no contact with anyone at Uluh, alleges that his duties and responsibilities were akin to those of both a Server and Team Leader, including serving customers, hiring, training, and tip calculation at the end of each shift. *See* **Ex. 1**, Shahi Tr. at 21:19-25, 72:1-5. The questions of law or fact pertaining to Plaintiff Upendra Shahi would certainly not be the same as the questions of law or fact pertaining to a Busser / Runner at Uluh. Also, at Uluh, the named Plaintiff Pithchaya Wohlfahrt's duties at Uluh significantly differed from other plaintiffs as she at one point was a

"Captain". *See* **Ex. 22**, Wohlfahrt Tr. at 32:18-20. As a "Captain" Plaintiff Wohlfahrt's duty also included recording tips and dividing them to other employees. *See* **Ex. 22**, Wohlfahrt Tr. at 32:21-24.

In the case at issue, the Plaintiff's flawed allegations that The Bao and Uluh are a single joint enterprise and employees that worked at either share commonality to each other would lead to an unjust and inaccurate outcome as the questions regarding pay, duties, management, service styles and required side work would differ significantly.

### iii. Typicality – Rule 23(a)(3)

Fed. R. Civ. P. 23(a)(3)'s typicality requirement "is satisfied when each class member's claim arises from the same course of events, meaning each class member makes similar legal arguments to prove the defendant's liability." *Vargas v. Howard*, 324 F.R.D. 319, 326 (S.D.N.Y. 2018) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) and citing to *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (*quoting Marisol A.*, 126 F.3d at 377). However, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Given these decisions, it appears that the Typicality would require that the conduct be derived from a unitary course of conduct by a single system, which is simply not present here. Plaintiffs have oddly sued two distinct corporations with two different systems and doing business under completely different names, with different menus and management, making a "conduct by

a single system" impossible. Even if the corporations are owned by Defendant Richard Lam, and he used the same bookkeeper, this does not show that the conduct at both restaurants derived from a single system. In fact, Defendant Richard Lam's actions and intentions show each restaurant was to operate independently, i.e., within its own system. Hence, the Plaintiffs fail to establish the typicality requirement as their allegations hinge on a single system, which is not evident here.

### iv. Adequacy – Rule 23(a)(4)

Under the final requirement of Fed. R. Civ. P. 23(a)(4)—whether the representative parties will fairly and adequately protect the interests of the class—the representative parties will not fairly and adequately protect the interests of the class. Adequacy of representation is evaluated by looking at the qualifications of plaintiffs' counsel and the interest of the named plaintiffs. *See Huang*, No. 19-cv-7702 (LJL), 2022 U.S. Dist. LEXIS 84498, at *17. Defendants do not raise an issue with the qualifications of Plaintiffs' counsel, but Defendants do contend that the named plaintiffs are unable to represent the class adequately.

This Court has stated that "[t]wo factors generally inform the inquiry of whether a named class representative is adequate under Rule 23: (1) absence of conflict and (2) assurance of vigorous prosecution." *Id.* Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253.

Here, as discussed above, the named plaintiffs Jessy Mangahas and Pithchaya Wohlfahrt have different interests and have not suffered injuries; if so the courts find that they have, the injuries would be different given their respective places of employment, dates of employment, job responsibilities, and job titles. Both are not putative NYLL Class Members as former tipped employees because they were not subject to the same practices relating to improper notice,

improper tip pooling, excessive side work, unlawful deductions, unlawful uniform charges, and improper wage notices and wage statements.

Plaintiff Jessy Mangahas primarily worked at The Bao (for approximately four years) during her employment and only worked at Uluh for a year when The Bao was closed during the pandemic. Plaintiff Jessy Mangahas' employment was not disclosed or approved by the owner, Defendant Richard Lam. Furthermore, Plaintiff Pithchaya Wohlfahrt never worked at The Bao. Each may have a claim separately, but together, they are not adequate to represent the class.

### c. Class Certification is Inappropriate Under Rule 23(b)(3)

The Fed. R. Civ. P. 23(b)(3), states that "[a] class action may be maintained if Rule 23(a) is satisfied **and**, in relevant part, if … **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The matters pertinent to these findings include:

A.      the class members' interests in individually controlling the prosecution or defense of separate actions;

B.      the extent and nature of any litigation concerning the controversy already begun by or against class members;

C.      the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

D.      the likely difficulties in managing a class action.

*See* Fed. R. Civ. P. 23(b)(3).

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 58 (N.D.N.Y. 2021) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)). Predominance exists "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013).

Here, predominance is not met because the complained-of policies did not apply equally to all tipped employees, as they were employees of separate restaurants, each having its own policies. Plaintiffs cite *Shahriar*, 659 F.3d at 253, stating that "the Second Circuit affirmed the finding of predominance where the tipped workers alleged an improper tip pool because '[i]f Plaintiffs success in showing that the expediters . . . and/or managers were not eligible to receive tips . . . then each of the class plaintiffs will likely prevail on his or her section 196-d claims, although . . . damages will vary.'" However, unlike *Shahriar*, where the defendants in that matter were Smith & Wollensky Restaurant Group, Inc. (d/b/a Park Avenue Restaurant), and Fourth Walls Restaurant LLC (d/b/a Park Avenue Restaurant). Both corporations did business as Park Avenue Restaurant, clearly showing the intention for a single integrated enterprise. That is simply not the case here. The Bao and Uluh were formed as completely different restaurants, The Bao opening approximately in 2014 and Uluh in approximately 2018, and each formed to provide a different dining experience. *See* **Ex. 4**, 30(b)(6) Tr. at 17:2-9, 18:8-9. The intent of the owner for the Bao and Uluh was for them to operate separately as two distinct businesses with two different corporate entities and two different identities. Furthermore, as previously stated, the named Plaintiffs Jessy Mangahas and Pithchaya Wohlfahrt both have individual and unique claims of

retaliation. Additionally, whether opt-in Plaintiff Upendra Shahi should be a member of the class is yet to be seen given his unique role at The Bao.

Here again, Plaintiffs, in their Motion, assert the statement that the "Defendants admit that both Restaurants used the same wage notice forms, used the same process for new hires as to advising them of the tip credit, and they used the same paystubs." Plaintiffs go on to cite the *Zivkovic* Court, stating that "[t]he question of whether class members were properly paid can be addressed by class-wide proof regarding the defendants' payroll records, financial records, and testimony." *Zivkovic v. Laura Christy, LLC*, 329 F.R.D. 61, 75 (S.D.N.Y. 2018).

First, Defendants did admit to using the "same" wage notice forms, process for new hires, and paystubs. As with many other individual small businesses, the Defendants shared a similar, but not the same, process for new hires. However, all wage notice forms and paystubs were issued from the restaurants individually. Furthermore, Defendants' wage notices and paystubs were not created by the Defendants, where the wage notices were created by the New York Department of Labor and available online, and the paystubs were created by Defendants accountant. Notices to new hires regarding tip credits were tailored to the specific restaurant. Defendants maintain Plaintiffs have failed to prove that The Bao and Uluh are a single integrated enterprise, and as such the predominance under Rule 23(b)(3) has **not** been met as the claims of the individual class members dominate over the common questions of law or fact.

### d. Class Membership Is Neither Typical Nor Ascertainable

Although class membership must be able to be clearly defined, that is not possible here because class membership depends on a factual finding by the Court regarding who should and should not have received tips, which has not been defined.

A class must be identifiable before it may be properly certified. *Friedman—Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 154 (S.D.N.Y. 2010). This requirement is referred to as "ascertainability." *Id.*; *see also Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) ("Whether a proposed class is ascertainable is fundamental to certification."). "An identifiable class exists if its members can be ascertained by reference to objective criteria. Where any criterion is subjective, e.g., state of mind, the class is not ascertainable." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). A court must be able to determine who is in the class and is bound by its ruling "without engaging in numerous fact-intensive inquiries." *Bakalar*, 237 F.R.D. at 64.

Tipped employees at each restaurant may be ascertained by the business records maintained by each individual corporation. However, each should be handled separately as the business entities are not a single integrated enterprise. Plaintiffs' erroneous merger of the restaurants as a single integrated enterprise causes uncertainty as to the members of the class. Furthermore, fact-intensive inquiry, requiring heavy subjective analysis, must still be made in determining who should or should not have been considered a tipped employee. Due to this, it is still uncertain who belongs in the purported class without fact-intensive inquiries.

## IV. CONCLUSION

Plaintiffs' Fed. R. Civ. P. 23 motion is untimely and fails to satisfy the requirements of Rule 23 class certification. Therefore, Defendants respectfully request that this Court deny Plaintiffs' Motion for Class Certification in its entirety and grant whatever other and further relief this Court deems just, proper and equitable.

Dated: January 4, 2024
Hackensack, New Jersey

Respectfully submitted,
/s/ Jonathan Ng
**WHITE & NG, LLC**
Jonathan Ng
Rolanzo R. White
190 Moore Street, Suite 204
Hackensack, New Jersey 07601
Telephone: (201) 968-5022

*Attorneys for Defendants*

## CERTIFICATE OF BRIEF LENGTH CONFERRAL

I hereby certify that pursuant to the Court's Individual Rules of Practice, the Parties agreed that memoranda of law in support of and in opposition to Plaintiffs' Motion shall be limited to thirty (30) pages in length.

/s/ Jonathan Ng
Jonathan Ng