JESSY MANGAHAS, and PITHCHAYA WOHLFAHRT, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

    -against-

EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO, individually, and RICHARD LAM, individually,

                    Defendants.

Case No.: 1:22-cv-04150 (LJL)

## **DEFENDANTS' RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT**

In accordance with rule 3(D)(i) of the Individual Practices in Civil Cases of the Honorable Lewis J. Liman, Defendants respectfully submit their responses to the Plaintiffs' Statement of Material Facts submitted in support of their motion for partial summary judgment. Defendants set forth their responses in bold immediately beneath each statement set forth by Plaintiffs.

Evidence filed by Plaintiffs in support of their Motion are referred to as "P. Ex. #".

Evidence filed by Defendants in opposition are referred to as "D. Ex. #". All Defendants' exhibits are being filed with the Ng declaration being contemporaneously with this opposition.

I.    <u>Procedural Information & History</u>

1.    Plaintiff Jessy Mangahas filed the original class action complaint on May 20, 2022. ECF No. 1.

**<u>Defendants' Response</u>: Undisputed.**

2.    Plaintiff Mangahas filed an Amended Complaint on August 18, 2022. ECF No. 25.

**Defendants' Response**: **Undisputed.**

3.      The operative complaint is the Second Amended Complaint, which was filed on May 4, 2023. ECF No. 84.

**Defendants' Response**: **Undisputed.**

4.      As part of the Second Amended Complaint, the Named Plaintiffs in this matter are Jessy Mangahas and Pithchaya Wohlfahrt. ECF No. 84.

**Defendants' Response**: **Undisputed.**

5.      To date, 25 opt-in Plaintiffs have joined the case by submitting signed consent forms. See Ortiz Decl. ¶ 5; P. Ex. 1-1, Plaintiff Opt-In List.

**Defendants' Response**: **Undisputed.**

6.      During discovery, the Parties agreed that a sample size of 14 Plaintiffs would be subject to depositions. Ortiz Decl. 6. In addition to the two Named Plaintiffs, the Opt-in Plaintiffs who had their depositions were:

i.      Jason Quijije Cedeno

ii.     Jose Roman

iii.    Keno Daucsin

iv.     Prathana Phiphatchotika

v.      Thinley Kalsang

vi.     Upendra Shahi

vii.    Vorrawala Aphiromden

viii.   Wen Bin Zhu

ix.     Wochao Chen

x.      Yi Zhang

xi.    Ying Ying Yuan

xii.    Yongfeng Situ

**Defendants' Response: Undisputed.**

II.    <u>Background: Defendants' Businesses & Restaurant Information</u>

7.    The Bao is a restaurant located at 13 St. Mark Place, New York, New York 10003. P. Ex. 2, 30(b)(6) Dep. 18:10-16; P. Ex. 3, The Bao Website Excerpts. The Bao's website is located at https://www.thebaony.com/.    The    Bao's    menu    may    be    accessed    at https://www.thebaony.com/menu. *Id.* at 4.

**Defendants' Response: Undisputed.**

8.    Uluh is located two blocks away from The Bao at 152 2nd Avenue, New York, New York 10003. P. Ex. 2, 30(b)(6) Dep. 58:11-15. Uluh's website is located at https://www.uluhny.com/. Uluh's menu may be accessed at https://www.uluhny.com/menu. P. Ex. 4, Uluh Website & Menu Excerpts.

**Defendants' Response: Undisputed.**

9.    Both restaurants offer Chinese-influenced cuisine to its customers. P. Ex. 2, 30(b)(6) Dep. 26:8-12 (The Bao); 28:14-24 (Uluh); see also P. Ex. 3 at 4 (The Bao Menu); P. Ex. 4 at 10-11, 13-14 (Uluh Menu).

**Defendants' Response: Undisputed.**

10.    Defendant Eight Oranges Inc. is the corporate entity that operates The Bao. P. Ex. 2, 30(b)(6) Dep. 14:13-21.

**Defendants' Response: Undisputed.**

11.    Defendant Chibaola, Inc. is the corporate entity that operates Uluh. P. Ex. 2, 30(b)(6) Dep. 53:18-54:7.

**Defendants' Response**: **Undisputed.**

13.     Uluh opened in November 2018. P. Ex. 2, 30(b)(6) Dep. 17:2-10 (citing Uluh opened in either 2017 or 2018); P. Ex. 5, Uluh Tip Sheet Exemplars (earliest tip sheet produced is November 25, 2018).

**Defendants' Response**: **Undisputed.**

14.     From at least 2019 to the present, both The Bao and Uluh (together, "the Restaurants") have generated revenue in excess of $500,000.00 annually. P. Ex. 6, Defendants' Request for Admission Responses ("RFA Responses") Nos. 1-2.

**Defendants' Response**: **Undisputed.**

15.     From at least 2019 to the present, both The Bao and Uluh employed more than 2 employees. P. Ex. 6, RFA Responses Nos. 3-4.

**Defendants' Response**: **Undisputed.**

16.     Both The Bao and Uluh are covered employers under the FLSA and NYLL. P. Ex. 7, 56.1 Stipulation ¶1.

**Defendants' Response**: **Undisputed.**

17.     Both The Bao and Uluh employ front of house workers such as servers and bussers and offer in-person seating for customers. P. Ex. 2, 30(b)(6) Dep. 22:18-23:14 (waitstaff at The Bao); 29:8-21 (waitstaff at Uluh). The Bao can seat about 60 customers, with between 12 to 14 tables and Uluh can seat about 70 customers, with 16 to 20 tables. *Id.* at 20:6-13 (The Bao); 28:5-21 (Uluh). The Bao had a small outdoor space for a short period of time after the COVID-19 pandemic. *Id.* at 19:20:4. Uluh had a larger outdoor space that remained open to customers after the pandemic in the summers. *Id.* at 28:25-29:7.

**Defendants' Response**: **Undisputed.**

18.     The Bao's hours of operation are 11:30 am to 10:00pm on weekdays, with weekends ending at 10:30 pm. *Id.* 30(b)(6). Uluh's hours of operation are also from 11:30 am to 10:00 pm on weekdays, with weekends ending at 10:30 pm. P. Ex. 4 at 19 (Uluh website).

**Defendants' Response: Undisputed.**

19.     Uluh's basement operates as a central office for both Restaurants (hereinafter, "the Office") that maintains corporate, payroll, tax, timecard and other corporate records for both locations. P. Ex. 2, 30(b)(6) Dep. 54:18-55:25; 128:8-11 ("The office is supposed to keep a record of every employee[].")." The Office also has equal access to both Restaurants' business email addresses. P. Ex. 2, 30(b)(6) Dep. 66:6-22. Uluh's basement also houses supplies for The Bao. P. Ex. 2, 30(b)(6) Dep. at 58:16-59:2. P. Ex. 8, Dacusin Dep. 54:11-55:1; P. Ex. 9, Kalsang Depo. 32:16-33:4.

**Defendants' Response: Undisputed. Defendants clarify that there is an office in Uluh's basement that operates as a central office for both Restaurants that stores corporate payroll, tax, timecards, and other corporate records for Uluh and The Bao. P. Ex. 2, 30(b)(6) Dep. at 54:18-55:25. Whenever "the office" is referred to, Defendant Richard Lam ("Lam") is actually referring to Lu Mei Zhang ("Mei"). P. Ex. 2, 30(b)(6) Dep. at 76:2-9. The general manager for both Restaurants was Mei, who worked out of the office space at Uluh. P. Ex. 10, Corporate Defendants' Responses to First Interrogatories ("1st Corp. Rog") No. 1. Lu Mei Zhang was also the bookkeeper for both Restaurants. Defendants' Ex. ("D. Ex.") 1, 30(b)(6) Dep. at 167:10-12.**

20.     The general manager for both Restaurants was Lu Mei Zhang, who worked out of the Office. P. Ex. 10, Corporate Defendants' Responses to First Interrogatories ("1st Corp. Rog") No. 1; P. Ex. 2, 30(b)(6) Dep. 54:18-55:19;76:2-6; 95:7-11.

**Defendants' Response: Undisputed.**

21.     Both Restaurants use the same accountant for payroll and determining what requirements are necessary to comply with employment laws. P. Ex. 2, 30(b)(6) Dep. at 71:22-73:11.

**Defendants' Response: Undisputed.**

22.     The Restaurants share supplies between one another, with workers retrieving supplies as needed. P. Ex. 2, 30(b)(6) 58:16-59:2; P. Ex. 8, Dacusin Dep., 54:11-55:11; 55:5-21; P. Ex. 9, Kalsang Dep. 19:1-5; 32:16-33:4; P. Ex. 11, Phiphatchotika Dep. 31:2-12; P. Ex. 12, Yuan Dep. 38:20-25.

**Defendants' Response: Disputed. Due to limited space at The Bao, The Bao uses a storage room in Uluh's basement to store The Bao's restaurant supplies. P. Ex. 2, 30(b)(6) Dep. at 58:16-59:2. At times, employees of The Bao went to the storage room located at Uluh to retrieve supplies for The Bao. P. Ex. 8, Dacusin Dep. at 54:11-55:11, 55:5-21; P. Ex. 9, Kalsang Dep. 19:1-5, 32:16-33:4. It is noted that the restaurant supplies of The Bao and Uluh are uniquely distinct from one another, with The Bao and Uluh both having customized supplies for marketing. D. Ex. 2, Google Image by Customer of The Bao's Dinnerware; D. Ex. 3, Google Image by Customer of Uluh's Dinnerware.**

23.     Tipped Workers were sent to work between the Restaurants as directed by upper management without the need to retrain, re-interview, or reapply for work. P. Ex. 8, Keno Dep., 54:11-55:11;55:22-60:6; P. Ex. 11, Phiphatchotika Dep. 30:21-31:12; P. Ex. 9, Kalsang Dep. 33:11-34:10; P. Ex. 13, Aphiromden Dep. 8:20 – 9:5 ; 51:16-24; P. Ex. 14, Zhu Dep. 47:4 – 48:12; P. Ex. 15, Chen Depo. 18:25 – 19:20; 62:11-63:10; P. Ex. 16, Situ Depo. 54:3-21; P. Ex. 17, Zhang Depo. 30:2-31:5. *See* also P. Ex. 18 at 4, Stefan/Lam Text; P. Ex. 19 at 2, Shahi/Lam Text.

**Defendants' Response: Undisputed.**

24.     At least until the lawsuit began, employees were allowed to work simultaneously at both Uluh and The Bao, and their schedules were adjusted in coordination with the restaurants together. P. Ex. 20, Mangahas Decl.; P. Ex. 20-1, Mangahas/Du Text & 20-1; P. Ex. 21 Common Employee Payroll Summary.

**Defendants' Response: Disputed. Tipped employees were sent to work between The Bao and Uluh against the two companies' polices, against Lam's orders, and without Lam's knowledge. D. Ex. 1, 30(b)(6) Dep. at 107:21-108:21; P. Ex. 8, Keno Dep. at 54:11-55:11, 55:22-60:6; P. Ex. 16, Situ Dep. at 54:3-21.**

25.     The Restaurants utilize an identical handbook for its workforce. P. Ex. 22, Common Handbooks. Lam instructed the team leader or manager to create an employee handbook at Uluh with instructions to use the handbook from The Bao as a basis. P. Ex. 2, 30(b)(6) Dep. 63:16-65:16.

**Defendants' Response: Undisputed.**

26.     The Restaurants utilized identical wage notices and wage statements, with the only change being the corporate payor name, for its workforce, including for Plaintiffs and other workers. P. Ex. 2, 30(b)(6) Dep. 125:22-127:3 (discussing notices); 220:6-221:4 (discussing same wage statements). These forms are given to Defendants by their accountant. P. Ex. 2, 30(b)(6) Dep. 125:22-127:3 (discussing notices); 220:6-221:4 (discussing same wage statements).

**Defendants' Response: Undisputed.**

III.     <u>Plaintiffs' Employment at The Restaurants.</u>

27.      Plaintiff Jessy Mangahas worked at The Bao from approximately September 2018 through May 2022, and at Uluh from approximately December 2021 to November/December 2022.

She worked as a server and bartender. P. Ex. 23, Mangahas Dep.7:20-9:10; P. Ex. 1-2, Plaintiff Payroll Summaries.

**Defendants' Response: Disputed. Named Plaintiff Jessy Mangahas ("Mangahas") worked primarily as a server and host at The Bao from approximately September 2018 to May 2022, with some breakage in between due to the COVID-19 Pandemic. D. Ex. 4, Mangahas Dep. at 7:12-14:12. Mangahas also worked at Uluh from approximately December 2021 to November/December 2022. P. Ex. 23, Mangahas Dep. at 7:20-9:10.**

28.     Plaintiff Pithchaya Wohlfahrt worked at Uluh from approximately March 19, 2019 to March 1, 2023. P. Ex. 24, Wohlfahrt Dep. 10:9-22; P. Ex. 1-2. During her employment, she used her maiden name "Sirisawad." *Id.* She worked as a server. *Id.* at 10:25.

**Defendants' Response: Undisputed.**

29.     Opt-In Plaintiffs Thinley Kalsang, Keno Dacusin, Jinnapat Nutcharat, and Vorrawala Aphiromden worked at The Bao as front of house tipped workers. P. Ex. 9, Kalsang Dep. 9:21-10:8; 19:16-22 (started as a food runner and was promoted to server); P. Ex. 8, Dacusin Dep. 7:4-18 (started as a busser and was promoted to server); P. Ex. 13 Aphiromdechanon Dep. 9:12-18. *See* generally P. Ex. 1-2, Plaintiff Payroll Summaries.

**Defendants' Response: Undisputed.**

30.     Opt-In Plaintiff Upendra Shahi worked at The Bao first as a busboy and server from approximately January 2015 to 2017, then he was promoted to position of Team Leader in 2017, and was later promoted to Manager in 2018. He returned as a server in early 2022 through May 2022.  Ex. 25, Shahi Dep. 7:18-24; 8:2-10:13;14:3-15:11; Ex. 1-2, Plaintiff Payroll Summaries.

**Defendants' Response**: Disputed. Opt-In Plaintiff Upendra Shahi ("Shahi") began working at The Bao as a busboy in January 2015. D. Ex. 5, Shahi Dep. at 7:18-19. Plaintiff Shahi was then promoted to server approximately six months after he began working at The Bao. D. Ex. 5, Shahi Dep. at 14:16-22. Afterward, Plaintiff Shahi was again promoted to the position of Team Leader in approximately 2017. D. Ex. 5, Shahi Dep. at 14:23-15:5. Finally, Plaintiff Shahi was promoted to manager of The Bao sometime in 2018 and remained manager until he left The Bao in June of 2022. D. Ex. 5, Shahi Dep. at 10:7-9; 15:6-11.

31.     Opt-In Plaintiffs Dawa Kalsang, Ying Ying Yuan, Nixon Hernandez, Nima Dhondup, Anna Liu, Jia Hoa Jiang, Lin Jie Yang, Bibek Sambahamphe, Tunwalai Apirattanadul, Jose Roman, Wonsuk Choe, Tsz Wing Lam, Prathana Rattanacahi, and Meiling Huang worked at Uluh as front of house tipped workers. P. Ex. 12, Yuan Dep. 8:9-15; P. Ex. 26, Roman Dep. 9:5-12; P. Ex. 11, Rattanacahi Dep. 7:1-8:16; *see generally* P. Ex. 1-2, Plaintiff Payroll Summaries.

**Defendants' Response**: Undisputed.

32.     Opt-In Plaintiffs Wen Bin Zhu, Wochao Chen, Jason Cedeno, and Yi Zhang worked at both The Bao and Uluh as front of house tipped workers. P. Ex. 14, Zhu Dep. 13:19-15:7; P. Ex. 27, Cedeno Dep. 8:20-9:24; P. Ex. 17, Zhang Dep. 6:21-7:5; P. Ex. 15, Chen Dep. 8:15-20.

**Defendants' Response**: Undisputed.

33.     Defendants applied a "tip credit" towards the wages of Plaintiffs and other front of house Tipped Workers at both The Bao and Uluh. P. Ex. 2, 30(b)(6) Dep. 115:6-117:23; P. Ex. 7, 56.1 Stip ¶ 5; *see generally* P. Ex. 1-2, Plaintiff Payroll Summaries.

**Defendants' Response**: Undisputed.

IV.     Defendants' Roles and Responsibilities at the Restaurants.

34.     Lam is the current sole 100% shareholder of the corporate entities Eight Oranges Inc. and Chibaola, Inc. P. Ex. 2, Lam Dep. 12:17-19.

**Defendants' Response: Undisputed.**

35.     Lam identifies himself as owner and operator of the Restaurants and is listed as president in the corporate documents for Eight Oranges Inc. and Chibaola, Inc. P. Ex. 2, Lam Dep. 20:6-12; 28:3-14 (still considers self as owner and operator even as restaurants got under way).

**Defendants' Response: Undisputed.**

36.     Lam is married to co-Defendant Joanne Hong Bao ("Hong Bao"). P. Ex. 30, Lam Dep. 7:13-14.

**Defendants' Response: Undisputed.**

37.     Hong Bao's role at the Restaurants is that of "quality control." P. Ex. 30, Lam Dep. 17:20-20:3. She also thinks of herself as a "lady boss." P. Ex. 31, Hong Bao Dep. 20:18-24.

**Defendants' Response: Undisputed.**

38.     Lam and Hong Bao, are listed as principals for both Restaurants under the New York Liquor License applications. P. Ex. 28, Eight Oranges NYSLA App. at 2 (The Bao listing Hong Bao), P. Ex. 29, Chibaola NYSLA App. at 3 (Uluh listing Lam).

**Defendants' Response: Disputed. Lam is listed as the principal for Chibaola, Inc. under the New York State Liquor Authority license and according to New York State's Department of State. P. Ex. 29, Chibaola NYSLA App. At 3; D. Ex. 7, NY DOS for Uluh. Hong Bao was listed as the principal for Eight Oranges Inc. under the New York State**

**Liquor Authority license in 2014. P. Ex. 28, Eight Oranges NYSLA App.; D. Ex. 9, NY DOS for The Bao.**

39.     Both Lam and Hong Bao confirmed that they signed the liquor license applications and represented that they managed the respective Restaurants as principals. P. Ex. 28, Eight Orange NYSLA App. (P-JM-00168, 176-180); P. Ex. 29, Chibaola NYSLA App. (P-JM-00121-125).

**Defendants' Response: Undisputed.**

40.     Lam admits that the statements made in the liquor license applications about management are true, with currently, the only difference is that he is not at restaurants every day. P. Ex. 30, Lam Dep. 25:16-27:17; 28:3-14. Lam admits that Hong Bao signed as the principal because he would not be approved, and thus, it falsely listed Hong Bao as principal. *Id.* 12:18-16:10. Hong Bao admits that "[w]hatever document my husband asked me to sign, I signed." P. Ex. 31, Hong Bao Dep. 25:13-22.

**Defendants' Response: Undisputed. For clarification, Lam used an agent to assist him in the filing of the liquor license application for The Bao and was advised by the agent to use Hong Bao's name for the application as it would have been difficult to qualify for the liquor license under Lam's name. P. Ex. 30, Lam Dep. at 14:25-15:5.**

41.     Hong Bao signed an affidavit submitted to this Court dated August 31, 2022. Ex. 32, Hong Bao Affidavit. She did not understand this document when she signed it as she does not understand English. P. Ex. 31, Hong Bao Dep. 27:14-29:4.

**Defendants' Response: Undisputed.**

42.     Lam and Hong Bao are included on work group text messages for both Restaurants. P. Ex. 2, 30(b)(6) Dep. 47:6-16; P. Ex. 6, RFA Responses No. 18 (admitting Lam and Hong Bao participated in group chats involving employees from the restaurants).

**Defendants' Response**: **Undisputed.**

43.     As part of these work group text messages, Lam directs employees' job assignments, advises employees of changes to company policies, notes requested days off, and otherwise is in communication with employees. *See generally* P. Ex. 33, Uluh Group Text Messages; P. Ex. 34, Bao Group Text Messages.

**Defendants' Response**: **Undisputed.**

44.     Lam is involved with determining staffing levels at the Restaurants, including what workers should be sent to which location. P. Ex. 18, Stefan/Richard Texts; P. Ex. 19, Upen/Richard Texts.

**Defendants' Response**: **Disputed. Tipped employees were sent to work between The Bao and Uluh against the two companies' polices, against Lam's orders, and without Lam's knowledge. D. Ex. 1, 30(b)(6) Dep. at 107:21-108:21.**

45.     Hong Bao is also involved in these work text message chains, whereby she directs employees as to dish presentation. P. Ex. 31, Hong Bao Dep. 39:15-24; (admitting she was on text messages); P. Ex. 35, Hong Bao Texts.

**Defendants' Response**: **Undisputed.**

46.     Lam is able to hire and fire employees, including tipped workers and management such as team leaders and managers. P. Ex. 30, Lam Dep. 28:17-30:5; 30:15-31:14.

**Defendants' Response: Undisputed.**

47.     Lam and Hong Bao are involved in the hiring and interviewing process. P. Ex. 30, Lam Dep. 31:5-14; P. Ex. 12, Yuan Dep. 9:13-16 (had initial call with Lam before interview); P. Ex. 23, Mangahas Dep. 10:13-18 (interviewed with Lam); P. Ex. 25, Shahi Dep. 7:14-15 (interviewed with Lam); P. Ex. 17, Zhang Dep. 14:6-8 (interviewed with Lam and Hong Bao); P. Ex. 16, Situ Dep. 21:19-23:2, 24:8-22 (interviewed with Lam and Hong Bao); P. Ex. 8, Dacusin Dep. 41:23 – 25 (Lam and Hong Bao have the authority to hire and fire).

**Defendants' Response: Undisputed in part and disputed in part. Defendants do not dispute that Lam is involved in the hiring and interviewing process at The Bao and Uluh. However, Hong Bao's attendance at either The Bao or Uluh varied significantly to the point she would not be at either for a couple of months. D. Ex. 6, Hong Bao Dep. at 46:3-8. Even when Hong Bao was at either of the restaurants, her participation in the activities there varied greatly where Plaintiffs are unsure of her position at the Restaurants. D. Ex. 10, Dacusin Dep. at 42:1-9.**

48.      Lam is involved in employee evaluations. P. Ex. 36, Uluh Staff Evaluations.

**Defendants' Response: Undisputed.**

49.     Hong Bao takes an active role in the running of service, including directing tipped workers in the presentation of food, side work, and cleanliness of the Restaurants. P. Ex. 9, Kalsang Dep. 48:23-49:12 (Hong Bao pointed out what was wrong on the floor in terms of cleanliness); P. Ex. 14, Zhu Dep. 20:19-21:15 (In the WeChat group Hong Bao gave "instruction of what to do and she suggest what to display."); P. Ex. 12, Yuan Dep. 36:3-20 (Hong Bao instructed her to perform side work and how to sell new food items to customer).

**Defendants' Response**: Disputed. Hong Bao's attendance at either The Bao or Uluh varied significantly to the point she would not be at either for a couple of months. D. Ex. 6, Hong Bao Dep. at 46:3-8. Even when Hong Bao was at either of the restaurants, her participation in the activities there varied greatly where Plaintiffs are unsure of her position at the Restaurants. D. Ex. 10, Dacusin Dep. at 42:1-9. Hong Bao occasionally commented and informed Lam of issues with the Restaurants cleanliness and issues with the presentation of dishes. D. Ex. 4, Mangahas Dep. at 92:10-16; D. Ex. 6, Hong Bao Dep. 64:4-11.

Hong Bao was directed by Lam to order supplies (not including food supplies or drink supplies) for The Bao and Uluh as needed. D. Ex. 6, Hong Bao Dep. at 37:3-38:15.

50. Ultimately, employees, including management employees, report to Lam. P. Ex. 30, Lam Dep. 31:21-32:3; 34:2-11.

**Defendants' Response**: Undisputed.

51. Lam and Hong Bao order items for the restaurants as needed. Ex. 31, Hong Bao Dep. 37:3-6; 34:35:23 (ordering supplies on a daily basis).

**Defendants' Response**: Undisputed.

52. Lam has the authority as owner to set the hours of operations for the Restaurants. Ex. 30, Lam Dep. 31:21-32:3; 34:2-11.

**Defendants' Response**: Undisputed.

53. Lam has the authority to put either Restaurant into bankruptcy or close the Restaurants. Ex. 30, Lam Dep. 31:21-32:3; 34:2-11.

**Defendants' Response**: Undisputed.

54.     Lam, along with general manager and Lu Mei Zhang, were involved in determining the rates of pay applicable to Plaintiffs and other tipped workers. Ex. 10, 1st Corp. Rog No. 6.

**Defendants' Response: Undisputed.**

V.      Defendants' Violations of the FLSA and NYLL

    a.      Defendants' lack of tip credit notice.

55.     Plaintiff Mangahas was not given any information, written or verbally, about the method in which she was to be paid at her hire. P. Ex. 23, Mangahas Dep. 41:16 – 42:2.

**Defendants' Response: Disputed. Mangahas was provided verbal and written notice. D. Ex. 4, Mangahas Dep. at 40:20-23; P. Ex. 37, Wage Notices.**

56.     Plaintiff Wohlfahrt was not given any information, written or verbally, about the method in which she was to be paid at her hire. P. Ex. 24, Wohlfahrt Dep. 14:18-15:11.

**Defendants' Response: Undisputed.**

57.     Plaintiffs Ying Ying Yuan, Keno Dacusin, Jose Rodriguez, Prathana Phiphatchotika, Wochao Chen, Yi Zhang, and Yongfeng Situ were not given any information verbally about the method in which they were to be paid. P. Ex. 12, Yuan Dep. 12:16-18-13:2, 16:17-23; P. Ex. 8, Dacusin Dep. 13:13-23; 29:16-24; P. Ex. 26, Roman Dep. 22:11-20; 26:8-11; P. Ex. 11, Phiphatchotika Dep. 15:11-16:23; 17:15-19; 20:2-8; P. Ex. 15, Chen Dep. 12:15 - 13:11; 34:23-36:6; P. Ex.  17, Zhang Dep. 13:12-23; Situ 34:13 -35:7.

**Defendants' Response: Undisputed.**

58.     Plaintiffs Upendra Shahi, Jason Cedeno, Vorrawalan Aphiromdechanon, Thinley Kalsang, and Wen Bin Zhu were only told they would be receiving $10 per hour plus tips. P. Ex.

25, Shahi Dep. 32:18-34:2; P. Ex. 27, Cedeno Dep. 36:18-37:6; P. Ex. 13, Aphiromdechanon Dep. 17:5-20; P. Ex. 9, Kalsang Dep. 59:1-11; P. Ex. 14, Zhu Dep. 9:21-12:1.

**Defendants' Response: Undisputed in part and disputed in part. Labor law posters were posted at the Restaurants informing employees of pay requirements. D. Ex. 11, Defendants' Labor Law Posters.**

59.     There is no orientation for new hires; rather, just on the job training. P. Ex. 2, 30(b)(6) Dep. 119:25-120:11. Defendants are unable to state what, if anything, team leaders are to inform new hires about their rates of pay. P. Ex. 2, 30(b)(6) Dep. 121:12-124:5. There is no interview guide or checklist at the Restaurants used when hiring employees.  P. Ex. 2, 30(b)(6) Dep. 119:13-119:17. There is no written document informing team leaders what should be told to new hires about their compensation methods. *Id.* 123:2-124:5.

**Defendants' Response: Undisputed.**

60.     The Restaurants' accountant does not talk to new hires about their methods of compensation. P. Ex. 2, 30(b)(6) Dep. 120:14-20.

**Defendants' Response: Undisputed.**

61.     The wage notices enclosed as Exhibit 37 are the same basic form utilized at both Restaurants to new hires. P. Ex. 2, 30(b)(6) Dep. 124:11-127:3

**Defendants' Response: Undisputed.**

62.     The wage notices in Exhibit 37 are incomplete. P. Ex. 2, 30(b)(6) Dep. 125:14-19.

**Defendants' Response: Undisputed.**

63.     Defendants have no way to confirm that all employees received a wage notice, or even a wage notice that is completely and properly filled out. P. Ex. 2, 30(b)(6) Dep. 128:4-16.

**Defendants' Response: Undisputed.**

    b.   Defendants Required Plaintiffs and Other Tipped Workers to Share Tips with Management.

64. Below Lam, the day-to-day managers at the Restaurants are known as "Team Leaders." P. Ex. 2, 30(b)(6) Dep. 77:11-19. Additionally, Defendants identified the general manager for both Restaurants was Lui Mei Zhang. P. Ex. 10, 1st Corp Rog Nos. 6, 7 ("Lui Mei Zhang is the general manager for both restaurants since 2015.").

**Defendants' Response: Undisputed in part and disputed in part. Although there were times that the Team Leaders of the Restaurants were directly below Lam, Defendants maintain that Team Leaders are a separate position from managers. D. Ex. 1, 30(b)(6) Dep. at 75:4-6. There were multiple managers at the Restaurants below Lam and above Team Leaders, such as, Plaintiff Shahi was the manager of The Bao from 2018 until June 2022. D. Ex. 5, Shahi Dep. at 10:7-9; 15:6-11. Yunrui Du was also the manager of Uluh at one point. D. Ex. 1, 30(b)(6) Dep. at 203:15-19. Lu Mei Zhang was the general manager for both Restaurants, along with being a Team Leader at Uluh. *See* P. Ex. 10, 1st Corp Rog Nos. 6, 7 ("Lu Mei Zhang is the general manager for both restaurants since 2015.").**

65. The following individuals worked as team leaders at the restaurants:

    a.  Alana Lin (the Bao): 2014 to 2016

    b.  Upendra Shahi (the Bao): 2016 – 2020

    c.  Sha Kang He (the Bao): 2021 to 2022

    d.  Lu Mei Zhang (Uluh): 2017 to 2022;

e. Yunrui Du (Uluh): 2022 to 2023;

f. Napatwaran Amnueychotthavee: 2023 to present

g. Suttiprapa Rachata: 2023 to present

h. Yu Tang: 2023 to present

P. Ex. 28, 2d Corp. Rogs No. 17 (dated 1/9/2024).

**Defendants' Response: Undisputed.**

66. These individuals were in the tip pool at both The Bao and Uluh. P. Ex. 6, RFA No. 10 (admitting team leaders identified in Interrogatory No. 17 received a portion from tips from the tip pools at the respective restaurants during the time period listed) (dated 3/2/2024); P. Ex. 2, 30(b)(6) Dep. 86:15-87:11; 89:10-90:7.

**Defendants' Response: Undisputed.**

67. Team Leaders' responsibilities at both Restaurants included, but were not limited to hiring, firing, discipling, scheduling, promoting, determining tip percentages for employees, handling the tip sheet, accessing company email accounts, and creating policies and the handbook. *See* P. Ex. 2, 30(b)(6) Dep. 64:13-16: 67:23-68:6 (ordered the manager or team leader to create a handbook for Uluh); 65:21- 66:19 (team leader and managers have access to the email used for official restaurant business); 75:7-21 (Team Leaders are responsible for scheduling, tip sheet, customer complaints, disciplining, hiring, and firing); 77:3-4; (Team Leaders close the register); 79:15-81:16; (Uluh's Team Leaders similarly hired, fired, disciplined, promote, scheduling, tip sheets, and closed the register); 56:25-57:4 (Team Leaders assigned work duties).

**Defendants' Response: Undisputed.**

68. Team Leaders receive a larger percentage of tips than other tipped workers. P. Ex. 2, 30(b)(6) Dep. 86:15-87:11.

**Defendants' Response: Undisputed.**

69. The general manager created the tip pooling arrangement at both Restaurants. P. Ex. 10, 1st Corp Rog No. 3 ("the general manager made sharing and allocation policies used at both restaurants").

**Defendants' Response: Undisputed.**

70. Team Leaders received a total of $309,518.13 for the years 2015 through 2023 based on payroll records provided in discovery. P. Ex. 39, Tip Misappropriation Summary.

**Defendants' Response: Undisputed.**

     c.   Side work duties at The Restaurants.

71. In addition to waiting on customers, Plaintiffs and other Tipped Workers at the Restaurants performed "side work" as part of their regular job duties. P. Ex. 23, Mangahas Dep. 80:24-82:18; P. Ex. 27, Cedeno Dep. 16:10-17:2; 19:16-20:6; P. Ex. 9, Kalsang Dep. 9:24-10:8; 50:6-17; P. Ex. 8, Dacusin Dep. 45:5-49:12; 55:5-21; P. Ex. 26, Roman Dep.24:23-25:13; P. Ex. 14, Zhu Dep. 45:17-46:8; P. Ex. 25, Shahi Dep. 122:6-123:11; P. Ex.13, Aphiromdechanon Dep. 11:23-12:5; P. Ex. 15, Chen Dep. 25:13-26:16; P. Ex. 12, Yuan Dep. 33:19-35:5; P. Ex. 16, Situ Dep. 15:10-18:5; P. Ex. 14, Zhu Dep. 45:17-47:2; P. Ex. 24, Wohlfahrt Dep. 44:22-45:7.

**Defendants' Response: Undisputed.**

72. Defendants do not and did not keep track of time Plaintiffs spent performing side work. P. Ex. 2, 30(b)(6) Dep. 188:17-189:6; 197:14-198:24.

**Defendants' Response: Undisputed.**

73. Defendants did not perform any studies to determine the amount of side work performed by Tipped Workers. P. Ex. 2, 30(b)(6) Dep. 198:15-24; 206:22-207:17.

**Defendants' Response**: **Undisputed.**

74. Defendants failed to produce a witness for a 30(b)(6) deposition that could attest to the specifics of the side work performed at the Restaurants. P. Ex. 2, 30(b)(6) 186:2-21; Ortiz Decl. ¶ 7 (ultimately no witness was produced).

**Defendants' Response**: **Undisputed.**

75. Side work was not based on the individual or the specific day but was based upon ultimately business needs on a given day. See P. Ex. 2, 30(b)(6) Dep. 190:3-191:9.

**Defendants' Response**: **Undisputed.**

76. Plaintiffs who were asked specifically to estimate their time performing side work recalled substantial time doing so. P. Ex. 23, Mangahas Dep. 84:3-8 (estimating around 2 hours daily); P. Ex. 25, Shahi Dep. 112:13-22 (estimating 2 to 3 hours daily); P. Ex. 9, Kalsang Dep. 44:25-45:5 (at least 2 hours); P. Ex. 8, Dacusin Dep. 51:9-52:21 (estimating opening side work at 30 minutes and running side work between 2 to 3 hours); P. Ex. 14, Zhu Dep. 45:17-47:2; Ex. 11, Phiphatchotika Dep. 26:18-27:6 (cleaned entire floor with sponge over 3-4 hours); Zhu (opening side work 1 hours and 3 hours cleaning); P. Ex. 17, Zhang Dep. 7:19- 8:6; 33:11-25 (2-3 hours performing side work); P. Ex. 12, Yuan Dep. 33:19-35:5 (2 to 3 hours performing side work).

**Defendants' Response**: **Undisputed.**

77. Plaintiffs performed side work prior to, during, and at the end of their shifts at both Restaurants. P. Ex. 24, Wohlfahrt Dep. 44:13:19; P. Ex. 23, Mangahas Dep. 83:13-19; P. Ex. 8,

Dacusin Dep. 51:9-18; 52:12-21; P. Ex. 14, Zhu Dep. 45:17-46:8 (attesting to 1 hour); P. Ex. 16, Situ Dep. 18:13-19:5 (30-45 minutes to set up in the morning); P. Ex. 17, Zhang Dep. 33:11-25 (30 minutes to open); P. Ex. 13, Aphiromdechanon Dep. 12:24-13:17 (opening side work 30-45 minutes).

**Defendants' Response**: **Undisputed. For clarification, the times in this Paragraph 77 are estimates and not concrete figures.**

78. Opening Tipped Workers generally arrived about 30 to 45 minutes before the opening time for both Restaurants, though opening side work could take up to 1 hour. P. Ex. 24, Wohlfahrt Dep. 44:13:19; P. Ex. 23, Mangahas Dep. 83:13-19; P. Ex. 8, Dacusin Dep. at 51:9-18: P. Ex. 14, Zhu Dep. 45:17-46:8 (attesting to 1 hour); P. Ex. 16, Situ Dep. 18:13-19:5.

**Defendants' Response**: **Undisputed. For clarification, the times in this Paragraph 78 are estimates and not concrete figures.**

79. Opening side work during this time generally consisted of: (1) wiping down the floors, (2) refilling chopsticks, napkins, glasses, and plates, (3) cleaning the restrooms, (4) setting up the chairs, (5) setting up the tables, (6) fixing and cleaning the flowers on each table, (7) shoveling snow, (8) spraying outside with water and bleach, (9) cleaning the occasional vandalism, and (10) filling up the water bottles and pitchers, (11) organizing and arranging flowers, (12) making tea. P. Ex. 23, Mangahas Dep. 80:24-82:18; P. Ex. 27, Cedeno Dep. 16:10-20; P. Ex. 9, Kalsang Dep. 50:6-17; P. Ex. 14, Zhu Dep. 18:13-19:2; P. Ex. 16, Situ Dep. 15:10-18:5; P. Ex. 12, Yuan Dep. 33:19-35:5.

**Defendants' Response**: **Undisputed.**

80. As a result of the COVID-19 pandemic, The Bao used outdoor seating which caused Tipped Workers to set up for outdoor dining every morning and deep cleaned the area. P. Ex. 23, Mangahas Dep. 81:22-82; P. Ex. 8, Dacusin Dep. 45:5-12, 47:1-16 (deep clean the outdoor area due to homelessness); P. Ex. 9, Kalsang Dep. 49:19-51:10.

**Defendants' Response: Undisputed.**

81. Uluh similarly has an outdoor space that requires daily set up and cleaning. P. Ex. 14, Zhu Dep. 18:16-19; P. Ex. 24, Wohlfahrt Dep. 11:1-11; P. Ex. 16, Situ Dep. 15:10-25; P. Ex. 11, Phiphatchotika Dep. 26:23-27:6.

**Defendants' Response: Undisputed.**

82. Schedules for front of house workers assigned cleaning duties, such as hourly bathroom cleaning assignments and window cleaning. P. Ex. 40, Bathroom Assignment Schedules; P. Ex. 41, Cleaning Assignment Schedule.

**Defendants' Response: Undisputed.**

83. During the shift, Tipped Workers were required to engage in on-going side work, such as: (1) scraping the kitchen floor, (2) cleaning the windows inside and outside, (3) throwing out the garbage, (4) loading and unloading the dishwasher, (5) making champagne milk teas and lemonade, (6) cleaning the bar area, (7) cleaning green beans, and (8) moving the sofas around and cleaning its cushions. P. Ex.23, Mangahas Dep. 80:24-82:18; P. Ex. 27, Cedeno Dep. 16:24-17:2; P. Ex. 9, Kalsang Dep, 50:6-17; P. Ex. 8, Dacusin Dep. 55:5-21 (running side work was about 2- 3 hours a day and picking up supplies at Uluh took place 4-5 times a week, a few times a day which lasted around 30 minutes); P. Ex. 26, Roman Dep. 24:23-25:9; P. Ex. 14, Zhu Dep. 45:17-46:8; P. Ex. 12, Yuan Dep. 33:19-34.

**Defendants' Response: Undisputed. For clarification, the times in this Paragraph 83 are estimates and not concrete figures.**

84. Tipped Workers were required to perform closing side work duties including but not limited to, (1) restocking for the morning shift, (2) sweeping and mopping the floor, (3) decorating the restaurant for holidays, (4) cleaning the couches, (5) cleaning the restroom, (6) cleaning dishes, (7) making tea, and (8) refilling the soups. P. Ex. 27, Cedeno Dep. 16:12-20; 19:16-20:6; P. Ex. 25, Shahi Dep. 122:6-123:11; P. Ex. 12, Yuan Dep. 34:19-22.

**Defendants' Response: Undisputed.**

    d.  Uniforms

85. At The Bao, Defendants required Plaintiffs and other Tipped Workers to wear uniform tops that had the company logo, which ranged from t-shirts to polos. P. Ex. 2, 30(b)(6) Dep. 211:3-17. For the uniforms with the company logo, Defendants began to charge workers $10 to $15 per uniform as a "deposit." *Id.* 211:18-212:25.

**Defendants' Response: Undisputed.**

86. At Uluh, the uniform is a half button shirt with the Uluh logo. P. Ex. 2, 30(b)(6) Dep. 213:2-18. The "deposit" for this is believed to be about $20.00 per shirt. *Id.* 213:19-23. However, Plaintiff Dacusin recalls the charge being closer to $25.00. P. Ex. 8, Dacusin Dep. 60:17-61:14; 8:24-9:2.

**Defendants' Response: Undisputed.**

87. Defendants policy was that any deposits left would be returned to employees after the return of the uniforms. P. Ex. 2, 30(b)(6) Dep. 212:7-213:10.

**Defendants' Response**: **Undisputed.**

88. An offer to return the deposit was not communicated to all Plaintiffs. P. Ex. 24, Wohlfahrt Dep. 46:19-47:24; P. Ex. 27, Cedeno Dep. 50:16-21.

**Defendants' Response**: **Undisputed.**

89. Not all Plaintiffs who returned their uniforms received their deposit back. P. Ex. 23, Mangahas Dep. 102:2-11; P. Ex. 9, Kalsang Dep. 21:16-23:10.

**Defendants' Response**: **Undisputed.**

  e.  Wage Statements Received by Plaintiffs

90.  The same accountant created the paystubs provided to Plaintiffs. P. Ex. 2, 30(b)(6) Dep. 220:6-221:4.

**Defendants' Response**: **Undisputed.**

91. Plaintiffs received paper pay checks, which had a paystub attached to them. P. Ex. 2, 30(b)(6) Dep. 215:23-216:6. Specifically, Plaintiffs would receive a paper paycheck that had attached to it a paystub like those in Exhibit 42. P. Ex. 2, 30(b)(6) Dep. 217:21-218:6 (hereinafter "Paycheck Paystubs"); *see also* P. Ex. 43, Meiling Paycheck Stub Samples; P. Ex. 44, Chen Paystubs.

**Defendants' Response**: **Undisputed.**

92. Prior to getting their paper checks, Defendants stated that the Restaurants required Plaintiffs and other workers to sign off on their timecards, which had attached to them a paystub like those in Exhibit 45. P. Ex. 2, 30(b)(6) Dep. 215:11-216:17 (hereinafter "Timecard Paystubs").

**Defendants' Response**: **Undisputed.**

93. There is only one copy of the paystub that is stapled to the timecards. P. Ex. 2, 30 (b)(6) Dep. 216:8-11. Defendants retain the timecard and the Timecard Paystub. *Id*.

**Defendants' Response: Undisputed.**

94. The Timecard Paystub is not the paystub that is directly attached to the paper paycheck. P. Ex. 2, 30(b)(6) Dep. 217:218:6; P. Ex. 43, Meiling Paystubs.

**Defendants' Response: Undisputed.**

95. Prior to this lawsuit, Plaintiffs were generally not shown the Timecard Paystub, were not allowed to keep, or given a copy of, the Timecard Paystub along with their paper paychecks. P. Ex. 9, Kalsang Dep. 12:6-14:25; 17:3-18:14; P. Ex. 8, Dacusin Dep. 21:1-8; 29:5-12:31:6-19; 35:13-36:1; P. Ex. 13, Aphiromdechanon Dep. 21:16-22:7; 37:8-15; 52:5-53:13; P. Ex. 12, Yuan Dep. 22:13-17; P. Ex. 16, Situ Dep. 43:3- 12; 45:14-46:5; P. Ex. 17, Zhang Dep. 12:17-13:11; P. Ex. 23, Mangahas Dep. 42:7-43:12; 42:23-45:11; P. Ex. 26, Roman Dep. 16:20-18:2; P. Ex. 15, Chen Dep. 33:6-34:22; P. Ex. 25, Shahi Dep. 126:7-13; P. Ex. 14, Zhu Dep. 26:11- 28:4; P. Ex. 8, Cedeno Dep. 26:20- 27:25.

**Defendants' Response: Disputed. Prior to getting their paper checks, Defendants stated that the Restaurants required Plaintiffs and other workers to sign off on their timecards, which had attached to them a paystub like those in Exhibit 45. P. Ex. 2, 30(b)(6) Dep. 215:11-216:17.**

96. Plaintiffs were unable to calculate their wages or understand their compensation by looking at their paystubs. P. Ex. 8, Dacusin Dep. 21:1-8; 29:5-12:31:6-19; 35:13-36:1; P. Ex. 13, Aphiromdechanon Dep. 37:8-15; P. Ex. 12, Yuan Dep. 22:13-17; P. Ex. 16, Situ Dep. 43:3-12; 45:14-46:5; P. Ex. 17, Zhang Dep. 12:17-13:11.

**Defendants' Response**: Undisputed.

97. After the filing of this lawsuit, Plaintiffs began to receive copies of both the Timecard Paystubs and Paycheck Paystubs. P. Ex. 14, Zhu Dep. 26:11-28:4; 49:18-24; P. Ex. 16, Situ Dep. 30:16-33:8; P. Ex. 44, Chen Paystubs. Indeed, some Plaintiffs did not recognize these Timecard Paystubs when questioned about it during their depositions. P. Ex. 8, Dacusin Dep.16:20-17:18; P. Ex. 12, Yuan Dep. 13:8-15:17; P. Ex. 17, Zhang Dep. 12:17-13:11; P. Ex. 16, Situ Dep. 30:16-33:8.

**Defendants' Response**: Undisputed.

98. Defendants switched to a new accountant in 2023 and to date Tipped Workers receive a wage statement in the format enclosed in Exhibit 46. P. Ex. 2, 30(b)(6) Dep. 221:6-222:8; P. Ex. 46, 2023 Paystubs.

**Defendants' Response**: Undisputed.

    f.   Defendants' Efforts to Comply with the FLSA and NYLL.

99. The Restaurants had a general understanding of the FLSA and NYLL that they gleamed from the internet and their accountant. P. Ex. 2, 30(b)(6) Dep. 222:10-223:10.

**Defendants' Response**: Undisputed.

100.       Defendants did not reach out or retain any employment-specific attorney to set up employment practices or to review or audit their practices while in operation. P. Ex. 2, 30(b)(6) Dep. 223:16-224:13.

**Defendants' Response**: Undisputed.

101.     Plaintiffs Jessy Mangahas, Thinley Kalsang, Ying Ying Yuan, Wen Bin Zhu, Prathana Phiphatchotika, Jason Cedeno, Wochao Chen, Yongfeng Situ, Keno Dacusin made complaints to Defendants about perceived wage violations. P. Ex. 23, Mangahas Dep. 59:11-21; P. Ex. 9, Kalsang Dep. 48:14-22; 49:13-18; P. Ex. 12, Yuan Dep. 28:22-29:12; P. Ex. 14, Zhu Dep. 51:13-52:8; P. Ex. 11, Phiphatchotika Dep. 25:9-23; P. Ex. 27, Cedeno Dep. 46:12-47:1; P. Ex. 15, Chen Dep. 46:24- 48:14; P. Ex. 16, Situ Dep. 40:13-41:18; 58:15-11; P. Ex. 8, Dacusin Dep. 21:20- 24.

**Defendants' Response: Undisputed.**

102.     Despite Plaintiffs complaints and questions no corrective action was taken or answers/solutions provided. P. Ex. 23, Mangahas Dep. 60:1- 18; P. Ex. 15, Chen Dep. 46:24- 48:14; P. Ex. 16, Situ Dep. 40:13-41:18; 58:15-11; P. Ex. 12, Yuan Dep. 28:22-29:12; P. Ex. 8, Dacusin Dep. 21:20- 24; P. Ex. 11, Phiphatchotika Dep. 25:9-23; P. Ex. 9, Kalsang Dep. 48:14-22; 49:13-18; P. Ex. 27, Cedeno Dep. 46:12-47:1; P. Ex. 14, Zhu Dep. 51:13-52:8.

**Defendants' Response: Disputed. After the filing of this lawsuit, Plaintiffs began to receive copies of both the Timecard Paystubs and Paycheck Paystubs. P. Ex. 14, Zhu Dep. 26:11-28:4; 49:18-24; P. Ex. 16, Situ Dep. 30:16-33:8; P. Ex. 44, Chen Paystubs.**

103.     Defendants were sued for owed wages in 2020 in the matter of *Wu v. Eight Oranges, Joanne Hong Bao, Richard Lam, and Alana Lin*. P. Ex. 47 (Complaint).

**Defendants' Response: Undisputed.**

104.     Defendants did not retain anyone to review their employment practices after this lawsuit. P. Ex. 2, 30(b)(6) Dep. 225:18-226:4.

**Defendants' Response: Undisputed.**

105.     After the lawsuit, the same wage form is used for Tipped Workers without any change. Ex. 2, 30(b)(6) Dep. 137:22-140:6. The Team Leaders identified in place in 2023 also continue to receive tips. *See* Ex. 6, RFA Responses No. 10; Ex. 38, 2d Corp. Rogs No. 17.

**Defendants' Response: Undisputed.**

Date:   May 20, 2024                              Respectfully submitted,
        Hackensack, New Jersey

                                                 /s/ Jonathan Ng
                                                 **WHITE & NG, LLC**
                                                 Jonathan Ng
                                                 Rolanzo R. White
                                                 190 Moore Street, Suite 204
                                                 Hackensack, New Jersey 07601
                                                 Telephone: (201) 968-5022

                                                 *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing with the Court using the CM/ECF filing system, which will send a true and correct copy to all counsel of record. I also certify that I served via email to counsel for Plaintiffs a word version of this document on the date above.

Brian S. Schaffer
Armando A. Ortiz
Katherine Bonilla
**Fitapelli & Schaffer, LLP**
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

                                                 /s/ Jonathan Ng
                                                 Jonathan Ng