# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSY MANGAHAS, and PITHCHAYA WOHLFAHRT, on behalf of themselves and all others similarly situated,<br><br>                        Plaintiffs,<br><br>    -against-<br><br>EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO, individually, and RICHARD LAM, individually,<br><br>                        Defendants. | Case No.: 1:22-cv-04150 (LJL) |

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**WHITE & NG, LLC**
Jonathan Ng
Rolanzo R. White
190 Moore Street, Suite 204
Hackensack, New Jersey 07601
Telephone: (201) 968-5022

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................... 1

II.  COUNTERSTATEMENT OF MATERIAL FACTS ..................................... 2

    a.   Restaurant Background ........................................................................ 2

    b.   Plaintiffs' Employment with Defendants .......................................... 5

    c.   Defendants' Ownership and Responsibilities at The Bao and Uluh .......... 6

    d.   Defendants Used the Tip Credit to Pay Front of House Employees. .......... 8

    e.   Defendants Efforts Constitute Tip Credit Notice to Front of House Employees. ....... 8

    f.   Plaintiffs' Allegations of Shared Tips with Management. ........................... 8

    g.   Side Work Performed at The Bao and Uluh. ................................... 10

    h.   Uniform Deposit ................................................................................ 11

    i.   Defendants Provided Wage Statements to Plaintiffs and Other Employees. ........... 11

    j.   Defendants' Efforts to Comply with the FLSA and NYLL. ...................... 12

III. APPLICABLE LAW AND STANDARDS ................................................. 12

    a.   Standard for Summary Judgment ..................................................... 12

    b.   Representative Evidence .................................................................... 13

    c.   Determination of Liability Prior to Determination of Damages ............... 14

IV.  ARGUMENT ........................................................................................... 14

    a.   Plaintiffs were Employees of the Corporate Entities, and Defendants are Governed by the FLSA and NYLL. ....................................................... 14

b. The Restaurants Do Not Operate as a Single Integrated Enterprise. ....................... 15

   i. Centralized Labor Relations. ................................................................. 15

   ii. Common Management. ......................................................................... 17

   iii.   Common Ownership. ....................................................................... 17

c. Individual Liability. ............................................................................... 18

   i. Richard Lam Is an Employer. ............................................................... 19

   ii. Joanne Hong Bao Is Not an Employer. ................................................. 20

d. Defendants Provided Proper Notice of the Tip Credit to Plaintiffs and other Tipped Workers. ................................................................................................... 23

   i. FLSA Notice Requirements ................................................................. 24

   ii. NYLL Notice Requirements ................................................................. 24

   iii.   Defendants Efforts Constitute Notice Under the FLSA and NYLL. ................ 25

e. Defendants' Tip Pools and Alleged Tip Misappropriation at the Restaurants. ........ 26

f. Plaintiffs' Side Work at the Restaurants Were Not Excessive. ................................. 27

g. Defendants' Uniform Requirements. .......................................................... 28

h. Defendants Provided Proper Wage Notices and Accurate Wage Statements. .......... 28

   ii. Defendants Wage Statements Provided to Plaintiffs are Sufficient. ...................... 29

i. Defendants Did in Fact Make a Good Faith Effort to Comply with the FLSA and NYLL. ................................................................................................... 30

V.   CONCLUSION ................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Ametepe v. Peak Time Parking Corp.*, No. 18 Civ. 5384 (PAE)(SDA), 2021 WL 1172669, (S.D.N.Y. Mar. 29, 2021) ................................................................. 29

*Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184 (S.D.N.Y. 2003).................... 19

*Apolinar v. Global Deli & Grocery, Inc.*, No. 12 Civ. 3446, 2013 WL 5408122 (E.D.N.Y. Sept. 25, 2013) ........................................................................ 30

*Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193 (2d Cir. 2005) ........................................ 15

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013) ... 26, 27

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) ................. 14, 30

*Bedasie v. Mr. Z Towing, Inc.*, No. 13 Civ. 5453 (CLP), 2017 WL 1135727 (E.D.N.Y. Mar. 24, 2017) ........................................................................ 30

*Bravo v. Rodriguez*, No. 18 Civ. 5807 (BMC) (RER), 2020 WL 4586391 (E.D.N.Y. Aug. 10, 2020) ........................................................................ 29

*Cabrera, v. Canela*, 412 F. Supp. 3d 167 (E.D.N.Y. 2019) ....................................................... 25

*Celotext Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................ 13

*Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29 (2d Cir. 1994)................................................. 12

*Chen v. Hunan Manor Enterprise, Inc.*, No. 17 Civ. 802, 2023 WL 5574854 (S.D.N.Y. Aug. 29, 2023) ................................................................... 15, 25

*Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269 (E.D.N.Y. 2005) ................................ 19

*Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240 (S.D.N.Y. 2021) .......................................... 25

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995) ............................................ 16

*Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654 (2d Cir. 2009) ............................................... 13

IV

*Dominguez v. Metropolitan Wireless Anadpur Inc.*, No. 21 Civ. 2240, 2022 WL 1164709, (S.D.N.Y. Jan. 27, 2022) ..................................................................................... 29

*Galvez v. 800 Ginza Sushi Inc.*, 19 Civ. 8549 (JPC) (S.D.N.Y. Mar. 11, 2022) ................... 24, 25

*Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69 (2d Cir. 2016) ........................................ 12

*He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670 (S.D.N.Y. Aug. 13, 2014) ...... 25

*Heng Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ......................................................................................................................... 24

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ........................................ 18, 19, 30

*Hernandez v. JRPAC Inc.*, 2016 WL 3248493 (S.D.N.Y. June 9, 2016) .............................. 24, 25

*Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580 (S.D.N.Y. 2020) ....................................... 15

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015) ........................................ 24

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ............................................................. 19, 20

*Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363 (S.D.N.Y. 2014) .................................................. 15

*Karic v. Major Auto. Cos., Inc.*, No. 09 Civ. 5708, 2014 WL 1508448 (E.D.N.Y. Apr. 9, 2014) 30

*Leevson v. Aqualife USA Inc.*, No. 17 Civ. 3868 (XAP), 2019 WL 1870494 (2d Cir. 2019) ....... 31

*Lesnik v. Lincoln Fin. Advisors Corp.*, No. 18 Civ. 3656 (LJL), 2020 WL 3057456 (S.D.N.Y. June 9, 2020) (Liman, J.) .................................................................................................................. 12

*Murphy v. Lajaunie*, No. 13 Civ. 6503 (RJS), 2016 WL 1192689 (S.D.N.Y. Mar. 22, 2016) ........ 26

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) .............................................. 16

*Raquer v. Café Buon Gusto Corp.*, 2012 U.S. Dist. LEXIS 141975, 2012 WL 4494882 (S.D.N.Y. Sept. 28, 2012) ..................................................................................................................... 18, 19

*Reich v. Chez Robert, Inc.*, 28 F.3d 401 (3d Cir. 1994) .............................................................. 24

*Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58 (2d Cir. 1997) ................... 30, 31

*Rodriguez v. Avondale Care Group, LLC*, No. 16 Civ. 3084 (SN), 2018 WL 1582433 (S.D.N.Y. Mar. 27, 2018)................................................................................................. 29

*Rodriguez v. Solares Corp.*, No. 16 Civ. 3922, 2018 WL 7252949 (E.D.N.Y. Aug. 14, 2018).....27

Salinas v. Starjem Restaurant Corp., 123 F. Supp. 3d 442 (S.D.N.Y. Aug. 12, 2015)..............27

*Shibetti v. Z Rest., Diner & Lounge, Inc.*, 478 F. Supp. 3d 403 (E.D.N.Y. 2020)................. 19, 20

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ....................................................... 19

*Wilmington PT Corp. v. Gary Parker*, No. 19 Civ. 2380, 2024 WL 1348746 (E.D.N.Y. Mar. 29, 2024) ...................................................................................................................... 13

*Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21 Civ. 1263, 2023 WL 8817150 (E.D.N.Y. Dec. 21, 2023) ................................................................................ 13, 14

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)................................................... 18, 19

*Zhong v. Zijun Mo*, No. 10 Civ. 0806, 2012 WL 2923292 (E.D.N.Y. July 18, 2012) ................. 30

**Statutes**

12 N.Y.C.R.R. § 146........................................................................................................ 27, 28

206(a)(1) ............................................................................................................................. 24

260..................................................................................................................................... 30

29 U.S.C. § 203.............................................................................................................. 24, 26

29 U.S.C. § 203(d) .............................................................................................................. 18

29 U.S.C. §§ 216(b) ............................................................................................................ 30

N.Y. Comp. Codes R. & Regs. Tit. 12 § 146-1.3(b)............................................................ 24

NYLL § 195(1) .................................................................................................................... 29

NYLL § 663(1) .................................................................................................................... 30

NYLL Article 6, § 195(3) .................................................................................................... 29

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................ 12

# I. PRELIMINARY STATEMENT

This litigation presents an unfortunate scenario where a longstanding and reputable business is confronted by allegations that misconstrue the operational realities and legal compliance efforts of two well-known restaurants in New York City's East Village, The Bao and Uluh (collectively the "Restaurants"). It is important to underscore that this case is not simply about legal technicalities but rather the survival of small businesses under the stringent, sometimes unmanageable legal standards that can cripple their operations.

First and foremost, the Plaintiffs in this case, many of whom have been employed by the Defendants for several years, have always been clearly aware of their compensation structure. Their long tenure is a testament to the fairness and adequacy of their pay, which has consistently met or exceeded the legal requirements. The Plaintiffs were not only paid adequately but often benefited from earnings well above the minimum wage when tips are considered—tips that the Plaintiffs themselves acknowledged.

Moreover, the claim that Defendants did not comply with legal requirements regarding tip credits and wage notices ignores substantial efforts made by the Defendants to ensure transparency and compliance with both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The Defendants have always strived to provide clear and comprehensive wage notices to their staff, maintaining an open-door policy for any inquiries or concerns regarding wages or employment conditions. The allegation that wage statements were not transparent is both factually inaccurate and misleading.

Regarding the allocation of tips, the Defendants acknowledge that the General Manager should not have received tips and have taken corrective measures to rectify this oversight. However, it is crucial to clarify that Team Leaders, whose roles are integral to the direct service operation,

are permitted under the law to participate in the tip pool. This structure was well understood and accepted by all staff members, including the Plaintiffs, who benefited directly from the collaborative service environment this policy fostered.

It is also imperative to address the broader implications of this case for the small business community. The Defendants acknowledge the importance of the protections afforded by the FLSA and NYLL; however, it is equally important to recognize that these laws have been increasingly used as tools by certain opportunistic parties not to correct genuine grievances but to extract unwarranted settlements from small to medium-sized businesses, thereby jeopardizing their viability and the employment they provide. This is exactly why FLSA wage and hour lawsuits have risen 417% between 1997 and 2017.[1] This misuse of the legal framework serves neither the interests of employees nor those of the broader community.

Respectfully, the Defendants urge the Court to consider the full context of the operational and financial challenges small businesses face. The Plaintiffs' Motion for Partial Summary Judgment oversimplifies complex issues of wage and tip compliance and ignores substantive evidence of the Defendants' efforts to comply with the law while managing the practicalities of running a successful restaurant business. As such, the Defendants respectfully request that this Court deny the Plaintiffs' Motion for Partial Summary Judgment, allowing these matters to be fully explored at trial where a fair and comprehensive determination can be made.

## II.  COUNTERSTATEMENT OF MATERIAL FACTS

### a.  Restaurant Background

The restaurants at issue in this case are. The Bao and Uluh (collectively, the "Restaurants"). The Bao is a restaurant located at 13 St. Marks Place, New York, New York 1003. Plaintiffs' Ex.

---

[1] Statistic provided by Intuit at https://quickbooks.intuit.com/time-tracking/flsa-research-tool/.

("P. Ex.") 2, 30(b)(6) Dep. at 18:10-16; Ex. 3, The Bao Web Excerpts. Uluh is located two blocks away from The Bao at 152 2nd Avenue, New York, New York 10003. P. Ex. 2, 30(b)(6) Dep. at 58:11-15. Both Restaurants serve Chinese cuisine, but Uluh is a fine dining establishment, while The Bao is a casual dining establishment with a focus on soup dumplings. *See* P. Ex. 3 at 4 (The Bao Menu); P. Ex. 4 at 10-11 (Uluh Menu). Eight Oranges Inc. is the corporate entity that operates The Bao. P. Ex. 2, 30(b)(6) Dep. at 14:13-21. Chibaola, Inc. is the corporate entity that operates Uluh. P. Ex. 2, 30(b)(6) Dep. at 53:18-54:7.

The Bao opened in approximately 2014 or 2015. P. Ex. 2, 30(b)(6) Dep. at 18:6-9. Uluh opened in November 2018. P. Ex. 2, 30(b)(6) Dep. at 17:2-10. Both The Bao and Uluh are covered employers under the FLSA and NYLL. P. Ex. 7, 56.1 Stipulation ¶1. Both The Bao and Uluh employ front-of-house workers such as servers and bussers and offer in-person seating for customers. P. Ex. 2, 30(b)(6) Dep. at 22:18-23:14; P. Ex. 2, 30(b)(6) Dep. at 29:8-21.

The Bao can seat about 60 customers and Uluh can seat about 70 customers. P. Ex. 2, 30(b)(6) Dep. at 18:23; P. Ex. 2, 30(b)(6) Dep. at 28:9. The Bao had a small temporary outdoor dining space for a short period of time after the COVID-19 pandemic. P. Ex. 2, 30(b)(6) Dep. at 19:2-20. Uluh has an outdoor dining space that remains open for customers during the summer. P. Ex. 2, 30(b)(6) Dep. at 28:25-29:7. The Bao and Uluh's hours of operation are from 11:30am to 10:00pm on weekdays, with weekends ending at 10:30pm. P. Ex. 2, 30(b)(6) Dep. at 20:8-10; P. Ex. 4 at 19.

There is an office in Uluh's basement that operates as a central office for both Restaurants that stores corporate payroll, tax, timecards, and other corporate records for Uluh and The Bao. P. Ex. 2, 30(b)(6) Dep. at 54:18-55:25. Whenever "the office" is referred to, Defendant Richard Lam ("Lam") is actually referring to Lu Mei Zhang ("Mei"). P. Ex. 2, 30(b)(6) Dep. at 76:2-9. The

general manager for both Restaurants was Mei, who worked out of the office space at Uluh. P. Ex. 10, Corporate Defendants' Responses to First Interrogatories ("1st Corp. Rog") No. 1. Lu Mei Zhang was also the bookkeeper for both Restaurants. Defendants' Ex. ("D. Ex.") 1, 30(b)(6) Dep. at 167:10-12. Furthermore, Mei was the individual that was responsible for payroll at The Bao and Uluh. D. Ex. 2, 30(b)(6) Dep. at 55:3-8. Both The Bao and Uluh use the same accountant for payroll and Defendants consulted with said accountant in determining what requirements are necessary to comply with employment laws. P. Ex. 2, 30(b)(6) Dep. at 71:22-73:11.

Due to limited space at The Bao, The Bao uses a storage room in Uluh's basement to store The Bao's restaurant supplies. P. Ex. 2, 30(b)(6) Dep. at 58:16-59:2. At times, employees of The Bao went to the storage room located at Uluh to retrieve supplies for The Bao. P. Ex. 8, Dacusin Dep. at 54:11-55:11, 55:5-21; P. Ex. 9, Kalsang Dep. 19:1-5, 32:16-33:4. It is noted that the restaurant supplies of The Bao and Uluh are uniquely distinct from one another, with The Bao and Uluh both having customized supplies for marketing. D. Ex. 2, Google Image by Customer of The Bao's Dinnerware; D. Ex. 3, Google Image by Customer of Uluh's Dinnerware.[2][3] Tipped employees were sent to work between The Bao and Uluh against the two companies' polices, against Lam's orders, and without Lam's knowledge. D. Ex. 1, 30(b)(6) Dep. at 107:21-108:21; P. Ex. 8, Keno Dep. at 54:11-55:11, 55:22-60:6; P. Ex. 16, Situ Dep. at 54:3-21.

Lam, at one point or another, instructed the manager at Uluh to create a handbook and gave the manager a copy of The Bao's handbook for reference, which in turn was copied from another restaurant's handbook. D. Ex. 1, 30(b)(6) Dep. at 62:8-65:8. The handbook for Uluh was ultimately

---

[2] The image of The Bao's dinnerware is located at https://lh3.googleusercontent.com/p/AF1QipNFv-eqpVffqR8BUmjU8h1XznIR-kODAMdAY8uv=s680-w680-h510. Ex. 2.
[3] The image of Uluh's dinnerware is located at https://lh3.googleusercontent.com/p/AF1QipMeQsriSVz5McSFUZxJtRrwuRbjoChQ4DC7dMCT=s680-w680-h510. Ex. 3.

never finished. D. Ex. 1, 30(b)(6) Dep. at 65:13-16. Both The Bao and Uluh utilized identical wage notices and wage statements for its workforce because the forms were provided by the Defendants' accountant, an independent accountant named Chris Miu. D. Ex. 1, 30(b)(6) Dep. at 71:18-72:24.

### b. Plaintiffs' Employment with Defendants

Named Plaintiff Jessy Mangahas ("Mangahas") worked primarily as a server and host at The Bao from approximately September 2018 to May 2022, with some breakage in between due to the COVID-19 Pandemic. D. Ex. 4, Mangahas Dep. at 7:12-14:12. Mangahas also worked at Uluh from approximately December 2021 to November/December 2022. P. Ex. 23, Mangahas Dep. at 7:20-9:10. The other Named Plaintiff Pitchaya Wohlfahrt[4] ("Wohlfahrt") worked as a server at Uluh from approximately March 2019 to march 2023. P. Ex. 24, Wohlfahrt Dep. at 10:9-25. Defendant Hong Bao has considered herself as the "lady boss", but in her mind, this only means that her husband, Lam, is the owner of The Bao and Uluh. D. Ex. 6, Hong Bao Dep. at 20:18-21:21.

Opt-In Plaintiffs Thinley Kalsang, Keno Dacusin, Jinnapat Nutcharat, and Vorrawala Aphiromdechanon worked at The Bao as servers and busboys. P. Ex. 9, Kalsang Dep. at 9:21-10:8, 19:16-22; P. Ex. 8, Dacusin Dep. at 7:4-18; P. Ex. 13, Aphiromdechanon Dep. at 9:12-18. Opt-In Plaintiff Upendra Shahi ("Shahi") began working at The Bao as a busboy in January 2015. D. Ex. 5, Shahi Dep. at 7:18-19. Plaintiff Shahi was then promoted to server approximately six months after he began working at The Bao. D. Ex. 5, Shahi Dep. at 14:16-22. Afterward, Plaintiff Shahi was again promoted to the position of Team Leader in approximately 2017. D. Ex. 5, Shahi Dep. at 14:23-15:5. Finally, Plaintiff Shahi was promoted to manager of The Bao sometime in 2018 and remained manager until he left The Bao in June of 2022. D. Ex. 5, Shahi Dep. at 10:7-9; 15:6-11.

---

[4] During her employment, Pitchaya used her maiden name "Sirisawad".

Opt-In Plaintiffs Dawa Kalsang, Ying Ying Yuan, Nixon Hernandez, Nima Dhondup, Anna Liu, Jia Hoa Jiang, Lin Jie Yang, Bibek Sambahamphe, Tunwalai Apirattanadul, Jose Roman Rodriguez, Wonsuk Choe, Tsz Wing Lam, Prathana Rattanachai, and Meiling Huang worked at Uluh as front of house employees. P. Ex. 12, Yuan Dep. at 8:9-15; P. Ex. 26, Roman Dep. at 9:5-12; P. Ex. 11, Phiphatchotika Dep. at 7:1-8:16; P. Ex. 1-2, Plaintiff Payroll Summary. Opt-In Plaintiffs Wen Bin Zhu, Wochao Chen, Jason Cedeno, and Yi Zhang worked at both The Bao and Uluh as front of house employees. P. Ex. 14, Zhu Dep. at 13:19-15:7; P. Ex. 27, Cedeno Dep. at 8:20-9:24; P. Ex. 17, Zhang Dep. at 6:21-7:5; P. Ex. 15, Chen Dep. at 8:15-20.

### c. Defendants' Ownership and Responsibilities at The Bao and Uluh

Lam is currently the sole 100% shareholder of the corporate entities Eight Oranges Inc. and Chibaola, Inc. P. Ex. 30, Lam Dep. at 11:17-19. Lam identifies himself as the owner and operator of The Bao and Uluh and is listed as president in the corporate documents for Eight Oranges Inc. and Chibaola, Inc. P. Ex. 30, Lam Dep. at 20:6-12, 28:3-14. Lam is married to Defendant Joanne Hong Bao ("Hong Bao"). P. Ex. 30, Lam Dep. at 7:13-14. Hong Bao has occasionally had the responsibility of quality control. P. Ex. 30, Lam Dep. at 17:20-20:3.

Lam is listed as the principal for Chibaola, Inc. under the New York State Liquor Authority license and according to New York State's Department of State. P. Ex. 29, Chibaola NYSLA App. At 3; D. Ex. 7, NY DOS for Uluh. Hong Bao was listed as the principal for Eight Oranges Inc. under the New York State Liquor Authority license in 2014, but the principal has been Lam since at least 2018. P. Ex. 28, Eight Oranges NYSLA App.; D. Ex. 8, Eight Oranges 2018 Schedule K-1; D. Ex. 9, NY DOS for The Bao. Lam admits that the statements made in the liquor license application for Chibaola, Inc. regarding his management role are true, the only difference being that he is not at the Restaurants daily. P. Ex. 30, Lam Dep. at 25:16-27, 28:3-14. Lam admits that

he used an agent to assist him in the filing of the liquor license application for The Bao and was advised by the agent to use Hong Bao's name for the application as it would have been difficult to qualify for the liquor license under Lam's name. P. Ex. 30, Lam Dep. at 14:25-15:5.

Lam and Hong Bao are included in chat groups used by employees of The Bao and Uluh. P. Ex. 2, 30(b)(6) Dep. at 47:6-16; P. Ex. 6, RFA Responses No. 18. Through the group chats, Lam directed employees' job assignments, advised employees of changes to company policies, notes requested days off, and otherwise was in communication with employees. *See* P. Ex. 33, Uluh Group Text Messages; P. Ex. 34, Bao Group Text Messages. Hong Bao was involved in the group chats to the extent that she made general comments and gave opinions as to the matters of presentation of dishes at times. P. Ex. 31, Hong Bao Dep. at 39:15-24; P. Ex. 35, Hong Bao Texts.

The Defendants do not dispute that Lam is involved in the hiring and interviewing process at The Bao and Uluh. However, Hong Bao's attendance at either The Bao or Uluh varied significantly to the point she would not be at either for a couple of months. D. Ex. 6, Hong Bao Dep. at 46:3-8. Even when Hong Bao was at either of the restaurants, her participation in the activities there varied greatly where Plaintiffs are unsure of her position at the Restaurants. D. Ex. 10, Dacusin Dep. at 42:1-9. Lam is involved in employee evaluations and can hire and fire employees at the Restaurants. P. Ex. 30, Lam Dep. 28:17-30:5, 30:15-31:14; P. Ex. 36, Uluh Staff Evaluations. Hong Bao occasionally commented and informed Lam of issues with the Restaurants cleanliness and issues with the presentation of dishes. D. Ex. 4, Mangahas Dep. at 92:10-16; D. Ex. 6, Hong Bao Dep. 64:4-11.

Hong Bao was directed by Lam to order supplies (not including food supplies or drink supplies) for The Bao and Uluh as needed. D. Ex. 6, Hong Bao Dep. at 37:3-38:15. Lam has the authority to set the hours of operations for The Bao and Uluh. P. Ex. 30, Lam Dep. at 31:21-32:3,

34:2-11. Lam has the authority to put either Restaurant into bankruptcy or close the Restaurants. P. Ex. 30, Lam Dep. 31:21-32:3, 34:2-11. Lam, along with general manager, Lu Mei Zhang, Defendants' accountant, were involved in determining the rates of pay applicable to Plaintiffs and other tipped workers. P. Ex. 10, 1st Corp. Rog No. 6; D. Ex. 1, 30(b)(6) Dep. at 71:5-24. Ultimately, employees, including management employees, report to Lam. P. Ex. 30, Lam Dep. 31:21-32:3, 34:2-11.

### d. Defendants Used the Tip Credit to Pay Front of House Employees.

Defendants apply a "tip credit" towards the wages of the Plaintiffs and other front-of-house employees at The Bao and Uluh. P. Ex. 2, 30(b)(6) Dep. at 115:6-117:23; P. Ex. 7, 56.1 Stip ¶5. Defendants paid Plaintiffs and other front-of-house employees at a rate less than the regular minimum wage because of the tip credit taken, as allowed by the FLSA and NYLL. *Id.*

### e. Defendants Efforts Constitute Tip Credit Notice to Front of House Employees.

Defendants made their best efforts to inform all employees of their rate of pay and to inform them of a tip credit taken, by trying to verbally informing front-of-house employees that their pay would be $10 per hour plus tips, posting labor law posters at the Restaurants, and also tried their best to implement a policy in which employees would have to sign a form created by the New York State Department of Labor acknowledging the employee's pay rate. D. Ex. 4, Mangahas Dep. at 40:20-23; D. Ex. 12, Rodriguez Dep. at 22:14-20; D. Ex. 13, Situ Dep. at 35:8-36:1; P. Ex. 25, Shahi Dep. at 32:18-34:2; P. Ex. 27, Cedeno Dep. at 36:18-37:6; P. Ex. 13, Aphiromdechanon Dep. at 17:5-20; P. Ex. 9, Kalsang Dep. 59:1-11; P. Ex. 14, Zhu Dep. at 9:21-12:1; D. Ex. 11, Defendants' Labor Law Posters (Defendants' Responses to First Request for the Production of Documents No. 5, 6, and 7); P. Ex. 37, Wage Notices.

### f. Plaintiffs' Allegations of Shared Tips with Management.

Defendants maintain that Team Leaders are a separate position from managers. D. Ex. 1, 30(b)(6) Dep. at 75:4-6. Plaintiff Shahi was the manager of The Bao from 2018 until June 2022. D. Ex. 5, Shahi Dep. at 10:7-9; 15:6-11. Yunrui Du was also the manager of Uluh at one point. D. Ex. 1, 30(b)(6) Dep. at 203:15-19. Lu Mei Zhang was the general manager for both Restaurants, along with being a Team Leader at Uluh. *See* P. Ex. 10, 1st Corp Rog Nos. 6, 7 ("Lu Mei Zhang is the general manager for both restaurants since 2015."); P. Ex. 28, 2d Corp. Rog No. 17 (identifying team leaders and their years of employment and assigned restaurant). The individuals identified as Team Leaders were in the tip pool at both The Bao and Uluh. P. Ex. 6, RFA No. 10 (admitting team leaders identified in Interrogatory No. 17 received tips from the tip pools at the Restaurants) (dated 3/2/2024); P. Ex. 2, 30(b)(6) Dep. 86:15-87:11; 89:10-90:7.

Team Leaders' responsibilities at both Restaurants included, but were not limited to, hiring, firing, discipling, scheduling, promoting, determining tip percentages for employees, handling the tip sheet, accessing company email accounts, and creating policies and the handbook. *See* P. Ex. 2, 30(b)(6) Dep. 64:13-16, 67:23-68:6, 65:21- 66:19, 75:7-2, 77:3-4, 79:15-81:16, 56:25-57:4. Team Leaders receive a larger percentage of tips than other tipped workers. Ex. 2, 30(b)(6) Dep. 86:15-87:11. The general manager created the tip pooling arrangement at both Restaurants. Ex. 10, 1st Corp Rog No. 3 ("the general manager made sharing and allocation policies used at both restaurants"). Plaintiff Shahi was an employee of Eight Oranges Inc. and not Chibaola, Inc. D. Ex. 5, Shahi Dep. at 7:4-6.[5] According to Plaintiff Shahi, he was a manager at The Bao from 2018 onwards. D. Ex. 5, Shahi Dep. at 10:7-9; 15:6-11. During Plaintiff Shahi's time as a Manager at The Bao, his duties included, but not limited to, employee scheduling, closing of the register, hiring

---

[5] Within Plaintiffs' Ex. 1-2, Opt-in Only Payroll Summary, Plaintiffs state various dates where Upendra Shahi was supposedly paid by Chibaola, Inc. However, based on the records Defendants have submitted to Plaintiffs during discovery, to Defendants best recollection, there are no specific payroll records in which evidence Upendra Shahi ever being paid by Chibaola, Inc., the corporate entity of Uluh.

and firing of employees, checking inventory, and assigning work duties of other front-of-house employees. D. Ex. 5, Shahi Dep. at 19:2-19; 21:5-22:3; 104:6-9.

### g. Side Work Performed at The Bao and Uluh.

In addition to waiting on customers, Plaintiffs and other tipped employees at The Bao and Uluh performed "side work" as part of their regular job duties. P. Ex. 23, Mangahas Dep. at 80:24-82:18; P. Ex. 27, Cedeno Dep. 16:10-17:2; 19:16-20:6; P. Ex. 9, Kalsang Dep. at 9:24-10:8; 50:6-17; P. Ex. 8, Dacusin Dep. at 45:5-49:12; 55:5-21; P. Ex. 26, Roman Dep. at 24:23-25:13; P. Ex. 14, Zhu Dep. at 45:17-46:8; P. Ex. 25, Shahi Dep. at 122:6-123:11; P. Ex.13, Aphiromdechanon Dep. at 11:23-12:5; P. Ex. 15, Chen Dep. at 25:13-26:16; P. Ex. 12, Yuan Dep. at 33:19-35:5; P. Ex. 16, Situ Dep. at 15:10-18:5; P. Ex. 14, Zhu Dep. at 45:17-47:2; P. Ex. 24, Wohlfahrt Dep. at 44:22-45:7.

Side work was not based on the individual or the specific day but was based upon business needs on a given day. *See* P. Ex. 2, 30(b)(6) Dep. at 190:3-191:9. Plaintiffs who were asked specifically to estimate their time performing side work estimated between one to three hours daily. *See* P. Ex. 23, Mangahas Dep. a t 84:3-8; P . Ex. 25, Shahi Dep. a t 112:13-22; P. Ex. 9, Kalsang Dep. at 44:25-45:5; P. Ex. 8, Dacusin Dep. at 51:9-52:21; P. Ex. 11, Phiphatchotika Dep. at 26:18-27:6; P. Ex. 14, Zhu Dep. at 45:17-47:2; P. Ex. 17, Zhang Dep. at 7:19- 8:6; 33:11-25; P. Ex. 12, Yuan Dep. at 33:19-35:5. The Plaintiffs asked, provided these estimates despite, Uluh having a gross sales of $5,521,913.00 for the 2021 fiscal year, and The Bao having a gross sales of $2,589,362.00 for the 2021 fiscal year, meaning that averaged out, Uluh had approximately $15,000.00 in sales per day, and The Bao had approximately $7,000.00 in sales per day. D. Ex. 14, Chibaola, Inc.'s 2021 Tax Return; D. Ex. 15, Eight Oranges Inc.'s 2021 Tax Return.

### h. Uniform Deposit

At The Bao, Defendants required Plaintiffs and other Tipped Workers to wear uniform tops that had the company logo, which ranged from t-shirts to polos. P. Ex. 2, 30(b)(6) Dep. at 211:3-17. Defendants charged workers $10 to $15 for this uniform as a "deposit." P. Ex. 2, 30(b)(6) Dep. at 211:18-212:25. At Uluh, the uniform is a half button shirt with the Uluh logo. P. Ex. 2, 30(b)(6) Dep. at 213:2-18. The "deposit" for this is believed to be about $20.00 per shirt. *Id. at* 213:19-23. Defendants' policy was that any deposits left would be returned to employees *after* the return of the uniforms. P. Ex. 2, 30(b)(6) Dep. at 212:7-213:10.

### i. Defendants Provided Wage Statements to Plaintiffs and Other Employees.

The same accountant created the paystubs provided to Plaintiffs and other workers at both Restaurants. P. Ex. 2, 30(b)(6) Dep. at 220:6-221:4. Plaintiffs received paper pay checks, which had a paystub attached to them. P. Ex. 2, 30(b)(6) Dep. at 215:23-216:6. Specifically, Plaintiffs received a paper paycheck that had attached to it a paystub like those in Plaintiffs' Exhibit 42. P. Ex. 2, 30(b)(6) Dep. at 217:21-218:6 (hereinafter "Paycheck Paystubs"); *see also* P. Ex. 43, Meiling Paycheck Stub Samples; P. Ex. 44, Chen Paystubs. Prior to getting their paper checks, Defendants stated that the Restaurants required Plaintiffs and other workers to **sign off** on their timecards, which had attached to them a paystub like those in Plaintiffs' Exhibit 45. P. Ex. 2, 30(b)(6) Dep. at 215:11-216:17 (hereinafter "Timecard Paystubs"). There is only one copy of the paystub that is stapled to the timecards. P. Ex. 2, 30 (b)(6) Dep. at 216:8-11. Defendants retain the timecard and the Timecard Paystub. *Id*. The Timecard Paystub is not the paystub that is directly attached to the paper paycheck. P. Ex. 2, 30(b)(6) Dep. at 217:22-218:6; P. Ex. 43, Meiling Paystubs.

After the commencement of this lawsuit, Plaintiffs began to receive copies of both the Timecard Paystubs and Paycheck Paystubs. P. Ex. 14, Zhu Dep. at 26:11-28:4, 49:18-24; P. Ex. 16,

Situ Dep. at 30:16- 33:8; P. Ex. 44, Chen Paystubs. Defendants switched to a new accountant in 2023 and to date Tipped Workers receive a wage statement in the format enclosed in Plaintiffs' Exhibit 46. P. Ex. 2, 30(b)(6) Dep. at 221:6-222:8; P. Ex. 46, 2023 Paystubs.

### j. Defendants' Efforts to Comply with the FLSA and NYLL.

The Restaurants had a general understanding of the FLSA and NYLL based upon instructions from their accountant and from Lam's research conducted on the internet. P. Ex. 2, 30(b)(6) Dep. at 222:10-223:10. Defendants did not reach out or retain any employment-specific attorney to set up employment practices or to review or audit their practices while in operation. P. Ex. 2, 30(b)(6) Dep. at 223:16-224:13.

## III. APPLICABLE LAW AND STANDARDS

### a. Standard for Summary Judgment

Pursuant to Rule 56(a) of the Federal Rule of Civil Procedure ("FRCP"), summary judgment is a remedy that is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lesnik v. Lincoln Fin. Advisors Corp.*, No. 18 Civ. 3656 (LJL), 2020 WL 3057456, at *1 (S.D.N.Y. June 9, 2020) (Liman, J.). The moving party bears the burden of showing a lack of genuine issue of material fact. *Id*. "In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor." *Id*. (citing *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016)). Thus, summary judgment is improper where there is any evidence from which a reasonable inference may be drawn in favor of the non-moving party on a material issue of fact. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

"Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim." *Wilmington PT Corp. v. Gary Parker*, No. 19 Civ. 2380, 2024 WL 1348746, at *2 (E.D.N.Y. Mar. 29, 2024) (citing *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In this circumstance, where the initial burden is met, summary judgment may be only defeated "by producing evidence of specific facts that raise a genuine issue for trial." *Wilmington PT Corp.*, at *2. Although inferences go for non-movant's favor, "the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts." *Id*. Ultimately, self-serving testimony with "no attempt . . . to square their own speculative, and subjective, testimony with the hard evidence adduced during discovery" is insufficient to defeat summary judgment. *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009).

### b. Representative Evidence

The Defendants concur with the Plaintiffs in that proof by representative sample in FLSA/NYLL actions are commonplace and appropriate to determine liability in the Second Circuit. *See e.g.*, *Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21 Civ. 1263, 2023 WL 8817150, at *4 (E.D.N.Y. Dec. 21, 2023) ("The Second Circuit permits representative testimony in FLSA actions to prove liability as to absent opt-ins."). However, it should be noted that the court in *Wilson*, did "not view the testimony of one member of the collective as 'representative' of the collective on the whole." *Id*. Instead, "when opt-ins testify as to their alleged injuries, the factfinder may use that information to make **reasonable inferences** about their alleged injuries of similarly situated non-testifying opt-ins." *Id*. It is further noted that "when plaintiffs opt into a collective, they join the action as party plaintiffs, with the same status as a plaintiff that joins a multi-plaintiff

action." *Id*. "Therefore, all members of the collective must prove their individual claims against their employer." *Id*.

### c. Determination of Liability Prior to Determination of Damages

Plaintiffs submit that differential damages and tip misappropriation to management may be calculated without further submissions should the Court grant summary judgment on these claims.[10] For other claims, however, the Court is not required to resolve the amount of damages when granting partial summary judgment on liability. *See, e.g., Barfield v. N.Y.City Health & Hosps. Corp*., 432 F.Supp.2d 390, 395 (S.D.N.Y. 2006) (granting summary judgment on liability and directing counsel to submit an estimate of unpaid wages for purposes of damages award); aff', *id*. at 537 F.3d 132 (2d Cir. 2008). Accordingly, if the Court believes questions preclude determining damages at this time, summary judgment can still be entered regarding liability. Damages can be determined later. *Id*.

## IV. ARGUMENT

### a. Plaintiffs were Employees of the Corporate Entities, and Defendants are Governed by the FLSA and NYLL.

The Defendants do not dispute that Plaintiffs were employees of the corporate entities that operate the respective restaurant. *See Plaintiffs' Ex. 7*, 56.1 Stipulation ¶¶3-4. Additionally, the Defendants do not dispute that the corporate entities are covered by the FLSA as covered enterprises and employers under the definition of the NYLL. *See Id*. at ¶1. Lastly, the Defendants do not dispute that the Restaurants are employers in the hospitality industry and are covered by the New York State Hospitality Wage Order ("Hospitality Wage Order"). *Id*. at ¶2. As such, the Defendants do not dispute that the Plaintiffs' elements for a *prima facie* case under the FLSA and NYLL are met regarding ONLY Defendants Eight Oranges Inc.. and Chibaola, Inc.

**b. The Restaurants Do Not Operate as a Single Integrated Enterprise.**

The Defendants contend that summary judgment is not appropriate as to the question of whether the Restaurants operated as a single integrated enterprise. The Second Circuit has stated that "a 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise…" *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (citations and quotation marks omitted). Accordingly, under the FLSA, "multiple corporate entities can be liable as the 'employer' under 'a joint employer theory' based on the theory that they operate as a single enterprise with significant interrelation of operations.'" *Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 586 (S.D.N.Y. 2020) (citation omitted). Numerous district courts have used the "single integrated enterprise" test to assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes. *See Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).

In the "single integrated enterprise" test, courts consider four factors to determine if a single integrated enterprise exists: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control… [a]lthough no single factor is required or determinative." *Chen v. Hunan Manor Enterprise, Inc.*, No. 17 Civ. 802, 2023 WL 5574854, at *6 (S.D.N.Y. Aug. 29, 2023). However, the court in *Chen*, has emphasized that "control of labor relations is the central concern." *Id*. Where the single integrated enterprise theory applies, courts may impose liability for a violation "not only on the nominal employer but also on another entity comprising part of the single integrated employer[.]" *Arculeo*, 425 F.3d at 198; see also *Juarez*, 29 F. Supp. 3d at 368.

**i. Centralized Labor Relations.**

District courts within the Second Circuit have stated that in determining whether there were centralized labor relations, the "critical question" is "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Scott v. ProClaim Am., Inc.*, 14-CV-6003 (DRH)(ARL) at *18 (E.D.N.Y. Mar. 31, 2017) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)).

Furthermore, in the matter of *Parker v. Columbia Pictures*, the Second Circuit has stated that in determining whether a single integrated enterprise exists, "a crucial element of the inquiry focuses on whether the two enterprises exhibit 'centralized control of labor relations,' including tasks such as handling job applications, approving personnel status reports, and exercising veto power over major employment decisions". *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000).

In the present matter, the control of labor relations at The Bao and Uluh were intentionally separated. As Plaintiffs have testified, individuals aside from Richard Lam and, allegedly, Joanne Hong Bao, such as opt-in Plaintiff Upendra Shahi and "Mei," had the authority to hire or fire employees, and their decisions did not involve the other corporate entities and vice versa. *See* D. Ex. 5, Shahi Dep. at 21:19-25, 22:1-18; D. Ex. 16, Zhu Dep. at 8:9-15. Each restaurant had a certain level of autonomy in regards to control of labor relations, in that each restaurant had it's own individual figure on a daily basis controlling it's respective employees. *See* D. Ex. 5, Shahi Dep. at 21:19-25, 22:1-18; D. Ex. 1, 30(b)(6) Dep. at 203:15-19 (stating that Yunrui Du was a manager of Uluh); D. Ex. 17, Yuan Dep. at 11:15-20 (Yunrui Du becoming a supervisor/manager beginning at the end of 2019). This goes to show that there is a dispute as to material fact in that it is unclear to a reasonable fact-finder whether there was centralized control of labor relations between the two Restaurants to the point where they could be considered a single integrated enterprise.

### ii. Common Management.

The day-to-day operations of The Bao and Uluh were mostly managed by different team leads or managers, with Lam only stepping in when absolutely needed. D. Ex. 16, Zhu Dep. at 19:21-25. Individuals named Mei and Yunrui Du were the primary managers for Uluh. *Id.*

As for The Bao, Upendra Shahi appears to have been the primary manager in charge of day-to-day operations at The Bao as Mr. Shahi led The Bao for approximately four (4) years. *See* D. Ex. 5, Shahi Dep. at 10:7-13, 89:10-12. Additionally, prior to Mr. Shahi becoming a Team Leader or Manager, Mr. Shahi stated that there an individual named "Allana" who was a Team Leader at The Bao to which Mr. Shahi reported to. *See* D. Ex. 5, Shahi Dep. at 15:15-23. As previously stated, Mei and Yunrui Du were the primary managers for Uluh. This goes to show that there is a dispute as to material fact in that it is unclear to a reasonable fact-finder whether there was common management between the two Restaurants to the point where the two are considered a single integrated enterprise.

### iii. Common Ownership.

Eight Oranges, Inc. owns the trade name and does business as The Bao. Chibaola, Inc. owns the trade name and does business as Uluh. *See* D. Ex. 1, 30(b)(6) Dep. at 14:13-21. Each business entity was formed separately to provide specific dining experiences for its customers. *See* D. Ex. 18, Photo of Dining Room for The Bao[6]; D. Ex. 19, Photo of Dining Room for Uluh.[7] It is important to note that if there was any intention to operate as a "single integrated enterprise," there would be no need to form separate corporations. Defendants could have simply and more cost-efficiently formed one corporation and utilized separate "doing business as" names. Neither

---

[6] The Google Image of The Bao's dining room is located at https://lh3.googleusercontent.com/p/AF1QipPnMoC5Yb1Jy9Zb1g_t1psUgcmeJ54M57iyVRM=s680-w680-h510.
[7] The Google Image of Uluh's dining room is located at https://lh3.googleusercontent.com/p/AF1QipPwBdxgpu-fNC2BgrzALj-VB9DNYRbXAZCiWnYC=s680-w680-h510.

corporate entity has any ownership or financial control of the other, as Lam is the owner of both entities. Furthermore, both entities maintain separate bank accounts at separate banks to keep the financials of both corporate entities separate. D. Ex. 1, 30(b)(6) Dep. at 60: 9-13.

The plaintiffs point to Lam and Hong Bao as the common owners with financial control of both restaurants. However, Defendant Joanne Hong Bao has not been an owner of Eight Oranges, Inc. since at least 2018. *See* D. Ex. 8, Eight Oranges 2018 Schedule K-1.

Lam is the sole owner of both The Bao and Uluh. Both entities are ran separately with no financial control or overlap over the other. Lam's ownership alone should not reasonably by itself show common ownership to create a "single integrated enterprise."

### c. Individual Liability.

The Defendants concede that Lam is an employer under the FLSA and NYLL. However, the Defendants maintain that Defendant Hong Bao is not an employer under the FLSA and NYLL. "The FLSA defines 'employer' as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" See *Raquer v. Café Buon Gusto Corp.*, 2012 U.S. Dist. LEXIS 141975 at *9-10, 2012 WL 4494882 (S.D.N.Y. Sept. 28, 2012); 29 U.S.C. § 203(d).

An employment relationship exists under the FLSA when the "economic reality" is such that the alleged employer possesses the power to control the workers in question. See *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

A person or entity need not possess "formal control" over a worker to qualify as an employer; the person or entity may simply exercise "functional control" over the worker in question. See *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003).

Factors relevant to determining control over a worker's employment include whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled

employee work schedules or conditions of employment; (3) determined the rate and method of payment; or (4) maintained employment records. See *Herman*, 172 F.3d at 139 (2d Cir. 1999); see also *Raquer*, 2012 U.S. Dist. LEXIS 141975 at *10, 2012 WL 4494882 (S.D.N.Y. Sept. 28, 2012).

No one of the four factors standing along is dispositive. See *Herman*, 172 F. 3d at 139 (2d Cir. 1999). The existence of all four indicia of employment can be sufficient to establish employer status. See *Zheng*, 355 F.3d at 69. However, employer status does not require the existence of all four, and a court should consider any other factors it deems relevant. See *id*. at 69, 71-72.

Courts in the second circuit hold that the New York Labor Law embodies the same standards for employment as the FLSA. See *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ("Courts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) ("Because New York Labor Law and the FLSA embody similar standards with respect to the legal issues before [this Court], [this Court] will consider the federal law in deciding whether defendants were joint employers").

The question of whether an employer-employee relationship exists under the FLSA is based on the aforementioned "economic reality" test, taking into account the totality of the circumstances. See *Shibetti v. Z Rest., Diner & Lounge, Inc.*, 478 F. Supp. 3d 403, 413 (E.D.N.Y. 2020), citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). Furthermore, courts in the Second Circuit generally look to the aforementioned four non-exclusive factors to determine the "economic reality" of a putative employment relationship. See *id*.

### i. Richard Lam Is an Employer.

The Defendants do not dispute that Lam is an employer under the FLSA and NYLL.

###### ii.     Joanne Hong Bao Is Not an Employer.

The question of whether an employer-employee relationship exists under the FLSA is based on the aforementioned "economic reality" test, taking into account the totality of the circumstances. *See Shibetti*, 478 F. Supp. 3d 403, 413 (E.D.N.Y. 2020), citing *Irizarry*, 722 F.3d 99, 104 (2d Cir. 2013). Furthermore, courts in the Second Circuit generally look to the aforementioned four non-exclusive factors to determine the "economic reality" of a putative employment relationship. *See id*.

In the present matter, Hong Bao is the wife of Lam. As such, Hong Bao did, at times, visit the restaurants of The Bao and Uluh. Furthermore, Hong Bao did comment on certain issues while at the restaurants. However, her comments should not be construed as control over the employees of either of the restaurants. Hong Bao's involvement in the restaurants did not amount to the level of her being classified as an employer under the FLSA and NYLL.

Hong Bao does not currently own any shares of Eight Oranges Inc. or Chibaola, Inc. The sole shareholder of the Corporate Defendants is Lam. Therefore, Hong Bao currently has no ownership interest in the Corporate Defendants who employed Plaintiffs.

As the Corporate Defendants were owned by Lam, Hong Bao did not have significant control over or be involved in the Corporate Defendants' operation, management, or any other major business decision-making. Therefore, Hong Bao did not exercise operational control of significant aspects of the Corporate Defendants' day-to-day operations. Defendants emphasize that Hong Bao was not at the restaurants on a daily basis. Hong Bao's time at the restaurants varied greatly, from once a month to once a week. *See* D. Ex. 5, Shahi Dep. at 110: 3-11.

First, there is no material proof that unequivocally demonstrates that Hong Bao actively participated in the hiring or firing of employees for the Corporate Defendants. The Plaintiff Shahi,

testified in his deposition that during his tenure at The Bao, he was given authority to hire and fire employees as the restaurant needed or did not need help. Plaintiff Shahi further testified that he would "share the opinion with Joanne and Richard" regarding his hirings and firings. *See* D. Ex. 5, Shahi Dep. at 22: 4-18. This could imply that Hong Bao was involved with the hiring and/or firing process at The Bao. However, upon further analysis of testimony provided by other opt-in plaintiffs, it is more likely than not that the authority to hire and fire employees at The Bao was with Lam, Plaintiff Shahi, and Mei. Meanwhile, the hiring and firing of employees at Uluh was more likely than not handled by various individuals, such as Lam, Mei, and Yunrui Du. None of whom were Hong Bao. Specific examples include Shahi testifying that he was hired by Lam, Mangahas, who was hired by Lam at The Bao and Mei at Uluh, and opt-in Plaintiff Wochao Chen ("Chen"), who was hired by Yunrui Du at Uluh. *See* D. Ex. 5, Shahi Dep. at 7: 14-15; D. Ex. 4, Mangahas Dep. at 10: 13-15, 16: 5-6;  D. Ex. 20, Chen Dep. at 11: 17-19. Additionally, Lam testified in the Rule 30(b)(6) deposition that the team leaders at The Bao and Uluh were the individuals who were primarily delegated the authority to hire and fire employees as determined by the needs of the restaurants. Because of this, the factor of the authority to hire and fire employees for purposes of determining whether an individual is an employer under the FLSA and NYLL, should be in favor of Hong Bao not being an employer as she did not have that authority.

Second, the authority to supervise and control employee work schedules and conditions of employment at The Bao and Uluh ultimately fell in the hands of Lam, who, in turn, delegated this authority to various individuals, such as Shahi at The Bao or Mei at Uluh, but not to his wife, Hong Bao. Shahi testified in his deposition that during his time working as a team leader at The Bao, he was given the authority to set the schedules for himself and other employees at The Bao. At Uluh, opt-in Plaintiff Ying Ying Yuan ("Yuan") testified that she continued to work at Uluh because

Mei, the manager, was able to give her an accommodating schedule while she was in school. *See* D. Ex. 17, Yuan Dep. at 30: 17-25. Additionally, opt-in Plaintiff Wen Bin Zhu ("Zhu") testified that while working at Uluh, only Mei, Yunrui Du, and Richard handled the scheduling of employees' work schedules. *See* D. Ex. 16, Zhu Dep. at 19:19-25. Given the limited amount of time Hong Bao spent at either restaurant, no reasonable juror could find that Hong Bao was adequately equipped to determine the work schedules of employees at the restaurants. As to the authority to supervise and control the conditions of employment at The Bao and Uluh, Hong Bao did not have the ability to do so. Once again, the authority to control the conditions of employment lay in the hands of Lam, who, like the authority to hire and fire employees, delegated to the team leaders of The Bao and Uluh. As Mangahas testified, her supervisors who oversaw her daily performance while at The Bao were "Jimmy", Plaintiff Shahi, and Mei. *See* D. Ex. 4, Mangahas Dep. at 29: 18-21. While the other named plaintiff, Wohflahrt, testified that her manager was Yunrui Du. *See* D. Ex. 21, Wohflahrt Dep. at 13:7-13. Although, Mangahas did testify that Hong Bao would occasionally comment on the quality of the dishes served at the restaurants or comment on something that needed cleaning, these were mere observations that any reasonable person would make. It is not enough to definitively show that Hong Bao controlled the conditions of employment as an employer under the FLSA or NYLL.

Third, the rate and method of payment for the Plaintiffs and other tipped employees of the Corporate Defendants were determined by their accountant, Chris Miu, in accordance with the relevant labor laws, then implemented by Lam and the restaurant team leaders, as testified by Lam. Based on the testimonies of multiple opt-in plaintiffs, Hong Bao was not involved in the payroll operations of the Corporate Defendants. Lam testified that Mei was his bookkeeper, and then there are various testimonies from multiple opt-in plaintiffs that state that Mei and Lam were the ones

who handled paying employees. Furthermore, Shahi specifically testified that if he wanted to give a raise to anyone, he would need to check with Mei and Lam, but made no indication that Hong Bao had any input into determining an employee's rate and payment method. *See* D. Ex. 5, Shahi Dep. at 76: 4-11. There simply is no factual basis for a reasonable jury to determine that Hong Bao had the authority to determine the rate and method of payment of the employees of the Corporate Defendants. If anything, the rate and method of payment of employees, solely remained in the hands of Lam and Mei. For this reason, the factor of whether an individual had the authority to determine the rate and method of payment of employees for purposes of determining whether an individual was an employer under the FLSA and NYLL should be in favor of Hong Bao not being an employer.

Lastly, as to who maintained the employment records of the Corporate Defendants, Lam testified that records were kept at a physical office in the basement of Uluh, which they were primarily maintained by Lam and Mei. Furthermore, Hong Bao testified that she did not maintain the records for The Bao or Uluh, and given her lack of ability to read English, it is implausible that she maintained the records for The Bao and Uluh.

Defendants maintain that there is no legal or factual basis for a reasonable jury to return a verdict finding that Hong Bao was an employer of the Plaintiffs, especially when the Plaintiffs' unsupportive claim of their employment with said defendant cannot pass the well-established "economic reality" test. Because the question of whether a particular defendant is an employer under the FLSA and NYLL is a question of law, and a reasonable fact-finder could return a verdict in favor of Hong Bao not being an employer under the FLSA and NYLL.

### d. Defendants Provided Proper Notice of the Tip Credit to Plaintiffs and other Tipped Workers.

The FLSA and the NYLL allow an employer to pay a food service employee who receives tips, below the minimum wage, if the wage paid plus the tips received equals or exceeds the minimum wage. *See* 29 U.S.C. § 203(m)(2); N.Y. Comp. Codes R. & Regs. Tit. 12 § 146-1.3(b). However, the FLSA and NYLL further specify that an employer is only allowed to utilize a tip credit if certain conditions are met. *See* 29 U.S.C. §§ 203(m), 206(a)(1); N.Y. Comp. Codes R. & Regs. Tit. 12 § 146-1.3(b). "One of the conditions required by both federal and state law involves **sufficient** notice of the tip credit to the employee." *Galvez v. 800 Ginza Sushi Inc.*, 19 Civ. 8549 (JPC) at \*20 (S.D.N.Y. Mar. 11, 2022). "The notice provision is 'strictly construed' and 'requires that an employer take **affirmative steps** to inform affected employees of the employer's intent to claim the tip credit." *Galvez*, 19 Civ. 8549 at \*20 (citing *Inclan*, 95 F. Supp. 3d at 497).

### i. FLSA Notice Requirements

Under the FLSA, "if the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum wage…" *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)). Moreover, the "FLSA's notice provision does not require that the notice be given in writing." *Hernandez v. JRPAC Inc.*, 2016 WL 3248493, at \*23 (S.D.N.Y. June 9, 2016). "Employers bear the burden of showing that they have satisfied this requirement by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law." *Heng Chan v. Sung Yue Tung Corp.*, 2007 U.S. Dist. LEXIS 7770, 2007 WL 313483, at \*18 (S.D.N.Y. Feb. 1, 2007).

### ii. NYLL Notice Requirements

Notice of the tip credit under the NYLL is also required. However, NYLL requirements are more stringent than the FLSA, in that the notice of the tip credit must be in writing, and must fully comply with the requirements of § 146-2.2(a) of the New York Hospitality Wage Order:

> That written notice must state the amount of tip credit taken from the hourly rate and advise that the employer will pay the employee additional wages if tips do not bring the employee up to the basic hourly rate. *Id*. (citing N.Y. Comp. Codes R. & Regs. Tit § 146-2.2(a)). "[T[his notice must be written in both English and 'any other language spoken by the new employee as his/her primary language' … [and] once an employer has provided written notice of this tip credit, the employer must obtain 'acknowledgment of receipt signed by the employee,' … [to be] 'kept on file for six years.'

*e.g.*, *Galvez*, 19 Civ. 8549 (JPC), at *20-21. "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Id*. These preconditions "are strictly construed and must be satisfied even if the employee received tips at least equivalent to the minimum wage." *He v. Home on 8th Corp.*, No. 09 Civ. 5630, 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014); see also *Chen*, 2023 WL 5574854, at *6; *Cabrera, v. Canela*, 412 F. Supp. 3d 167, 182 (E.D.N.Y. 2019).

In recent years, the Southern District have determined that generic law posters alone are insufficient to meet notice of the tip credit. *See, e.g.*, *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 256 (S.D.N.Y. 2021). It has been further stated that "even had a [Department of Labor] poster been prominently displayed in the workplace, [employer's] notification to [employees] merely that they would earn certain wages, without more, would not satisfy FLSA's notice provision for taking a tip credit." *Hernandez*, 2016 WL 3248493, at *22 (S.D.N.Y. June 9, 2016).

### iii. Defendants Efforts Constitute Notice Under the FLSA and NYLL.

As to whether Defendants gave notice under the FLSA and NYLL, there remains a genuine issue of material fact, because Defendants made their best efforts to inform all employees of their rate of pay and to inform them of a tip credit taken, by verbally informing front-of-house

employees that their pay would be $10 per hour plus tips, posting labor law posters at the Restaurants, and also tried their best to implement a policy in which employees would have to sign a form created by the New York State Department of Labor acknowledging the employee's pay rate. D. Ex. 4, Mangahas Dep. at 40:20-23; D. Ex. 12, Rodriguez Dep. at 22:14-20; D. Ex. 13, Situ Dep. at 35:8-36:1; P. Ex. 25, Shahi Dep. at 32:18-34:2; P. Ex. 27, Cedeno Dep. at 36:18-37:6; P. Ex. 13, Aphiromdechanon Dep. at 17:5-20; P. Ex. 9, Kalsang Dep. 59:1-11; P. Ex. 14, Zhu Dep. at 9:21-12:1; D. Ex. 11, Defendants' Labor Law Posters; P. Ex. 37, Wage Notices.

Defendants, admit that any one of these forms of notice alone do not meet the notice requirements of the FLSA and NYLL. However, when combined (verbal notice, labor law posters, and the Notice of Pay forms provided by the Restaurants accountant), it should be sufficient to serve as notice to any employee of the Restaurants of their pay rate and any tip credit taken.

### e. Defendants' Tip Pools and Alleged Tip Misappropriation at the Restaurants.

Under both the FLSA and NYLL, employees cannot be required to share tips with management personnel. *See* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."); NYLL, Art. 6 § 196-d. New York courts have held that an employee loses the ability to participate in a tip pool, for the purposes of NYLL § 196-d, if he has "meaningful authority," even if he does not have "final authority." *Murphy v. Lajaunie*, No. 13 Civ. 6503 (RJS), 2016 WL 1192689, at *3 (S.D.N.Y. Mar. 22, 2016) (citing *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013). The Court of Appeals in *Barenboim* found that "meaningful authority" includes the ability to discipline subordinates, assist in performance evaluations, participate in the hiring or

firing process, and input in the creation of employee work schedules. *See Barenboim*, 21 N.Y.3d at 473.

Defendants do not dispute that Mei was at one point the general manager of the Restaurants. However, Defendants maintain that there is a genuine issue of material fact as to whether Team Leaders should be considered managers who are not entitled to receive tips under the FLSA and NYLL. This is primarily due to the fact that, as previously stated, there were, in fact, other managers at the Restaurants, to which Plaintiffs have testified. Voiding the Restaurants' ability to take a tip credit for the minor error of Mei receiving tips would lead to a disproportionate penalty. The consequences of this would be devastating for the Defendants, potentially resulting in significant hardship or even the closure of the businesses.

### f. Plaintiffs' Side Work at the Restaurants Were Not Excessive.

Under the NYLL, if a tipped employee engages in non-tipped side work for more than two hours and/or 20 percent of their time at work, whichever is less, the employer must pay the tipped employee the full minimum wage for the employee's entire workday. *See* 12 N.Y.C.R.R. § 146-2.9; *see also Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 470-71 (S.D.N.Y. Aug. 12, 2015); *Rodriguez v. Solares Corp.*, No. 16 Civ. 3922, 2018 WL 7252949, *6 (E.D.N.Y. Aug. 14, 2018).

In the present matter, Plaintiffs who sat for depositions, estimated that they spent over 20 percent of their at time performing non-tipped side work. As shown by Defendants, Uluh, using 2021 as a sample, generated approximately $15,000.00 per day in sales, while The Bao, using 2021as a sample, generated approximately $7,000.00 per day in sales. The genuine issue of material fact here is that if Plaintiffs allege that all front-of-house employees spent more than 20 percent of their time  performing non-tipped side work, then they would not have had any time to

actually perform tip producing work. The most expensive dish at The Bao is the Peking Duck at $76.00 per duck. *See* P. Ex. 3 at 4 (The Bao Menu). The most expensive dish at Uluh is also the Peking Duck at $82.00 per duck. *See* P. Ex. 4 at 10-11 (Uluh Menu). These are the most expensive items on the menus at both Restaurants, any reasonable fact-finder should be able to find that at these prices, in order to generate the sales that the Restaurants did, the front-of-house employees would constantly need to service customers, as both Restaurants are full-service restaurants. Reasonably speaking, a fact-finder should question as to how front-of-house spent so much time performing non-tipped side work, when the Restaurants had such voluminous sales.

### g. Defendants' Uniform Requirements.

Under the NYLL, "when an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday." 12 N.Y.C.R.R. Part 146 § 146-1.8(a).

Defendants do not dispute that there was a technical error on their part in regard to uniforms at the Restaurants. However, Defendants did make a good faith effort to comply with the NYLL, by way of their return policy.

### h. Defendants Provided Proper Wage Notices and Accurate Wage Statements.

### i. Defendants Provided Proper Wage Notices Under NYLL § 195(1).

Under the NYLL, an employer must provide an employee with a wage notice upon hiring containing "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage . . . the regular payday designated by the employer . . . the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer "

NYLL § 195(1)(a). Moreover, for non-exempt employees, the notice must also state "the regular hourly rate and overtime rate of pay." *Id*. *See, e.g., Dominguez v. Metropolitan Wireless Anadpur Inc.*, No. 21 Civ. 2240, 2022 WL 1164709, at *8 (S.D.N.Y. Jan. 27, 2022).

In the present matter, Defendants reiterate the reasoning set forth in Section IV(d)(iii) of this memorandum, that the combined efforts of Defendants to provide notice to employees be sufficient notice under the NYLL. Therefore, Defendants believe that there is a genuine issue of material fact as to Plaintiffs' allegations of insufficient notice to employees.

### ii. Defendants Wage Statements Provided to Plaintiffs are Sufficient.

The NYLL also requires that employers provide employees with a wage statement accompanying every payment of wages. Wage statements must include, among other items, the dates of work covered by that payment of wages, the name of the employer, the address and phone number of the employer, correct regular rates of pay, the correct number of regular and overtime hours worked, deductions, any allowances taken, and net wages. *See* NYLL Article 6, § 195(3). These requirements are strictly construed and "wage statements must . . . contain all data identified by NYLL § 195(3)." *See, e.g., Ametepe v. Peak Time Parking Corp.*, No. 18 Civ. 5384 (PAE)(SDA), 2021 WL 1172669, at *6-7 (S.D.N.Y. Mar. 29, 2021); *Bravo v. Rodriguez*, No. 18 Civ. 5807 (BMC) (RER), 2020 WL 4586391, at *3 (E.D.N.Y. Aug. 10, 2020) (employer liable for inaccurate wage statement that did not list hours worked). It is important to note that NYLL § 195(3) "does not offer relief to an employer who pays an employee properly even though it fails to comply with the strict requirements of the wage statement law." *Rodriguez v. Avondale Care Group, LLC*, No. 16 Civ. 3084 (SN), 2018 WL 1582433, at *8 (S.D.N.Y. Mar. 27, 2018).

In the present matter, Defendants concede that the paystubs in Plaintiffs' Exhibit 42 may have had deficiencies. However, Defendants contend that the Time Card Paystubs in Plaintiffs'

Exhibit 45, that Plaintiffs and other employees had to review and sign prior to receiving their pay, were sufficient under the NYLL to serve as proper wage statements, as it did have minor deficiencies, but the Time Card Paystubs did provide the general information that Defendants believe the NYLL intended for employees to have, including but not limited to, wage rate, tip credit taken, and the overtime wage rate. The only information missing on the Time Card Paystubs are a few minor pieces.

### i. Defendants Did in Fact Make a Good Faith Effort to Comply with the FLSA and NYLL.

Both the FLSA and NYLL provide for liquidated damages in addition to actual damages. 29 U.S.C. §§ 216(b), 260; NYLL § 663(1). Liquidated damages are mandatory "unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in failing to make the proper payment was not a violation of the FLSA." *Bedasie v. Mr. Z Towing, Inc.*, No. 13 Civ. 5453 (CLP), 2017 WL 1135727, at *45 (E.D.N.Y. Mar. 24, 2017) (citing 29 U.S.C. § 216(b)); *Karic v. Major Auto. Cos., Inc.*, No. 09 Civ. 5708, 2014 WL 1508448, at *6 (E.D.N.Y. Apr. 9, 2014); *Apolinar v. Global Deli & Grocery, Inc.*, No. 12 Civ. 3446, 2013 WL 5408122, at *8 (E.D.N.Y. Sept. 25, 2013).

To avoid liquidated damages, "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness." *Zhong v. Zijun Mo*, No. 10 Civ. 0806, 2012 WL 2923292, at *6 (E.D.N.Y. July 18, 2012) (quoting *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). To establish good faith, an employer must "take active steps" to understand its obligations under the FLSA and comply with them. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008). "[D]ouble damages [are] the norm and single damages the exception[.]" *Herman*, 172 F.3d at 142 (2d Cir.1999); *see also Leevson v. Aqualife USA Inc.*, No. 17 Civ. 3868 (XAP), 2019 WL 1870494,

at *2 (2d Cir. 2019) (affirming the district court's award of liquidated damages). "Good faith in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take **active** steps to ascertain the dictates of the FLSA and then move to comply with them." *See Reich*, 121 F.3d at 71.

In the present matter, Plaintiffs allege that Lam willfully violated the FLSA and NYLL, despite having a general understanding of the requirements. However, Plaintiffs completely disregard the active steps that Defendants took to comply with the requirements of the FLSA and NYLL. Defendants researched the requirements on the internet, Defendants consulted with their accountant, Chris Miu, in regard to the requirements of relevant labor law. Defendants believe that there are only a handful of small businesses that can strictly comply with every stringent requirement of the FLSA and NYLL, and remain a viable economically speaking. Defendants efforts should not be overlooked, as it is probably more than what the majority of small restaurant owners have done to comply with the FLSA and NYLL.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied. There remains genuine issues of material fact that preclude such an approval requested by Plaintiffs. Despite Defendants' acknowledged shortcomings, they have demonstrated a good faith effort to comply with the FLSA and the NYLL, and maintain that Plaintiffs have suffered no real harm. Defendants understand and respect the purpose and spirit of these labor laws. However, it is evident that the spirit of the law has been manipulated by individuals seeking an unjust financial gain.

Date:   May 20, 2024                                      Respectfully submitted,
        Hackensack, New Jersey

                                                         /s/ Jonathan Ng_____

**WHITE & NG, LLC**
Jonathan Ng
Rolanzo R. White
190 Moore Street, Suite 204
Hackensack, New Jersey 07601
Telephone: (201) 968-5022

*Attorneys for Defendants*

## CERTIFICATE OF BRIEF LENGTH CONFERRAL

I hereby certify that pursuant to the Court's Individual Rules of Practice, the Parties agreed that principal briefs in support of and in opposition to this Motion shall be no more than 40 pages in length.

/s/ Jonathan Ng
Jonathan Ng