UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                               :

JESSY MANGAHAS, and PITCHAYA WOHLFAHRT,  :
*on behalf of themselves and all others similarly situated,*  :
                               :

              Plaintiffs,         :        22-cv-4150 (LJL)
                               :

        -v-                   :       MEMORANDUM AND
                               :         ORDER

EIGHT ORANGES INC. et al,            :
                               :

             Defendants.        :
                               :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  05/31/2024

LEWIS J. LIMAN, United States District Judge:

Named Plaintiffs Jessy Mangahas ("Mangahas") and Pitchaya Wohlfahrt ("Wohlfahrt" and, with Mangahas, "Named Plaintiffs") bring this action against defendants Eight Oranges Inc. ("Eight Oranges"), doing business as the Bao ("The Bao"), Chibaola, Inc. ("Chibaola"), doing business as Uluh ("Uluh"), Joanne Hong Bao ("Hong Bao"), and Richard Lam ("Lam," and together with the Bao, Uluh, and Hong Bao, the "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Dkt. No. 84.  Named Plaintiffs move, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), for an Order: (1) certifying this case as a class action; (2) appointing Mangahas and Wohlfahrt as class representatives; (3) appointing Fitapelli & Schaffer, LLP as class counsel; (4) directing Defendants to produce a class list; and (5) authorizing notice to all class members.  Dkt. No. 92.

For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Familiarity with this case is presumed from the Court's previous opinions in the action. *See* Dkt. Nos. 43, 44, 83.  The following facts are taken from the parties' submissions in

connection with the motion for class certification "and the Court resolves factual disputes as necessary for the disposition of" the motion.  *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 258 (S.D.N.Y. 2018).

Defendants in this case are the owners and operators of two restaurants located in lower Manhattan, The Bao and Uluh (collectively, the "Restaurants").  The Bao is located at 13 St. Marks Place, Dkt. No. 93-21 at 4, and Uluh is located roughly two blocks away at 152 Second Avenue, Dkt. No. 93-21 at 7.  The Bao and Uluh both serve Chinese food.  *See* Dkt. No. 93-3. The Bao is owned by Eight Oranges, Dkt. No. 93-1 at 14:13–15, and Uluh is owned by Chibaola, *id.* at 14:19–21, both of which, in turn, are owned and managed by Lam, *id.* at 53:18–54:24.  Lam manages the Restaurants from a single office located in the basement of Uluh, *id.* at 54:20–24, with the assistance of a single bookkeeper, Lu Mei Zhang ("Mei"), *id.* at 55:3–19.  Mangahas worked for Defendants as a front-of-house worker from approximately 2018 to December 2023, at both The Bao and Uluh.  *See* Dkt. No. 93-8; Dkt. No. 93-9 at 18.  Wohlfahrt worked for Defendants at Uluh.  Dkt. No. 93-25 at 46.

In their second amended complaint, Named Plaintiffs bring claims that Defendants violated the overtime, minimum wage, and tip credit provisions of the Fair Labor Standards Act ("FLSA"), and the overtime, minimum wage, tip credit, uniform reimbursement, spread of hours, wage notice, and wage statement provisions of the New York Labor Law ("NYLL").  In support of those claims, Named Plaintiffs allege that the Restaurants were operated as a single integrated enterprise with common management and ownership, Dkt. No. 84 ¶ 6, and that at all relevant times, Named Plaintiffs and other front-of-house tipped workers for the Restaurants—servers, runners, bussers, bartenders, and barbacks (the "Tipped Workers")—worked between both Restaurants at Defendants' direction, *id.* ¶ 7.  Named Plaintiffs assert that the Restaurants

routinely shared supplies and had the same employment policies, practices, and procedures for all Tipped Workers. *Id.* ¶¶ 8, 64. Specifically Defendants allegedly failed to provide the Tipped Workers adequate notice of the tip credit, required Tipped Workers to perform a substantial amount of non-tipped work, compensated the Tipped Workers at the tipped minimum wage rate rather than the full hourly minimum wage rate when the Tipped Workers performed non-tipped work, required Tipped Workers to pay for tools of the trade such as uniforms, applied a one-hour break deduction from the Tipped Workers' pay even when the Tipped Workers did not take a break, failed to pay the Tipped Workers at the minimum hourly wage rate and pay the Tipped Workers earned overtime wages, required the Tipped Workers to participate in a tip distribution pool that included tip-ineligible workers, retained portions of the tip distribution pool, failed to pay the Tipped Workers spread of hours pay when the interval between the beginning and end of their workday exceeded ten hours, failed to provide proper wage notices, and failed to provide accurate wage statements. *Id.* at 22–30.[1]

On October 18, 2022, the Court issued an Opinion and Order conditionally certifying the case as a collective action under Section 216(b) of FLSA. Dkt. No. 43. Fifteen consent-to-join forms have been filed on behalf of twenty-seven additional individual plaintiffs. Dkt. No. 93-10.

On December 7, 2023, Named Plaintiffs filed this motion for class certification pursuant to Federal Rule of Civil Procedure 23. Dkt. No. 92. Named Plaintiffs move for an order: (1) certifying a class of all Tipped Workers "who worked at The Bao and Uluh from October 5, 2015 through the present"; (2) appointing Mangahas and Wohlfahrt as class representatives; and (3) appointing the law firm of Fitapelli & Schaffer, LLP as class counsel. *Id.* Named Plaintiffs also seek an order that Defendants produce a list of the names, last known addresses and other

---

[1] Named Plaintiffs also bring individual claims for retaliation under FLSA and the NYLL.

identifying information of the NYLL class members and authorizing notice to all class members.
*Id.*

## PROCEDURAL HISTORY

This action was initiated by complaint filed on May 20, 2022.  Dkt. No. 1.  On August 18, 2022, Mangahas filed an amended complaint.  Dkt. No. 25.  On September 1, 2022, all Defendants answered the amended complaint, Dkt. No. 32, and Defendant Hong Bao filed a motion to dismiss the amended complaint pursuant Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, Dkt. No. 28.  On September 16, 2022, Mangahas filed a motion for conditional certification of the case as a collective action under FLSA, Dkt. No. 36, along with her own declaration in support of the motion, Dkt. No. 38-4, and declarations in support of the motion by opt-in Plaintiffs Thinley Kalsang, Dkt. No. 38-5, and Wen Bin Zhu, Dkt. No. 38-6.

On October 18, 2022, the Court decided both the motion of Hong Bao to dismiss, and the motion of Mangahas for conditional certification of the case as a collective action.  In one Opinion and Order, the Court rejected Hong Bao's argument that the amended complaint contained insufficient allegations to plausibly allege that she was an employer under the FLSA or the NYLL and denied Hong Bao's motion to dismiss the amended complaint for failure to state a claim.  Dkt. No. 44.  In a separate Opinion and Order, the Court granted Mangahas's motion for conditional certification of the case as a collective action.  Dkt. Nos. 43, 45.  The Court first held that Plaintiff "offered evidence of a uniform practice engaged in by Defendants across the two integrated Restaurants that affected all Tipped Workers similarly and that, if proven, would violate the FLSA."  Dkt. No. 43 at 12.  Next, the Court authorized Mangahas's proposed notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit by email and text message, over Defendants' objections to some of the content of the notice, the proposed time period for the notice, and the means of distribution for the notice.  *See id.* at 16–19.  Finally, the

Court authorized the distribution of a reminder notice to potential members of the collective.  *Id.* at 19–20.  The Court did, however, deny Mangahas's application for an order equitably tolling the time for a putative member of the FLSA collective to file a consent or to join the action.  *Id.* at 20–21.  Section 216(b) notice went out to putative collective action members on January 4, 2023 and the notice period closed on March 6, 2023.

On March 29, 2023, after the FLSA opt-in period had closed, Mangahas filed a motion for leave to file a second amended complaint, seeking to add further allegations of wage and hour violations by Defendants, adding Wohlfahrt as an additional class representative, and asserting new retaliation claims on behalf of Mangahas, who was sued by Defendants in state court for defamation, and Wohlfahrt, who was terminated by Defendants, individually.  Dkt. No. 64.[2]  Defendants, without disputing that they had filed a defamation lawsuit against Mangahas and two opt-in Plaintiffs or that they had terminated Wohlfahrt, opposed the motion to amend by arguing that Mangahas had unreasonably delayed seeking the motion to amend, that granting the motion would prejudice Defendant, and that amendment would be futile.  *See* Dkt. No. 69.

On May 1, 2023, the Court granted in part and denied in part the motion for leave to file a second amended complaint.  Dkt. No. 83.  The Court granted the motion to add Wohlfahrt as a named plaintiff and permitted Wohlfahrt to bring her claim for retaliation.  *See id.* at 7–9.  The Court also granted the motion to amend the complaint to include further allegations of wage and hour violations by Defendants, specifically with respect to food packers.  *Id.* at 10.  The Court found that Mangahas had sufficiently demonstrated that prior to the opt-in period, Mangahas did not have enough information to allege that food packers were impermissibly permitted to share

---

[2] Mangahas filed a letter motion for leave to file a second amended complaint on March 20, 2023, *see* Dkt. No. 62, but the Court denied that letter motion without prejudice to renewal by formal motion, *see* Dkt. No. 63.

tips in violation of the FLSA and NYLL, and that it obtained the information needed to allege the claim only as a result of the opt-in process. *Id.* The Court denied, however, the motion for Mangahas to assert a claim for retaliation based upon the filing of a lawsuit against her for defamation. *Id.* at 10–12.

Named Plaintiffs filed the operative second amended complaint (the "Second Amended Complaint") on May 4, 2023. Dkt. No. 84. Defendants submitted their answer to the Second Amended Complaint on May 18, 2023. Dkt. No. 85.

On December 7, 2023, Named Plaintiffs filed the instant motion for class certification pursuant to Federal Rule of Civil Procedure 23, Dkt. No. 92, along with a declaration, Dkt. No. 93, and memorandum of law, Dkt. No. 94, in support of the motion. Defendants submitted a declaration, Dkt. No. 101, and a memorandum of law, Dkt. No. 102, in opposition to the motion for class certification on January 4, 2024. Named Plaintiffs submitted a reply memorandum of law in support of the motion on January 17, 2024. Dkt. No. 105.

## LEGAL STANDARD

"[T]he requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under § 216(b)." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020), *cert. dismissed*, 142 S. Ct. 639 (2021). Under Federal Rule of Civil Procedure 23(a), plaintiffs may sue on behalf of a class where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These "familiar requirement[s] of Rule 23(a)[ ] [are] commonly referred to as numerosity, commonality, typicality, and adequacy of representation." *In re Monster*

*Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 134 (S.D.N.Y. 2008).  A party seeking class

certification must also demonstrate compliance with one of the three requirements of Rule 23(b).

*See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  "Plaintiffs seeking certification

of a Rule 23(b)(3) damages class action must first establish numerosity, commonality, typicality,

and adequacy of representation, and then predominance of common questions of law or fact and

the superiority of a class action over other procedures."  *Scott*, 954 F.3d at 512 (citing Fed. R.

Civ. P. 23(a), (b)(3)).

        "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc.*, 564 U.S. at

350.  "[A] party must not only 'be prepared to prove that there are *in fact* sufficiently numerous

parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of

representation, as required by Rule 23(a).  The party must also satisfy through evidentiary proof

at least one of the provisions of Rule 23(b)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)

(internal citation omitted) (quoting *Wal-Mart*, 564 U.S. at 350).  A class action "may only be

certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)

have been satisfied," *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982), and that

they have been established by the preponderance of the evidence, *see Teamsters Loc. 445

Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201 (2d Cir. 2008) ("The

preponderance of the evidence standards applies to evidence proffered to establish Rule 23's

requirements.").  "[F]ailure to prove any element [of Rule 23] precludes certification."  *Ansari v.

N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  With respect to actions centering on wage and

hour claims, such as the instant action, "numerous courts have found that wage claims are

especially suited to class litigation—perhaps 'the most perfect questions for class treatment'—

despite differences in hours worked, wages paid, and wages due."  *Espinoza v. 953 Assocs. LLC*,

280 F.R.D. 113, 128 (S.D.N.Y. 2011) (collecting cases).  "Specifically, failure to pay proper

minimum wages, time-shaving, improper tip pooling, and failure to provide proper wage

statements or wage and hour notices 'are about the most perfect questions for class treatments.'"

*Gonzalez v. Hanover Ventures Marketplace LLC*, 2024 WL 1157074, at *4 (S.D.N.Y. Mar. 18,

2024) (quoting *Martinez v. Ayken, Inc.*, 2016 WL 5107143, at *12 (E.D.N.Y. Feb. 29, 2016)

(citation omitted) (collecting cases)).

Additionally, "a court that certifies a class must appoint class counsel" at the same time it

certifies the class, and the court is thus required to consider the adequacy of class counsel in its

class certification decision.  Fed. R. Civ. P. 23(g); *see also* 1 Newberg and Rubenstein on Class

Actions § 3:84 (6th ed. 2022).  In determining whether class counsel should be appointed, a court

must "address the mandatory factors set forth in Fed. R. Civ. P. 23(g)," *Kimber v. Tallon*, 556 F.

App'x 27, 28 (2d Cir. 2014) (summary order), which include: "(i) the work counsel has done in

identifying or investigating potential claims in the action; (ii) counsel's experience in handling

class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit

to representing the class," Fed. R. Civ. P. 23(g)(1)(A).  A court may also consider "any other

matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."

*Id.* 23(g)(1)(B).

Here, the motion for class certification under NYLL follows conditional certification of a

FLSA collective action.  Dkt. No. 43.  "Courts in the Second Circuit routinely certify class

actions . . . so that New York State and federal wage and hour claims are considered together."

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) (collecting cases); *see*

*also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202–203 (S.D.N.Y. 2006) ("[W]here a

collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001)). Named Plaintiffs' collective action has not yet progressed to the second step under FLSA Section 216(b), but Named Plaintiffs have thus far succeeded in their motion for conditional certification. Dkt. No. 43.

## DISCUSSION

Named Plaintiffs move for an Order certifying a class of all Tipped Workers who worked at The Bao and Uluh "from October 5, 2015 through the present," appointing them as class representatives, appointing Fitapelli & Schaffer, LLP as class counsel, directing Defendants to produce a class list, and authorizing notice to all class members. Dkt. No. 92. Named Plaintiffs assert that they satisfy the requirements of Federal Rule of Civil Procedure 23(a) for class certification, and that certification is appropriate under Federal Rule of Civil Procedure 23(b) because common questions of fact and law predominate and because a class action is superior to other methods of adjudication. Dkt. No. 94. Named Plaintiffs further argue that their counsel, Fitapelli & Schaffer, LLP, should be appointed class counsel because of their work on the instant action, and their experience handling class actions containing wage and hour claims. *Id.* at 28–30. Finally, Named Plaintiffs aver that the proposed notice satisfies the requirements of Rule 23(c)(2)(B), and that such notice should be authorized through both the means that the Court previously authorized in its Opinion and Order granting notice of the collective action and by posting at the Restaurants in a conspicuous location. *Id.* at 29–30.

Defendants oppose the motion for class certification. *See* Dkt. No. 102. Defendants argue that Plaintiffs fail to satisfy each of the requirements—numerosity, commonality, typicality, and adequacy of representation—of Federal Rule of Civil Procedure 23(a). *Id.* at 21–25. Next, Defendants dispute that class certification is appropriate under Federal Rule of Civil

Procedure 23(b)(3), arguing instead that there are not predominant questions of fact or law because the complained of policies did not apply equally to all tipped employees. *Id.* at 25–27. Finally, Defendants argue that class certification is not appropriate here because class membership is not ascertainable. *Id.* at 27–28.

## I.   Class Certification Is Appropriate

### A.   Numerosity

The numerosity inquiry focuses on whether the class is so large "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Courts have long applied a presumption that a class of forty members is sufficiently numerous that joinder of all members would be impracticable. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); 1 Newberg and Rubenstein on Class Actions § 3.12 (6th ed. 2022).  Even so, the inquiry does not end with simple tabulation of numbers; "[d]etermination of practicability depends on all the circumstances surrounding a case, not on mere numbers.  Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux*, 987 F.2d at 936 (internal citations omitted).

Here, Named Plaintiffs seek certification of a class consisting of all Tipped Workers "who worked at The Bao and Uluh from October 5, 2015 through the present." Dkt. No. 92. Named Plaintiffs have identified 129 putative class members, comprised of fifty people who worked at The Bao, sixty-five who worked at Uluh, and fourteen who worked at both Restaurants.  Defendants argue that because only twenty-seven members have opted in thus far, it is unlikely that employees at The Bao and Uluh, separately, will be able to meet the forty

person minimum necessary to establish a presumption of numerosity.  Dkt. No. 102 at 21.

The size of the class is defined by the number of employees who claim they "were subjected to the same wage and hour policies."  *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *5 (S.D.N.Y. Mar. 31, 2017).  That figure is 129.  However, even if the question were whether the class of Tipped Workers at each of The Bao and Uluh was numerous, the number of persons in those classes would satisfy the *Robidoux* standard.  *See* Dkt. No. 93-14 (identifying fifty potential class members from The Bao, sixty-five potential class members from Uluh, and fourteen potential class members that worked at both Restaurants); *see also Robidoux*, 987 F.2d at 936 (holding that a presumption of numerosity applies where there are more than forty class members); *see also Consol. Rail Corp*, 47 F.3d at 483 (same); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014).

Joinder of all the putative class members would be impracticable, whether the class is defined as Tipped Workers at both Restaurants or at each Restaurant.  Aside from the sheer size of the Class, its composition supports a finding of numerosity.  The putative class members are restaurant workers who allege labor law violations, including failure to pay minimum wage and overtime, and misappropriation of tips.  There is every reason to believe they lack the financial resources to independently participate in the litigation through joinder.  *See* Dkt. No. 84; *Robidoux*, 987 F.2d at 936; *Carollo*, 528 F. Supp. 3d at 53 ("[T]he very nature of this case—an employer allegedly taking advantage of minimum-wage workers—also suggests that the proposed class may lack the financial capabilities to bring lawsuits individually."); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *3 (S.D.N.Y. Aug. 23, 2010) (finding numerosity in part because the plaintiffs, restaurant employees, "have limited financial resources").  The fear of retaliation also supports numerosity.  1 Newberg and Rubenstein on Class Actions § 3:12 (6th

ed. 2022).  The interest of judicial economy is served by proceeding through a class action, which will ensure that the claims of all the putative class members are addressed and avoid a multiplicity of litigation based on largely the same facts and circumstances.  *See Robidoux*, 987 F.2d at 936 ("Consolidating in a class action that could be over 100 individual suits serves judicial economy.").

The fact that only twenty-seven members have opted in thus far does not preclude certification.  "[J]ust because potential class members fail to join a FLSA collective action, it does not follow that they would also elect 'to opt-out of the Rule 23 class.'"  *Huang v. Shanghai City Corp.*, 2022 WL 1468450, at *15 (S.D.N.Y. May 10, 2022) (quoting *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 267 (D. Conn. 2002) (finding numerosity with 281 potential class members and only twenty-two opt-ins)); *see also Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 53 (N.D.N.Y. 2021) ("[I]t does not follow that those potential class members who did not opt-in must be excluded from the numerosity analysis."); *Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26, 28 (E.D.N.Y. 2016) (finding numerosity with "twelve opt-in Plaintiffs and a total of approximately 80 putative class members"); *Niemiec v. Ann Bendick Realty*, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2008) (concluding that numerosity requirement was met where records showed about 127 employees that could be members of the class action but only ten opted in to the FLSA collective action, and noting that "there are other cases within this circuit supporting a finding of numerosity despite a low number of opt-in plaintiffs when certain mitigating factors are present"); *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (finding numerosity met where there were several hundred potential class members and only three opt-ins because of evidence suggesting employees failed to join due to fear of reprisal in joining FLSA collective action).  Courts "in the Second Circuit . . . continue to assess

numerosity based on the number of proposed class members rather than the number of opt-ins."
*Meyers v. Crouse Health Sys., Inc.*, 274 F.R.D. 404, 414 (N.D.N.Y. 2011).

### B.   Commonality

Next, Rule 23(a)(2) requires commonality in the law and facts such that the claims "are
capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350.  The commonality inquiry depends
upon there being "a common contention . . . of such a nature that it is capable of classwide
resolution—which means that determination of its truth or falsity will resolve an issue that is
central to the validity of each one of the claims in one stroke." *Id.*  "[W]hat matters to class
certification is not the raising of common questions . . . but rather, the capacity of a class-wide
proceeding to generate common *answers* apt to drive the resolution of the litigation." *Barrows v.
Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quoting *Wal-Mart*, 564 U.S. at 350 (emphasis in
original)).  "In wage cases, the commonality requirement is usually satisfied where the plaintiffs
allege that defendants had a common policy or practice of unlawful labor practices." *Zivkovic v.
Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) (quoting *Spencer v. No Parking Today,
Inc.*, 2013 WL 1040052, at *15 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*,
2013 WL 2473039 (S.D.N.Y. June 7, 2013)); *Andrade-Barteldes v. Valencia*, 2023 WL
8372989, at *3 (S.D.N.Y. Dec. 4, 2023).  "In fact, claims by workers that their employers have
unlawfully denied them wages to which they were legally entitled have repeatedly been held to
meet the commonality prerequisite for class certification." *Espinoza*, 280 F.R.D. at 127
(collecting cases).

Named Plaintiffs argue that the commonality requirement is met because they have
identified policies across both Restaurants that injured Named Plaintiffs and all putative class
members in virtually the same manner.  *See* Dkt. No. 94 at 22–23.  "Specifically, all putative
Class Members' underlying wage claims are dependent upon determining whether Defendants

are and were able to claim a 'tip credit' towards their wages." *Id.* at 22.  Named Plaintiffs aver that answers common to all class members will resolve that fundamental legal issue, as well as the further legal questions that underly it.  *Id.*  Named Plaintiffs also assert that some factual differences, such as the number of days or hours worked, are insufficient to defeat commonality. *Id.* at 23.

Defendants contend that the commonality requirement is not satisfied because the members of the putative class worked across different restaurants, include workers with a variety of titles, such as bussers, servers, team leaders, and managers, and include workers with differing qualifications, responsibilities, and pay rates.  Dkt. No. 102 at 22–23.  According to Defendants, these differences are more than mere factual distinctions—they defeat any ability to reach conclusions that would be applicable to all members of the putative class.  For example, Defendants note that "Wohlfahrt's duties at Uluh significantly differed from other plaintiffs as she at one point was a 'Captain.'"  *Id.*

Named Plaintiffs can establish a common question by demonstrating that there is a common policy across both Restaurants that "will produce answers that apply to all plaintiffs . . . and drive the resolution of this litigation."  *Zivkovic*, 329 F.R.D. at 69.  It is not fatal that the policy is implemented by different persons at the different restaurants or that the tip pools are comprised of different individuals.  That is inherent to any labor law class action that covers more than one work site.  All that is necessary is that there be "some glue," *Wal-Mart*, 564 U.S. at 351, holding together the practices at each of the Restaurants such that they can also be said to derive from the same policy that violates the labor laws, *cf. Richardson v. City of N.Y.*, 2021 WL 1910689, at *7 (S.D.N.Y. May 12, 2021) (employment discrimination).  This is not a case in which the two Restaurants have separate employment policies and are "distinct

operations run by distinct legal entities and different individuals," that "are separately and independently owned, managed and operated," with no "centralized control over employment relations." *Huang*, 2022 WL 1468450, at *12 (quoting *Huer Huang v. Shanghai City Corp.*, 2020 WL 5849099, at *7 (S.D.N.Y. Oct. 1, 2020), *clarified on denial of reconsideration sub nom. Huang v. Shanghai City Corp.*, 2020 WL 6136186 (S.D.N.Y. Oct. 19, 2020)); *see also Espinoza*, 280 F.R.D. at 126 (denying certification of a single class comprised of employees from multiple restaurant locations after finding "the two restaurants are run by separate and entirely independent management teams" because a manager of one of the restaurants testified: "I know nothing of any type of operations at Whym.  It was completely separate from anything that I was involved with at Eatery" (internal quotation marks omitted)).  Named Plaintiffs have "convincingly establishe[d]," *Wal-Mart*, 564 U.S. at 355, that Defendants enacted a single set of common practices—which were implemented across both Restaurants and caused injury to all Tipped Workers in similar ways—such as including improperly tip-ineligible workers in tip pools, using deficient and inaccurate wage notices and wage statements, requiring the Tipped Workers to perform substantial amounts of non-tipped work, requiring the Tipped Workers to pay for their own uniforms, failing to pay the Tipped Workers minimum and overtime wages, and failing to compensate the Tipped Workers when the interval between the beginning and end of their workday exceeded ten hours.  A single office in the basement of Uluh acts as the central management office for both Restaurants—that single office is where employment records for both Restaurants are maintained and where many of the employment practices for the Restaurants are generated.  *See* Dkt. No. 93-1 at 54:16–55:19, 64:12–65:12, 68:22, 116:10–13, 155:22–156:5, 223:4–10; Dkt. No. 93-24 at 126:18–25.  Both restaurants utilize the same payroll accountant, Mei, who, along with Lam, plays a key role in developing, conducting, and

monitoring employment practices for both Restaurants.  *See* Dkt. No. 93-1 at 218:7–223:25.

Defendants concede that the employee handbook at Uluh is based on, if not perfectly identical to,

the employee handbook at The Bao.  *See* Dkt. No. 93-15; Dkt. No. 93-1 at 63:4–65:620.  Lam is

the owner of, and served in the upper management at, both Restaurants.  The evidence

establishes that both Restaurants belonged to a single system, out of which the claims of the

Named Plaintiffs and the putative class members arise.  Defendants also concede that they used

"the 'same' wage notice forms, process for new hires, and paystubs" for both Restaurants and for

all Tipped Workers.  Dkt. No. 102 at 27.  Finally, Defendants also concede that some employees

worked at both Restaurants and were at times transferred between the two Restaurants,

suggesting centralized control of employment matters.  *See id.* at 11 (brief from Defendants

stating that "[e]vidence shows that there was a minor overlap in employees that worked at The

Bao and Uluh"); Dkt. No. 93-8 (paystubs from Mangahas showing payment from Eight Oranges

and Chibaola from overlapping time periods).

   The common questions among members of the putative class thus include whether the

Restaurants as a single enterprise implemented a policy of pooling tips, whether workers that

were not eligible to receive tips participated in the tip pools, whether the wage notices and

statements provided to the Tipped Workers were compliant with the law, whether the Tipped

Workers were supposed to be paid the minimum wage and were not, whether the Tipped

Workers were supposed to be paid overtime for working more than forty hours in a week and

were not, whether the Tipped Workers were expected to purchase uniforms and were not repaid

for those uniforms, whether the Tipped Workers were assigned excessive amounts of non-tipped

work, and whether the Tipped Workers were paid spread of hours pay when entitled to it.  These

questions are all susceptible to common answers across the two Restaurants.  *See Canelas*, 2017

WL 1233998, at *5 (holding commonality requirement satisfied claims of putative class members' arose from the same wage and hour policies); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) ("The issues to be litigated are whether the class members (1) were supposed to be paid the minimum wage as a matter of law and were not, and (2) were supposed to be paid overtime for working more than 40 hours a week and were not. These are about the most perfect questions for class treatment.").

It does not defeat commonality that the putative class includes "Bussers, Servers, Team Leaders, and alleged Managers," who Defendants allege "[a]ll have differing qualifications, responsibilities, and pay rates."  Dkt. No. 102 at 22.  "Once a common question is identified, 'differences among the questions raised by individual members [of the class] will not defeat commonality.'"  *Iglesias-Mendoza*, 239 F.R.D. at 371 (quoting *German v. Fed. Home Loan Mortg. Corp.,* 885 F. Supp. 537, 553 (S.D.N.Y. 1995)) (citing cases); *see also Martinenko v. 212 Steakhouse, Inc.*, 2023 WL 2919766, at *6 (S.D.N.Y. Apr. 12, 2023), *report and recommendation adopted*, 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023) ("That there may be factual differences, such as the number of days or hours worked and each individual's regular rate of pay, does not defeat commonality given that there is at least one issue common to the class."); *Shepard v. Rhea*, 2014 WL 5801415, at *4 (S.D.N.Y. Nov. 7, 2014) ("[F]actual differences among the claims of class members do not preclude a finding of commonality."). The factual differences identified by Defendants may ultimately affect the amount of damages to which each class member is entitled, but they do not necessitate a rejection of class certification. *Espinoza*, 280 F.R.D. at 127 ("Defendants' argument that plaintiffs' 'off-the-clock' claims would require this Court to determine liability on an individualized basis confuses liability with damages.  The critical inquiry is whether the common questions are at the 'core' of the cause of

action alleged." (internal quotation marks omitted)); *Ansoumana*, 201 F.R.D. at 86 ("The

differences among Plaintiffs as to the number of hours worked, the precise work they did, and

the amount of pay they received concern the amount of damages to which any individual

Plaintiff might be entitled if and when liability is found.  It is well-established that individual

questions with respect to damages will not defeat class certification . . . unless that issue creates a

conflict which goes to the heart of the litigation.").

The case relied upon by Defendants is inapposite.  *See* Dkt. No. 102 at 22 (citing *Sobel v.

Yeshiva Univ.*, 85 F.R.D. 322, 323–24 (S.D.N.Y. 1980)).  In *Sobel*, plaintiffs initially brought an

action alleging gender discrimination in employment on behalf of "all female *physicians* on the

faculty of the Albert Einstein College of Medicine ('AECOM')."  85 F.R.D. at 323 (emphasis

added).  The plaintiffs, after learning that the majority of women professors at AECOM "did not

hold the degree of doctor of medicine ['M.D.,'] . . . moved to file a second amended complaint

which, inter alia, would have expanded the class to include all female faculty members,

regardless of the degree held."  *Id.*  The court denied the motion, and then denied the plaintiffs'

motion to redefine and recertify the class, on each occasion because "there was an absence of

typicality and commonality between professors who are M.D.s and those who are not, and that as

a result their inclusion within one class would be inappropriate."  *Id.*  The court reached that

conclusion after noting categorical differences between faculty-members that were M.D.s and

those that were not, including that "physicians are used primarily in teaching clinical courses,

during which the actual care and treatment of patients take place, while the non-M.D.s primarily

teach courses involving theoretical subjects."  *Id.*  The court also noted that "with their greater

earning potential, their more varied employment possibilities, and their greater prestige, it would

be understandable to observe that, as a group, physicians are treated differently, and better than

their non-M.D. counterparts at a school of medicine." *Id.* at 324.  Those differences were crucial

in the context of a discrimination claim because, according to the court:

> The only way that discrimination can be convincingly demonstrated in a case of
> this nature is by statistical evidence in which all consequential differences, except
> sex, are eliminated.  Thus, while it may, as argued, be true that if female M.D.
> faculty members are discriminated against because of their sex, then non-M.D.
> female faculty members are likely to suffer from the same discrimination, any
> attempt to mix M.D.s and non-M.D.s in an indiscriminate statistical analysis would
> be to undermine the foundations of the analysis from the start.

*Id.* at 325.  In sum, categorical differences in the *Sobel* plaintiffs' qualifications introduced an

inescapable and confounding variable that would necessarily distort the liability analysis.  The

court also noted, however, that "[i]f the problem of non-M.D. faculty members had been brought

to the attention of the Court at an earlier stage of the litigation the obvious resolution would have

been to set up two or more subclasses," but that "[a]fter four and a half years of

litigation, . . . that is not a viable alternative."  *Id.*

Unlike in *Sobel* where some of the putative class members would have been M.D.s and

others would not, here there are no objective distinctions in the qualifications of the Tipped

Workers that would eliminate the potential for class-wide resolution of common questions of law

or fact.  The thrust of the claims asserted here is that workers that received tips were injured

because of common policies across the Restaurants that applied to all tipped workers.  *See, e.g.*,

Dkt. No. 94 at 10 ("Here, at both Restaurants, Tipped Workers received tips via a tip pooling

system without regard to the individuals scheduled for that shift. . . . The tip pool touched

everyone who was working on a given shift, as the inclusion of any purported improper

personnel by simple math reduces the tips received by others.").

## C.    Typicality

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim

arises from the same course of events and each class member makes similar legal arguments to

prove the defendant's liability."  *Robidoux*, 987 F.2d at 936; *see also Barrows*, 24 F.4th at 131

("Typicality requires that the claims of the class representatives be typical of those of the class,

and is satisfied when each member's claim arises from the same course of events, and each class

member makes similar legal arguments to prove the defendant's liability."  (quoting *Robinson v.*

*Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001), *abrogated on other grounds*

*by Wal-Mart*, 564 U.S. 338)).  "The commonality and typicality requirements tend to merge into

one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3).  The crux

of both requirements is to ensure that 'maintenance of a class action is economical and [that] the

named plaintiff's claim and the class claims are so interrelated that the interests of the class

members will be fairly and adequately protected in their absence.'"  *Marisol A. v. Giuliani*, 126

F.3d 372, 376 (2d Cir. 1997) (internal citations omitted) (quoting *Falcon*, 457 U.S. at 157 n.13);

*see also Damassia*, 250 F.R.D. at 157 ("While th[e] [typicality] inquiry is related to the

commonality inquiry, 'the commonality inquiry establishes the existence of a certifiable class,'

whereas 'the typicality inquiry focuses on whether the claims of the putative class

representatives are typical of the class sharing common questions.'" (quoting *In re Frontier Ins.*

*Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997))).  "'[D]ifferences among the Plaintiffs

as to the number of hours worked, the precise work they did, and the amount of pay they

received concern the amount of damages to which any individual Plaintiff might be entitled,' but

do not defeat typicality for Rule 23 purposes."  *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275

F.R.D. 193, 199 (S.D.N.Y. 2011) (quoting *Ansoumana*, 201 F.R.D. at 86).

Defendants contend that the typicality requirement is not satisfied because Named

Plaintiffs "have oddly sued two distinct corporations with two different systems and doing

business under completely difference names, with different menus and management, making a

'conduct by a single system' impossible." Dkt. No. 102 at 23–24.  According to Defendants, "[e]ven if the corporations are owned by Defendant Richard Lam, and he used the same bookkeeper, this does not show that the conduct at both restaurants derived from a single system," because Lam's "actions and intentions show each restaurant was to operate independently, i.e., within its own system." *Id.* at 24.  But, as noted, Named Plaintiffs have proffered evidence that the two Restaurants were run in an integrated fashion and had common labor policies that violated the labor laws.  "The commonality and typicality requirements are satisfied when plaintiffs' grievances share common questions of law or fact and 'when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Iglesias-Mendoza*, 239 F.R.D. at 370–71 (S.D.N.Y. 2007) (quoting *Robidoux,* 987 F.2d at 936–37).

Named Plaintiffs' claims are typical of the claims of the class.  While the alleged violations occurred at distinct points in time for each of the class members, they all occurred in a single course of events based in the use of identical employment policies and procedures by The Bao and Uluh.  Named Plaintiffs' "injuries derive from a unitary course of conduct by a single system" that similarly injured the rest of the putative class.  *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (quoting *Marisol A.*, 126 F.3d at 377).

Additionally, "minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux*, 987 F.2d at 936–937; 1 Newberg and Rubenstein on Class Actions § 3:34 (6th ed. 2022) ("[F]actual differences will not render a claim atypical if the claim arises from the same event, practice, or course of conduct that gives rise to the claims of the class members and is based on the same legal theory.").  Courts have also determined that typicality is

not defeated where putative class members differed in their job responsibilities.  *See, e.g.,*

*Wagner v. Taylor*, 836 F.2d 578, 590–91 (D.C. Cir. 1987).  Named Plaintiffs have therefore met

the "not highly demanding" standard of Rule 23(a)(3) typicality.  *Bolanos v. Norwegian Cruise*

*Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002).

> **D.      Adequacy of Representation**

"Adequacy of representation is evaluated in two ways: (1) by looking to the

qualifications of plaintiffs' counsel; and (2) by examining the interests of the named plaintiffs."

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 164 (S.D.N.Y. 2014) (quoting *Flores v. Anjost*

*Corp.*, 284 F.R.D. 112, 128–29 (S.D.N.Y. 2012)).  "[T]wo factors generally inform [the

inquiry]" of whether a named class representative is adequate under Rule 23: "(1) absence of

conflict and (2) assurance of vigorous prosecution." *Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir.

2019) (quoting *Robinson*, 267 F.3d at 170).  "In evaluating [the adequacy] requirement, courts

consider whether the class representatives are familiar with the action and 'whether they are of

sufficient moral character to represent a class.'" *Zivkovic*, 329 F.R.D. at 71 (quoting *Espinoza*,

280 F.R.D. at 125).  "In addition, 'where a putative class representative is subject to unique

defenses which threaten to become the focus of the litigation,' certification of the class is not

appropriate because the representative cannot act in the best interest of the class." *Id.* at 71–72

(quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).

First, Named Plaintiffs' counsel is well-qualified to zealously represent the class in this

action.  Fitapelli & Schaffer, LLP, the law firm representing the plaintiffs in this case, has

substantial experience litigating federal class action wage and hour cases, and has won more than

$200 million in awards for their clients in these cases.  Dkt. No. 93 ¶ 21.  In her declaration,

Fitapelli & Schaffer, LLP partner Amanda Ortiz ("Ortiz") cites to dozens of cases in which the

firm has been appointed class and collective counsel.  *Id.*  "Based upon counsel's experience in

handling class actions and employee wage and hour cases," the Court is satisfied that they "are qualified to represent and capable of representing the class." *Jackson*, 298 F.R.D. at 165.

Named Plaintiffs aver that they adequately represent the class because "Ms. Mangahas and Ms. Wohlfahrt have the same interests and have suffered the same injuries as the putative NYLL Class as former Tipped Workers subject to the same practices relating to improper notice, improper tip pooling, excessive side work, unlawful deductions, unlawful uniform charges, and improper wage notices and wage statements." Dkt. No. 94 at 25. Named Plaintiffs also assert that their individual claims for retaliation do not defeat adequacy of representation because "[n]othing in Plaintiffs' individual retaliation claims would be 'inconsistent with the proposed class's interests.'" *Id.* at 26 (quoting *Zivkovic*, 329 F.R.D. at 72); *see also id.* ("That Plaintiffs wish to prove retaliation after the lawsuit has zero bearing on 'whether Defendants failed to comply with [the] tip credit . . . wage notice and statement requirements.'" (alteration in original) (quoting *Zivkovic*, 329 F.R.D. at 72)).

Defendants argue that Named Plaintiffs do not adequately represent the putative class because the injuries that they claim to have suffered "would be different given their respective places of employment, dates of employment, job responsibilities, and job titles." Dkt. No. 102 at 24. Defendants assert that as a result, Named Plaintiffs "were not subject to the same practices relating to improper notice, improper tip pooling, excessive side work, unlawful deductions, unlawful uniform charges, and improper wage notices and wage statements." *Id.* at 24–25. Finally, Defendants note that "Mangahas primarily worked at The Bao (for approximately four years) during her employment and only worked at Uluh for a year when The Bao was closed during the pandemic," and that "Wohlfahrt never worked at The Bao." *Id.* at 25.

For the reasons already stated, Named Plaintiffs have established that they adequately represent the class, based upon both "(1) absence of conflict and (2) assurance of vigorous prosecution." *Robinson*, 267 F.3d at 170. "The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia*, 250 F.R.D. at 158. The presence of minor differences in the underlying facts giving rise to Named Plaintiffs' claims does not transform the Named Plaintiffs into inadequate class representatives, so long as those differences do not manifest as material conflicts between the class members' positions. Differences in the amount of damages sought are immaterial to adequacy of representation. *In Re Med. X-ray Film Antitrust Litig.*, 1997 WL 33320580, at *11 (E.D.N.Y. Dec. 26, 1997). Finally, both Mangahas and Wohlfahrt have been actively involved in litigating this case and are certainly "familiar with [this] action." *Zivkovic*, 329 F.R.D. at 71. According to Ortiz's declaration, Mangahas complied with a served written discovery request from Defendants, and Wohlfahrt too produced materials pursuant to Rule 26 initial disclosure requirements. Dkt. No. 93 ¶ 14. Both sat for depositions in November 2023. Dkt. Nos. 93-9, 93-26.

## E.    Ascertainability

Defendants argue that class certification should nonetheless be denied because membership in the class that Named Plaintiffs' seek to certify would depend on factual findings by the Court regarding which employees should have received tips. Dkt. No. 102 at 27. Defendants' argument is largely predicated on the assertion that the Restaurants are not operated as a single enterprise, and that membership can only be ascertained based upon the business records of the individual restaurants. *Id.* at 28. Defendants also assert, however, that "fact-intensive inquiry, requiring heavy subjective analysis, must still be made in determining who should or should not have been considered a tipped employee." *Id.*

Named Plaintiffs respond that membership in the proposed class of Tipped Workers is sufficiently ascertainable.  Dkt. No. 105 at 10.  According to Named Plaintiffs, "the wage records [attached to the motion for class certification] clearly indicate the individuals who worked as Tipped Workers and indicate whether their wages were subject to the tip credit."  *Id.*  Named Plaintiffs also assert that "since each paystub specifically identifies the corporate entity, determining whether that person worked at The Bao or Uluh is very simple."  *Id.*

Rule 23's ascertainability requirement asks "whether the [proposed] class [is] defined by objective criteria that ma[kes] the class's membership sufficiently definite, not whether the class [is] administratively feasible."  *In re Petrobras Sec.*, 862 F.3d 250, 266 (2d Cir. 2017), *cert. dismissed sub nom.*, *Petroleo Brasileiro S.A. v. Universities Superannuation*, --- U.S. ----, 140 S. Ct. 338 (2019).  "This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way."  *Id.* at 269.  "In other words, a class should not be maintained without a clear sense of who is suing about what."  *Id.*; *see also Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 716–17 (2d Cir. 2021).

That modest requirement is satisfied here.  Plaintiffs seek certification of a class of all Tipped Workers who worked at The Bao and Uluh after October 5, 2015.  Dkt. No. 92. Determining whether a prospective class member qualifies for that class can be resolved by reference to objective criteria, namely whether the prospective member was paid tips, whether the prospective member worked at The Bao or Uluh after October 5, 2015, and whether the prospective member worked as a server, runner, busser, bartender, or barback.  None of those criteria require subjective judgment for evaluation.  Nor is it sufficient to defeat ascertainability that, as Defendants point out, some of the Tipped Workers may have been unlawfully paid tips. That possible distinction between the merits of the claims of some of the prospective class

workers speaks more directly to other Rule 23 requirements, such as commonality and predominance, and does not bear any relevance to the question whether membership in the class that Defendants can be ascertained through objective analysis.

### F.    Predominance of Common Questions of Law or Fact under Rule 23(b)(3)

In addition, before a class is certified under Rule 23(b)(3), the Court must find that common issues predominate over individual issues, and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The 'predominance' requirement of Rule 23(b)(3) 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Scott*, 954 F.3d at 512 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance requirement "is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Id.* (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)). "Predominance is not simply an exercise in tallying up issues; it is a qualitative inquiry that entails 'careful scrutiny' of the nature and significance of a case's common and individual issues." *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 121 (2d Cir. 2022) (quoting *In re Petrobras Sec.*, 862 F.3d at 271). "[T]he superiority determination involves, either explicitly or implicitly, a comparison of the class action—representative litigation—as a procedural mechanism to available alternatives." 2 Newberg and Rubenstein on Class Actions § 4:64 (6th ed. 2022).

Named Plaintiffs assert that common questions of law and fact predominate over any individualized issue and that a class action would be a superior means of adjudicating the dispute, and therefore, that class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3). Dkt. No. 94 at 26–28. According to Named Plaintiffs, the predominance

requirement is satisfied because the complained-of policies alleged in the Second Amended Complaint applied equally to the Tipped Workers, and because both Restaurants "used the same wage notice forms, used the same process for new hires as to advising them of the tip credit, and . . . used the same paystubs." *Id.* at 27.  Named Plaintiffs argue that a class action is a superior means of adjudication here because it will permit the resolution "of more than 120 individual claims in a single forum, at one time," avoiding the need for "numerous and repetitive lawsuits." *Id.* at 28.  In addition, Named Plaintiffs aver that prospective class members may be dissuaded from bringing individual claims outside of a class action both because in wage and hour claims the cost of litigating might exceed the amount of potential recovery and because there is a retaliation claim pending against Defendants.  *Id.*

Defendants respond that class certification is inappropriate under Federal Rule of Civil Procedure 23(b)(3).  Dkt. No. 102 at 25–27.  Defendants' primary contention is that the complained-of policies did not apply equally to all Tipped Workers because "they were employees of separate restaurants, each having its own policies."  *Id.* at 26.  Specifically, Defendants assert that "The Bao opened approximately in 2014 and Uluh in approximately 2018, each formed to provide a different dining experience," and that "[t]he intent of the owner for the Bao and Uluh was for them to operate separately as two distinct businesses with two different corporate entities and two different identities."  *Id.*  Defendants also aver that Wohlfahrt's individual claim for retaliation renders a class proceeding an inappropriate means of resolution here.  *Id.* at 26–27.  Defendants do not, however, contest Named Plaintiffs' assertion that a class action is superior to other available methods of adjudicating the controversy.

Plaintiffs have established by preponderance of the evidence that predominant issues of fact and law are present in the instant action.  Plaintiffs have identified common policies across

both Restaurants.  The core claim at the center of the complaint is that at both Restaurants,

Defendants violated the NYLL and FLSA by requiring tipped workers to be shared with tip-

ineligible workers.  *See Zivkovic*, 329 F.R.D. at 75.  That core complaint has been deemed

sufficient to find that class-wide issues predominate over individual issues.  *See, e.g.*, *Shahriar v.

Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 253 (2d Cir. 2011) ("Finally, as to Rule

23(b)(3)'s requirement that class-wide issues predominate over individual issues, Plaintiffs have

alleged that all servers were subject to Park Avenue's uniform tip-sharing or tip-pooling system.

That is, all servers who worked for Park Avenue at a given time allegedly were required to share

their tips with the same tip-ineligible person(s) (e.g., a manager) . . . .  If Plaintiffs succeed in

showing that the expediters, silver polishers, coffee makers, and/or managers were not eligible to

receive tips under New York law, then each of the class plaintiffs will likely prevail on his or her

section 196–d claims.").

        Further, individualized questions regarding damages do not necessitate a finding that the

predominance requirement is not met.  "Though individualized damage assessments need not

defeat predominance under Rule 23(b)(3), the Second Circuit has emphasized that courts must

consider whether damages are ascertainable on a common basis."  *Passman v. Peloton

Interactive, Inc.*, 671 F. Supp. 3d 417, 467 (S.D.N.Y. 2023) (citing *Roach v. T.L. Cannon Corp.*,

778 F.3d 401, 408 (2d Cir. 2015)).

        Nor is certification inappropriate under Federal Rule of Civil Procedure 23(b) because the

Named Plaintiffs assert an individual claim for retaliation.  The relevant question is whether "the

questions of law or fact common to class members predominate over any questions affecting

only individual members."  Fed. R. Civ. P. 23(b)(3).  The fact that the Named Plaintiffs assert

additional claims that other members of the class do not have does not defeat class certification.

If it did, the law would provide a ready means for any defendant to defeat class certification. It would just need to threaten with retaliation each prospective named plaintiff who would seek to be a class representative. Instead, to the extent that evidence supporting the individual claims of the Named Plaintiffs that are not common to the Class would prejudice Defendants, the Court can "bifurcate the proceedings to home in on threshold class-wide inquiries." *In re Petrobras Sec.*, 860 F.3d at 274.

Finally, and in the absence of an argument otherwise from Defendants, the Court concludes that a class action is a superior method of resolution for this action than any other method of proceeding. In determining whether a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy," a court must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As is common in wage and hour actions, "[i]t is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation." *Zivkovic*, 329 F.R.D. at 76. Additionally, many of the putative class members remain employed by Defendants, and may therefore be unwilling to bring individual claims for fear of retaliation. *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ("[A] class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants."); *Trinidad v. Breakaway Courier Sys., Inc.*, 2007 WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007); *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006).

## II.     Fitapelli & Schaffer, LLP Is Appointed as Class Counsel

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g).  In determining whether the requested counsel should be appointed, courts must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class;

*Id.* 23(g)(1)(A).

The Court approves the appointment of Fitapelli & Schaffer, LLP as class counsel. Fitapelli & Schaffer, LLP has focused its practice on wage and hour class action litigation, and accordingly, has extensive experience as class and collective counsel in federal cases.  Dkt. No. 93 ¶ 21.  One of the individual counsel who has appeared for Named Plaintiffs has been a partner practicing employment law for more than fifteen years, *id.* ¶ 22, and a second individual counsel who has appeared for Named Plaintiffs has been practicing employment law for more than ten years, *id.* ¶ 23.  The firm has already done extensive work in this action, including to identify and investigate potential claims, such as reviewing discovery, conducting depositions, moving for conditional certification as a collective action, moving to amend the complaint, and more.  *Id.* ¶¶ 4–19.  Fitapelli & Schaffer, LLP has also submitted a declaration stating that it will continue to devote significant resources to the action.  *Id.* ¶ 18.  The Court therefore finds the firm's appointment as class counsel appropriate.

## III.    The Proposed Notice Is Approved

Named Plaintiffs asks that the Court approve its form of proposed class notice, *see* Dkt. No. 93-30, and request that the notice be authorized through not only mail, email, and text

message—the means that the Court previously authorized in its October 18, 2022 Order granting notice to the conditionally certified collective—but also by posting at the Restaurants in a conspicuous location, Dkt. No. 92; Dkt. No. 94 at 29–30.  Named Plaintiffs also request that the Court issue an order directing Defendants to provide a class list containing the names, last known addresses, email addresses, all known telephone numbers, dates of employment, and job titles of all putative class members within twenty-one days.  Dkt. No. 92.  Defendants do not object to any of these requests.

Rule 23(c)(2)(B) directs that: "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  In addition:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*; *see also Hamsher v. Scotts Co., LLC*, 2019 WL 13379536, at *3 (S.D.N.Y. Feb. 1, 2019). Notice through posting in a "conspicuous place" at the location of employment of the class members is "common in wage and hour actions."  *Jackson*, 298 F.R.D. at 169–70; *see also Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015) ("[P]osting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." (internal quotation marks omitted)); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.").

The Court finds that the proposed notice satisfies the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), and therefore authorizes its distribution through the same means as authorized in the Court's Order dated October 18, 2022, *see* Dkt. No. 43 at 18–19, as well as by posting in conspicuous locations at the Restaurants, *see Ruiz v. Truffa Pizzeria & Wine Room Corp.*, 2021 WL 568249, at *6 (S.D.N.Y. Feb. 15, 2021); *Garcia Ramos v. DNC Food Serv. Corp.*, 2020 WL 2832776, at * 10 (S.D.N.Y. June 1, 2020).

Named Plaintiffs request an order directing Defendants to produce a list, in electronic format, of all names, last known addresses, email addresses, known telephone numbers, dates of employment, and job titles for the putative class members. Dkt. No. 92. Defendants do not object to the request. In its Opinion and Order granting conditional certification of the FLSA collective, which was issued prior to the filing of the Second Amended Complaint, the Court directed Defendants to "provide to Plaintiff a computer-readable list of the full names, last known residence addresses, telephone numbers, last known email addresses, dates of employment, and locations worked for all members of the collective." Dkt. No. 43 at 21. Fact discovery in this action closed on January 26, 2024, but upon request of the parties, the Court extended the deadline for the production of all outstanding payroll records to February 21, 2024, on pain of sanctions if that deadline was not met. *See* Dkt. Nos. 108, 109. All discovery closed on March 11, 2024. Named Plaintiffs do not identify in their materials submitted in support of their motion any reason to believe that the production by Defendants in response to the Court's prior Orders was deficient, or what further production is needed. The Court therefore denies Named Plaintiffs' request at this stage, without prejudice to renewal by showing that Defendants failed to comply with one of the Court's orders or that discovery is otherwise warranted.

**CONCLUSION**

The motion for certification of a class consisting of servers, runners, bussers, bartenders, and barbacks that work or have worked at The Bao or Uluh after October 5, 2015, for the appointment of Named Plaintiffs as class representatives, for the appointment of Fitapelli & Schaffer, LLP as class counsel, and for authorization of the proposed notice to class members is GRANTED.  The motion for an order directing Defendants to produce a class list is DENIED without prejudice.

The Clerk of Court is respectfully directed to close Dkt. No. 92.


SO ORDERED.

Dated: May 31, 2024
       New York, New York                    _____
                                                   LEWIS J. LIMAN
                                             United States District Judge

33