UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JESSY MANGAHAS, and PITHCHAYA WOHLFAHRT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO, individually, and RICHARD LAM, individually,<br><br>Defendants. | Case No. 22 Civ. 04150 (LJL) |

## DECLARATION OF ARMANDO A. ORTIZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

I, Armando A. Ortiz, affirm under the penalties of perjury as follows:

1. I am a partner of Fitapelli & Schaffer, LLP ("Counsel" or "F&S") in New York, New York, counsel of record for Plaintiffs in this matter. F&S is a well-respected and nationally recognized employment litigation firm based in New York City that represents plaintiffs in a variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations. F&S has significant experience prosecuting wage and hour class and collective actions.

2. I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## PROCEDURAL HISTORY

4. Before initiating the instant action, F&S conducted a thorough investigation into the Defendants named in this lawsuit, specifically, Eight Oranges Inc. d/b/a The Bao; Chibaola, Inc.

1

d/b/a Uluh; Joanne Hong Bao, individually, and Richard Lam, individually, business and ownership, which included research into their wage and hour policies and/or practices, factual and legal research into the underlying merits of Plaintiffs' claims and possible defenses, factual and legal research as to the proper measure of damages, and the likelihood of collective and class action certification.

5. Furthermore, F&S conducted in-depth interviews with then current and former tipped workers who worked at Defendants' restaurants, specifically, Jessy Mangahas, Jinnapat Nutcharat, Jason Quijije, Keno Dacusin, Upendra Shahi, Ying Ying Yuan, Thinley Kalsang, Vorrowalan Aphiromdechanon, Yi Zhang, Yongfeng Situ, Wen Bin Zhu, and Wochao Chen. These individuals had worked in various front of house positions, such as servers, runners, and bussers. These interviews helped F&S determine the hours that tipped workers worked, the wages they were paid, the nature of their duties, and Defendants' wage and hour policies.

6. On May 9, 2022, Plaintiffs' Counsel, in an effort to explore a potential pre-litigation resolution of the claims, sent a demand letter to Defendants regarding potential violations of Federal Labor Standard Act ("FLSA") and the New York Labor Law ("NYLL") on behalf of these individuals and all other similarly situated front of house tipped workers ("Tipped Workers"). As outlined in the operative Complaint, Plaintiffs believed they were retaliated against in several ways after the dispatch of this pre-suit demand letter.

7. In response to the alleged retaliation, Plaintiffs filed this action on May 20, 2022. ECF No. 1.

**Relevant Litigation, Contested Motions, and State Court Defamation Litigation**

8. Both the original complaint and subsequent amended pleadings allege that Defendants violated the FLSA and NYLL and owed Tipped Workers back wages due to Defendants' failure

to provide proper notice of the tip credit, improper tip pooling/sharing arrangement at the restaurants, excessive side work, improper wage deductions, improper uniform policies, and improper wage notices and wage statements. *See* ECF No. 1, ECF No. 25 (FAC), ECF No. 84 (SAC).

9. Defendants filed a Motion to Dismiss Joanne Hong Bao from this case, which Plaintiffs opposed. The Court ultimately denied the Motion to Dismiss on October 18, 2022. ECF No. 44.

10. During this time, Plaintiffs filed their Motion for Conditional Certification pursuant to the FLSA, which was opposed by Defendants. After full briefing, the Court granted this motion and ordered FLSA notice be sent. ECF No. 43. During the course of FLSA notice, 12 individuals returned consent to sue opt in forms, which Plaintiffs filed with the Court.

11. Thus, after Court-approved notice, there was a total of 26 opt-in Plaintiffs in the case.

12. On March 9, 2023, Defendant Chibaola, Inc. filed a complaint in New York County Supreme Court alleging defamation against Named Plaintiff Jessy Mangahas and opt-in Plaintiffs Yong Feng Situ ("Situ") and Ying Ying Yuan ("Yuan") (together "State Court Defendants") seeking between $1.5 to $2 million in damages due to their alleged involvement in the publication of a newspaper article about Uluh's unsanitary conditions. *See Chibaola, Inc. v. Jessy Mangahas, et al.,* Index No. 152270/2023 (N.Y.Sup. 2023). *See* **Exhibit ("Ex.") E**, Defamation Complaint.

13. As a result, on March 29, 2023, Plaintiffs filed a Motion Seeking Leave to File a Second Amended Complaint with this Court, which would include adding Wohlfahrt as a second class representative, additional wage and hour claims, and new retaliation claims on behalf of Wohlfahrt and the State Court Defendants. ECF Nos. 64-66, 68,71,76. Defendants opposed Plaintiffs' motion. ECF No. 69.

14. On April 19, 2023, Plaintiffs filed a formal Motion Seeking an Order to Show Cause and Temporary Restraining Order ("TRO") to stop Defendants from prosecuting their state court action against the State Court Defendants. ECF Nos. 72-74,79. Defendants again opposed Plaintiffs' motion. ECF No. 77. Plaintiffs filed subsequent filings addressing the Court's request for more information relating to the Anti-Injunction Act. Thus, this TRO request was fully briefed.

15. On April 25, 2023, the Court held oral argument over Plaintiffs' TRO motion and motion to amend the complaint.

16. On May 1, 2023, the Court granted Plaintiffs' motion to amend the complaint in part, allowing Plaintiffs to include the above class-wide wage and hour allegations, along with additional individual retaliation claims for Pithchaya Wohlfahrt ("Wohlfahrt"), who was named as a second Class Representative. ECF No. 84.

17. On May 2, 2023, the Court issued its decision by video conference and denied Plaintiffs' TRO/preliminary injunction request. Thus, Plaintiffs' Counsel began the process of defending the State Court Defendants in the state court defamation lawsuit.

18. Indeed, on May 15, 2023, the State Court Defendants, represented by F&S, filed a contested motion to dismiss the state court defamation lawsuit. NYSCEF No. 8 – 19.

19. On January 26, 2024, the state court dismissed the claim for tortious inference. NYSCEF No. 24. *See* **Ex. F**, Decision & Order Defamation Complaint.

20. On February 16, 2024, the State Court Defendants filed their answer, affirmative defenses, and counter- claims against defendant Chibaola alleging retaliation and anti-SLAPP claims.

21. Counsel for Defendant Chibaola and the State Court Defendants attended three in person conferences in state court related to Defendant Chibaola's defamation lawsuit.

**Discovery Exchanged, Settlement Negotiations**

22. In this matter before the Court, the Parties have litigated this case extensively for over 2 years. During discovery, Defendants provided written discovery requests directed towards Plaintiffs and Opt-in Plaintiffs that they believed to be improper, such as tax returns, other employment, and certain communications between co-workers. ECF No. 46. Plaintiffs provided written discovery responses for 13 Plaintiffs over the course of several months, including relevant documents in their possession to Defendants.

23. Defendants provided written responses to Plaintiffs' requests for the production of documents and interrogatories. After serving a deficiency letter on to Defendants, the Parties conferred as to the scope of class-wide payroll discovery. Defendants agreed to produce class-wide payroll records.

24. Defendants produced thousands of pages of relevant documents, such as work schedules, wage notices, wage statements, tip out sheets, employee jackets, and class-wide payroll records in both PDF and electronic format. Almost all of these documents were in PDF format, which required Plaintiffs' Counsel to review individually.

25. Additionally, Plaintiffs' Counsel assigned a staff member to go through thousands of pages of such payroll records and input the relevant payroll information into Microsoft Excel. This was a very tedious process, that required substantial staff time and effort, both in the conversion of this data, but also cross checking it for accuracy and errors.

26. The Parties agreed that a total of fourteen (14) Plaintiffs[1] would be subject to deposition discovery. Thus, Plaintiffs sat for their depositions between November 2023 to February 2024, which were contested depositions taken by Defendants' Counsel.

---

[1] These Plaintiffs are Jessy Mangahas, Pithchaya Wohlfahrt, Keno Dacusin, Thinley, Kalsang, Vorrawala Aphiromden, Wen Bin Zhu, Yongfeng Situ, Wochao Chen, Jason Cedeno, Ying Ying Yuan, and Prathana

27. Plaintiffs' Counsel likewise took the Rule 30(b)(6) deposition of both corporate entities on November 27, 2023. This full-day deposition of Richard Lam, as corporate representative, covered matters relevant to both restaurants. Counsel also took the deposition of Joanne Hong Bao on February 7, 2024, and after receiving approval from this Court, a shortened deposition of Richard Lam geared towards his individual role was taken on January 25, 2024.

28. On December 7, 2023, Plaintiffs filed their opposed Motion for Class Certification under Fed. R. Civ. P. 23. Plaintiffs' motion contained 30 exhibits, including 9 deposition transcripts. The motion asked the Court to certify a Rule 23 class for all Tipped Workers who had worked at the Defendants' Restaurants from October 15, 2015. ECF Nos. 92-94.

29. While this Motion was pending before the Court, the Parties continued to finalize fact discovery and prepare for a settlement conference before Magistrate Judge Tarnofsky. Plaintiffs' Counsel continued to receive payroll information and process it in order to calculate class-wide damages.

30. On February 12, 2024, the Parties attended an in-person settlement conference with Judge Tarnofsky, including Named Plaintiffs, some Opt-in Plaintiffs, and both Defendants. Though productive, the case did not settle at this conference, and a follow-up conference was scheduled. Judge Tarnofsky ordered that Defendants produce certain financial documents marked attorneys' eyes to Plaintiffs' Counsel so that they may evaluate the raised inability to pay arguments brought up at the settlement conference.

31. In advance of the second settlement conference, Plaintiffs' Counsel received unabridged tax returns for the corporate defendants and individual defendants spanning several years.

---

Phiphatchotika, Yi Zhang, Upendra Shahi, and Jose Rodriguez.

6

Plaintiffs' Counsel meticulously reviewed these records in advance of the second settlement conference.

32. The Parties returned for a second settlement conference on March 11, 2024. However, once again, no settlement was reached at this conference.

33. After the second settlement conference, the Parties began the process of dispositive motion practice. Both Plaintiffs and Defendants filed Motions for Summary Judgment on April 22, 2024. Plaintiffs' Motion for Summary Judgment was supported by 51 exhibits, including payroll records, deposition transcripts, damages calculations, the Restaurants' websites page, tip sheet samples, Defendants responses to requests to admissions, interrogatory responses, declarations and affidavits, handbooks, New York State Liquor Authority applications, text messages, wage notices and pay statements, and schedules. In addition to seeking an order on liability, Plaintiffs' Motion also attached their class-wide damages model and asked for summary judgment for certain calculated damages. ECF Nos. 121- 124.

34. On May 31, 2024, the Court granted Plaintiffs' Rule 23 Certification Motion. ECF No. 142. After class notice was dispatched, four individuals opted-out of the class. ECF Nos. 158, 159.

35. On October 22, 2024, the Court granted in part Plaintiffs' motion for summary judgment and denied Defendants' Motion for Summary Judgment. ECF No. 160. The Court found that Defendants violated the FLSA and NYLL in several aspects, found no good faith could be established, found Richard Lam as an individual employer, and found the Restaurants and corporations operated as a single integrated enterprise. *Id*.

36. The Court denied Plaintiff's Motion for Summary Judgment as to Damages based on the inclusion of certain class members who filed opt-out notices. *Id*. Thus, over the next few

weeks, Plaintiffs re-calculated and submitted a renewed Motion for Summary Judgment as to Certain Damages which the Court has not yet decided. ECF No. 182.

37. During this time, the Parties prepared for the trial scheduled to start on December 2, 2025. Plaintiffs' Counsel met with their expected witnesses, culled and finalized trial exhibits, and worked with Defendants' Counsel to complete and submit the relevant pre-trial filings. ECF Nos. 169 – 175. The Parties expected to have over a dozen combined witnesses at the trial.

38. Throughout the process of preparing for trial after the summary judgment orders, the Parties held several telephone calls regarding potential settlement. The Parties reviewed Plaintiffs' class-wide damages model, the Court's Summary Judgment Orders, and the expected evidence and testimony to be had at trial.

39. The Parties held a final pre-trial conference on November 21, 2024. At the in-person conference, Counsel for the Parties engaged in further good-faith negotiations about a potential settlement.

40. On November 26, 2024, the Parties reached a settlement in principle to settle this matter for One Million Seven Hundred Fifty Thousand Dollars and Zero Cents ($1,750,000.00). The Parties informed the Court of the settlement in principle and the trial was adjourned.

41. The Parties negotiated and signed a Memorandum of Understanding ("MOU") on January 2, 2025.

42. Over the next several months, the Parties negotiated the long-form settlement agreement and class notices to be sent. On February 14, 2025, in line with the MOU, Defendants deposited

Five Hundred Thousand Dollars ($500,000.00) into an escrow account established by Rust Consulting, the proposed Claims Administrator for this case

43. On July 10, 2025, the Parties signed the Settlement Agreement, which is enclosed as **Ex. A**.[2] The proposed class notice is enclosed as **Ex. B**. The individual Defendants also signed Confessions of Judgement on behalf of themselves personally and on behalf of the corporate Defendants in line with the Settlement.[3]

## SETTLEMENT AGREEMENT

44. The $1,750,000.00 settlement amount (the "Settlement Fund") is a compromise figure.

45. In reaching the settlement, F&S took into account the risks of establishing liability at trial, time, delay, and financial repercussions in the event of trial and appeal by Defendants.

46. Although Plaintiffs' claims have merit (as illustrated by the SJ Order granting partial summary judgment), Plaintiffs recognize the practical and further legal obstacles to full monetary recovery, as Defendants have and will continue to vigorously contest Plaintiffs' remaining claims. Additionally, based on the financial disclosure shared in litigation, Plaintiffs' Counsel is confident that this settlement represents the maximum monetary amount the Defendants can pay without bringing forth the real risk of bankruptcy or closure of the businesses. For this reason, Defendants also signed a confession of judgment. Additionally, Defendants planned to appeal the summary judgment order, the class certification order, and any additional findings at trial. Thus, procedurally, this case would not have ended after the December 2024 bench trial.

47. In review of the records, the Restaurants, while successful, are subject to the same difficulties as all individually-owned restaurants, such as narrow profit margins, evolving customer

---

[2] Unless otherwise noted, all exhibits are attached to this declaration.
[3] The Confessions of Judgment is not filed on the public docket but can be made available for an *in camera* review if desired by the Court.

spending habits depending on the given economy, and ever-rising costs of goods and supplies.

48. In light of the above, F&S believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class Members in the face of several obstacles.

49. The settlement negotiations were at all times hard fought and at arm's-length, and have produced a result that F&S believes to be in the best interests of the class in light of the delay, costs, and risks of continued litigation. Moreover, in our estimation, and based on the data provided by Plaintiffs and Defendants, the settlement represents a significant percentage of the recovery that Plaintiffs and Class Members would have achieved had they prevailed on their claims and survived an appeal.

50. Here, Class Counsel calculated the Class's maximum damages as follows:

  a. Base owed wages:    $1,585,803.51[4]
  b. WTPA Notice:        $900,300.00
  c. WTPA Statement:     $903,150.00
  d. Total:              $3,389,253.31

51. Thus, the Settlement is approximately 110% of the Class Members' based owed wages. When adding WTPA penalties,[5] the percentage of recovery is approximately 51.6% of the damage owed. Even if one were to include NYLL liquidated damages, the Settlement is approximately 35.2% of the total exposure.

52. The Settlement Agreement identifies Class Members as all persons who work or have

---

[4] This is comprised of $950,209.97 in differential damages (minimum wage and overtime), $612,698.52 in misappropriated tips, $10,845 in uniform costs, and $12,050,00 in unlawful deductions.

[5] The WTPA penalties are based on each unique name in the payroll records. Based on information obtained in discovery, there were some workers who worked under more than one name at various times in their employment (i.e. – John Doe, John C. Doe). Thus, the WTPA figure above is somewhat elevated in that it is based on each and every unique name in the payroll records. This occurrence does not affect the differential damages, as those damages are based on recorded hours worked and not solely on unique name spellings.

worked as servers, bussers, runners, bartenders, barbacks, and all other similar employees at The Bao and Uluh between October 15, 2015 and October 1, 2023. **Ex. A**, Settlement Agreement, at ¶ 1.4. There are approximately 250 Class Members. *Id.*

## ALLOCATION FORMULA

53. All Class Members will be deemed eligible for a payment under this Settlement Agreement unless they opt out of the settlement. *Id.* ¶ 3.5(A).

54. A Class Member's proportionate share will be determined by the Claims Administrator pursuant to the following formula:

   a. All Class Members will receive one (1) point for every hour worked at the tip credit rate in the relevant time period.

   b. All Opt-In Plaintiffs as of November 26, 2024 will receive one and a quarter (1.25) points for every hour worked as the tip credit rate in the relevant time period.

   c. The Settlement Fund, after deductions for Court-approved attorneys' fees and expenses, settlement administration fees and expenses, any Court-approved Service Awards, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members and any points that would have been attributable to any individuals who opted-out of the settlement had they remained Class Members;

The difference in point allocations is meant to compensate the Opt-In Plaintiffs for joining in this action before the settlement. There is no question that the presence of these Opt-In Plaintiffs, their relevant documents, and their willingness to participate in written discovery helped drive this case through litigation.

## SERVICE PAYMENTS

55. Named Plaintiffs Mangahas and Wohlfahrt will also receive service payments due to the time and effort they both expended in assisting counsel in prosecuting this case and in consideration for releasing their retaliation claims against Defendants.

56. Plaintiffs Yuan and Situ will also apply to the Court for a service payment due to their

11

services rendered throughout this litigation and in consideration for releasing their anti-SLAPP and retaliation claims due to the state court defamation lawsuit brought against them.

57. Plaintiffs Jason Cedeno, Keno Dacusin, Thinley Kalsang, Vorrawala Aphiromden, Wen Bin Zhu, Wochao Chen, Yi Zhang, Upendra Shahi, Jose Rodriguez, and Prathana Phiphatchotika will also each apply to the Court for service payments due to their services rendered throughout this litigation which included but were not limited to providing interrogatory responses, sitting for a deposition, production of documents in their possession, and numerous calls, video calls, and emails with F&S.

## NOTICE PROCESS AND TIMELINE

58. Within fourteen (14) days of the Court's Preliminary Approval Order, Defendants will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the (1) names, (2) position; (3) last known addresses, (4) location worked, (5) dates of employment (6) number of hours worked at the tip credit rate(s), (7) social security number, and (8) emails and telephone numbers (to the extent available) of each Class Member who worked during the Relevant Time Period. *See* **Ex. A**, Settlement Agreement, at ¶ 2.5(A).

59. Within thirty-five (35) days of the Court's Preliminary Approval Order, the Claims Administrator shall in both English and Chinese, mail via First Class United States mail, postage prepaid, E-Mail, Text Message, post at The Bao and Uluh in a conspicuous location, and post in a newspaper publication and digital advertisement, the Notice to all Class Members, using each individual's last known address, email, username, and phone number as recorded in Defendants' records. *Id.* at ¶ 2.5(B).

60. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the notice is returned by the post office as undeliverable, including

using social security numbers provided by Defendants to obtain better address information via skip trace or other method, and shall attempt re-mailings. The proposed physical mailing notice, the proposed email notice, the proposed text notice, and proposed newspaper and digital notices are enclosed as **Ex. B**, Class Notice.

61. Class Members will have 30 days from the date the Class Notice are mailed to opt-out of the settlement or object to the settlement. *See* **Ex. A,** Settlement Agreement, at ¶¶ 2.6 (A); 2.6(B); 2.7(A).

62. If the Court grants Plaintiffs' Motion for Final Approval, the Court will issue a Final Order and Judgment and retain jurisdiction over the settlement until all payments are made. Defendants will not oppose the applicable for the Final Order and Judgment.

63. Defendants shall deposit the entire Settlement Fund with the Claims Administrator the later of nine (9) months after the January 31, 2025, or 15 days after the Effective Date, whichever is later. *Id.* at ¶ 3.1(B).

64. Within seven (7) days of the Effective Date, the Claims Administrator shall mail to all Qualified Class Members and Plaintiffs their Individual Settlement Amounts, and any Service Payments to Representative Plaintiffs. The Claims Administrator will also pay Class Counsel and the Claim Administrator their Court-approved fees and costs. *Id.* at 3.1(C).

65. All Class Members who do not timely opt out of the settlement will receive settlement payments and release all wage and hour claims arising under the NYLL. *Id.* at 3.7(A).

66. All Class Members who deposit their settlement check will also release Defendants from wage and hour claims under the FLSA. *Id.* at 3.7(B).

67. Plaintiff Mangahas and Wohlfahrt also fully release and discharge Defendants from any and all retaliation claims under the NYLL and FLSA, and are also providing Defendants with a

general release. *Id.* at 3.7(C).

68. Defendant Chibaola, Inc. will also dismiss with prejudice the state court defamation lawsuit entitled *Chibaola, Inc. v. Jessy Mangahas, et al.,* Index No. 152270/2023 (N.Y.Sup.). *Id.* at 3.7(D).

69. The State Court Defendants are similarly dismissing any alleged counterclaims of retaliation and anti-SLAPP claims alleged in that state court proceeding. *Id.*

## CLAIMS ADMINISTRATION

70. The Parties have retained Rust Consulting to administer the settlement process. Among other responsibilities, the Claim Administrator shall be responsible for: mailing the Class Notice, calculating Class Members' share of the Net Settlement Fund and issuing and mailing checks to Class Members as provided in the Settlement Agreement. ¶ 2.1. Rust Consulting's CV is attached as **Ex. C.**

71. The Claims Administrator's fees shall be paid from the Settlement Payment. **Ex. A,** Settlement Agreement, at, ¶¶ 3.1(A); 3.3.

## F&S'S BACKGROUND AND EXPERIENCE

72. F&S has significant experience prosecuting wage and hour class and collective actions such as this one. The firm has prosecuted wage and hour cases that have been certified as class or collective actions with F&S being appointed class counsel, including: *See, e.g.,* **Ex. G**, *Smith v. Akela Contracting LLC*, No. 22 Civ. 01186, ECF No. 188 (May 6, 2025); *Imbarrato v. Banta Management Services, Inc.*, No. 18 Civ. 05422, ECF. No 114 (S.D.N.Y. Oct. 10, 2024); *Mangahas v. Eight Oranges Inc.*, No. 22 Civ. 4150, 2024 WL 2801922 (S.D.N.Y. May 31, 2024); *Smith v. Akela Contracting LLC*, No. 22 Civ. 01186, ECF No. 104 (July 12, 2023)*; Lanning v. Wells Fargo Bank, N.A.*, No. 20 Civ. 2055, ECF No. 55 (S.D.N.Y. Nov. 24, 2021); *Spiciarich v. The Gorman Group, LLC*, No. 20 Civ. 646, ECF No. 31 (N.D.N.Y. Apr. 15, 2021); *Bruno v. Wells Fargo Bank*

*N.A.,* No. 19 Civ. 587 (RJC), 2021 WL 964938 (W.D. Pa. Mar. 15, 2021); *Hernandez v. Lochend Energy Services,* No. 20 Civ. 00064, ECF No. 44 (D.N.D. March 5, 2021); *Bruton v. Pioneer Natural Resources Company*, No. 20 Civ. 00203, ECF No. 20 (W.D. Tex. Jan. 27, 2021); *Kirby v. FIC Restaurants, Inc.*, No. 19 Civ. 1306 (FJS/ML), 2020 WL 3501398 (N.D.N.Y. Jun. 29, 2020); *Lu v. OD Inspections*, No. 20 Civ. 02063, ECF No. 24 (S.D. Tex. Dec. 24, 2020); *LeJeune v. Mammoth Energy Services, Inc.*, No. 19 Civ. 00286, ECF No. 102 (W.D. Tex. July 31, 2020); *Millin v. Brooklyn Born Chocolate*, No. 19 Civ. 3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020); *Warren v. MBI Energy Services, Inc.*, No. 19 Civ. 00800, ECF No. 33 (D. Colo. Feb. 25, 2020); *Carr v. Patriot Well Solutions, LLC*, No. 5:19 Civ. 00212, ECF No. 62 (W.D. Tex. Feb. 11, 2020); *Murillo v. Berry Bros. General Contractors, Inc.*, No. 6:18-cv-1434, 2019 WL 4640010 (W.D. La. Sept. 23, 2019); *Borecki v. Raymours Furniture Company, Inc.*, No. 17 Civ. 01188, ECF No. 98 (Sept. 10, 2019); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16 Civ. 03958, ECF No. 95 (N.D. Ill. Nov. 16, 2018); *Schaefer v. M&T Bank Corporation*, No. 14 Civ. 06622, ECF No. 90 (S.D.N.Y. Nov. 1, 2018); *De Jesus et al. v. Incinia Contracting, Inc.*, No. 17 Civ. 5733 (KHP), 2018 WL 3343236 (S.D.N.Y. June 22, 2018); *Suarez v. Rosa Mexicano Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319, (S.D.N.Y. April 13, 2018); *Zorrilla v. Carlson Rests., Inc.*, No. 14 Civ. 2740 (AT), 2018 WL 1737139 (April 9, 2018); *Alverson v. BL Restaurant Operations LLC*, No. 16 Civ. 00849 (OLG) (RBF), 2017 WL 5491998 (W.D.T.X. Nov. 11, 2017); *Sanchez v. Bentzys Construction, Inc.*, No. 16 Civ. 07072 (E.D.N.Y. Sept. 19, 2017); *Melito v. American Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL 3995619 (S.D.N.Y. September 11, 2017); *Hotaranu v. Star Nissan Inc.*, No. 16 Civ. 5320 (KAM) (RML), 2017 WL 1390808 (E.D.N.Y. April 12, 2017); *Crosby et al. v. Lasership, Inc.*, No. 15 Civ. 08694 (GWG), ECF No. 171 (S.D.N.Y. June 30, 2017); *Almonte v. Marina Ice Cream Corp.*, No. 16 Civ. 00660 (GBD), 2016 WL 7217258 (S.D.N.Y. Dec. 8, 2016); *Illoldi v. Koi NY LLC*, No. 1:15 Civ. 06838

Case 1:22-cv-04150-LJL   Document 194   Filed 07/10/25   Page 16 of 18

(VEC), 2016 WL 5900218 (S.D.N.Y. Oct. 7, 2016); *Hadel v. Gaucho, No. 15 Civ. 3706 (RLE)*, 2016 WL 3647600 (S.D.N.Y. June 30, 2016); *Chhab v. Darden Restaurants Inc.*, No. 11 Civ. 08345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016); *Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (S.D.N.Y. April 27, 2016)*; Gonqueh v. Leros Point to Point, Inc.*, 14 Civ. 5883 (GHW), 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016)*; Bravo v. Palm W. Corp.*, No. 14 Civ. 9193 (SN), 2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015)*; Carpenter v. Paige Hospitality Group, LLC*, No. 13 Civ. 4009 (GBD), 2015 U.S. Dist. LEXIS 82771 (S.D.N.Y. June 2, 2015)*; Hamadou v. Hess Corporation*, No. 12 Civ. 250 (JLC), 2015 WL 3824230 (S.D.N.Y. June 18, 2015); *Espinoza v. Wanrong Trading Corp.,* No. 13 Civ. 1727 (FB), ECF No. 33 (E.D.N.Y. December 23, 2014)*; Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Apr. 28, 2015)*; Flores v. One Hanover, LLC*, No. 13 Civ. 5184 (AJP), ECF No. 40 (S.D.N.Y. June 9, 2014)*; Simsek v. New York State Catholic Health Plan, Inc.*, No. 11 Civ. 5393 (FB)(JMA), 2014 U.S. Dist. LEXIS 22979 (E.D.N.Y. Feb. 14, 2014)*; Diombera v. The Riese Organization, Inc.*, No. 12 Civ. 8477 (RJS)(HP), ECF No. 73 (S.D.N.Y. Oct. 21, 2013); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (WHP)(RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013)*; Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Tiro v. Pub. House Investments, LLC,* No. 11 Civ. 7679 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)*; Chang v. BD Stanhope, LLC,* No. 10 Civ. 8577 (TPG), ECF No. 48 (S.D.N.Y. Nov. 15, 2012); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012); *Matheson v. The Glazier Group, Inc.*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011); *O'Dell. v. AMF Bowling Centers, Inc.,*

16

No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).

73. During the course of litigation F&S committed substantial resources that protected the interests of the class and attained the proposed settlement.

## EXHIBITS

74. Attached as **Exhibit A** is a true and correct copy of the Settlement Agreement executed by the Parties on July 10, 2025.

75. Attached as **Exhibit B** is the proposed Notice of Class Action Lawsuit Settlement and Fairness Hearing.

76. Attached as **Exhibit C** is a true and correct copy of Rust Consulting's Curriculum Vitae.

77. Attached as **Exhibit D** is a true and correct copy of Plaintiffs' proposed Order granting Plaintiffs' Motion for Preliminary Approval of Settlement.

78. Attached as **Exhibit E** is a true and correct copy of Defendant Chibaola, Inc.'s state court defamation complaint, *Chibaola, Inc. v. Jessy Mangahas, et al.,* Index No. 152270/2023 (N.Y.Sup. 2023).

79. Attached as **Exhibit F** is a true and correct copy of the Decisions & Order on the State Court Defendants' motion to dismiss Defendant Chibaola, Inc.'s state court defamation complaint.

80. Attached as **Exhibit G** is a true and correct copy of the approval order and excerpts from the settlement agreement in the case of *Smith v. Akela Contracting LLC*, No. 22 Civ. l01185 (VSB) (KHP) (S.D.N.Y. May 6, 2025), ECF Nos. 184-1, 188.

Dated:  New York, New York
July 10, 2025

                                                                  Respectfully submitted,

                                                                  /s/ Armando A. Ortiz
                                                                  Armando A. Ortiz

                                                                  **FITAPELLI & SCHAFFER, LLP**
                                                                  Brian S. Schaffer
                                                                  Armando A. Ortiz
                                                                  Katherine Bonilla
                                                                  28 Liberty Street, 30th Floor
                                                                  New York, New York 10005
                                                                  Telephone: (212) 300-0375

                                                                  *Attorneys for Plaintiffs and the Class*