# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESSY MANGAHAS, and PITHCHAYA WOHLFAHRT,** on behalf of themselves and all others similarly situated, | |
| | **Case No. 22 Civ. 04150 (LJL)** |
| **Plaintiffs,** | |
| -against- | |
| **EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO,** individually, and **RICHARD LAM,** individually, | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

FITAPELLI & SCHAFFER, LLP
Brian S. Schaffer
Armando A. Ortiz
Katherine Bonilla
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Class*

i

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   PROCEDURAL BACKGROUND................................................................... 1

  A.    Procedural History and Contested Motion Practice..................................... 2

  B.    Discovery Undertaken. ................................................................................ 3

  C.    Settlement Negotiations, Class Certification, Dispositive Motions, and Trial Preparation.4

III.  SUMMARY OF SETTLEMENT TERMS....................................................... 5

  A.    The Settlement Fund. .................................................................................. 5

IV.   CLASS ACTION SETTLEMENT PROCEDURE .......................................... 9

V.    ARGUMENT .................................................................................................. 10

    A.    Preliminary Approval of the Class Settlement is Appropriate...................... 10

  B.    The Settlement is Fair, Reasonable, and Adequate.......................................... 12

    ii.    The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2). ............................ 14

    iii.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3). ................................................................. 14

    iv.    Plaintiffs Would Face Real Risks If The Case Proceeded, Including Risks Of Establishing Further Liability And Damages (*Grinnell* Factors 4 and 5)............................ 16

    v.    Establishing A Class And Maintaining It Through Trial And Defendants' Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 6 and 7). ............................... 17

    vi.    The Settlement Fund Is Substantial In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9). .................................................... 18

VI.   PLAINTIFFS' COUNSEL SHOULD REMAIN AS CLASS COUNSEL...................... 22

VII.  THE PROPOSED NOTICE IS APPROPRIATE ........................................... 22

VIII. PLAINTIFFS ALSO SEEK APPROVAL OF THE FLSA SETTLEMENT ................. 23

IX.   CONCLUSION................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Amigon v. Safeway Constr. Enters., LLC*, No. 20-CV-5222 (PK),
    2024 WL 5040436, at *6 (E.D.N.Y. Dec. 9, 2024) .................................................... 19

*Axelrod v. PosiGen CT LLC*, No. 3:22-CV-00440 (JCH),
    2022 WL 18775907 (D. Conn. Nov. 7, 2022) ........................................................... 19

*Baudin v. Res. Mktg. Corp., LLC*, No. 119CV386MADCFH,
    2020 WL 4732083, at *9 (N.D.N.Y. Aug. 13, 2020) ................................................ 18

*Baudin v. Resource Marketing Corp., LLC*, No. 19 Civ. 386 (MAD/CFH),
    2020 WL 4732083, at *7 (N.D.N.Y. Aug. 13, 2020) .................................. 14, 15, 18

*Bondi v. DeFalco*, No. 17 Civ. 5681 (KMK),
    2020 WL 2476006, at *3 (S.D.N.Y. May 13, 2020)................................................... 12

*Brown v. Sega Amusements, U.S.A., Inc.,* No. 13 Civ. 7558,
    2015 WL 1062409, at *1, n.2 (S.D.N.Y. Mar. 9, 2015) ........................................... 12

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024,
    1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990).............................................. 18

*Cheeks v. Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015)............................... 24

*Chhab v. Darden Restaurants, Inc. et al.*, No. 11 Civ. 8345 (NRB),
    2016 WL 3004511, at *1 (S.D.N.Y. May 20, 2016)................................................... 11

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)..................... 12, 18

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)........................................ 20

*Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18CV7854LJLKHP,
    2021 WL 535635, at *5 (S.D.N.Y. Feb. 12, 2021)...................................................... 8

*Emeterio v. A&P Rest. Corp.*, No. 20 Civ. 970 (KHP),
    2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ................................................................. 8

*Flores v. CGI Inc.*, No. 22-CV-350 (KHP),
    2022 WL 13804077, at *10 (S.D.N.Y. Oct. 21, 2022) ................................................ 8

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005)........................ 11

*Frattarola v. Prosegur Security USA Inc.,* No. 7:23-CV-00137-CS,
    2025 WL 1414013 (S.D.N.Y. May 15, 2025) .............................................................. 8

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)................................................... 12

*Guerrero v. Montefiore Health Sys., Inc.*, No. 22 CIV. 09194(KHP),
2025 WL 219109, at *2 (S.D.N.Y. Jan. 15, 2025).................................................................. 8

*Guthrie v. Rainbow Fencing Inc.*, 2024 WL 3997427 (2d Cir. Aug. 30, 2024) ......................... 13

*Hart v. BHH, LLC*, 334 F.R.D. 74, 76 (S.D.N.Y. 2020)............................................................ 11

*Henry v. Little Mint, Inc.,* No. 12 CIV. 3996 CM,
2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014)............................................................. 16

*Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020)............. 11

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)........ 15, 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM),
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................................................... 12

*In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969) ................................................ 16

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.)................................ 12, 16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)................. 10

*In re Signet Jewelers Ltd. Sec. Litig.,* No. 1:16-CV-06728-CM-SDA,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................................... 14

*Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP),
2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015)........................................................... 11, 18, 24

*Mangahas v. Eight Oranges Inc.,* No. 22-CV-4150 (LJL),
2024 WL 2801922 (S.D.N.Y. May 31, 2024) ..................................................................... 20

*Matheson v. T-Bone Restaurant LLC,* No. 09 Civ. 4214 (DAB),
2011 WL 6402303 (S.D.N.Y. Sept. 13, 2011)..................................................................... 15

*Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB),
2024 WL 230745, at *5 (S.D.N.Y. Jan. 22, 2024)............................................................... 19

*Morris v. Affinity Health Plan, Inc.*, No. 09-CV-1932 DAB,
2011 WL 6288035, at *2 (S.D.N.Y. Dec. 15, 2011) ........................................................... 21

*Moses v. New York Times Co.,* 79 F.4th 235, 244 (2d Cir. 2023).................................................. 21

*Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011)..................................... 14

*Perez v. Ultra Shine Car Wash, Inc.*, No. 20 Civ.782 (KMK),
2022 WL 2129053 (S.D.N.Y. June 14, 2022) ......................................................... 19

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ................................................. 18

*Ray v. 1650 Broadway Associates, Inc.*, No. 16 Civ. 9858 (VSB),
2020 WL 5796203 (S.D.N.Y. Sep. 29, 2020) ....................................................... 10

*Reyes v. Summit Health Mgmt., LLC*, No. 22-CV-9916 (VSB),
2024 WL 472841 (S.D.N.Y. Feb. 6, 2024) ........................................................... 11

*Sand v. Greenberg*, No. 08-CV-7840 PAC, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ........ 22

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020) ................................................ 24

*Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) ...................................... 24

*Smith v. Akela Contracting LLC*, No. 22 Civ. 01186, ECF No. 188 (May 6, 2025) .................... 8, 19

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC,* No. 15-CV-3538 (VSB),
2023 WL 3749996 (S.D.N.Y. June 1, 2023) ........................................................ 14

*Sukhnandan v. Royal Health Care of Long Island LLC,* No. 12CV4216 RLE,
2014 WL 3778173 (S.D.N.Y. July 31, 2014) ....................................................... 24

*Surdu v. Madison Global, LLC,* No. 15 CIV. 6567 (HBP),
2018 WL 1474379 (S.D.N.Y. Mar. 23, 2018) ..................................................... 13

*Thomas v. Mekrutg Inc.,* 2022 WL 6757487 (S.D.N.Y. Oct. 10, 2022) ........................................ 8

*Tiro v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679 (CM) et al.,
2013 WL 2254551 (S.D.N.Y. May 22, 2013) ...................................................... 11

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS) (KNF), 2007 WL 7232783
(S.D.N.Y. June 25, 2007) ...................................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ............................... 10

*Yuzary v. HSBC Bank USA, N.A.,* No. 12 CIV. 3693 PGG,
2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) ...................................................... 12

**Statutes**
Fed. R. Civ. P. 23 ...................................................................................................... 8, 9

**Other Authorities**
Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq*. (4th
ed. 2002) ................................................................................................................. 9, 10

# I.    <u>INTRODUCTION</u>

Subject to Court approval, Plaintiffs have settled this wage and hour class and collective action against Eight Oranges Inc. d/b/a The Bao, Chibaola, Inc. d/b/a Uluh, Joanne Hong Bao, and Richard Lam (collectively, "Defendants") for the sum of One Million Seven Hundred Fifty Thousand Dollars and Zero Cents ($1,750,000.00). The proposed settlement resolves Plaintiffs' claims on a class and collective basis, resolves the litigation in its entirety, and satisfies all of the criteria for preliminary settlement approval.

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit A** to the Declaration of Armando A. Ortiz ("Ortiz Decl.");[1] (2) confirm its prior appointment of Fitapelli & Schaffer, LLP ("F&S") as Class Counsel; (3) approve the proposed Notice of Class Action Lawsuit Settlement and Fairness Hearing ("Class Notice"), which is attached as **Exhibit B** to the Ortiz Decl., and direct its distribution, (4) set a date for the final approval hearing, and (5) otherwise approve Plaintiffs' proposed settlement schedule.

# II.    <u>PROCEDURAL BACKGROUND</u>[2]

Before initiating the instant action, F&S conducted a thorough investigation into Defendants, their wage and hour policies, and factual and legal research of the underlying merits of Plaintiffs' claims. Ortiz Decl. at ¶ 4. F&S also conducted in-depth interviews with approximately 13 individuals who joined the lawsuit as opt-in plaintiffs prior to the commencement of the action. *Id.* at ¶ 5. On May 9, 2022, Plaintiffs' Counsel, in an effort to explore

---

[1] Unless otherwise indicated, all exhibits are attached to the Ortiz Decl. Unless otherwise stated, all defined terms herein reflect the definitions in the Settlement Agreement.
[2] For a more detailed recitation of the facts, please see the Ortiz Declaration.

a potential pre-litigation resolution of the claims, sent a demand letter to Defendants. *Id.* at ¶ 6.

On May 20, 2022, Plaintiffs commenced a class and collective action on behalf of servers, bussers, runners, bartenders, barbacks, and all other similar employees (collectively "Tipped Employees") employed or previously employed by Defendants. *Id.* at ¶ 7. ECF No. 1. The operative complaint is the Second Amended Complaint, which was filed on May 4, 2023. ECF No. 84. Specifically, the Complaint alleges that Defendants could not utilize the tip credit minimum wage because Defendants: (1) failed to provide written notice of the tip credit pursuant to the New York Labor Law ("NYLL"); and (2) required tipped employees to engage in a dual occupation and/or spend more than 20% or two hours performing non-tipped side work in violation of the Fair Labor Standards Act ("FLSA") and NYLL .*Id.* Additionally, Defendants misappropriated tips, deducted breakage, walk outs, and wrong orders, failed to pay spread of hour premium pay, failed to reimburse Tipped Employees for purchasing a uniform, and failing to furnish proper time of hire wage notices and wage statements. *Id. See also* Ortiz Decl. at ¶ 8.

A. Procedural History and Contested Motion Practice.

After concluding a pre-litigation investigation into the claims, defenses, and Defendants in this action, Fitapelli & Schaffer, LLP ("F&S" or "Class Counsel") filed this lawsuit on May 20, 2022 bringing the above referenced wage and hour claims against Defendants. Ortiz Decl. at ¶¶ 7-8; ECF No. 1. On October 18, 2022, the Court denied Defendants' Motion to Dismiss Joanne Hong Bao from this case, and granted Plaintiff's Motion for § 216(b) notice pursuant to the FLSA. Ortiz Decl. at ¶¶ 9-10; ECF Nos. 43; 44. As a result, a total of 27 Plaintiffs joined in the lawsuit after issuance of notice. Ortiz Decl. at ¶ 11. On March 9, 2023, Defendant Chibaola Inc., filed a New York State defamation lawsuit against Named Plaintiff Jessy Mangahas and opt-in Plaintiffs Yong

Feng Situ ("Situ"), and Ying Ying Yuan ("Yuan") (together "State Court Defendants").[3] Ortiz Decl. at ¶ 12. As a result, Plaintiffs filed a Motion to file a second amended complaint which included adding Wohlfahrt as a second class representative, additional wage and hour claims, and new retaliation claims on behalf of Wohlfahrt and the State Court Defendants. *Id.* at ¶ 13. ECF Nos. 64-66; 68; 71;76. Plaintiffs also filed a motion for a temporary restraining order ("TRO") on April 19, 202. Ortiz Decl. at ¶ 14. ECF Nos. 72-74;79. Defendants opposed each of Plaintiffs' motions. ECF Nos. 69;77. On April 25, 2023, the Parties appeared for an oral argument on Plaintiffs contested TRO request. Ortiz Decl. at ¶ 15. Although the Court denied the TRO request, it granted Plaintiffs' motion to amend the complaint in part, allowing Plaintiffs to include additional wage and hour allegations, along with additional individual retaliation claims for Pithchaya Wohlfahrt ("Wohlfahrt"), who was named as a second Class Representative. *Id.* at ¶¶15-16. ECF No. 84. Thus, Plaintiffs began defending the State Court Defendants which included filing a contested motion to dismiss, answer, affirmative defenses, and counter claims, and attending 3 in person conferences. Ortiz Decl. at ¶ 18.

B. Discovery Undertaken.

Concurrent with the above contested motion practice, the Parties engaged in significant discovery for Plaintiffs and putative Class Members. In this regard, throughout the discovery process the Parties exchanged thousands of documents, provided written discovery responses for 13 Plaintiffs, and over 16 depositions were conducted. *Id.* at ¶¶ 26-27. Additionally, Plaintiffs' Counsel assigned a staff member to go through the thousands of pages of payroll records provided by Defendants and input the relevant payroll information into Microsoft Excel which was a very tedious process that resulted in substantial staff time and effort. *Id.* at ¶ 25. Plaintiffs utilized the

---

[3] *See Chibaola, Inc. v. Jessy Mangahas, et al.,* Index No. 152270/2023 (N.Y.Sup.).

discovery obtained to file their contested Motion for Rule 23 Class Certification on December 7, 2023, which was a substantial filing supported by 30 exhibits. *Id.* at ¶ 28. ECF Nos. 92-94.

C. Settlement Negotiations, Class Certification, Dispositive Motions, and Trial Preparation.

On February 12, 2024, the Parties prepared for and participated in a settlement conference before this Court. Ortiz Decl. at ¶ 30. Named Plaintiffs, some Opt-In Plaintiffs, and Defendants attended and participated in this settlement conference. *Id.* At the first settlement conference Defendants were ordered to produce certain financial documents marked attorneys' eyes to Plaintiffs' Counsel to evaluate the raised inability to pay arguments brought up by Defendants. *Id.* Plaintiffs' Counsel meticulously reviewed unabridged tax returns for the corporate defendants and individual defendants spanning several years in advance of the second settlement conference. *Id.* at ¶ 31. The Parties returned for a second settlement conference on March 11, 2024. However, the Parties were unable to reach a settlement. *Id.* at ¶ 32.

After the second settlement conference, the Parties began the process of dispositive motion practice. Both Plaintiffs and Defendants filed contested Motions for Summary Judgment on April 22, 2024. Plaintiffs' Motion for Summary Judgment as to Liability and Certain Damages was supported by 51 exhibits. *Id.* at ¶ 33. ECF Nos. 121-124. On May 31, 2024, the Court granted Plaintiffs' motion to certify the class and notice of the lawsuit was issued by Rust Consulting. Only four people returned a request for exclusion form. Ortiz Decl. at ¶ 34. ECF No. 158-159. On October 22, 2024, the Court granted in part Plaintiffs' motion for summary judgment regarding Plaintiffs claims for excessive side work, tip misappropriation pertaining to managers, violation of the NYLL uniform reimbursement requirement, Defendants inability to show a good faith affirmative defense, the Bao and Uluh operated as a single integrated enterprise, and failure to provide proper notice of the tip credit. Ortiz Decl. at ¶ 35. ECF No. 160. The

4

Court denied Defendants' Motion for Summary Judgment. *Id.* The Court also denied Plaintiffs' Motion for Summary Judgment as to Damages based on the inclusion of certain class members who filed opt-out notices. Therefore, Plaintiffs re-calculated and submitted a renewed Motion for Summary Judgment as to Certain Damages. Ortiz Decl*.* at ¶ 36. A trial was set to begin on December 2, 2024. During this time Plaintiffs met with the expected witnesses, finalized exhibits, and worked with Defendants' Counsel to complete pre-trial filings. *Id.* at ¶¶ 37-38.

The Parties held a final pre-trial conference on November 21, 2024. At the in-person conference, Counsel for the Parties engaged in further good-faith negotiations about a potential settlement. *Id.* at ¶ 39. Later on November 26, 2024, the Parties reached a settlement in principle. The Parties negotiated and executed a Memorandum of Understanding on January 2, 2025. *Id.* at ¶ 41. As part of this MOU, Defendants deposited $500,000.00 into an escrow account set up by Rust Consulting, the proposed Claims Administrator. *Id.* at ¶ 42.

After several more months of negotiations over the long form agreement, the Parties executed the Settlement Agreement on July 10, 2025. Defendants also executed personal and corporate confessions of judgment in line with the Settlement Agreement.[4] *Id.* at ¶ 43.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.  The Settlement Fund.

The Settlement Agreement requires Defendants to pay the Gross Settlement Amount of $1,750,000.00. *Id.* at ¶ 44; s*ee* **Ex. A**, Settlement Agreement ¶ 3.1(A). The Settlement Amount covers class members' individual settlement amounts, service awards to the named Plaintiffs and

---

[4] The Confessions of Judgment is not filed on the public docket but can be made available for an *in camera* review if desired by the Court.

opt-in plaintiffs who participated in written and deposition discovery,[5]  attorneys' fees and costs, and the Claims Administrator's fees. *Id.* Defendants are paying employer-side taxes outside of the settlement fund. S*ee* **Ex. A**, Settlement Agreement, 3.6(G).

Per the agreement, Defendants shall deposit the entire Settlement Fund with the Claims Administrator the later of nine (9) months after January 31, 2025, or 15 days after the Effective Date, whichever is later. Ortiz Decl. at ¶ 63. **Ex. A**, Settlement Agreement 3.1(B).

i.    Eligible Employees.

The Settlement Agreement defines Class Members as all current and former servers, bussers, runners, bartenders, barbacks, and all other similar employees at The Bao located at 13 St. Mark Place, New York, New York 10003 ("The Bao") and Uluh located at 152 2nd Ave., New York, New York 10003 ("Uluh") between October 15, 2015 and October 1, 2023. **Ex. A**, Settlement Agreement ¶ 1.4. The Parties estimate there to be approximately 250 such eligible employees, inclusive of Plaintiffs. *Id.*

ii.    Release.

The Settlement Agreement provides that every Class Member who does not timely opt out of the settlement will release Defendants from all wage and hour claims plead in any of the operative complaints under the state and local laws of New York. *See* **Ex. A**, Settlement Agreement ¶ 3.7(A). Moreover, Class Members who deposit their settlement check will also release Defendants from wage and hour claims plead in any of the operative complaints under the FLSA. *Id.* at ¶ 3.7(B). In exchange for their sought service awards, which entails payment for their individual retaliation claims, Named Plaintiffs Mangahas and Wohlfahrt are also providing a

---

[5] The specific Opt-In Plaintiffs are Jason Cedeno, Keno Dacusin, Thinley Kalsang, Upendra Shahi, Vorrawala Aphiromden, Wen Bin Zhu, Wochao Chen, Yi Zhang, Ying Ying Yuan, Yongfeng Situ, Jose Rodriguez, and Prathana Phiphatchotika. Ex. A, Settlement Agreement ¶¶ 3.4(C), 3.4(D), 3.4(E).

general release to Defendants. *Id.* at ¶¶ 3.7 (A); 3.7(B); 3.7(C). Defendants are also dismissing, with prejudice, their filed state court defamation lawsuit against Mangahas, Yuan, and Situ, and these individuals are likewise dismissing any alleged counterclaims of retaliation and anti-SLAPP claims made in that state court proceeding. *Id.* at ¶ 3.7 (D).

    iii.    <u>Allocation Formula.</u>

If approved, a Class Member's proportionate share of the Net Settlement shall be determined by the Claims Administrator pursuant to the following formula:

    a.  All Class Members will receive one (1) point for every hour worked at the tip credit rate in between October 15, 2015 and October 1, 2023;

    b.  Named and Opt-in Plaintiffs as of November 26, 2024 will receive one and a quarter (1.25) points for every hour worked as the tip credit rate between October 15, 2015 and October 1, 2023;

    c.  To calculate the portion of the Net Settlement Fund that shall be apportioned to each Class Member, the Claims Administrator shall (i) determine the total number of points for all Class Members; (ii) divide the Net Settlement Fund by the sum calculated in subjection (i) of this paragraph to find the amount allocated to each point; and (iii) multiply the amount allocated to each point by the number of points assigned to each Class Member to determine their allocated individual settlement amounts.

**Ex. A**, Settlement Agreement ¶ 3.5(B).

    iv.    <u>Service Payments.</u>

Named Plaintiffs Mangahas and Wohlfahrt will apply for a service payment for the time and effort they both expended in assisting counsel in prosecuting this case and in consideration for releasing their retaliation claims against Defendants. *Id.* at ¶¶ 3.4(A); 3.4(B). Plaintiffs Yuan and Situ will also apply to the Court for a service payment due to their services rendered throughout this litigation and in consideration for releasing their anti-SLAPP and retaliation claims due to the state court defamation lawsuit brought against them. *Id.* at ¶ 3.4(C). Additionally, Plaintiffs Jason Cedeno, Keno Dacusin, Thinley Kalsang, Vorrawala Aphiromden, Wen Bin Zhu, Wochao Chen,

Yi Zhang, Upendra Shahi, Jose Rodriguez, Upendra Shahi, and Prathana Phiphatchotika will each apply to the Court for service payments due to their services rendered throughout this litigation which included but were not limited to providing interrogatory responses, sitting for a deposition, production of documents in their possession, and numerous calls, video calls, and emails with F&S. *Id.* at ¶¶ 3.4(D); 3.4(E).

  v.  <u>Attorneys' Fees and Costs.</u>

   F&S will apply for one third (33 1/3%) of the Settlement Amount as attorneys' fees plus costs. *See* **Ex. A**, Settlement Agreement, ¶ 3.2(A). This is the typical fee award in a class or collective action settlement in this Circuit. *See, e.g.*, *Frattarola v. Prosegur Security USA Inc.,* No. 7:23-CV-00137-CS, 2025 WL 1414013 (S.D.N.Y. May 15, 2025) (the court approved one-third fee of a $2,500,000 settlement and $22,708.81 in costs); *Thomas v. Mekrutg Inc.,* 2022 WL 6757487, at *2 (S.D.N.Y. Oct. 10, 2022) (Liman, J.) (the court approved class counsel's request for fees and cost that constituted 1/3 of the gross settlement amount); *Smith v. Akela Contracting LLC*, No. 22 Civ. 01186, ECF No. 188 (May 6, 2025) ; *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18CV7854LJLKHP, 2021 WL 535635, at *5 (S.D.N.Y. Feb. 12, 2021) (approving one-third and stating "[t]his amount is in line with amounts typically approved by courts in this Circuit"); *Guerrero v. Montefiore Health Sys., Inc.*, No. 22 CIV. 09194(KHP), 2025 WL 219109, at *2 (S.D.N.Y. Jan. 15, 2025) (approving one-third of $1,800,000 settlement); *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *10 (S.D.N.Y. Oct. 21, 2022) (approving one-third of settlement); *Emeterio v. A&P Rest. Corp.*, No. 20 Civ. 970 (KHP), 2022 WL 274007, at *9 (S.D.N.Y. Jan. 26, 2022) (granting 1/3 of gross settlement fund). The Court need not rule on fees and costs now; Class Counsel will file a formal motion for approval of fees and costs with its motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h).

8

## IV.    CLASS ACTION SETTLEMENT PROCEDURE

Courts have established a defined procedure and specific criteria for settlement approval in class action settlements that include three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22 *et seq*. (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, re-affirming F&S as Class Counsel, approving the proposed Class Settlement Notice, and authorizing its distribution by the Claims Administrator.

The parties respectfully submit the following proposed schedule for final resolution:

1. Within fourteen (14) days of the Court's Preliminary Approval Order, Defendants will provide the Claims Administrator and Class Counsel with a list, in electronic form, of the (1) names, (2) position; (3) last known addresses, (4) location worked, (5) dates of employment, (6) number of hours worked at the tip credit rate(s), and (7) social security number of each Class Member who worked during the Relevant Time Period. **Ex. A**, Settlement Agreement, at ¶ 2.5(A).

2. Within thirty-five (35) days of the Court's Preliminary Approval Order, the Claims Administrator shall in both English and Chinese, send notice via First Class United States mail postage prepaid, E-Mail, and Text Message, and will cause to be posted in a newspaper publication and digital advertisement, the Notice to all Class Members, using each individual's last known address, email, username, and phone number as recorded in Defendants' records. The Notice shall also be posted at The Bao and Uluh in a conspicuous location. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the

9

notice is returned by the post office as undeliverable, including using social security numbers provided by Defendants to obtain better address information via skip trace or other method, and shall attempt re-mailings. The proposed physical mailing notice, the proposed email notice, the proposed text notice, and proposed newspaper notice are enclosed as **Ex. A**, Settlement Agreement, at ¶ 2.5(B).

3. Class Members will have 30 days from the date the Class Notice are mailed to opt-out of the settlement or object to the settlement. *Id.* at ¶ 2.6(A).

4. If the Court grants Plaintiffs' Motion for Final Approval, the Court will issue a Final Order. If no party appeals the Court's Final Order, the Final Effective Date will be 30 days following the issuance of the Final Order. If rehearing, reconsideration or appellate review is sought, the Effective Date shall be upon the Court's entry of a final order resolving any appeals. *Id.* at ¶ 1.8.

5. Defendants shall pay the remaining amount of the Gross Settlement Fund to the Claims Administrator by the later of October 31, 2025 or 15 days after the Effective Date. *Id.* at ¶ 3.1(B).

6. Within 7 days of receipt of the Gross Settlement Amount, the Claims Administrator shall send settlement checks for: (a) each Qualified Class Member's individual settlement payment; (b) class counsel's approved attorneys' fees and costs; (c) the approved Service Payments; and (d) the Claims Administrator's fees. *Id.* at ¶ 3.1(C).

## V.    <u>ARGUMENT</u>

A. <u>Preliminary Approval of the Class Settlement is Appropriate.</u>

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *see also* Newberg § 11.41. The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Ray v. 1650 Broadway Associates, Inc.*, No. 16 Civ. 9858 (VSB), 2020 WL 5796203, at *3 (S.D.N.Y. Sep. 29, 2020) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995)). In exercising this discretion, "district courts often give weight to the fact that the parties have chosen to settle." *Id.* citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG) 2013 WL 1832181 at *1

10

(S.D.N.Y. Apr. 30, 2013).

"Preliminary approval of a proposed class-action settlement is the first step in a two-step process required by Fed. R. Civ. P. 23(e) before a class action may be settled." *Hart v. BHH, LLC*, 334 F.R.D. 74, 76 (S.D.N.Y. 2020). "If preliminary approval is granted, plaintiffs are permitted to disseminate notice of a hearing to the class members where class members and settling parties are provided an opportunity to be heard on the question of final court approval." *Hernandez v. Between the Bread 55th Inc.*, 496 F. Supp. 3d 791, 798 (S.D.N.Y. 2020) (Liman, J.). Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *See Chhab v. Darden Restaurants, Inc. et al.*, No. 11 Civ. 8345 (NRB), 2016 WL 3004511, at *1 (S.D.N.Y. May 20, 2016); *Tiro v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679 (CM) et al., 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013).

Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See Reyes v. Summit Health Mgmt., LLC*, No. 22-CV-9916 (VSB), 2024 WL 472841, at *2 (S.D.N.Y. Feb. 6, 2024) (quoting *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014)). "The preliminary determination of fairness 'is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.'" *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 WL 5444651, at *3 (S.D.N.Y. Sept. 11, 2015).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "As the Second Circuit has explained, a 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between

8 experienced, capable counsel after meaningful discovery.'" *Bondi v. DeFalco*, No. 17 Civ. 5681

(KMK), 2020 WL 2476006, at *3 (S.D.N.Y. May 13, 2020) quoting *Wal-Mart Stores*, 396 F.3d at

116). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that

of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*,

No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *In re PaineWebber*

*Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length

negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed

settlement."), aff'd, 117 F.3d 721 (2d Cir. 1997). "If the proposed settlement appears to fall within

the range of possible approval, the court should order that the class members receive notice of the

settlement." *Yuzary v. HSBC Bank USA, N.A.,* No. 12 CIV. 3693 PGG, 2013 WL 1832181, at *1

(S.D.N.Y. Apr. 30, 2013). Therefore, it is "unusual" for a Court to deny any application for

preliminary approval of a class action settlement agreement. *Bondi,* 2020 WL 2476006, at *3 citing

*Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 314 (W.D.N.Y. 2016); *Brown v. Sega*

*Amusements, U.S.A., Inc.,* No. 13 Civ. 7558, 2015 WL 1062409, at *1, n.2 (S.D.N.Y. Mar. 9,

2015).

    B.  <u>The Settlement is Fair, Reasonable, and Adequate.</u>

      In evaluating a class action settlement, courts in the Second Circuit consider the nine

factors set forth in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974), abrogated

on other grounds by *Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000). The *Grinnell*

factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the

class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class

action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the

range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* For the following reasons, the *Grinnell* factors weigh in favor of approval.

i.     Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1)

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Surdu v. Madison Global, LLC,* No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018). This case is no exception. Although much of Plaintiffs' claims were decided largely favorably on summary judgment, trial still presented several issues that would have required significant resources for both the Parties and the Court. In this vein, this trial would have likely taken more than the estimated five days, as there were expected to be over a dozen combined plaintiff/defense witnesses. Ortiz Decl. at ¶ 3.7. In addition to the highly factual issue of whether Hong Bao could be an individual "employer" under the FLSA and NYLL, the trial would largely be focused on determining whether Class Members' were sufficiently "injured" for Article III purposes for receiving improper wage notices and wage statements. While Plaintiffs believe that an information injury in fact meets the requirements for Article III pursuant to the Second Circuit's guidance in *Guthrie v. Rainbow Fencing Inc.*, 2024 WL 3997427 (2d Cir. Aug. 30, 2024), it is believed that this would be the first trial to determine that issue at the merits stage. Additionally, the Court had not yet granted Plaintiffs' pending Renewed Motion for Summary Judgment on certain damages, with indication at the pre-trial conference that this could be an issue left for trial. Ortiz Decl. at ¶ 36. Thus, the claims and defenses left at trial were still complex, and trial would indeed remain costly and long.

This settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of preliminary

approval.

     ii.    <u>The Reaction Of The Class Has Been Positive (*Grinnell* Factor 2).</u>

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Baudin v. Resource Marketing Corp., LLC*, No. 19 Civ. 386 (MAD/CFH), 2020 WL 4732083, at *7 (N.D.N.Y. Aug. 13, 2020) (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)); *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC,* No. 15-CV-3538 (VSB), 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) (held that "Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued."). Here, both Mangahas and Wohlfahrt, whom were both held to adequately represent the class (ECF No. 142), have expressed their approval of the settlement terms by approving and signing the Settlement Agreement. *See* **Ex. A**, Settlement Agreement. After notice is issued and Class Members have had an opportunity to weigh in, the Court can more fully analyze this factor.

     iii.    <u>Discovery Has Advanced Far Enough To Allow The Parties To<br>Responsibly Resolve The Case (*Grinnell* Factor 3).</u>

The Parties have completed enough discovery to recommend settlement. The pertinent question is "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.,* No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020) quoting *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *11 (S.D.N.Y. Oct. 16, 2019); *see also Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("While the parties need not have engaged in extensive discovery, a sufficient factual investigation must have been conducted to afford the court the opportunity to '"intelligently [ ] make . . . an

appraisal' of the Settlement."). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000).

The Parties' completed discovery easily meets this standard. Class Counsel interviewed over a dozen Plaintiffs, reviewed thousands of pages of documents, engaged in motion practice, and participated in multiple depositions, including taking an all-day Rule 30(b)(6) corporate deposition. Ortiz Decl. at ¶¶ 26-27. In discovery, Defendants produced all relevant payroll records in their possession, which Class Counsel meticulously combed through, entered into Microsoft Excel, and created a robust class damages model. *Id.* at ¶¶ 23-25,29. Having actively litigated this case for over two years and being trial ready, the Parties had enough knowledge of all the facts, allegations, denials, and difficulties of the claims and defenses to responsibly enter into this settlement. *See generally* Ortiz Decl. Furthermore, the Parties settlement negotiations were at all times hard fought and at arm's length including the Parties participation in two separate settlement conferences. *Id.* at ¶¶ 30, 32, 49. Thus, this factor supports approval. *See, e.g.*, *Baudin*, 2020 WL 4732083 at *7 (finding that targeted discovery exchanged by the parties to perform damages calculations before a mediation was "more than sufficient" to satisfy the third *Grinnell* factor"); *Matheson v. T-Bone Restaurant LLC,* No. 09 Civ. 4214 (DAB), 2011 WL 6402303, at *1 (S.D.N.Y. Sept. 13, 2011) (noting the help of a third party enforces the fact that an agreement is non-collusive). Thus, this factor supports approval.

iv.    Plaintiffs Would Face Real Risks If The Case Proceeded, Including Risks Of Establishing Further Liability And Damages (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their claims are strong, it is not without risk, should this case proceed. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698 (SAS) (KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Henry v. Little Mint, Inc.,* No. 12 CIV. 3996 CM, 2014 WL 2199427, at *8 (S.D.N.Y. May 23, 2014) quoting *In re Austrian*, 80 F. Supp. 2d at 177.

While the Court granted liability in Plaintiffs' favor on several issues, the remaining issues would greatly affect their case and success. As outlined in Section I(A)(i), Plaintiffs' damages model had not yet been adopted by the Court, and Defendants were opposing the Renewed Motion for Summary Judgment. Additionally, the issue of damages under the WTPA relied almost exclusively on Plaintiffs' proving sufficient "injury-in-fact" at trial. If the Court found that Plaintiffs did not meet their burden, then, those claims would be worth zero dollars, even if the documents on their face were largely non-compliant. While Plaintiffs believe that they could ultimately establish further liability and the adoption of their damages model, this would still require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy. The proposed settlement alleviates this uncertainty and therefore supports approval.

16

     v.     <u>Establishing A Class And Maintaining It Through Trial And Defendants'
Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 6
and 7).</u>

This settlement eliminates this risk and delay and supports preliminary approval. As mentioned, this Court approved Rule 23 certification of this class in this case, which Defendants planned to appeal after trial. Thus, while Plaintiffs are confident in the certification order, the appeal process of that order would be costly and long in the tooth. Additionally, because certification of the class could be revisited after trial, this is not an inconsequential risk for Plaintiffs. Thus, the sixth *Grinnell* factor favors approval.

There is no doubt that the Settlement of $1,750,000.00 is significant. Yet, wage and hour defendants are not immune to ability to pay issues once a settlement amount reaches a certain threshold. In this case, there are real questions whether Defendants would be able to withstand a greater judgment. In preparation for the second settlement conference with Judge Tarnofsky, Defendants shared substantial financial disclosures to Class Counsel, including personal and corporate tax returns for the last several years. Ortiz Decl. at ¶ 31. After reviewing said financial disclosure, Class Counsel is confident that this Settlement is largely at rope's end of what Defendants could afford to pay without future business shutdowns or bankruptcy filings. *Id.* at ¶ 46. This risk is further evident by the extended time Defendants have to pay, an initial deposit into escrow, and the execution of a Confessions of Judgment. *Id.*; **Ex. A**, Settlement Agreement ¶ 4 (outlining Confessions of Judgment). In Class Counsel's review of the records, the businesses, while successful, are subject to the same difficulties as all individually-owned restaurants, such as narrow profit margins, evolving customer spending habits depending on the given economy, and ever-rising costs of goods and supplies. Ortiz Decl. ¶ 47. Thus, this factor weighs in favor of approval.

vi.    The Settlement Fund Is Substantial In Light Of The Possible Recovery
And The Attendant Risks Of Litigation (*Grinnell* Factors 8 and 9).

Whether a settlement amount is reasonable "does not involve the use of a 'mathematical

equation yielding a particularized sum.'" *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y.

2015) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp.

2d 259, 269 (S.D.N.Y. 2012)). "Instead, 'there is a range of reasonableness with respect to a

settlement – a range which recognizes the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"

*Baudin v. Res. Mktg. Corp., LLC*, No. 119CV386MADCFH, 2020 WL 4732083, at *9 (N.D.N.Y.

Aug. 13, 2020), *on reconsideration in part*, No. 119CV386MADCFH, 2020 WL 6131758

(N.D.N.Y. Oct. 19, 2020) quoting *Wal-Mart Stores*, 396 F. 3d at 119.

Indeed, "when settlement assures immediate payment of substantial amounts to class

members, even if it means sacrificing speculative payment of a hypothetically larger amount years

down the road, settlement is reasonable." *See Long*, 2015 WL 5444651, at *5. "[T]here is no

reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a

thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2;

*see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y.

May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible

recovery would be approximately $121 million").

Defendants have agreed to settle this case for $1,750,000, which represents approximately

110% of the Class's base owed wages (excluding liquidated damages and WTPA penalties) to

51.6% of potential base owed wages *and* full WTPA penalties. Even if one were to include full

base owed wages, 100% NYLL liquidated damages, and full WTPA penalties, this settlement

represents 35.2% of all such maximum exposure. Ortiz Decl. ¶ 51. Each of these percentages are

well within the realm of reasonableness for settlement approval. *See, e.g.*, *Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB), 2024 WL 230745, at *5 (S.D.N.Y. Jan. 22, 2024) ("In light of the best possible recovery and the inherent risks of litigation" the court held that 6.82% recovery was "within the range of reasonableness."); *See* **Ex. G**, *Smith v. Akela Contracting LLC*, No. 22 Civ. l01185 (VSB) (KHP), ECF No. 188 (S.D.N.Y. May 6, 2025) (approving FLSA collective settlement with 9.66% of potential recovery); *Perez v. Ultra Shine Car Wash, Inc*., No. 20 Civ.782 (KMK), 2022 WL 2129053, at *3 (S.D.N.Y. June 14, 2022) (discussing recoveries between the 4% to 11% range and stating that such percentage should be judged "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement" and finding it fair and reasonable); *Amigon v. Safeway Constr. Enters., LLC*, No. 20-CV-5222 (PK), 2024 WL 5040436, at *6 (E.D.N.Y. Dec. 9, 2024) ("12.32% of the best possible recovery or approximately 28.38% of the alleged unpaid wages" weighed in favor of preliminary approval); *Axelrod v. PosiGen CT LLC*, No. 3:22-CV-00440 (JCH), 2022 WL 18775907, at *4 (D. Conn. Nov. 7, 2022) (recommending approval for 2.78% recovery because, although low, where other factors supported approval, "courts typically do not let the percentage of recovery impede approval, because ethe parties are generally better-positioned to judge the reasonableness of the settlement amount").

Yet, as outlined in section I(A)(iv) supra, the Class's potential WTPA damages could be nonexistent (even where documents were incorrect) in the event information injury was not sufficient. And, significantly, there is a real probability that Defendants would close the businesses and/or enter bankruptcy if faced with a greater judgment. Ortiz Decl. at ¶ 46. Thus, the percentage, and all of the attenuating circumstances, easily support approval.

Here, each Class Member who does not opt out will receive a payment that is proportional to the hours and duration of his or her employment with Defendants during the Relevant Period.

Additionally, in Plaintiffs' Counsels' experience, class action cases are inherently high risk due to often unexpected closings and collection issues. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation and collection of a greater judgment, the settlement amount is more than reasonable. Moreover, there is inherent uncertainty to any litigation analysis. As a result, this factor supports approval.

      vii.    <u>The Settlement is Like to be Approved Under Rule 23(e)(2)</u>

To the extent that Rule 23(e)(1)(B) requires the Court to consider the factors in Rule 23(e)(2) and are not duplicative of the *Grinnell* factors, the Court "will likely be able to approve" this settlement under Rule 23(e)(2). As already explained above, class representatives Mangahas, Wohlfahrt, and Fitapelli & Schaffer LLP have adequately represented the Class Members pursuant to Fed. R. Civ. P. 23(e)(2)(A) throughout almost three years of active litigation and settlement negotiations. *See Mangahas v. Eight Oranges Inc.,* No. 22-CV-4150 (LJL), 2024 WL 2801922 (S.D.N.Y. May 31, 2024); *See e.g. In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (to support a settlement, class counsel should show that "[t]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."). It is also likely the court will find Fed. R. Civ. P. 23(e)(2)(B) is satisfied since this settlement was negotiated at arm's length for after several years of active litigation. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (court may find the negotiating process fair where, as here, "the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.") (citation omitted).

The relief provided to the Class Members is also adequate considering the costs, risks,

delay of trial and appeal, the proposed method of distributing relief, and the terms of the proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C)(i) – (iv). The settlement provides that Class Members will be paid based on the hours they worked at the tip credit rate during the relevant time. Class Members will also **not** be required to fill out any type of form to receive payments. Absent this settlement, the Parties would need to prepare again for trial and for almost certain appeals of the trial court's various decisions. Avoidance of these risks as well as expenditure of time and resources clearly benefits all parties and in particular benefits the Class Members, the relief for whom, as explained, we believe to be excellent. Furthermore, as previously mentioned, Class Counsel will file a formal motion for approval of fees and costs with its motion for final approval of the settlement. *See* Fed. R. Civ. P. 23(h). Moreover, aside from the term sheet that was negotiated by the Parties, which is superseded by the Settlement Agreement, no other agreements exist.

Lastly, Fed. R. Civ. P. 23(e)(2)(D) looks at whether the "proposal treats class members equitably relative to each other." This will ensure that such incentive payments will not result in unfair settlements. *See Moses v. New York Times Co.,* 79 F.4th 235, 244 (2d Cir. 2023). Here, though Class Members will receive one (1) point for every hour worked at the tip credit rate in the relevant time period, while Opt-In Plaintiffs as of November 26, 2024 will receive one and a quarter (1.25) points, this factor is likely to be satisfied. *See* **Ex. A,** Settlement Agreement, 3.5(B); **Ex. G**, *Smith* Settlement Excerpts at ¶ 4.5(B) (granting additional point value to opt-in plaintiffs); *see e.g. Morris v. Affinity Health Plan, Inc.*, No. 09-CV-1932 DAB, 2011 WL 6288035, at *2 (S.D.N.Y. Dec. 15, 2011) (the court concluded that the proposed settlement Agreement which provided a supplemental point for opt-in plaintiffs was within the range of possible final settlement approval); *Sand v. Greenberg*, No. 08-CV-7840 PAC, 2011 WL 1338196, at *5

(S.D.N.Y. Mar. 22, 2011) (class members who filed a consent to join the FLSA collective received an additional point). These Opt-In Plaintiffs expanded considerable time and effort to assist Class Counsel with this case and their inclusion as Opt-In Plaintiffs significantly advanced the litigation. Ortiz Decl. at ¶ 54. Therefore, this settlement is still proportional to the services the Class Members performed.

## VI.    PLAINTIFFS' COUNSEL SHOULD REMAIN AS CLASS COUNSEL

The Court previously appointed F&S as Class Counsel, and F&S requests that they remain Class Counsel as they continue to meet the criteria set forth in Rule 23(g), which governs the appointment of class counsel for a certified class. *See* Fed. R. Civ. P. 23(g)(1)(A) (instructing courts to consider four criteria when evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class). Since moving to certify the Class in December 2023, F&S filed a motion for summary judgment and continued to do substantial work identifying, investigating, prosecuting and settling the claims, has substantial experience prosecuting and settling wage and hour class actions, are well-versed in wage and hour and class action law, and are well-qualified to represent the interests of the class. *See generally* Ortiz Decl. F&S also committed substantial resources during the course of the litigation, which served to protect the interests of the class and attain the proposed settlement. *See* Ortiz Decl. at ¶ 73.

## VII.    THE PROPOSED NOTICE IS APPROPRIATE

Here, the proposed notice for class action settlement mimics the proposed class notice that was previously approved by this Court. Compare ECF No. 93-30 to **Ex. B**, Class Notice. Pursuant

to Rule 23(c)(2)(B) "the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." The Notice satisfied each of these requirements. As previously authorized, Plaintiffs request that notice be sent in both English and Chinese via U.S. Mail, E-Mail, Text Messages, posted at The Bao and Uluh in a conspicuous location, and posted in a newspaper publication and digital advertisement. *See* **Ex. A**, at ¶ 2.5(B). Additionally, the Notice describes the terms of the Settlement, explains the basis on which each Class Members' award was determined, the approximate amount of the Class Members' award, clearly explains the claims Class Members will release the allocation of attorneys' fees and costs, provides specific information regarding the date, time and place of the final approval hearing, and how to participate, object to or exclude oneself from the settlement.

The Agreement also provides that the Claims Administrator, Rust Consulting, which was previously used, will mail the Court-approved Notice. In line with the Court's prior order of Rule 23 Notice in 2024, Class Settlement Notice would also be sent via text message, email, job postings, and publication in the Chinese-language newspaper World Journal.

## VIII.    PLAINTIFFS ALSO SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs also seek approval of the settlement of the FLSA claims in addition to the Rule 23 claims. FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation, unlike the procedure under Rule 23. *See, e.g.*, *Sukhnandan v. Royal Health Care of Long Island LLC,* No. 12CV4216 RLE, 2014 WL 3778173, at *10 (S.D.N.Y. July 31,

2014). "[T]o warrant certification as a collective action under § 216(b) of the FLSA, the plaintiff must make at least 'a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Long*, 2015 WL 5444651, at *12 (citation omitted). It is well settled that the standard for conditional certification as an FLSA collective is lower than the standard for certification of a class action pursuant to Rule 23. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) (finding that § 216(b) imposes a "lower bar" than Rule 23). As such, Plaintiffs request approval of the FLSA portion of the settlement as well for the same reasons set forth herein. *See e.g.*, *Cheeks v. Freeport Pancake House*, 796 F. 3d 199, 206 (2d Cir. 2015) ("stipulated dismissals settling FLSA claims with prejudice require the approval of the district court").

## IX.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve  the Class and FLSA Settlement, the service awards, attorneys' fees and costs, administrative costs and enter the proposed Order allowing the settlement class notice process to begin.

Dated:    New York, New York
          July 10, 2025

                                        Respectfully submitted,


                                        /s/ Armando A. Ortiz
                                        Armando A. Ortiz

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Brian S. Schaffer
                                        Armando A. Ortiz
                                        Katherine Bonilla
                                        28 Liberty Street, 30th Floor
                                        New York, New York 10005
                                        Telephone: (212) 300-0375

                                        *Attorneys for the Plaintiffs and Class*