# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JESSY MANGAHAS, and PITHCHAYA WOHLFAHRT, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**-against-**<br><br>**EIGHT ORANGES INC. DBA THE BAO; CHIBAOLA, INC. DBA ULUH; JOANNE HONG BAO, individually, and RICHARD LAM, individually,**<br><br>**Defendants.** | **Case No. 22 Civ. 04150 (LJL)** |

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine Bonilla
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Class*

i

# **Contents**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

   I.     THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED ...................... 1

      A.   The Proposed Settlement Class Should be Certified. ...................................... 2

      B.   The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved. 2

      C.   Class Members Received the Best Notice Practicable ................................. 10

   II.   THE COURT SHOULD ISSUE FINAL APPROVAL OF THE
FLSA SETTLEMENT ................................................................................................ 11

   III.   THE SERVICE AWARDS SHOULD BE AWARDED TO THE NAMED
PLAINTIFFS AND CERTAIN OPT-IN PLAINTIFFS ............................................. 12

   IV.   CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE
APPROVED ................................................................................................................ 14

      A.   The Percentage Method Is The Preferred Method For Awarding Attorneys' Fees In
Common Fund Cases In The Second Circuit .................................................... 15

      B.   The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund .... 17

      C.   The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-
Third Of The Settlement Fund. .......................................................................... 23

      1.   Class Counsel Is Entitled To Reimbursement Of Their Litigation Expenses. .............. 24

      2.   The Claims Administrator's Fees are Reasonable. ......................................... 25

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Almanzar v. Silver Star Properties Corp.*, 699 F. Supp. 3d 253 (S.D.N.Y. 2023) ................ 19, 20

*Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764
  (S.D.N.Y. Nov. 18, 2013) ................................................................................... 16

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ......................................... 18

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ............................................... passim

*Borecki v. Raymours Furniture Co., Inc.*, No. 17 Civ. 01188 (LAK) (SN),
  2019 WL 4315966 (S.D.N.Y. Sept. 10, 2019)........................................................................ 14

*Caccavale v. Hewlett-Packard*, No. 2:20 Civ. 974 (NJC) (ST), 2025 WL 882221
  (E.D.N.Y. Mar. 21, 2025) ........................................................................................ 25

*Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).................................... 9, 12

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............................................... 1, 3, 4

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ........................................................................ 19

*Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP),
  2025 WL 100889 (S.D.N.Y. Jan. 15, 2025) ............................................................................ 21

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 04494 (RLE), 2015 WL 2255394
  (S.D.N.Y. May 11, 2015)................................................................................................... passim

*Emeterio v. A&P Restaurant Corp.,* 2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) ...................... 15

*Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020) ............................................. 16, 21, 22

*Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831
  (S.D.N.Y. Jan. 29, 2014)............................................................................................ 2, 7, 13, 15

*Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC) (RLE),

2015 WL 3916161 (S.D.N.Y. April 28, 2015) ......................................................... 24

*Frank v. Eastman Kodak Co*., 228 F.R.D. 174 (W.D.N.Y. 2005) ........................................... 8, 18

*Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ 3452 (RLE), 2008 WL 782596
(S.D.N.Y. Mar. 24, 2008) ......................................................................................... 9

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).......................................... passim

*Grottano v. City of N.Y.*, No. 15-CV-9242 (RMB), 2021 WL 5563990
(S.D.N.Y. Nov. 29, 2021) ........................................................................................ 5

*Hadel v. Gaucho, LLC*, No. 15 Civ. 3706 (RLE), 2016 WL 3647600
(S.D.N.Y. June 30, 2016)........................................................................................ 21, 24

*Hart v. BHH, LLC*, No. 15CV4804, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020)................... 14

*Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE), 2015 WL 5577713
(S.D.N.Y. Sept. 22, 2015)........................................................................................ 20

*Hernandez v. Between the Bread 55ᵗʰ*, No. 17 Civ. 9541 (LJL), 2021 WL 12279220
(S.D.N.Y. Aug. 16, 2021) (Lewis, J.) ...................................................................... passim

*Hesse v. Godiva Chocolatier, Inc.,* No. 1:19-CV-0972-LAP, 2022 WL 22895466
(S.D.N.Y. Apr. 20, 2022)........................................................................................ 22

*Imbarrato v. Banta Management Services, Inc.*, No. 18 Civ. 5422 (NSR) (JCM),
ECF No. 116 (S.D.N.Y. Oct. 17, 2024) ................................................................... 21

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014)................. 19, 22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ 10240 (CM),
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................... 2

*In re Lawrence*, 24 N.E.3d 320 (N.Y. 2014) ............................................................... 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720 (E.D.N.Y.), 2024 WL 3236614  (E.D.N.Y. June 28, 2024) ......................... 4

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393 (1999) ................................................... 22

*In re Telik Securities Litigation*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................ 6

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)............................................ 6

*Johnson v. Brennan*, No. 10 Civ 4712 (CM), 2011 WL 4357376
    (S.D.N.Y. Sept. 16, 2011)........................................................................................................ 16

*Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037
    (E.D.N.Y. Apr. 27, 2016)............................................................................................. 4, 9, 17, 21

*Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) ........................................................ 22

*Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019
    (S.D.N.Y. July 6, 2012) ............................................................................................................ 2

*Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................... 5

*Mangahas v. Eight Oranges Inc.*, No. 22 Civ 4150(LJL), 2024 WL 2801922
    (S.D.N.Y. May 31, 2024) (Liman, J.) ...................................................................................... 20

*Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423 (2d Cir. 2007) ................................... 22

*Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216
    (S.D.N.Y. Dec. 13, 2011)......................................................................................................... 14

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ................................................. 15

*Mikityuk v. Cision US Inc*., No. 21 CV 510 (LJL), 2022 WL 3013107
    (S.D.N.Y. July 29, 2022) (Liman, J.)............................................................................ 11, 16, 24

*Newman v. Stein*, 464 F.2d 689 (2d Cir.1972)............................................................................... 10

*Parker v. Jekyll & Hyde Entm't Holdings,* LLC, No. 08 Civ. 7670 (BSJ)(JCF),
    2010 WL 532960 (S.D.N.Y. Feb. 9, 2010).............................................................................. 23

*Perez v. Ultra Shine Car Wash, Inc*., No. 20 Civ.782 (KMK), 2022 WL 2129053
    (S.D.N.Y. June 14, 2022).......................................................................................................... 9

*Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1910656 (S.D.N.Y. May 12, 2021).......................... 21

*Puglisi v. TD Bank*, No. 13 Civ. 637 (GRB), 2015 WL 4608655 (E.D.N.Y. July 30, 2015)....... 21

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC),
2012 WL 651640 (S.D.N.Y. Feb. 24, 2012).......................................................................... 24

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ....................................................... 17

*Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411 (S.D.N.Y. 2014) .................. 3, 4, 10, 12

*Rosi v. Aclaris Therapeutics, Inc.*, No. 19 Civ. 7118 (LJL), 2021 WL 5847420
(S.D.N.Y. Dec. 9, 2021) (Liman, J.).............................................................................. 7, 9, 15, 24

*Rubin v. HSBC Bank USA, NA*, No. 20 Civ. 4566, 2025 WL 248253
(E.D.N.Y. Jan. 21, 2025) .................................................................................................... 18

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999)............................................................. 16

*Scott v. City of New York*, 643 F.3d 56 (2d Cir. 2011) ................................................................. 17

*Sewell v. Bovis Lend Lease, Inc. et al.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124
(S.D.N.Y. April 16, 2012)............................................................................................... 13, 16

*Suarez v. Rosa Mexico Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319
(S.D.N.Y. April 13, 2018)............................................................................................... 21, 24

*Sukhnandan v. Royal Health Care of Long Island*, No. 12 Civ. 4216 (RLE),
2014 WL 3778173 (S.D.N.Y. July 31, 2014) ........................................................... 8, 12, 13, 21

*Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ............ 14

*Thomas v. Mekruth Inc.*, No. 1:19-CV-01566-AJN, 2021 WL 3855861
(S.D.N.Y. Aug. 26, 2021) ..................................................................................................... 14

*Thomas v. Mekruth Inc.*, No. 19 Civ. 01566, 2022 WL 6757487
(S.D.N.Y. Oct. 10, 2022) (Liman, J.).......................................................................... 15, 21, 24

*Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949
(S.D.N.Y. Sept. 10, 2013).............................................................................................. passim

*Torres v. Gristede's Operating Corp.*, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010)................ 14

*Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM),
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................................................... 2

*Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE, 2014 WL 1777438
    (S.D.N.Y. May 1, 2014) ............................................................................................. 25

*Wal-Mart Stores v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................. 1, 2, 7, 10

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ................................. 11

*Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998
    (S.D.N.Y. Oct. 2, 2013) ............................................................................................. 24

*Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) 24

**RULES**

Fed. R. Civ. P. 23(a) ....................................................................................................... 2

Fed. R. Civ. P. 23(b)(3) ................................................................................................. 2

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................. 10

Fed. R. Civ. P. 23(e)(1) ................................................................................................. 10

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 1

**INTRODUCTION**

Named Plaintiffs Jessy Mangahas and Pithchaya Wohlfahrt and the Class ("Plaintiffs") submit this memorandum of law in support of their Motion for Final Approval of the Class Action Settlement brought on behalf of individuals who have worked for Eight Oranges Inc. d/b/a The Bao and Chibaola, Inc. d/b/a Uluh (together "Defendants") as servers, bussers, runners, bartenders, barbacks, and all other similar employees between October 15, 2015 and October 1, 2023.

On July 17, 2025, the Court took the first step in the settlement approval process by granting preliminary approval, directing notice be mailed to Class Members, and setting the date for the final fairness hearing. Class Members have been notified of the terms of the settlement and have reacted positively. In this regard, zero (0) Class Members have objected and only two (2) have opted out of the settlement. With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

**ARGUMENT**

**I.    THE PROPOSED RULE 23 SETTLEMENT SHOULD BE APPROVED**

In order to grant final approval of a proposed settlement under Federal Rule of Civil Procedure 23(e)(2), the Court must find "that it is fair, reasonable and adequate." *Hernandez v. Between the Bread 55th*, No. 17 Civ. 9541 (LJL), 2021 WL 12279220, at *2 (S.D.N.Y. Aug. 16, 2021) (Lewis, J.) (citing Fed. R. Civ. P. 23(e)(2)). "Courts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits. *Id.* (citing *Wal-Mart Stores v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

1

A. **The Proposed Settlement Class Should be Certified.**

For the reasons set forth in Plaintiffs' Motion for Preliminary Approval, the Court should grant final certification because the settlement class conditionally certified by the Court on July 17, 2025 satisfies the requirements of Fed. R. Civ. P. 23(a) & (b)(3).  *See* ECF Nos. 193-195.

B. **The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved.**

District courts "must determine whether the settlement, taken as a whole, is fair, reasonable and adequate" when approving a class action settlement.  *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *3 (S.D.N.Y. July 27, 2007)). "Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (quoting *Wal-Mart Stores*, 396 F.3d at 116).  "Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (quoting *Wal-Mart Stores*, 396 F.3d at 116); *see also In re EVCI*, 2007 WL 2230177, at *4 ("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement"); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019, at *2 (S.D.N.Y. July 6, 2012) (approving settlement where terms are fair, reasonable, adequate, and not a product of collusion).

1.  **The Settlement is Procedurally Fair and Should Be Approved.**

The instant settlement is procedurally fair because it was reached after Class Counsel actively litigated this case for over two years and became trial ready after conducting a thorough investigation of the claims and defenses, evaluated the strengths and weaknesses of those claims and defenses, and engaged in arm's length negotiations with Defendants, including two separate settlement conferences before Judge Tarnofsky. *See* Declaration of Armando Ortiz ("Ortiz Decl.") ¶¶ 8-43; *see also Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (There is a presumption of procedural fairness as to a proposed class settlement where that settlement is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). Therefore, the settlement is procedurally fair and should be approved.

2.  **The Settlement is Substantially Fair and Meets the *Grinnell* Standards for Class Action Settlement Approval.**

The settlement is substantively fair because its terms are fair, adequate, and reasonable pursuant to the analytical framework set forth by the Second Circuit in *Grinnell*. 495 F.2d at 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors in determining whether a settlement is substantially fair are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the [d]efendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463. "The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice," rather than applying the factors in a systematic manner. *Id.* at 468. Here, the *Grinnell* factors weigh in favor of final approval.

> a) *Litigation Through Trial Would Be Complex, Costly,*
> *And Long (Grinnell Factor 1).*

"To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation." *Tiro*, 2013 WL 4830949, at *6. "Moreover, class actions, especially in the context of FLSA claims, are inherently complex." *Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *5 (E.D.N.Y. Apr. 27, 2016).

Here, though many of Plaintiffs' claims were decided favorably on summary judgment, a fact-intensive trial would still be required with over a dozen combined witnesses to take the stand, and the preparation and presentation of evidence would consume time and resources. A damages trial would also be costly and defer closure. Furthermore, Defendants planned to appeal the summary judgment order, the class certification order, and any additional findings at trial. Thus, this case would not have "ended" after the December 2024 trial. Ortiz Decl. ¶ 46.

In fact, class action lawsuits "in general have a well-deserved reputation as being most complex." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (E.D.N.Y.), 2024 WL 3236614, at *21 (E.D.N.Y. June 28, 2024). Considering that this case covers two restaurants and 229 Class Members, "the large number of class members and the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive." *Romero*, 58 F. Supp. 3d at 420. However, the settlement agreed to by the parties makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell*

4

factor weighs in favor of final approval. *See Hernandez*, 2021 WL 12279220, at *2 (noting first *Grinnell* factor satisfied due to large class size with federal and state law).

> b) *The Reaction Of The Class Has Been Positive (Grinnell Factor 2).*

"The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 04494 (RLE), 2015 WL 2255394, at *4 (S.D.N.Y. May 11, 2015). The Notice sent to Class Members explained the allocation formula, provided an estimate of each Class Members' award, and informed Class Members of their right to object or to exclude themselves from the settlement. **Ex. C**, Declaration of Sara Schwermer-Sween ("SS Decl.") ¶¶ 5-6, Class Notice (attached as **Ex. 1** to the SS Decl.).[1] Here, only two (2) Class Members excluded themselves from the Settlement and zero (0) Class Members objected to the Settlement. *Id.* ¶¶ 20-21. This demonstrates a positive reaction to the settlement. *See e.g.*, *Hernandez*, 2021 WL 12279220, at *2 (noting positive outcome where no objections and only four (4) opt outs); *Grottano v. City of N.Y.*, No. 15-CV-9242 (RMB), 2021 WL 5563990, at *5 (S.D.N.Y. Nov. 29, 2021) ("Where relatively few class members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement.") Class Counsel also received several telephone calls from Class Members who reacted positively to the settlement. Ortiz Decl. ¶ 85. This greatly weighs in favor of approval. *See Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).

---

[1] Unless otherwise indicated, all Exhibits are attached to the Ortiz Decl.

              c)  *Discovery Has Advanced Far Enough To Allow The*
                   *Parties To Responsibly Resolve The Case (Grinnell*
                   *Factor 3).*

The third *Grinnell* factor questions "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004); *see also DeLeon*, 2015 WL 2255394, at *4. As outlined in the Ortiz Declaration, the Parties litigated this case for over two years, exchanged thousands of documents, provided written discovery responses for 13 Plaintiffs, and took over 16 depositions. Ortiz Decl. ¶¶ 22-27. Additionally, the Parties engaged in substantial motion practice, leading to the Court granting Plaintiffs' Rule 23 Certification Motion and granting much of their Summary Judgment Motion. *Id.* ¶ 28, 33-37. The Parties also had the benefit of two settlement conferences before Magistrate Judge Tarnofsky, which assisted their understanding of the case. *Id.* ¶ 29-32. Significantly, the financial disclosure ordered by Judge Tarnofsky was critical for Class Counsel to more thoroughly understand Defendants' ability to satisfy a potential judgment. *Id.* ¶ 31.

Without a doubt, settlement negotiations were always hard fought and at arm's length, and the Parties engaged in sufficient discovery to recommend settlement. *See Hernandez*, 2021 WL 12279220, at *3 (finding factor satisfied with much less discovery undertaken).

              d)  *Plaintiffs Would Face Real Risks If The Case*
                   *Proceeded (Grinnell Factors 4 And 5).*

Courts "assess the risks of litigation against the certainty of recovery offered by the Settlement" when evaluating the risks of establishing liability. *In re Telik Securities Litigation*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). Courts recognize that "[l]itigation inherently involves risks" and that regardless of the plaintiff's perceived strength of a case, liability is "no sure thing."

*Wal-Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Anjost*, 2014 WL 321831, at *5.

Here, Plaintiffs' damages model had not been adopted by the Court, and Defendants were opposing the Renewed Motion for Summary Judgment. Ortiz Decl. ¶ 36. Additionally, remaining was still the highly factual issue of whether Defendant Hong Bao could be an individual "employer" under the FLSA and NYLL and the issue of damages under the WTPA which relied almost exclusively on Plaintiffs' proving sufficient "injury-in-fact" at trial. *Id.* ¶ 46.

These claims are fact-intensive making a trial on the merits a risk. Though Plaintiffs are confident they could prevail, Class Counsel considered the risks of establishing liability, as well as the time, delay, and financial repercussions of a trial and certain appeals. *Id.* ¶ 45-46. In light of the strengths and weaknesses of the case, Class Counsel believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Class Members in the face of potential obstacles. *Id.* ¶ 48. By agreeing to the proposed settlement, these concerns are alleviated. Thus, this factor supports final approval. *See Rosi v. Aclaris Therapeutics, Inc.*, No. 19 Civ. 7118 (LJL), 2021 WL 5847420, at *5 (S.D.N.Y. Dec. 9, 2021) (Liman, J.) (factor met where damages could ultimately be less than settlement amount); *Hernandez*, 2021 WL 12279220, at * 3 (recognizing difficulties of trial where class members' could have differing languages and understanding of wage documents).

> e)  *Establishing A Class And Maintaining It Through Trial*
> *Would Not Be Simple (Grinnell Factor 6).*

This Court approved Rule 23 certification of this class in this case, which Defendants planned to appeal after trial. Ortiz Decl. ¶ 46. The risk to revisiting certification of the Class after trial supports final approval. Though confident in the certification order, the appeal process of that order would be costly, long, and further delay recovery to Class Members.

7

> f) *Defendants' Ability To Withstand A Greater Judgment*
> *Is Not Assured (Grinnell Factor 7).*

The Settlement Agreement provides substantial recovery for Class Members at considerable cost to Defendants. Nevertheless, even if Defendants could afford to pay more – a fact that has not been established – a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Sukhnandan v. Royal Health Care of Long Island*, No. 12 Civ. 4216 (RLE), 2014 WL 3778173, at *7 (S.D.N.Y. July 31, 2014).

Restaurant wage and hour cases are inherently high-risk due to often unexpected closings and collection issues, notwithstanding a restaurant's reputation or established years of business. Ortiz Decl. ¶ 47, 128. Here, there are real questions regarding Defendants ability to withstand a greater judgment. Class Counsel reviewed substantial financial discovery from Defendants and is confident this Settlement represents the maximum Defendants can afford to pay without future business shutdowns or bankruptcy filings. *Id.* ¶¶ 31, 46. This risk is further evident by the extended time Defendants had to pay its initial deposit into escrow, and the execution of a Confessions of Judgment. *Id.* ¶¶ 42-43, Thus, this supports final approval.

> g) *The Settlement Fund Is Substantial In Light Of The*
> *Possible Recovery And The Attendant Risks Of*
> *Litigation (Grinnell Factors 8 And 9).*

"The determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *DeLeon*, 2015 WL 2255394 at *4. "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)).

"Where the settlement provides 'a meaningful benefit' to the class, settlements have been found reasonable." *Karic*, 2016 WL 1745037, at *7. Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road," settlement is reasonable under this factor. *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008).

The settlement amount represents good value given the risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. Ortiz Decl. ¶ 49. Class Counsel is pleased to report that by obtaining $1,750,000.00, the Class recovered approximately 110% of their base owed wages (excluding liquidated damages and WTPA penalties) and 51.6% of potential base owed wages *and* full WTPA penalties. Ortiz Decl. ¶ 50-51. Even if one were to include full base owed wages, 100% NYLL liquidated damages, and full WTPA penalties, this settlement represents 35.2% of all such maximum exposure. *Id.* Therefore, this factor weighs in favor of final approval. *See Rosi*, 2021 WL 5847420, at *5 (noting 14% recovery as supporting approval in securities class action); *Perez v. Ultra Shine Car Wash, Inc*., No. 20 Civ.782 (KMK), 2022 WL 2129053, at *3 (S.D.N.Y. June 14, 2022) (discussing recoveries between the 4% to 11% range and stating that such percentage should be judged "in light of the legal and evidentiary challenges that would face the plaintiffs").

Here, the average settlement payment (net of attorneys' fees, costs, service awards, and claims administration fees) is approximately $4,412.63, which is well above the range of average FLSA recoveries. Ortiz Decl. ¶ 88. *See Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-07 (2d Cir. 2015) ("noting that FLSA cases tend to settle for between $500 and $2,000 dollars

in unpaid wages."). In fact, the maximum *individual* award amount is estimated to be $33,893.92. Ortiz Decl. ¶ 88. This is a substantial settlement for the Class.

"In evaluating this and the ninth *Grinnell* factor, there is no particular number that must be reached for this percentage to be reasonable. Rather, the settlement amount must be located within 'a range of reasonableness . . . a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Romero*, 58 F. Supp. 3d at 421 (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.1972)). This settlement falls within the range of reasonableness and supports approval.

### C. Class Members Received the Best Notice Practicable

The notice process satisfies Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The notice process also satisfies Rule 23(e)(1), which requires that notice be "reasonable" – i.e. – it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. This Court has already determined that the notice program in this case meets the requirements of due process and applicable law, provides the best notice practical under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. See **Ex. B**, Preliminary Approval Order at ¶ 4. The notice program was implemented by Rust Consulting, the approved Claims Administrator, as detailed in the Ortiz and Schwermer-Sween Declarations. *See* Ortiz Decl. ¶¶ 67-87; **Ex. C**, SS Decl. ¶¶ 5-21. Moreover, all CAFA notice requirements have been satisfied. Ortiz Decl. ¶ 89; **Ex. C**, SS Decl. ¶ 24.

The notice program has been successful. Out of the 187 mailed English/Mandarin notices, only six (6) were ultimately considered undeliverable. Ortiz Decl. ¶ 80. While Defendants could

not provide mailing addresses for 42 Class Members, the alternative means of notice satisfies the best notice under the circumstances. In this regard, the notice was posted at the restaurants, was printed in a major Chinese-American newspaper, digital ads were utilized, and Class Counsel posted the notice on their website. Ortiz Decl. ¶¶ 72-78; **Ex. C**, SS Decl. ¶ 5, 10-20. Class Counsel also did not hesitate to utilize third-party live translation services to discuss the settlement with Class Members (and will continue to do so as necessary). Ortiz Decl. ¶ 86. In sum, the notice program approved by the Court and implemented by Rust Consulting provide due and adequate notice and satisfies the requirements of due process.

## II.    THE COURT SHOULD ISSUE FINAL APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs also request that the Court approve settlement of the FLSA claims. "The standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement." *Tiro*, 2013 WL 4830949, at *10; *see also Mikityuk v. Cision US Inc.*, No. 21 CV 510 (LJL), 2022 WL 3013107, at *3 (S.D.N.Y. July 29, 2022) (Liman, J.). For FLSA settlements, "the ultimate question is whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mikityuk*, 2022 WL 3013107, at *3. The "adversarial nature of a litigated FLSA case [is] an adequate indicator of the fairness of the settlement." *DeLeon*, 2015 WL 2255394, at *4. If the proposed settlement reflects a reasonable compromise of the contested issues, the court should approve the settlement. *Id.*

Most courts refer to the factors in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), which review the range of recovery, the extent the settlement will enable the parties to avoid anticipated litigation burdens and expenses, the litigation risks faced by the parties,

whether the settlement is the product of arm's length bargaining by experienced counsel, and any possibility of fraud or collusion. For the reasons outlined above, each of these factors weigh in favor of approving this FLSA settlement. Moreover, there are no red-flags that concerned the Second Circuit in *Cheeks* in this agreement. For instance, Named Plaintiffs and Class Members who endorse their settlement checks will only be releasing FLSA wage and hour claims pled in the complaint(s) (excluding retaliation claims). Ortiz Decl. ¶¶ 64. Additional releases for those with active retaliation claims are addressed separately and in exchange for service payments, and include the dismissal of the state court defamation litigation. Ortiz Decl. ¶ 65-66. Likewise, there is no confidentiality provisions in the Agreement that could be of concern. Class Members will have a total of 180 days (6 months) to cash their settlement checks or request a new check, and a reminder post card will be sent out 45 days after check mailing to those who have not yet cashed their checks. **Ex. A**, Settlement Agreement ¶ 3.5(E)-(F).

Plaintiffs respectfully submit that this is a fair and reasonable compromise of the disputed issues in this litigation and ask for approval. *See, e.g., Romero*, 58 F. Supp. 3d at 421; *Sukhnandan*, 2014 WL 3778173, at *7 (granting final approval of FLSA settlement); *Tiro*, 2013 WL 4830949, at *10 (same).

## III.  THE SERVICE AWARDS SHOULD BE AWARDED TO THE NAMED PLAINTIFFS AND CERTAIN OPT-IN PLAINTIFFS

Pursuant to the Settlement Agreement, and subject to Court approval, a total of $100,000.00 in service awards would be provided as follows:

- Named Plaintiff Jessy Mangahas - $25,000; Named Plaintiff Pitchaya Wohlfahrt - $15,000; Ying Ying Yuan and Yonfeng Situ - $8,250 each; Upendra Shahi - $7,500; Jason Cedeno, Keno Dacusin, Thinley Kalsang, Vorrawala Aphiromden, Wen Bin Zhu, Wochao Chen, Yi Zhang, Jose Rodriguez, and Prathana Phiphatchotika - $4,000 each. Ortiz Decl. ¶ 90, 97-98.

These awards are reasonable given the significant contributions everyone made to advance the prosecution and resolution of the lawsuit as outlined in more detail in the Ortiz Declaration. Ortiz Decl. ¶¶ 91-95 (Named Plaintiffs), 96-98 (opt-ins). Moreover, the Class Notice informed Class Members of these service awards and no Class Members objected. Ortiz Decl. ¶¶ 75, 84.

"Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that '[service] awards are particularly appropriate in the employment context' where 'the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers.'" *Tiro*, 2013 WL 4830949, at \*10-\*11; *Sukhnandan*, 2014 WL 3778173, at \*16 ("It is important to compensate plaintiffs for the time they spend and the risks they take."); *Anjost*, 2014 WL 321831, at \*10 ("Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take."); *see also Sewell v. Bovis Lend Lease, Inc. et al.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at \*14 (S.D.N.Y. April 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer . . . [and] being blacklisted as 'problem' employees."). Accordingly, "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risk incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Anjost*, 2014 WL 321831, at \*10.

Accordingly, the Court should grant the requested service award based on the significant risk and work that the Named Plaintiffs and Opt-In Plaintiffs undertook on behalf of the Class, as their actions collectively exemplify the very reason service fees are awarded. Moreover, these service awards are reasonable and within the range awarded by this Court and other courts in this

District. *See, e.g., Thomas v. Mekruth Inc.*, No. 1:19-CV-01566-AJN, 2021 WL 3855861, at *1 (S.D.N.Y. Aug. 26, 2021) (approving $20,000 for class representative, plus $10,000 for certain opt-ins); *Borecki v. Raymours Furniture Co., Inc.*, No. 17 Civ. 01188 (LAK) (SN), 2019 WL 4315966, at *2 (S.D.N.Y. Sept. 10, 2019) (approving $40,000 service award to class representative); *Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *18-*19 (S.D.N.Y. May 24, 2016) (awarding $30,000 to each class representatives in part because "[i]ncentive awards are appropriate when considering the sacrifice of [p]laintiffs' anonymity"); *Hart v. BHH, LLC*, No. 15CV4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) ("[Service] [a]wards on an individualized basis have generally ranged from $2,500 to $85,000."); *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (granting a service award of $45,000 to the class representative); *Torres v. Gristede's Operating Corp.*, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010) (service award of $15,000 to each of 15 named plaintiffs in the settlement of their FLSA overtime claim where total recovery was $3,530,000).

As such, Plaintiffs respectfully ask the Court to grant the requested Service Awards.

## IV.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Plaintiffs' unopposed motion for Final Approval includes a request for attorneys' fees and costs of one-third, or $583,333.33 and costs totaling $39,451.27, of the Settlement Fund. Ortiz Decl. ¶ 99. Settlement Agreement and Court-approved Class Notice provide that Class Counsel will apply to the Court for their fees and costs. *Id.* ¶ 100.  No Class Member has objected to these requests. *Id.* ¶ 101..

Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar and percentage of the fund method, "using the 'percentage-of-

recovery' method . . . is consistent with the 'trend in this Circuit.'" *DeLeon*, 2015 WL 2255394, at *5 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)); *see also Sykes*, 2016 WL 3030156, at *15.

### A.  The Percentage Method Is The Preferred Method For Awarding Attorneys' Fees In Common Fund Cases In The Second Circuit.

Plaintiffs respectfully request that the Court follow the trend in the Second Circuit as it previously has done in prior class settlements and utilize the percentage method for awarding attorneys' fees in this common fund case. *See Rosi*, 2021 WL 5847420, at *9 (awarding percentage of fee in securities class case); *Thomas v. Mekruth Inc.*, No. 19 Civ. 01566, 2022 WL 6757487, at *1 (S.D.N.Y. Oct. 10, 2022) (Liman, J.) (awarding percentage of fee in wage and hour collective settlement); *Hernandez*, 2021 WL 12279220, at *5 (same in class wage and hour settlement).

Utilizing the percentage of the fund method is proper for several reasons. First, "in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *DeLeon,* 2015 WL 2255394, at *6 ; *see also Emeterio v. A&P Restaurant Corp.,* 2022 WL 274007, at *9 (S.D.N.Y. Jan. 26, 2022) ("The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Anjost Corp.*, 2014 WL 321831, at *8. "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts." *Id*. at *8. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id.*

The percentage method is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Johnson*

*v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *In re Lawrence*, 24 N.E.3d 320 (N.Y. 2014) (upholding 40 percent contingency fee and stating that, "[a]s a general rule, we enforce clear and complete documents, like the retainer agreement, according to their terms.").

The percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. In that regard, the percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *See Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."). Finally, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie*, 166 F.3d at 461 n.4).

Last, in accordance with the Second Circuit's guidance, "[f]ee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Mikityuk*, 2022 WL 3013107, at *7 (citing *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)).

As such, Class Counsel submits that the *Goldberg* factors discussed below support an attorneys' fee award of one-third of the gross settlement fund in this case.

16

**B.** **The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund.**

In determining the reasonableness of fee applications, courts consider the following six factors set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Here, all the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1. Class Counsel's Time And Labor.

Plaintiffs' Counsel spent significant effort to achieve the $1,750,000.00 settlement. In performing these tasks, Class Counsel expended 1,036.4 hours, which is reasonable for a complex case that has lasted over three years. Ortiz Decl. ¶ 114. Moreover, Class Counsel anticipates spending additional time in the future preparing for the Fairness Hearing and administering the settlement and the requested fee award is also meant to compensate for that time. *Id*. ¶ 119; *Karic*, 2016 WL 1745037, at *8 (fee award also compensates counsel for time required to administer the Settlement Fund in the future); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions . . . and distributing the fund.").

The rates used in calculating Class Counsel's lodestar are consistent with the rates approved in this Circuit. *See also Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (applying plaintiffs' counsel's hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals for purposes of lodestar crosscheck); *Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (holding rate of $550 per hour in FLSA

17

case was reasonable). In fact, this year, Judge Block of the Eastern District commented on how commonly used "reasonable rates" should be likely increased given ongoing inflation and market conditions. *See Rubin v. HSBC Bank USA, NA*, No. 20 Civ. 4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025).

## 2. The Litigation's Magnitude And Complexity

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50. "Courts have recognized that wage and hour cases involve complex legal issues." *Tiro*, 2013 WL 4830949, at * 13 (citation omitted); *see Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law."). Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b). *See, e.g., Tiro*, 2013 WL 4830949, at *13 (awarding fees equal to one-third of the settlement fund where "[t]he numerous and complex issues involved in this action support approval of Class Counsel's attorneys' fee request."). This matter is significantly large and complex due to the several mixed questions of fact in law at hand. *See* Ortiz Decl. ¶¶ 22-42.

These complex and unresolved factual and legal questions demonstrate this is not a relatively straight forward wage and hour case and supports approval of Class Counsels' attorneys' fees and costs request. *See Hernandez*, 2021 WL 12279220, at *4 (factor met where wage and hour matter involved several hundred employees with mixed questions of law and fact under federal and state law); *Beckman*, 293 F.R.D. at 479; *Frank*, 228 F.R.D. at 189 (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the

common fund); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4-*8 (S.D.N.Y. May 11, 2010) (approving settlement and award of attorneys' fees representing one-third of the fund in complex wage and hour class and collective action).

### 3. The Risks Of Litigation.

Class Counsel agreed to prosecute this action without any assurance of payment for their services; litigating this case on a wholly contingent basis in the face of significant risk. Ortiz Decl. ¶ 121. The retainer agreement signed by the Named Plaintiffs reflect the contingency fee arrangement. *Id.* Plaintiffs' Counsel entered into a contingency fee arrangement knowing that there was a very real possibility of an unsuccessful outcome and, thus, no fee of any kind. *Id. See Almanzar v. Silver Star Properties Corp.*, 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023) ("The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours expended by the attorney. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended."); *see also Beckman*, 293 F.R.D. at 479 ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees."); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (quoting *Goldberger*, 209 F.3d at 55) ("risk should be considered 'as of when the case is filed.'"). Class Counsel continues to represent employees on a wholly contingent basis despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years. Ortiz Decl. ¶¶ 122-129.

Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id.* at ¶ 127. Class Counsel takes on difficult cases like this one because we believe that they are important as

many individual workers may be unwilling or unable to front the costs of litigation for an outcome that is uncertain. *Id*. ¶ 129. The Southern District recognized that counsel "retained its obligations to pay salaries and overhead, and assuredly forewent other potential clients and cases. A law firm is a business, too." *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE), 2015 WL 5577713, at *16 (S.D.N.Y. Sept. 22, 2015). The court granted class counsel's "substantial fee award" to "recognize the outsize risks that [class counsel] took in investing in [that] uncertain lawsuit." *Id.*

Thus, Class Counsel's attorneys' fee request is supported by this factor as well. *See, e.g., Hernandez*, 2021 WL 12279220, at *4 (finding factor weighs in favor of award where case was based on contingency); *Almanzar*, 699 F. Supp. 3d at 256 ("[I]n cases where attorneys spend fewer hours than would be expected to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed.).

### 4. Quality Of The Representation.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Hernandez*, 2021 WL 12279220, at *4. Here, the recovery obtained - $1,750,000.00 – is substantial and supports this factor. As to Class Counsel's background, Plaintiffs respectfully submit the Court's prior Class Certification order finding F&S to be "well-qualified" and having "substantial experience litigating federal class action wage and hour cases" support this factor. *See Mangahas v. Eight Oranges Inc.*, No. 22 Civ 4150(LJL), 2024 WL 2801922, at *9 (S.D.N.Y. May 31, 2024) (Liman, J.); *see also* Ortiz Decl. ¶¶ 103 (history of appointment as class/collective counsel; 104-111 (firm biographies).

**5.    The Fee Is Reasonable In Relation To The Settlement.**

Class Counsel's request for one-third of the fund "is reasonable and consistent with the norms of class litigation in this circuit." *Sukhnandan*, 2014 WL 3778173, at *13; *see also Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1910656, at *6 (S.D.N.Y. May 12, 2021) (holding that awarding 1/3 of the settlement fund is within the range for rates in this district and thus reasonable). Certainly, several courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds similar or substantially larger than the present action. *See, e.g.*, *Puglisi v. TD Bank*, No. 13 Civ. 637 (GRB), 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving 1/3 of $9,900,000); *Karic*, 2016 WL 1745037, at *8 (approving 1/3 of $5,500,000); *Beckman*, 293 F.R.D. at 481 (awarding counsel 1/3 of $4,900,000); *Suarez v. Rosa Mexico Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319, at *8 (S.D.N.Y. April 13, 2018) (approving 1/3 of $3,600,000); *Hadel v. Gaucho, LLC*, No. 15 Civ. 3706 (RLE), 2016 WL 3647600, at *1 (S.D.N.Y. June 30, 2016) (approving 1/3 of $2,375,000); *Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *10 (S.D.N.Y. Jan. 15, 2025) (approving 1/3 of $1,800,000); *Imbarrato v. Banta Management Services, Inc.*, No. 18 Civ. 5422 (NSR) (JCM), ECF No. 116 (S.D.N.Y. Oct. 17, 2024) (**Ex. H**) (approving 1/3 of $1,650,000); *Thomas*, 2022 WL 6757487, at *1 (approving 1/3 of $1,500,000).

Moreover, the Second Circuit also clarified that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Fisher*, 948 F.3d at 600. In fact, "[i]n most FLSA cases, it does not make sense to limit fees to 33% of the

total settlement [since] FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Id.* Therefore, as the Second Circuit has "long held, … a fee may not be reduced merely because the fee would be 'disproportionate to the financial interest at stake in the litigation.'" *Id.* at 604 (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005)).

Additionally, counsel's fee should be calculated as a percentage of the full amount of money that the settlement made available. *See, e.g. Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423, 436-37 (2d Cir. 2007) (holding district court erred when it calculated percentage of fund based on claims made against the fund rather than on the entire fund created by counsel's efforts). Therefore, this factor weighs in favor of granting the requested fees.

### 6. Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees.  In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *Hesse v. Godiva Chocolatier, Inc.,* No. 1:19-CV-0972-LAP, 2022 WL 22895466, at *13 (S.D.N.Y. Apr. 20, 2022) (citing *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 399 (1999)). "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest. While court awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 352 ; *Hesse*, 2022 WL 22895466, at *40 ("the Second Circuit 'take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.'").

Thus, this factor weighs in favor of approving the requested attorneys' fee award.

   **C.   The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund.**

"Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Tiro*, 2013 WL 4830949, at *15 (citation omitted).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *See Goldberger*, 209 F.3d at 50.

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved." *Parker v. Jekyll & Hyde Entm't Holdings,* LLC, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). These factors all weigh in favor of granting Plaintiffs' Counsel's fee request.

With respect to the first two factors, Class Counsel spent approximately 1,036.40 hours litigating and settling this matter. Ortiz Decl. ¶ 114, 118, **Ex. J** (billing records).  The hours worked by Class Counsel result in a lodestar of approximately $396,657.50. Ortiz Decl. ¶ 118.  Moreover, "[b]ecause class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482.

Plaintiffs Counsel's request for one-third of the Fund (approximately 1.47 times their "lodestar") is reasonable considering the excellent result achieved for the Class and well within

the multiplier range awarded this and other courts in the Second Circuit. Ortiz Decl. ¶ 102. *See Rosi*, 2021 WL 5847420, at *9 (granting multiplier of 3.3 in securities action); *Thomas*, 2022 WL 6757487, at *1 (approving 2.44 multiplier in wage and hour settlement). Other courts have approved even higher multipliers in wage and hour settlements. *See Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (granting multiplier of 7.6 and stating that the class counsel should not be penalized "for achieving an early settlement"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting 6.8 multiplier); *Beckman*, 293 F.R.D. at 483 (granting 6.3 multiplier); *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts"); *Hadel*, 2016 WL 3647600, at *1 (granting multiplier of 5); *Puglisi*, 2015 WL 4608655, at *1 (awarding multiplier of 4.8); *Suarez*, 2018 WL 1801319, at *8 (approving multiplier of 4.62); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC) (RLE), 2015 WL 3916161, at * 1 (S.D.N.Y. April 28, 2015) (granting multiplier of 4.5 in a claims made settlement).

1. **Class Counsel Is Entitled To Reimbursement Of Their Litigation Expenses.**

Pursuant to the Class Notices, Plaintiffs' Counsel seeks reimbursement of $39,451.27, in necessary litigation costs and expenses as part of its overall request for one-third of the Settlement Fund. Ortiz Decl. ¶ 130; **Ex. J** (expenses summary). "An attorney's fees award may also include 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Mikityuk*, 2022 WL 3013107, at *8. Given that Plaintiffs' Counsel's unreimbursed expenses were incidental and necessary, they should be approved. *Id.* (approving similar mailing, transcript and computerized research fees).

24

## 2.  **The Claims Administrator's Fees are Reasonable.**

The Parties retained Rust Consulting, a third-party settlement administrator, as the Claims Administrator for the Settlement. Ortiz Decl. ¶ 68. The Claims Administrator's fees are estimated to not exceed $35,000.00. **Ex. C**, SS Decl. ¶ 25. Claims Administrator fees in this amount are routinely found to be reasonable, given the extensive work necessary to administer the Settlement. *See, e.g.*, *Viafara v. MCIZ Corp.*, No. 12 CIV. 7452 RLE, 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014) (approving $40,000 administrator fee which is "within the range of other amounts that have been awarded to the Settlement Administrator in this District."); *Caccavale v. Hewlett-Packard*, No. 2:20 Civ. 974 (NJC) (ST), 2025 WL 882221, at *4 (E.D.N.Y. Mar. 21, 2025) (appointed Rust Consulting as claims administrator). At this time, Plaintiffs respectfully request that the Court approve all reasonable fees of the Claims Administrator as outlined in the Settlement Agreement.[2]

## **CONCLUSION**

Plaintiffs and Class Counsel are proud of this settlement, which resolves a hard-fought litigation now over three years in length and provides meaningful wages to restaurant workers. For the reasons above, Plaintiffs respectfully request that the Court issue final approval of the settlement, issue final approval of the requested service awards, attorneys' fees and costs, and administrative costs, and enter the proposed Final Order.

---

[2] Though not expected, per the terms of the Settlement Agreement, should these fees exceed $35,000, any amount over that threshold will be paid by Defendants outside the fund. **Ex. A**, Settlement Agreement ¶ 3.3(A).

Dated:  New York, New York
           October 14, 2025

Respectfully submitted,

/s/ Armando A. Ortiz
Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine Bonilla
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs and the Class*

26