UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

JESSY MANGAHAS, et al.,                              :
                                                     :
                      Plaintiffs,                    :
                                                     :
                -v-                                  :
                                                     :
EIGHT ORANGES INC. d/b/a THE BAO, et al.,            :
                                                     :
                      Defendants.                    :
                                                     :
------------------------------------------------------------------- X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: __10/30/2025__ |

22-cv-4150 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Named Plaintiffs Jessy Mangahas ("Mangahas") and Pithchaya Wohlfahrt ("Wohlfahrt")

move under Federal Rules of Civil Procedure 23(a), (b)(3), (e)(2), and (h) for: (1) certification of

a settlement class comprised of "[a]ll persons who work or have worked as servers, bussers,

runners, bartenders, barbacks and all other similar employees at The Bao located at 13 St Marks

Place, New York, New York 10003 and Uluh located at 152 2nd Avenue, New York, New York

10003 between October 15, 2015 and October 1, 2023"; (2) final approval of the Settlement

Agreement dated July 10, 2025 at Dkt. No. 206-1; (3) service awards to the Named Plaintiffs and

certain opt-in plaintiffs; (4) attorneys' fees and costs; and (5) administrative costs to the Claims

Administrator. Dkt. No. 205. Named Plaintiffs also move for final approval of the FLSA

settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 296 F.3d 199 (2d Cir. 2015). *Id.*

The motions are granted.

## BACKGROUND

### I.    Procedural History

Named Plaintiffs are employees who worked at two New York restaurants, The Bao and

Uluh, that serve Chinese-influenced cuisine. Dkt. No. 138 ¶¶ 9, 27–28. They allege violations

of the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL") and bring this action against: Eight Oranges Inc., doing business as The Bao; Chibaola, Inc., doing business as Uluh; Joanne Hong Bao ("Hong Bao"); and Richard Lam ("Lam," and together with The Bao, Uluh, and Hong Bao, "Defendants").  Dkt. No. 84.  Specifically, Named Plaintiffs allege that Defendants failed to pay minimum wages and overtime compensation, failed to provide proper tip credit notice, misappropriated gratuities, made unlawful deductions from pay, required employees to perform non-tipped side work for more than 20% or two hours of their shift at subminimum wage, and failed to provide appropriate notices and wage statements.  *Id.*

This case was commenced on May 20, 2022, through a collective and class action complaint filed by Mangahas against Defendants alleging FLSA and NYLL violations.  Dkt. No. 1.  On August 18, 2022, Mangahas filed a First Amended Complaint adding individual claims for retaliation against her under FLSA and NYLL.  Dkt. No. 25.

On September 1, 2022, Defendant Hong Bao filed a motion to dismiss the First Amended Complaint against her for failure to state a claim for relief.  Dkt. No. 28.  On September 16, 2022, Plaintiffs filed a motion for preliminary certification of the case as a FLSA collective and for approval of court-authorized notice under 29 U.S.C. § 216(b).  Dkt. No. 36.  The Court ruled on both motions on October 18, 2022.  Dkt. Nos. 43–44.  It denied Hong Bao's motion to dismiss the complaint against her for failure to state a claim for relief.  Dkt. No. 44.  It granted the motion to preliminarily certify the case as a FLSA collective action and permitted notice to be disseminated to putative members of the collective.  Dkt. No. 43.  Twelve persons subsequently filed consent forms to join the FLSA action.  Dkt. Nos. 49–50, 52–61.

On May 1, 2023, the Court granted in part Plaintiffs' opposed motion for leave to file a Second Amended Complaint adding Wohlfahrt as a second Named Plaintiff, asserting claims of

retaliation against Wohlfahrt, and expanding the list of tip-ineligible positions at the restaurants. Dkt. No. 83.  Plaintiffs filed the Second Amended Complaint on May 4, 2023.  Dkt. No. 84.[1]

On May 31, 2024, the Court granted Plaintiffs' motion for class certification and certified a class comprised of all tipped workers who worked at The Bao and Uluh from October 5, 2015 "through the present."[2]  Dkt. No. 142.  The Court also appointed Mangahas and Wohlfahrt as Class Representatives and Fitapelli & Schaffer LLP ("F&S") as Class Counsel.  *Id.*

On October 22, 2024, the Court granted in part and denied in part Plaintiffs' motion for summary judgment.  Dkt. No. 160.  The Court first held that The Bao, Uluh, and Lam were employers within the meaning of FLSA and NYLL and that The Bao and Uluh operated as a single integrated enterprise under those laws.  *Id.* at 12–13, 22, 24.  The Court could not similarly conclude as a matter of law that Hong Bao qualified as an employer, although Plaintiffs provided sufficient evidence to bring that issue before a jury.  *Id.* at 27–28.  Next, the Court granted summary judgment for Plaintiffs with respect to liability on their tip-credit, tip-pool, and uniform-reimbursement claims, but it denied summary judgment with respect to calculated damages on the tip-credit and tip-pool claims.  *Id.* at 32–34, 39, 42, 46.  The Court also denied summary judgment with respect to Plaintiffs' wage notice and statement claims under New York's Wage Theft Prevention Act ("WTPA") for failure to identify a concrete injury.  *Id.* at 49. Finally, the Court rejected Defendants' arguments (1) that they exhibited good faith sufficient to

---

[1] Plaintiffs filed a motion for a temporary restraining order on April 19, 2023, seeking to restrain Defendants from pursuing a state-court defamation action against them.  Dkt. Nos. 72–73.  The Court denied that motion on May 2, 2023.  May 2, 2023, Minute Entry.

[2] Courts have interpreted similar "through the present" language as referring to when the motion for class certification was filed.  *See Hnot v. Willis Grp. Holdings Ltd.*, 2006 WL 2381869, at *2 n.4 (S.D.N.Y. Aug. 17, 2006) (Lynch, J.).

avoid liquidated damages and (2) that, as a matter of public policy, they deserved leniency as a small business. *Id.* at 50–56.

On November 18, 2024, Plaintiffs filed a second motion for summary judgment as to damages. Dkt. No. 182. Approximately one week later, the parties informed the Court that they had reached a settlement in principle resolving all claims. Dkt. No. 189. Shortly thereafter, the Court adjourned the upcoming trial, which had been scheduled to begin on December 2, 2024, and scheduled a settlement fairness hearing for July 17, 2025. Dkt. No. 190.

## II.    The Settlement

The final Settlement Agreement submitted to the Court for approval and dated July 10, 2025, provides that Defendants shall pay a gross settlement amount of $1,750,000 to be used to fund individual settlement amounts to class members and plaintiffs, court-approved attorneys' fees and costs, court-approved service payments, and fees and expenses incurred by the Claims Administrator. Dkt. No. 206-1 ¶ 3.1. In exchange, Named Plaintiffs agreed to a release that provides that all class members who do not opt out of the settlement fully release and discharge Defendants and other Releasees from any and all NYLL claims pled in the Complaint or Amended Complaint (excluding retaliation claims) from October 15, 2015 through November 26, 2024. *Id.* ¶ 3.7(A). The Named Plaintiffs and all qualified class members who endorse their settlement checks also fully release and discharge Defendants and other Releasees from any and all FLSA wage and hour claims pled in the Complaint or Amended Complaints (again, excluding retaliation claims). *Id.* ¶ 3.7(B).

The Settlement Agreement also permits Class Counsel to petition the Court for: an attorneys' fees award of no more than one-third of the settlement payment ($583,333.33) and litigation expenses of no more than $40,000, *id.* ¶ 3.2(A); payments for the expenses of the Claims Administrator of no more than $35,000, *id.* ¶ 3.3(A); and service payments to Named

Plaintiff Mangahas of $25,000, *id.* ¶ 3.4(A), to Named Plaintiff Wohlfahrt of $15,000, *id.* ¶ 3.4(B), to opt-in plaintiffs Ying Ying Yuan ("Yuan") and Yongfeng Situ ("Situ") of $8,250 each, *id.* ¶ 3.4(C), and to certain remaining opt-in plaintiffs of between $4,000 and $7,500, *id.* ¶ 3.4(D)–(E).  In exchange, Mangahas and Wohlfahrt agree to release their individual retaliation claims in this case, and Mangahas, Yuan, and Situ agree to release their retaliation and anti-SLAPP counterclaims stemming from a state-court defamation case.  *Id.* ¶ 3.7(C)–(D).

The Settlement Agreement further provides that all opt-in plaintiffs as of November 26, 2024 will receive an increased share of the gross settlement fund in the form of 1.25 points for every hour worked at the tip credit rate in the relevant time period (as opposed to only one point for other class members).  *Id.* ¶ 3.5(B)(2).  This additional quarter point is intended to recognize the contribution of opt-in plaintiffs, who provided additional assistance to Class Counsel and subjected themselves to additional possible burdens including discovery demands and document retention requirements.  Tr. of Oral Argument of Oct. 21, 2025 ("Oral Argument Tr.") at 14:23–15:19; *see also* Dkt. No. 206 ¶ 62.

Defendants are required to fund the settlement in two separate installments.  The first installment of $500,000 was due (and paid) on or before January 31, 2025.  Dkt. No. 206-1 ¶ 3.1(B).  The remainder is due the later of nine months after the first installment was paid or fifteen days after the Effective Date, which is defined as thirty days after final approval of the settlement if no appeal is taken.  *Id.* ¶ 1.8 (defining Effective Date); *id.* ¶ 3.1(B) (detailing payment due dates).

The settlement is not a "claims-made" settlement, "meaning that class members are not required to submit a claim form to receive a payment."  *See Kohari v. MetLife Grp., Inc.*, 2025 WL 100898, at *3 (S.D.N.Y. Jan. 15, 2025).  Every employee on the list of employees provided

by Defendants to Class Counsel is deemed to be a qualified class member and is entitled to share

pro rata in the settlement fund (unless, that is, the class member has validly opted out of the

settlement).  Dkt. No. 206-1 ¶¶ 2.5(A), 2.6(D), 3.5.  Upon approval and funding of the

settlement, the Claims Administrator is to mail the individual settlement amounts (and any

service amounts) to members of the class without the need for class members to do anything to

receive their share.  *Id.* ¶ 3.5(D).  A non-material term of the settlement provides that if the

settlement checks or service payments are not cashed, the remaining sum will revert back to

Defendants.  *Id.* ¶ 3.5(G).  If this provision is not approved, the parties agree that the unclaimed

funds will be donated under the *cy pres* doctrine to a charity of their choosing with the Court's

approval.  *Id.*

### III.    Settlement Approval

On July 10, 2025, Named Plaintiffs moved for preliminary approval of the class action

settlement.  Dkt. No. 193.  The Court issued an order on July 17, 2025 preliminarily approving

the settlement as fair, reasonable and adequate, reaffirming the appointment of Class Counsel

and Named Plaintiffs, appointing a settlement Claims Administrator, and authorizing notice.

Dkt. No. 199.  The Court indicated that this preliminary approval was subject to further

consideration at a fairness hearing, which would occur concurrently with a hearing regarding the

settlement's compliance with FLSA under *Cheeks*, 796 F.3d at 206.  *Id.* ¶ 6.

On October 14, 2025, Named Plaintiffs filed their unopposed motion for final approval of

the Settlement Agreement and for an award of attorneys' fees and costs.  Dkt. No. 205.  The

documentation submitted in support of that motion indicates that between August 21, 2025, and

September 2, 2025, the Claims Administrator mailed notice of the settlement in English and

Mandarin to 187 class members.  Dkt. No. 206-3 ¶¶ 5, 10–11, 13.  Where class notices were

returned as undeliverable, the Claims Administrator performed an "address trace" and engaged

in re-mailings.  *Id.* ¶ 17.  Only six class notices were undeliverable.  *Id.*  In addition, notice was

published twice in the World Journal, a major Chinese-American newspaper in New York City.

*Id.* ¶ 12.  The Claims Administrator also published a digital ad on the World Journal website,

which ran for a two-week period.  *Id.* ¶ 14.  Notice was also posted at the restaurants.  Dkt. No.

206 ¶ 73.  No objections to the settlement have been received.  *Id.* ¶ 84.  Only two class members

have opted out.  *Id.* ¶ 82; Dkt. No. 206-3 ¶ 20.

## DISCUSSION

### I.    Certification of the Settlement Class

For a class to be certified under Federal Rule of Civil Procedure 23(a), the Court must

consider whether the class is sufficiently numerous, whether there are questions of law or fact

common to the class, whether the claims of the named plaintiffs are typical of the class, and

whether the representative parties will adequately represent the class's interests.  *See* Fed. R. Civ.

P. 23(a).  The Court previously found that those criteria were met in this case and certified the

class.  Dkt. No. 142.  The Court now confirms that conclusion for settlement purposes.

The Settlement Class satisfies the threshold requirements of Rule 23(a).  With respect to

numerosity, notice was mailed to 187 class members.  "Numerosity is presumed for classes

larger than forty members."  *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d

111, 120 (2d Cir. 2014).  Courts in this Circuit routinely find this requirement satisfied in wage

and hour cases involving similar numbers of potential class members.  *See Lora v. To-Rise, LLC*,

452 F. Supp. 3d 5, 10 (E.D.N.Y. 2019) (certifying class of 100 members); *Velasquez v. Digit.

Page, Inc.*, 303 F.R.D. 435, 441 (E.D.N.Y. 2014) (finding that "putative class of even possibly

less than approximately 87 members satisfies the numerosity element").  So too here; the class is

sufficiently numerous that joinder of all members is impracticable.  *See* Dkt. No. 142 at 10–13.

The Settlement Class also satisfies the requirement that its members' claims have common questions of law and fact. These questions include whether the two restaurants operated as a single enterprise and implemented an unlawful tip-pooling policy, whether tipped workers were not paid the requisite minimum wage and overtime, whether employees were not paid spread of hours, and whether Defendants failed to provide the requisite notices and wage statements. "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *See Martinenko v. 212 Steakhouse, Inc.*, 2023 WL 2919766, at *6 (S.D.N.Y. Apr. 12, 2023), *report and recommendation adopted*, 2023 WL 3160118 (S.D.N.Y. Apr. 27, 2023). The proposed class therefore also satisfies Rule 23(a)(2).

The typicality requirement of Rule 23(a)(3) is likewise satisfied. Mangahas and Wohlfahrt were both employees of the restaurants and subject to the same employment and wage practices to which members of the class were subject. *See Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 71 (S.D.N.Y. 2018) ("Because all employees . . . were subject to the same policies at their respective locations, [plaintiff], as an employee of both restaurants, raises claims based on the same allegedly unlawful conduct which are thus typical of the class.").

Furthermore, the class representatives have fairly and adequately protected the interests of the Settlement Class as required by Rule 23(a)(4). The Named Plaintiffs' interests are aligned with those of the class. And Class Counsel, F&S, are qualified and have vigorously prosecuted this case. The adequacy requirement of Rule 23(a)(4) is thus satisfied.

Finally, the requirements of Rule 23(b)(3) are also met, as common questions regarding Defendants' wage practices predominate over any individualized questions with respect to particular class members, and the class action vehicle is the best method for resolving this case.

*See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 297 (E.D.N.Y. 2015) ("Common questions predominate because class members' legal theories under the FLSA and NYLL are the same in this case and arise from defendants' common and uniform policies, practices and procedures of failing to pay class members proper wages for all hours worked.").

The Court therefore certifies the Settlement Class under Rules 23(a) and (b)(3).

## II.    Approval of the Settlement

### A.    Fairness, Reasonableness, and Adequacy of the Settlement

Rule 23(e) provides that "[t]he claims . . . of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  At bottom, the settlement must be "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Whether a settlement so qualifies requires considering whether:

 (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.*  The Advisory Committee's notes to Rule 23(e)(2) state that these considerations are "not to displace any factor" previously adopted by any United States Court of Appeals, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2) advisory

committee's note to 2018 amendment.  The Advisory Committee explained that in certain jurisdictions, lengthy, multifactor tests risked distracting courts and parties from focusing on the key issues in a settlement review.  *Id.*

Most of the requirements set forth in the amendments to Rule 23(e)(2) have long been incorporated in the nine-factor test adopted by the Second Circuit in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  To evaluate the substantive fairness of a proposed settlement, *Grinnell* instructs a district court to consider "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).  In conducting the review required by Rule 23(e), the Court has a duty "to make a considered and detailed assessment of the reasonableness of proposed settlements."  *Weinberger v. Kendrick*, 698 F.2d 61, 82 (2d Cir. 1982) (Friendly, J.).

The Court will first review the factors set forth in Rule 23(e)(2) before addressing the *Grinnell* factors.

### 1.    Rule 23(e)(2)(A): Whether the Class Representatives and Class Counsel Have Adequately Represented the Class

As indicated above, the Court concludes that the Named Plaintiffs and Class Counsel have adequately represented the class.  Class Counsel have litigated this case for over two years. In that time, they have filed three complaints, successfully defended against a motion to dismiss, successfully obtained conditional certification and class certification, obtained partial summary

judgment as to many of the claims, reviewed thousands of pages of documents in discovery, defended a total of fourteen depositions, conducted two depositions of Defendants, prepared for trial, and negotiated this settlement.  Dkt. No. 206 ¶¶ 22–27.

The adequacy of class representation on the part of Class Counsel and Named Plaintiffs weighs in favor of the Settlement Agreement.

### 2. Rule 23(e)(2)(B): Whether the Proposed Settlement Was Negotiated at Arm's Length

As the Second Circuit has held, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Here, the settlement was negotiated by experienced counsel on both sides after the close of discovery and two years of litigation with the assistance of Magistrate Judge Tarnofsky.  In particular, the parties reached this settlement after two conferences before Judge Tarnofsky during which documents were exchanged including financial documents regarding Defendants' ability to pay.  Dkt. No. 206 ¶¶ 29–33.   Even then, the parties were not able to reach an agreement.  *Id.* ¶¶ 30, 32.  Rather, the Settlement Agreement was reached only after the final pretrial conference and on the eve of trial.  *Id.* ¶¶ 39–40.  There is every indication that the settlement was reached after hard-fought negotiations.

The Court concludes that the settlement was negotiated at arm's length, and that this factor weighs in favor of its approval.

### 3. Rule 23(e)(2)(C): Whether the Relief Provided to the Class Is Adequate

Class Counsel calculates the Settlement Class's maximum damages as $3,389,253.31 before doubling for NYLL liquidated damages.  Dkt. No. 206 ¶ 51.  The base owed wages are $1,585,803.51.  *Id.* ¶ 50(a).  This is consistent with the amount sought on summary judgment but

does not include $361,816 in prejudgment interest. Dkt. No. 184 at 2. The remainder of $1,803,450 is from the WTPA notice and wage statement claims, Dkt. No. 206 ¶ 50—claims as to which the Court denied summary judgment because of Plaintiffs' failure to identify a concrete injury, *see* Dkt. No. 160 at 49.[3] The gross settlement amount of $1,750,000 (without accounting for attorneys' fees and costs, administrative expenses, and service awards) is 110% of class members' base owed wages and approximately 52% of the base owed wages plus WTPA penalties. Dkt. No. 206 ¶ 51. After accounting for service awards for fourteen class members, the settlement is $1,650,000, which is still greater than the base owed wages. *See id.* ¶ 50. The settlement after accounting for attorneys' fees and costs, administrative expenses, and service awards is $1,031,666.67, which represents approximately 65% of class members' base owed wages and approximately 30% of based owed wages inclusive of WTPA penalties. The settlement will provide fair compensation to class members for the injuries they suffered.

Class Counsel affirm that after examining Defendants' financial records, they are confident that the settlement represents the maximum amount Defendants could pay without risking bankruptcy or closure of the businesses. Dkt. No. 206 ¶ 46.

### a.    Rule 23(e)(2)(C)(i): Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider the fairness of the settlement in light of the costs, risks, and delay of trial and appeal, among other factors.

---

[3] Not only did the Court decline to grant Plaintiffs' motion for summary judgment under the WTPA, but there is significant reason to doubt that Plaintiffs would have been able to carry their burden at trial with respect to these claims. Class Counsel acknowledged at the settlement approval hearing that this issue "wasn't something that was substantively dug into on either side" during discovery, Oral Argument Tr. at 6:4–6, and no evidence has been offered to establish Plaintiffs' standing to assert the WTPA claims.

The Court granted summary judgment to Plaintiffs on several questions including: whether employees of the two restaurants were covered by FLSA and the NYLL, Dkt. No. 160 at 12–13; whether the two restaurants operated as a single integrated enterprise, *id.* at 22–24; whether Lam was an employer, *id.* at 24; whether Defendants unlawfully retained tips and claimed tip credits in violation of the NYLL, *id.* at 32–38, 40–46; and whether Defendants violated NYLL's uniform-reimbursement requirements, *id.* at 46–47. The Court also granted summary judgment to Plaintiffs on Defendants' "good faith" affirmative defense. *Id.* at 50–53. There was thus no risk at trial as to those issues, and the Court assesses there to be minimal risk on appeal. The Court denied summary judgment regarding damages amounts, *id.* at 39, 46, the claims against Hong Bao, *id.* at 24–28, and the WTPA claims for wage statement and notice violations, *id.* at 47–49. As explained above, there was significant risk as to the wage statement and notice violations if Plaintiffs proceeded to trial (and on appeal).

The settlement avoids the costs of delay and the risk of nonpayment. Even if after trial the Court entered a judgment, Defendants might be able to avoid execution on that judgment for a lengthy period of time by filing a bond and an appeal. Furthermore, although the risk on appeal would be low, few appeals are entirely risk free. And, even then, judgments in wage-and-hour cases are not always easy to recover. *See, e.g.*, *Keawsri v. Ramen-Ya Inc.,* 2023 WL 5950685, at *3–4 (S.D.N.Y. Sept. 13, 2023) (recounting effort to recover on a judgment in a FLSA wage-and-hour case). There is real value in quickly and efficiently providing the class members with hard cash in their bank accounts—value that not easily compared to a mere paper judgment in the hands of a lawyer.

b.    **Rule 23(e)(2)(C)(ii): The Effectiveness of the Proposed Method of Distributing Relief to the Class**

Under the proposed plan of allocation, the net settlement amount is distributed based on the number of hours worked at the tip credit rate between October 15, 2015 and October 1, 2023, with class members receiving one point for every such hour and named and opt-in plaintiffs as of November 26, 2024 receiving one and a quarter points.  Dkt. No. 206 ¶ 61.

It is "commonly accepted" in the settlement of wage and hour cases that persons who opt into a FLSA collective will be compensated at a somewhat higher rate than those persons who benefit from the class action as absent class members.  *See Morris v. Affinity Health Plan, Inc.*, 2011 WL 6288035, at *2 (S.D.N.Y. Dec. 15, 2011) (citing *Sand v. Greenberg,* 2011 WL 1338196, at *15–16 (S.D.N.Y. Mar. 22, 2011)).  There are several reasons for such a distinction.  First, FLSA opt-in members take on greater burdens and, at least in theory, assume greater risks than ordinary absent class members.  Individuals were informed that, if they chose to file an opt-in consent form, they would be joining the lawsuit and be bound by any resolution of it, would designate Mangahas as their representative, had to preserve all relevant documents, and might be required to provide those documents and to sit for a deposition.  Dkt. No. 45; Oral Argument Tr. at 14:17–16:14.  Consent forms reflected opt-in plaintiffs' agreement to be bound by any resolution of the FLSA claims regardless of the outcome (and with no right to opt out).  *See, e.g.*, Dkt. No. 49-1.  As a matter of law, FLSA opt-in plaintiffs are subject to greater discovery burdens including potential depositions so long as they have relevant, non-duplicative information and the discovery is sought for a proper purpose.  *See Mikityuk v. Cision US Inc.*, 2021 WL 5449606, at *2–3 (S.D.N.Y. Nov. 22, 2021).  Discovery of absent class members is, by contrast, far more constrained.  *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 344715, at *2 (S.D.N.Y. Feb. 4, 2008); *see also Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 71–72

(S.D.N.Y. 2020) (discussing discovery of absent class members).  Furthermore, without expressing a view as to whether Defendants' lawsuit in state court resulted from Plaintiffs' participation in this case, the Court notes that opt-in plaintiffs often subject themselves to potential litigation risks and other forms of retaliation.

In addition to subjecting themselves to additional burdens and risks, the opt-in plaintiffs here also conferred benefits upon the class by agreeing to join the lawsuit.  The "stringent" requirements for certifying and maintaining a class under Federal Rule of Civil Procedure Rule 23 do not apply to FLSA collective actions under 29 U.S.C. § 216(b).  *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020).  It is fair to assume, then, that the added pressure imposed on defendants in FLSA cases due to a large number of opt-ins accrues a benefit on all absent class members by exposing defendants to greater risk and thereby giving them a greater incentive to resolve the case.  *See* Oral Argument Tr. at 15:16–19 ("In my experience, a case with only three opt-ins likely is going to get different treatment from the defendant for both litigation and settlement purposes than a case that has 15 opt-ins, 20 . . . .").

### c.    Rule 23(e)(2)(C)(iii): The Terms of the Proposed Attorneys' Fees, Including the Timing of Payment

Class Counsel seek attorneys' fees and costs of 33.3% of the settlement fund.  Dkt. No. 206 ¶ 99.  They calculate that they spent 1,036.4 hours litigating this case, which yields a lodestar amount of $396,657 (and a corresponding lodestar "multiplier"—a figure that accounts for the difference between the lodestar amount and the requested fee—of 1.47).

The Court will describe in greater detail below attorneys' fees, the performance of counsel, and the appropriateness of the request.  It suffices for purposes of Rule 23(e) to say that the proposed attorneys' fees award is not an obstacle to approving the settlement as fair, reasonable, and adequate.

> **d.     Rule 23(e)(2)(C)(iv): Any Agreement Required to Be Identified Under Rule 23(e)(3)**

Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  The parties have represented that there are no other agreements applicable to this litigation other than the Settlement Agreement.  *See* Dkt. No. 206 ¶ 59.

On the whole, then, the factors under Rule 23(e)(2)(C) regarding the adequacy of the proposed relief also counsel in favor of approving the Settlement Agreement.

> **4.     Rule 23(e)(2)(D): Whether the Proposal Treats Class Members Equitably Relative to Each Other**

Turning to the last enumerated consideration under Rule 23(e)(2), whether the proposal treats class members equitably to one another, the Court finds that it does.  As explained above, distributing the settlement fund based on the number of hours each individual has worked at the tip-credit rate—with a slight quarter-point increase for opt-in plaintiffs in acknowledgment of the burdens and risks they shouldered and the benefits they conferred upon the collective—strikes a sensible balance.  *See Marin v. 310 Bowery Grp. LLC*, 2025 WL 893731, at *8 (S.D.N.Y. Mar. 24, 2025) ("Other than the service award to Marin, the proposed method of distribution of the Net Settlement Fund treats all Class Members uniformly by awarding each Authorized Claimant a proportionate amount based on their hours worked.").  The quarter-point multiplier accounts for only about 4.5% of the net settlement fund, *see* Oral Argument Tr. at 16:23–17:5, or a difference of $45,631.83, *see* Dkt. No. 209-1.  No member of the class objected to these increased payments.  Dkt. No. 206 ¶¶ 75, 84.

The plan of allocation therefore treats the class members equitably.

5.    **The Second Circuit's *Grinnell* Factors.**

The Advisory Committee's notes to Rule 23(e)(2) state that the 2018 amendments were not intended to displace any factor adopted by any court of appeals, and the Second Circuit has long used the nine-factor *Grinnell* test to evaluate the substantive fairness of a proposed class action settlement.  The Court has previously touched on many of the *Grinnell* factors.  The remaining factors also are satisfied.

a.    **The Stage of the Proceedings and Amount of Discovery**

The Court must consider whether "counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020).  This case readily satisfies that standard.  Class Counsel interviewed over a dozen plaintiffs, reviewed thousands of pages of documents, participated in multiple depositions, and engaged in extensive motion practice.  This case was on the eve of trial when the parties agreed to a settlement in principle.  Class Counsel accordingly had ample time to evaluate the strength of the case.

b.    **The Reaction of the Class to the Settlement**

No objections have been received by the Court and only two class members have opted out.  "The lack of class member objections may itself be taken as evidencing the fairness of a settlement."  *Hernandez v. Between the Bread 55th Inc.*, 2021 WL 12279220, at *2 (S.D.N.Y. Aug. 16, 2021); *see also Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021) (Nathan, J.) ("[A] lack of objection is often seen as strong evidence of the settlement's fairness."); *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *5 (S.D.N.Y. June 7, 2011) (noting that a lack of objections "weighs heavily in favor of approving the proposed settlement").

c.      **The Size of the Settlement in the Range of Possible Recovery**

The net settlement fund (without accounting for attorneys' fees, expenses of the Claims Administrator, and service awards) is 110% of class members' base owed wages and approximately 52% of the base owed wages plus WTPA penalties.  The settlement after accounting for services awards for fourteen class members is $1,650,000, which still is greater than the base owed wages.  The settlement after accounting for attorneys' fees and costs, administrative expenses, and service awards is $1,031,666.67, which amounts to approximately 65% of class members' base owed wages and approximately 30% of based owed wages inclusive of WTPA penalties.  "Precedent confirms that securing one-third of a maximum recovery and two-thirds of lost wages is generally deemed fair, reasonable, and adequate."  *See Bondi v. DeFalco*, 2020 WL 2476006, at *4 (S.D.N.Y. May 13, 2020).  That is especially true here given that there was a substantial question as to whether any WTPA penalties could be recovered.

d.      **The Risks of Maintaining the Class Action Through Trial**

This factor is neutral as to approval of the settlement.

e.      **The Ability of Defendants to Withstand a Greater Judgment**

It is well-established that a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *4 (S.D.N.Y. Feb. 4, 2020).  Regardless, Class Counsel represent that based on financial disclosures shared in litigation, they are confident that the proposed settlement represents the maximum amount Defendants could pay without giving rise to the real prospect of bankruptcy or closure of the businesses.  Dkt. No. 206 ¶ 46.  Class Counsel add that although The Bao and Uluh are relatively successful, they are still subject to the difficulties broadly applicable to individually owned "mom-and-pop" restaurants, including narrow profit margins and price fluctuations in the costs of goods and supplies.  *Id.* ¶ 47.  Class Counsel do not believe

that Defendants could come close to satisfying a potential judgment for the maximum possible damages.  Oral Argument Tr. At 8:12–9:13.  This factor therefore strongly supports the fairness of the settlement.

In sum, considering Rule 23 and the *Grinnell* factors, the Court approves the Settlement Agreement as fair, reasonable, and adequate with the exception, discussed below, that the Court does not approve the provision providing for a reversion to Defendants of any unclaimed funds.

### B.    Notice to the Class

Rule 23(c)(2)(B) requires potential class members to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  As the Court has previously held, the notice provided in this case—which included mailings, emails, text messages and digital and newspaper advertisements—provided the best notice practicable under the circumstances.  Dkt. No. 199; Dkt. No. 206-3 ¶ 5.  Out of 187 notices mailed in English and Mandarin, only six were ultimately considered undeliverable.  Dkt. No. 206-3 ¶ 17.  While Defendants could not provide mailing addresses for 42 class members, alternative notice was provided through publication in a Chinese-language newspaper.  Dkt. No. 207 at 10–11; Dkt. No. 206 ¶¶ 72–78.  Class Counsel also posted notice on their website, and Defendants posted notice at both restaurants in conspicuous places.  Dkt. No. 206 ¶ 73.

### C.    FLSA Settlement

"Because the Settlement Agreement resolves Plaintiffs' non-FLSA and FLSA claims in one settlement, the Court must [also] assess it against the standard for approving . . . a FLSA settlement."  *LoCurto v. AT&T Mobility Servs. LLC*, 2020 WL 13859604, at *5 (S.D.N.Y. June 22, 2020).  That said, the "standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due

process concerns as a Rule 23 settlement." *Tiro v. Pub. House Invs., LLC*, 2013 WL 4830949, at *10 (S.D.N.Y. Sept. 10, 2013). Due process concerns are lessened in the FLSA context because a party who has not opted in to a FLSA collective action can bring suit at a later date. "The ultimate question [in approving a FLSA collective action settlement] is whether the proposed settlement reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Mosquera v. Masada Auto Sales, Ltd.*, 2011 WL 282327, at *1 (E.D.N.Y. Jan. 25, 2011)).

The Settlement Agreement satisfies this standard for much the same reasons it satisfies Rule 23. The Court finds that the proposed settlement reasonably resolves this dispute and has not resulted from any improper or inadequate representation on the part of Named Plaintiffs or Class Counsel. The proposed recovery is adequate and will be equitably distributed.

## III. Approval of the Fees Applications

Class Counsel separately moves for an order approving attorneys' fees and costs accounting for one-third of the settlement fund, fees for the Claims Administrator not to exceed $35,000, and service awards for plaintiffs totaling $100,000. The Court addresses each in turn.

### A. Attorneys' Fees

In reviewing an attorneys' fee application in the class action context, the "court is 'to act as a fiduciary who must serve as a guardian of the rights of absent class members.'" *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (quoting *Grinnell*, 560 F.2d at 1099). Among other things, the award "must reflect 'the actual effort made by the attorney to benefit the class.'" *Id.* (quoting *Grinnell*, 560 F.2d at 1099).

The Second Circuit provided substantial guidance to district courts regarding common-fund fee applications in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). *Goldberger* makes plain that district courts have discretion to use either the lodestar or percentage method in setting fee awards. *Id.* at 49–50. *Goldberger* lists certain factors that courts should weigh when reviewing attorneys' fees applications: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50.

*Goldberger* notes that "the lodestar remains useful as a baseline even if the percentage method is eventually chosen" by serving as a "'cross-check' on the reasonableness of the requested percentage." *Id.* "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. . . . Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Id.* The Second Circuit's 2007 opinion in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2007), moved analysis of attorneys' fees awards away from the concept of a strict "lodestar" in favor of a "presumptively reasonable fee," which accounts for case-specific variables and asks "what a reasonable, paying client would be willing to pay."

### 1.    The Time and Labor Expended by Counsel

The first factor in determining the reasonableness of a fee request is the time and labor expended by counsel. *Goldberger*, 209 F.3d at 50. Over the course of three years, Class Counsel expended roughly 1,000 hours litigating this case (excluding the time preparing for the fairness hearing and administering the settlement, which is also compensable). Dkt. No. 206 ¶ 114. Among other things, Class Counsel filed several complaints, successfully defended

against a motion to dismiss, prevailed on a motion for conditional certification, produced

discovery for thirteen plaintiffs, reviewed thousands of pages of relevant documents produced by

Defendants, took the 30(b)(6) depositions of two corporate representatives, prevailed on a

motion for class certification, attended settlement conferences, prevailed in substantial part on a

motion for summary judgment, filed a second motion for summary judgment, and prepared for

trial.

The considerable time and effort Class Counsel put into this matter was appropriate for a

case of this duration and complexity.

### 2.    The Magnitude, Complexities, and Risks of the Litigation

*Goldberger* instructs that courts must consider "contingency risk" in setting a reasonable

fee.  209 F.3d at 53.  Class Counsel took this case on a pure contingency basis.  Dkt. No. 206

¶ 117.  That contingency included paying for all costs and expenses out of pocket.  *Id.*

Moreover, the case involved complicated and mixed questions of law and fact under both federal

and state laws and involving well over one hundred employees.  *Hernandez*, 2021 WL

12279220, at *4(holding that the *Goldberger* factors were met where class counsel brought

FLSA and NYLL claims on behalf of several hundred employees).

Even more importantly, there was a risk of possible bankruptcy and a corresponding

potential inability to recover.  *See In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 498

(S.D.N.Y. 2017) (Nathan, J.), *aff'd sub nom. Fresno Cnty. Emps. Ret. Ass'n v. Isaacson/Weaver*

*Fam. Tr.*, 925 F.3d 63 (2d Cir. 2019) (noting that in assessing the risks involved in litigation,

courts consistently ask whether there was a possibility that the defendant would be unable to pay

an ultimate award and whether class counsel's work would therefore go uncompensated).

Indeed, Class Counsel represent that they have secured judgments in other cases after trial,

including judgments in excess of $5,000,000, that they have entirely been unable to recover on due to defendants filing for bankruptcy.  Dkt. No. 206 ¶ 122–24.

These factors weigh strongly in favor of the award.

### 3.    The Quality of Representation

As reflected by the numerous successes Class Counsel secured on behalf of the class, the quality of representation in this case was consistently excellent.  Class Counsel have significant experience prosecuting wage and hour cases and have been appointed as class and collective counsel in numerous cases.  Dkt. No. 206 ¶ 103.  That experience was on display in this case. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7481292, at *3 (S.D.N.Y. Dec. 18, 2020) (noting that class counsel had "extensive experience and expertise in class action litigation" and that "the experience, reputation, and abilities of Class Counsel support the requested fee award").

The Court accordingly concludes that the quality of representation in this case was high, and that this fact weighs in favor of the fee application.

### 4.    The Requested Fee in Relation to the Settlement

Class Counsel's proposed fee award represents 33.3% of the net settlement fund.  "Courts in this Circuit have repeatedly granted requests for one-third of the fund in cases with settlement funds similar to this one." *Tiro*, 2013 WL 4830949, at *14 (approving fee award of one-third of net settlement fund of $1,300,000 in wage and hour class action and collecting analogous cases); *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) (noting that one-third of the fund is "consistent with the norms of class litigation in this circuit" in wage and hour cases (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008))); *Mikityuk*, 2022 WL 3013107, at *7 ("District courts in this Circuit typically approve fee requests between 30% and 33% of the settlement.").  Courts have

23

done the same even in cases involving substantially larger settlement funds. *Tiro*, 2013 WL 4830949, at *14 (collecting cases).

Importantly, basing the award on a percentage of the entire net settlement fund does not create a "windfall" for Class Counsel if settlement checks go uncashed. As the Second Circuit has explained, "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436–37 (2d Cir. 2007). Awarding fees based on the net settlement fund still allows the Court to "adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors." *Id.* at 437.

Equally important is the fact that there is little reason to doubt that the bulk of the settlement fund will benefit the class here. The number of qualified class members whose addresses the Claims Administrator was unable to locate is small, both in absolute numbers and in terms of those members' likely shares of the total recovery. There is, of course, some risk that the distributions intended for such persons may never be received or cashed. But, at the Court's urging, the parties have agreed to certain additional notice provisions designed to maximize check cashing. The Claims Administrator has agreed to perform another manual trace for the individuals without mailing addresses prior to check distribution to try to find them. Dkt. No. 210 at 1. To ensure that the Class Members who are sent checks cash them, they will be mailed their settlement checks and sent a reminder to cash the checks forty-five days later. *Id.* The initial mailer accompanying the settlement checks will include "call to action" language encouraging recipients to reach out to their contacts to ensure that everyone has notice of the settlement, including those for whom the Claims Administrator does not have addresses. *Id.*

The Claims Administrator will also send a second reminder postcard to individuals who have not cashed their checks halfway through the check-cashing period. *Id.* at 2. For their parts, Defendants will post a short reminder notice translated into Mandarin in a conspicuous location in both restaurants during the check-cashing period, and Class Counsel will update their website with information regarding check cashing. *Id.* at 1–2. The Court approves of and adopts these notice procedures, including all those specified in the parties' joint letter dated October 24, 2025. *See id.*

To the extent that any funds remain unclaimed, they will not revert to Defendants. The Settlement Agreement currently provides (as a non-material term requiring Court approval) that unclaimed amounts will revert to Defendants. Dkt. No. 206-1 ¶ 3.5(G). The Court declines to approve that provision.[4] The FLSA settlement is intended, in part, to send a message of deterrence both to Defendants and to others who would violate the labor laws. Permitting reversion would undermine that message. By directing that any remaining funds go to a labor-law related charity of the parties' choosing (with the Court's approval), the Court can further ensure that the settlement benefits class members at least indirectly by benefitting those who are similarly situated. Eliminating the reversion provision will also prevent any possible appearance of a conflict of interest that might otherwise arise from the fact that Defendants were the ones

---

[4] The Court recognizes that other judges in this Circuit have approved FLSA and NYLL settlements with reversion provisions, but they have often done so without extended discussion or by relying on the "unique circumstances" of the cases. *See Flores v. CGI Inc.*, 2022 WL 13804077, at *8 (S.D.N.Y. Oct. 21, 2022); *see also Lizondro-Garcia v. Kefi LLC*, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014); *Bodon v. Domino's Pizza, LLC*, 2015 WL 3889577, at *6 (E.D.N.Y. June 4, 2015), *report and recommendation adopted*, 2015 WL 3902405 (E.D.N.Y. June 24, 2015); *cf. Ying v. All-Ways Forwarding of N.Y. Inc.*, 2025 WL 968586, at *11 (E.D.N.Y. Mar. 31, 2025) (noting that where there was "little concern of a low claims rate by Class members," a "reversion clause [did] not preclude a finding of a fair and reasonable settlement").

who provided the contact information for class members to Class Counsel in the first instance.

Defendants will no longer have any possible interest in increasing the amount of checks that go

uncashed; their only interest should be in helping to ensure that the employees who devoted

service to them enjoy the benefit of the settlement payments Defendants are now directed to

make.[5]

### 5.    Public Policy Considerations

"[I]n wage and hour class action lawsuits, public policy favors a common fund attorneys'

fee award." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012).

These awards serve to "encourage members of the bar to provide legal services to those whose

wage claims might otherwise be too small to justify the retention of able, legal counsel."

*deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010) (quoting

*Sand*, 2010 WL 69359, at *3).  "Where relatively small claims can only be prosecuted through

aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys

who fill the private attorney general role must be adequately compensated for their efforts."

*Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *16 (S.D.N.Y. Nov. 18, 2013)

(quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338–39 (1980)).  Courts have noted

that FLSA and NYLL in particular are "remedial statutes, the purposes of which are served by

adequately compensating attorneys who protect wage and hour rights."  *deMunecas*, 2010 WL

3322580, at *8 (collecting cases).

---

[5] The Court makes only one qualification to its holding that there shall be no reversion.  Counsel
represents that Defendants have voluntarily agreed to pay more than they otherwise would have
under the Settlement Agreement in order for a second reminder postcard to be sent to class
members to ensure that checks do not go uncashed.  Dkt. No. 210 at 2.  If such expenses are
reasonable, Defendants should not be out of pocket for them.  After the period for check cashing
has elapsed and in connection with any request for a *cy pres* award, Defendants may move for
reimbursements of any such reasonable costs subject to Court approval.

Public policy supports the attorneys' fees award in this case.

### 6.    Reaction of the Class

As noted, there have been no objections submitted by class members to the terms of the settlement.  This includes no objections regarding the proposed attorneys' fee award, of which class members were notified.  The absence of objections weighs in favor of the fee application.

### 7.    Lodestar Cross-Check

*Goldberger* explains that the lodestar can be a useful cross-check on the reasonableness of a requested fee award.  As previously indicated, the lodestar multiplier in this case is 1.47 based on a lodestar amount of $396,657.50 and a requested award of $583,333.33.

The lodestar amount in this case is based on the following hourly rates: $675 for partner Brian Schaffer, who was admitted to the bar in 2004, has at least seventeen years litigating employment cases, and was a contributing editor to the ABA's 2015 and 2018 FLSA treatises, Dkt. No. 206 ¶ 105; $500 for partner Armando Ortiz, who was admitted to the bar in 2012 and has at least ten years of litigation experience, *id.* ¶ 104; $350 for associate Katherine Bonilla, who has been practicing as an employment attorney for at least five years, *id.*  106; $350 for associate David Sack, who likewise has been practicing as an employment attorney for approximately five years; and between $125 and $150 for paralegals and administrative assistants, *id.* ¶ 118.  In total, Class Counsel expended 1,036.4 hours in connection with this case. *Id.* ¶ 114.[6]

---

[6] At oral argument, Class Counsel clarified that this hour amount includes work done on behalf of Plaintiffs Mangahas, Wohlfahrt, Yuan, and Situ in connection with their individual claims against Defendants.  *See* Oral Argument Tr. at 18:18–23.  The Court questioned Class Counsel why it was appropriate to consider those hours, and Class Counsel responded that their aggressiveness in defending the individual plaintiffs benefitted the class as a whole.  *Id.* at 34:15–24.  Most notably, it sent the message to Defendants that any attempts to retaliate against class members would be vigorously opposed.  *Id.*  Class Counsel also observed that Defendants'

Although these rates may be on the high end, the low lodestar multiplier confirms the appropriateness of the fee award. *See Ying v. All-Ways Forwarding of N.Y. Inc.*, 2025 WL 968586, at *17 (E.D.N.Y. Mar. 31, 2025) (holding that notwithstanding a lawyer's "substantial experience . . . litigating wage-and-hour actions," an hourly rate of $650 was high for partners in the Eastern District of New York, but finding that even with a reduction in hourly rates, an adjusted lodestar multiplier of 3.02 was "well within the acceptable range"); *see also Clem v. Keybank, N.A.*, 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) (holding in a wage and hours case that a "lodestar multiplier of approximately 3.5 . . . [was] well within the range of multipliers that have been granted by courts in this Circuit and elsewhere").

Additionally, it is worth noting that this case was efficiently settled by the parties and that had it gone to trial, Class Counsel's fees would have increased substantially.

The fee application is accordingly approved.

### B.    Attorney and Administrative Expenses

Class Counsel seeks reimbursement of $39,455.13 in out-of-pocket litigating costs and expenses as part of its request for one-third of the settlement fund. Dkt. No. 206 ¶¶ 75, 130; Dkt. No. 207 at 24. The Court concludes that these expenses were reasonable and necessary to prosecute the case. In any event, the Court has already held that Class Counsel is entitled to one-

---

state defamation case listed John Does as defendants, and Defendants could have used that as a pressure point to intimidate and discourage potential class members. *Id.* at 35:10–17. Class Counsel's decision to defend the individual plaintiffs in the state case free of charge diminished the strength of any such leverage. The Court credits these responses and agrees that the work done on behalf of the individual plaintiffs benefitted the class as a whole. *See Dubin v. E.F. Hutton Grp., Inc.*, 845 F. Supp. 1004, 1015 (S.D.N.Y. 1994) ("It is undisputed that an attorney may recover fees for work performed on a plaintiffs' individual claims, including work performed prior to class certification, if that work benefitted the class."); *cf. In re Worldcom, Inc. Sec. Litig.*, 2006 WL 832459, at *2 (S.D.N.Y. Mar. 29, 2006) (recognizing that an attorney for an individual class member may be entitled to fees where the work "conferred a benefit on the class").

third of the net settlement fund, and the request for reimbursement of expenses falls within that award (as opposed to in addition to it).  *See* Dkt. No. 207 at 24.

The Claims Administrator's fees, estimated not to exceed $35,000, are also reasonable. *See Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014) (noting that administrator fees of $25,000 and $40,000 are "within the range of other amounts that have been awarded to the Settlement Administrator in this District" in wage and hour cases).

The application for reimbursement of expenses is therefore approved.

### C.    Service Awards

Finally, Class Counsel move for service fees totaling $100,000 to the Named Plaintiffs and certain opt-in plaintiffs for their assistance in prosecuting the case.  Specifically, Class Counsel seek an award of $25,000 for Named Plaintiff Mangahas; $15,000 for Named Plaintiff Wohlfahrt; $8,250 each for Plaintiffs Yuan and Situ; $7,500 for Plaintiff Upendra Shahi; and $4,000 each for Plaintiffs Jason Cedeno, Keno Dacusin, Thinley Kalsang, Vorrawala Aphiromden, Wen Bin Zhu, Wochao Chen, Yi Zhang, Jose Rodriguez, and Prathana Phiphatchotika. Dkt. No. 206 ¶¶ 90, 97–98.  These service awards are in addition to the extra quarter point allocated to all opt-in plaintiffs as detailed above.  As previously indicated, class members were notified of the awards, and none objected.

"[S]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Reyes v. Altamera Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011); *Hernandez*, 2021 WL 12279220, at *5.  In examining the reasonableness of a requested service award, courts consider:

> the existence of special circumstances including the personal risk (if any) incurred by the plaintiff applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the protection of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (quoting *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y.1997)).

Here, the proposed service awards recognize the Named Plaintiffs' and certain opt-in plaintiffs' contributions to the class and provide them fair compensation for the claims they are agreeing to forego to reach a settlement on behalf of all class members. Named Plaintiff Mangahas played the most integral role in initiating and prosecuting the action. *Id.* ¶¶ 91–93. Among other things, she encouraged others to participate in the action, informed Class Counsel of relevant facts throughout the case, assisted Class Counsel in reviewing document productions, provided written discovery responses, appeared for a deposition, and reviewed the proposed settlement. *Id.* ¶ 92. She was also sued by Defendants in state court, and in exchange for this service award, she has agreed to release her anti-SLAPP and FLSA and NYLL counterclaims against Defendants. *Id.* ¶ 93. Mangahas was claiming approximately $27,000 in backpay for her individual retaliation claims. *See* Oral Argument Tr. at 21:25–22:5; Dkt. No. 169 at 32. She alleges that after filing the complaint in this case, she was largely removed from the restaurants' schedules and worked only one day per week (when she had previously been working six days per week). Dkt. No. 84 ¶ 41. Class Counsel valued the release of those claims at $10,000 given the litigation risks. Oral Argument Tr. at 21:25–22:14. The service award for Mangahas as Named Plaintiff without accounting for the released claims is therefore $15,000.

Wohlfahrt joined the case later than Mangahas and played a less substantial role but still agreed to represent the class, took risks in doing so, and assisted Class Counsel throughout the

course of litigation by providing documents, reviewing productions, providing written discovery, appearing for a deposition, and reviewing and approving the settlement. Dkt. No. 206 ¶ 94. Wohlfahrt also suffered alleged recriminations for her work on behalf of the class. She alleges that as a direct result of joining the lawsuit, Defendants abruptly decreased her pay from $15 an hour to $10 an hour and decreased her tip credit amount. Dkt. No. 84 ¶ 47. She was also ultimately fired for what she believes were retaliatory reasons. *Id.* ¶ 49. Because she was out of work for a shorter period than Mangahas, she sought only approximately $6,000 in back pay. *See* Dkt. No. 169 at 33. In proposing the service awards, counsel valued the release of Wohlfahrt's individual claim at $5,000, Oral Argument Tr. at 22:16–25, leaving the remainder of $10,000 purely for her service as Named Plaintiff.

As with Mangahas, Situ and Young were sued in state court by Defendants for defamation related to the publishing of an article regarding Uluh. Dkt. No. 73 at 1. They counterclaimed for retaliation under FLSA, NYLL, and New York's anti-SLAPP law. *See* Oral Argument Tr. at 20:3–9. As part of the settlement, Situ and Young agree to release those claims, releases that counsel values at $4,250 each. *See id.* at 20:14–21:17. Discounting for those releases, Situ and Young are receiving $4,000 for their work on behalf of the class.

The remainder of the opt-in plaintiffs are similarly set to receive $4,000 service awards. Those plaintiffs rendered services to the class and took risks on behalf of it, including providing interrogatory responses to sixty-eight written questions, sitting for depositions, producing documents in their possession, and meeting with Class Counsel to prepare for trial. Dkt. No. 206 ¶ 98; Oral Argument Tr. at 20:21–25. Class Counsel's billing records confirm the participation of the class members receiving services awards throughout the course of this case. *See* Dkt. No. 206-9.

Class Counsel, moreover, has sufficiently justified the extra $3,500 that opt-in plaintiff Shahi is proposed to receive (on top of the $4,000 to any opt-in plaintiff who answered interrogatories, produced documents, and sat for a deposition): Shahi provided crucial insight into Defendants' policies and procedures given his prior managerial roles at the restaurants, was expected to be a key witness at trial, and sat through a longer interview with Class Counsel and endured a lengthier deposition than other plaintiffs.  Dkt. No. 206 ¶ 97; Oral Argument Tr. at 23:9–19.  What is more, Shahi contributed in these ways even though portions of his employment in managerial roles were not eligible for recovery.  Oral Argument Tr. at 23:1–19. He therefore put the class before his own interests in significant and material ways.

"Courts in this District have awarded similar sums for plaintiffs that have contributed meaningfully to the action."  *Mikityuk*, 2022 WL 3013107, at *6 (approving award of $10,000 in FLSA collective action and collecting cases approving awards up to $15,000).  The individual awards fall well within the range that courts in this District have deemed appropriate for named plaintiffs and opt-in plaintiffs who participate in discovery in FLSA cases.  *See Thomas v. Mekruth Inc.*, 2021 WL 3855861, at *1 (S.D.N.Y. Aug. 26, 2021) (Nathan, J.) (awarding $20,000 for a named plaintiff and $10,000 for opt-in plaintiffs in a wage and hours case under FLSA and NYLL); *Matheson v. T-Bone Rest., LLC*, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving service award of $45,000 in wage and hours case under FLSA and NYLL and collecting cases approving awards of up to $40,000).  Courts have also awarded service awards accounting for larger proportions of the net settlement fund.  In *Mikityuk*, for example, the Court ordered awards for plaintiffs of up to $10,000 each, which accounted for roughly 10% of the entire settlement fund.  *See* 2022 WL 3013107, at *4 & n.3.  Here, by contrast, the requested awards amount to only 5.7% of the net settlement fund.  Oral Argument Tr. at 18:4–9.

The Court finds the proposed service awards reasonable.  The application for service awards is therefore approved.

## CONCLUSION

Plaintiffs' motion for certification of the Settlement Class and for final approval of the Settlement Agreement under Rule 23 and FLSA is GRANTED except as otherwise noted in this Opinion and Order.  Class Counsel's motion for fees, costs, and administrative expenses is GRANTED.  The motion for service awards is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 205 and to enter judgment in this case.

SO ORDERED.

Dated: October 30, 2025
      New York, New York

                                LEWIS J. LIMAN
                          United States District Judge