UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                 :

JESSY MANGAHAS, et al.,                 :

              Plaintiffs,         :

             -v-                 :

                                   :

EIGHT ORANGES INC. d/b/a THE BAO, et al.,     :

                                   :

             Defendants.         :

                                   :

------------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/2025

22-cv-4150 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

      Defendants Eight Oranges, Inc. d/b/a The Bao, Chibaola, Inc. d/b/a Uluh, Joanne Hong

Bao, and Richard Lam (collectively, "Defendants") move, pursuant to Federal Rules of Civil

Procedure 59(e) and 60(b) and Local Civil Rule 6.3, for reconsideration of the Court's Opinion

and Order dated October 30, 2025 (the "Opinion and Order"). Dkt. No. 218. Although the

Opinion and Order approved the proposed class-action settlement in this case in large part, it

rejected one non-material term providing that any funds unclaimed by class members at the end

of the settlement distribution period would revert back to Defendants (the "Reversion

Provision"). Dkt. No. 211 at 25–26. Defendants seek reconsideration of that aspect of the

Opinion and Order. Dkt. No. 218. Plaintiffs take no position on Defendants' motion. Dkt. No.

220. The motion is denied.

## LEGAL STANDARD

      "The standard for granting a motion for reconsideration is strict," and such motions are

"generally denied 'unless the moving party can point to controlling decisions or data that the

court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court.'" *In re Bouka*, 654 F. Supp. 3d 283, 286 (S.D.N.Y. 2023) (first

quoting *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442, 445 (S.D.N.Y. 2017);

and then quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  A motion for

reconsideration "is not a vehicle for relitigating old issues, presenting the case under new

theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"

*Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).  Rather,

"[r]econsideration of a previous order by the Court is an extraordinary remedy to be employed

sparingly" and "should be granted only when the moving party 'identifies an intervening change

of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice.'"  *Flynn v. Cable News Network, Inc.*, 621 F. Supp. 3d 432, 435 (S.D.N.Y.

2022) (first quoting *Ortega v. Mutt*, 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017); and then

quoting *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015)).

## DISCUSSION

Defendants have failed to meet their high burden of establishing grounds for

reconsideration.

The settlement agreement provides for the distribution of a settlement fund of

$1,750,000—net of attorneys' fees, costs, and service payments—to members of a class as

identified from a class list generated by Defendants.  Dkt. No. 206-1 ¶¶ 2.5(A), 3.1.  Defendants

challenge the Court's rejection of a non-material term of the agreement, the Reversion Provision,

which provides that "[a]ny and all uncashed Settlement Checks or Service Payments after the

one hundred eighty (180) day period shall revert back to Defendants.  This is a non-material term

of the Settlement and subject to Court approval.  If the Court does not approve this provision,

unclaimed funds shall be donated under the *cy pres* doctrine to a charity of the Parties' choice."

*Id.* ¶ 3.5(G); Dkt. No. 219 at 8.

2

At the settlement fairness hearing, Plaintiffs' counsel explained: "We reached an impasse and [the Reversion Provision] was a term that was requested, and the way it's written in the settlement agreement, it's in the court's discretion.  It's a non-monetary term[].  If the court strikes it, the uncashed checks would go to a *cy pres* of the parties' choice."  Dkt. No. 216 ("Tr.") at 26:8–12.  Thereafter, the Court gave Defendants' counsel an opportunity to be heard on any matter, and counsel declined the invitation.  Tr. at 37:18–20.  Defense counsel also did not submit any memorandum of law advocating for inclusion of the Reversion Provision.

The Court decided to approve the settlement without the Reversion Provision, determining that any unclaimed funds should instead be distributed to a labor-law charity of the parties' choosing under the *cy pres* doctrine in order to effectuate the purposes of the settlement and to deter both Defendants and others from committing future labor-law violations.  Dkt. No. 211 at 25–26.  The Court now declines to reconsider that conclusion, as Defendants have not identified any intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or manifest injustice.

Reversion provisions are disfavored because they "arguably undermine the deterrent effect of class actions."  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 n.20 (9th Cir. 2018).  As another district court has helpfully explained:

> Class actions serve as a deterrent by forcing individuals and businesses to pay damages for their wrongs.  *See* Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U. Pa. L. Rev. 2043, 2058 (2010).  That deterrent effect is undermined when the defendant remains eligible to recoup a significant amount of the settlement fund through the placement of a reversionary clause in the settlement agreement.  *See In re Baby Products Antitrust Litigation*, 708 F.3d 163, 172 (3d Cir. 2013) ("Reversion to the defendant risks undermining the deterrent effect of class actions by rewarding defendants for the failure of class members to collect their share of the settlement.").
>
> Class actions efficiently vindicate substantive rights, but reversion clauses undermine those rights by incentivizing obstacles to claiming settlement funds (which themselves are the presumptive property of the class).  American Law

Institute, Principles of the Law of Aggregate Litigation § 3.07, cmt. b (2010).  Such obstacles benefit defendants by allowing them to claim class members' property and to obtain releases precluding the very same class members from reclaiming that property. . . .  [W]here a reversionary clause remits unclaimed funds to the defendant, the defendant "wins" at the expense of the class members' substantive rights because they recoup a large sum of the settlement fund.

*Lenorowitz v. Mosquito Squad Franchising, LLC*, 2024 WL 5038238, at *1–2 (D. Conn. Dec. 9, 2024).  And as the American Law Institute has further explained, "[R]eturn[ing] the remaining funds to the defendant . . . would undermine the deterrence function of class actions and the underlying substantive-law basis of the recovery by rewarding the alleged wrongdoer simply because distribution to the class would not be viable."  A.L.I, Principles of the Law of Aggregate Litigation § 3.07, cmt. b (2010).

Contrary to Defendants' suggestion, in issuing the Opinion and Order, the Court appreciated that it had the discretion to adopt the Reversion Provision.  The settlement agreement provides that the provision is "subject to Court approval," Dkt. No. 206-1 ¶ 3.5(G), and the Second Circuit has never flatly prohibited such provisions, *see Mba v. World Airways, Inc.*, 369 F. App'x 194, 197 (2d Cir. 2010) (summary order) (holding in one case that a district court did not abuse its discretion in determining that unclaimed portions of a class action fund could be returned to the defendant).[1]  But, in the exercise of its discretion, the Court concluded that the provision was inconsistent with the interests of the class and the objectives of the agreement.  Declining to adopt the provision therefore does not, as Defendants argue, "disrupt the parties'

---

[1] *Mba*, cited by Defendants for the first time in their motion for reconsideration, is not an intervening change of law, nor does it demonstrate a clear error of law.  At most, it stands for the proposition that a district court does not necessarily abuse its discretion by approving a reversion provision—not that such provisions *must* be adopted.  *See Mba*, 369 F. App'x at 197 ("The history of this case provides no indication that the defendants behaved in a manner that would make reversion of the unpaid funds to World Airways so inappropriate as to be an abuse of discretion.  Moreover, to the extent that Plaintiffs requested that the lower court restructure the terms of the settlement agreement to avoid the reversion, we find that the court's refusal to do so was not an abuse of discretion.").

negotiated agreement," Dkt. No. 219 at 8, because the negotiated agreement specifically left the provision to the Court's discretion.

Defendants also dispute the Court's conclusion that the Reversion Provision meaningfully undermines principles of deterrence. They argue that the provision does not undermine the interests of specific deterrence because they are a small business with limited financial resources and could not be more deterred than they already are given the considerable financial burden they now face. *Id.* at 4–6. They also argue that the provision does not undermine the interests of general deterrence because any potential future wrongdoers will be deterred far more by the gross settlement amount in this case—$1,750,000—than by the Court's decision to reject reversion. *Id.* Defendants understate the significance of the provision and the effect of its inclusion.

The provision would undermine specific deterrence. The Court understands the $1,750,000 settlement amount to have been based on a calculation of the unjust benefit that Defendants earned as a result of their labor-law violations.[2] As indicated, the funds are to be distributed to class members based on a list generated by Defendants. Dkt. No. 206-1 ¶ 2.5. The Court does not question Defendants' claims that they have engaged in good-faith efforts to maximize check cashing, that they have not deliberately provided incomplete or inaccurate information to Plaintiffs, and that they have cooperated throughout the settlement process. Dkt. No. 219 at 6–9. But it declines to find that reversion is required in the absence of proof positive that defendants have actively sabotaged the notice process. If for any reason the list is

---

[2] Defendants argue that "[t]he Court's concern about deterrence overlooks the fact that the Settlement Agreement does not include any admission of wrongdoing by Defendants." Dkt. No. 219 at 9. That observation, however, overlooks the fact that the Court granted summary judgment against Defendants and in Plaintiffs' favor with respect to at least certain issues of liability. Dkt. No. 160 at 45–47.

incomplete or outdated, or class members in any number fail to receive or cash checks for the sums to which they are entitled, Defendants will enjoy a windfall. Reversion of a significant portion of the settlement fund would send the message to Defendants that if they ignore the labor laws in the future, any amount they might be forced to pay from a lawsuit would likely be much lower than the final settlement number (which, in turn, would likely be much lower than the amount they would have been required to pay had they obeyed the law in the first place). Moreover, the Court did not overlook Defendants' financial situation in reaching its decision. The Court specifically indicated that Defendants' ability to withstand a greater judgment was "an important factor here" in approving the settlement. Tr. at 8:7–10. The Court reiterated as much in its Opinion and Order. Dkt. No. 211 at 18–19. Had Defendants been able to withstand a greater judgment, the settlement amount might well have been much larger.

As to general deterrence, the proposition that a labor-law violator once caught would be able to keep the funds that it improperly obtained from its employees when the employees did not claim those funds would send precisely the wrong message. Many victims of Fair Labor Standards Act and New York Labor Law violations are vulnerable and may have "an understandable aversion to courthouses and lawyers." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 179 (S.D.N.Y. 2015); *accord Strauss v. Little Fish Corp.*, 2020 WL 4041511, at *8 (S.D.N.Y. July 17, 2020). They might also be hard to find. *See Hernandez v. Between the Bread 55th Inc.*, 2021 WL 12279220, at *2 (S.D.N.Y. Aug. 16, 2021). If an employer thought that the only repercussion of a labor-law violation was that it would have to reimburse those employees who could be readily found and who were willing to participate in the legal process, the incentive to comply with the labor laws would be undermined.

Finally, while Defendants claim that rejection of the Reversion Provision would result in

a "potential" manifest injustice given their efforts to maximize check cashing, Dkt. No. 219 at 7,

the Opinion and Order specifically qualifies as an exception to the no-reversion holding that

Defendants are entitled to recoup any reasonable costs associated with additional notice

measures they have voluntarily undertaken, *see* Dkt. No. 211 at 26 n.5.

## CONCLUSION

Defendants' motion for reconsideration is therefore DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 218.

SO ORDERED.

Dated: December 10, 2025
      New York, New York

                            LEWIS J. LIMAN
                        United States District Judge